

**WALSH PIZZI O'REILLY FALANGA**

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

WALSH.LAW

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

May 21, 2024

**VIA ECF**
Honorable Julien X. Neals, U.S.D.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: *United States of America, et al. v. Apple Inc.,* No. 2:24-cv-04055 (JXN-LDW)

Dear Judge Neals:

Pursuant to Your Honor's Judicial Preferences and Procedures, Section IV.A., Apple Inc. respectfully submits this letter to request a pre-motion conference prior to filing a motion to dismiss the Government's complaint under Federal Rule of Civil Procedure 12(b)(6).

This case lies well beyond the outer limits of antitrust law. A Section 2 Sherman Act claim can move past the pleadings only if the complaint alleges (1) monopoly power in a relevant market; (2) anticompetitive conduct; and (3) anticompetitive effects. *See, e.g.*, *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 437 (3d Cir. 1997). This complaint fails on all three fronts. The Supreme Court has repeatedly held that the type of conduct at the core of this case—namely, Apple's decisions about how and whether to grant third parties access to its platform—does not give rise to Section 2 liability as a matter of law. The complaint also nowhere connects the restrictions it challenges to any anticompetitive effects in the smartphone market. And regardless, far from being a monopolist, Apple faces fierce competition from well-established rivals, and the complaint fails to allege that Apple has the ability to charge supra-competitive prices or restrict output in the alleged smartphone markets, let alone that it has the market share necessary to establish or infer market power.

This Court should reject the invitation to forge a new theory of antitrust liability that no court has recognized, that would harm innovation, and that would only deprive consumers of the key competitive features that make iPhone distinctive.

I. **The Complaint Does Not Allege Anticompetitive Conduct**

Supreme Court precedent forecloses the Government's claims as a matter of law. All the conduct the Government alleges to be anticompetitive involves Apple making unilateral decisions about the terms and conditions on which to permit third parties access to Apple's proprietary platform. Citing five examples (including Apple policies no longer in effect), the complaint takes issue with Apple's decisions about what features and functionalities developers of so-called "super apps," cloud-streaming apps, messaging apps, smartwatches, and digital wallets can

Honorable Julien X. Neals
May 21, 2024
Page 2

access on iPhone—even while conceding that Apple allows those products on its platform. Compl. (ECF No. 1) ¶¶ 60–118. The Government suggests, for instance, that Apple should have set different "conditions" for super apps and cloud-streaming apps in the App Store, *id.* ¶¶ 41, 60–79, should offer third-party smartwatches and digital wallets greater access to iPhone features, *id.* ¶¶ 100–03, 111–17, and should even develop a version of its proprietary iMessage service for Android devices made by Apple's competitors, *id.* ¶ 80. The Government's theory of antitrust liability fails at the threshold because the Supreme Court has made clear that a firm's decisions about the terms on which it chooses to deal with third parties do not constitute exclusionary conduct under Section 2 of the Sherman Act. *See Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004); *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *linkLine*, 555 U.S. at 448. Applying those precedents, courts across the country reject antitrust claims premised on a platform's decisions about what level of "access" it will provide. *See, e.g.*, *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1067–69 (10th Cir. 2013). Indeed, just last year, the D.C. Circuit rejected on the pleadings the very theory articulated by the Government in this case. *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 305–06 (D.C. Cir. 2023). Dismissal is likewise warranted here.

The Government cannot evade these hurdles by invoking the one narrow exception to these cases recognized in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). That exception applies *only* when the defendant (1) unilaterally terminates a preexisting course of dealing and (2) sacrifices short-term profits to harm long-run competition. *Id.* at 605–08. The complaint alleges neither. Nor is this case at all comparable to *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), as the Government suggests. The anticompetitive conduct there consisted of efforts by Microsoft (which unlike Apple held 95% of the global market in operating systems) to restrict third parties' activities *off* its platform, such as through exclusive dealing requirements limiting how third parties could deal with others in the market. Apple, by contrast, does not restrict third parties' abilities to deal with competitors. The conduct here concerns only Apple's unilateral decisions about what others can do *on Apple's own platform*.

Finally, the Government's other conduct-related allegations (about a litany of practices spanning Apple's entire business) fail basic pleading requirements. It cannot combine a series of lawful practices to invent an antitrust claim where none exists. *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 46–48 (D.D.C. 2021). And the Government's cursory and indiscriminate references to various other Apple products and its speculation about future conduct, with no apparent connection to any theory of harm, are all insufficiently developed to comply with federal pleading requirements and must be rejected for that reason alone. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

II.   **The Complaint Does Not Allege Substantial Anticompetitive Effects**

The complaint should also be dismissed for the additional, independent reason that the Government has not plausibly alleged that Apple's challenged conduct has substantial "anticompetitive effects" in the smartphone market. *See Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 438–439 & n.80 (3d Cir. 2016). The Government contends that Apple's design decisions "lock in" users to purchasing iPhones, but the complaint includes no plausible allegations establishing a factual link between those decisions and consumers' smartphone purchasing behavior. *See Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 231 (3d Cir. 1987). It is not plausible, for instance, that Apple's policies surrounding the review of cloud-streaming apps, the display of mini-programs, or the features that smartwatches can

access somehow have kept consumers "locked in" to the iPhone. If anything, the opposite seems more plausible: Someone unhappy with Apple's limitations has every incentive to switch to competitor platforms that ostensibly do not have those limitations. Far from harming competition, the conduct challenged here—where Apple has opted to offer users a curated, secure, and reliable experience, in contrast to its competitors' more open platforms—are examples of zealous competition on the merits that differentiate Apple's products in the marketplace and enhance consumer choice.

### III. The Complaint Does Not Allege Monopoly Power In A Relevant Market

The Government also fails to properly define the relevant market or establish that Apple has monopoly power in it. *Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005). First, the alleged markets are legally disconnected from the challenged conduct. While the complaint seeks to define two hardware markets (smartphones and "performance" smartphones), the alleged anticompetitive conduct purportedly occurred in *other* markets, such as Apple's policies and practices concerning messaging apps, cloud-streaming apps, digital wallets, and smartwatches. Those products all exist in their own separate markets with their own competitive dynamics, and the Government's failure to define the proper market for those products is fatal.

Second, even if the alleged conduct occurred in the smartphone markets, Apple does not wield monopoly power in those markets. As the Government concedes, Apple faces stiff competition from Google, owner of the world's dominant mobile operating system, and Samsung, the global leader in smartphone sales. The complaint nowhere alleges (as it must) that Apple can charge durable supra-competitive prices or restrict output in the alleged smartphone markets without simultaneously giving advantages to Samsung and Google that would quickly render such conduct untenable. Further, the Government's alleged market shares are contrary to economic reality (Apple has approximately 20% of the global market share by unit) and fall well short of monopoly levels: the Supreme Court has never found monopoly power with "less than 75% market share." *Kolon Indus. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 174 (4th Cir. 2014). The so-called "performance" smartphone market is also an invented definition divorced from reality.

Finally, the attempted-monopolization claims also should be dismissed because the complaint does not plausibly allege that Apple had the requisite intent to monopolize the alleged markets. *Phila. Taxi Ass'n v. Uber Techs., Inc.*, 886 F.3d 332, 341 (3d Cir. 2018).

For these reasons, this Court should dismiss the Government's complaint.

Respectfully submitted,

*/s/ Liza M. Walsh*

Liza M. Walsh

cc: All Counsel of Record (via ECF and E-Mail)