

U.S. Department of Justice

Antitrust Division

*450 5th Street, N.W.*
*Washington, DC 20530*

*Via ECF* May 30, 2024
The Honorable Julien X. Neals
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

      Re:    *United States et al. v. Apple Inc*., No. 2:24-cv-04055 (JXN-LDW)

Dear Judge Neals:

      Plaintiffs submit this letter in response to Apple's request for a pre-motion conference. Apple's letter overlooks well-pleaded facts and misstates the law. Apple's conduct is unlawful under straightforward antitrust principles, which would require denial of its motion.

      Apple maintains its monopoly power by imposing a web of contractual restrictions, rules, and restraints on developers, users, and other ecosystem participants. Apple suppresses competitive threats to its smartphone monopolies, including middleware and other technologies, that would make it easier for consumers to switch to or choose in the first instance non-Apple smartphones. *See United States v. Microsoft*, 253 F.3d 34, 60 (D.C. Cir. 2001) (en banc). For example, Apple uses control over app distribution and creation to block or degrade "super apps" and "cloud streaming apps," middleware that could reduce consumer reliance on the iPhone. Apple also uses its control over private APIs to restrict the functionality of apps and wearables that would enhance smartphone competition. Apple's course of conduct harms not just the competitive process but also smartphone users who pay higher prices, get reduced innovation, quality, and privacy, and suffer higher switching costs; developers who face diminished ability and lessened incentives to innovate; and even Apple's own short-term profits. Because Apple "maintains [its] monopoly power [by] compet[ing] on some basis other than the merits," it has violated the Sherman Act. *LePage's Inc. v. 3M*, 324 F.3d 141, 147 (3d Cir. 2003) (en banc).

      A monopolization claim "has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *LePage's*, 324 F.3d at 149. Plaintiffs' allegations readily satisfy both elements, and Apple's attempts to create factual disputes at this stage are inappropriate. Apple also claims incorrectly that "anticompetitive effects" is a separate element. Letter at 1, ECF 42.[1] This is not Apple's only misstatement of the law. Apple also fails to cite authority for its incorrect claim that Plaintiffs must define markets other than the one that is being monopolized. And Apple misconstrues precedent to create a sweeping grant of near-immunity for all of "a firm's decisions about the

---

[1] In fact, anticompetitive effects here help establish the "willful maintenance" element. Effects can also be relevant to monopoly power. *Microsoft,* 253 F.3d at 51, 57-58.

terms on which it chooses to deal with third parties," Letter at 2, that would conflict with long-standing and well-established antitrust law. The proper analysis is set forth below.

### I.     The Complaint Alleges That Apple Has Monopoly Power

The Complaint properly alleges markets for smartphones and performance smartphones, the markets that Apple has monopolized. A smartphone is a platform that connects users, third-party developers, and other ecosystem participants utilizing the device's hardware and software. Compl. ¶¶ 3-4, 48-51, ECF 1. Contrary to Apple's assertion that apps and accessories are "disconnected" from smartphones, Letter at 3, there is a close connection between smartphones and third-party apps and accessories that make the smartphone valuable, *see*, *e.g.*, *id.* ¶¶ 66, 71, 79, 91-92, 98-99, 104. Moreover, Apple cites no authority for the proposition that Plaintiffs must define additional relevant markets beyond the monopolized market just because additional markets may be implicated. Apple is wrong. *See, e.g.*, *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782-83, 790-91 (6th Cir. 2002) (anticompetitive activity in undefined retail market maintained monopoly in the defined moist snuff wholesale market); *Microsoft*, 253 F.3d at 54, 60 ("excluding middleware from the relevant market" but finding that conduct affecting middleware protected operating system monopoly). Apple's challenges to the alleged U.S. market for performance smartphones, Letter at 3, lack legal support and disregard robust allegations that entry-level smartphones, and smartphones sold outside the United States, are not reasonable substitutes for U.S. performance smartphones. *See, e.g.*, Compl. ¶¶ 165-171, 176-179.

Monopoly power can be shown by direct proof or circumstantial evidence, *Microsoft*, 253 F.3d at 51, and the Complaint pleads both. Direct proof can include a "pattern of exclusionary conduct [that is only] rational if the firm knew that it possessed monopoly power," *id.* at 58, or "profitably rais[ing] prices substantially above the competitive level," *id.* at 51. The allegations encompass such direct proof, including Apple profitably forgoing innovation without losing customers and profit margins far exceeding the competitive level. *E.g.*, Compl. ¶¶ 187-88.

Plaintiffs also adequately allege monopoly power through circumstantial evidence, including high market share and barriers to entry. Apple has U.S. market shares over 70% in the performance smartphone market and over 65% for all U.S. smartphones. *Id.* ¶ 181. Apple's shares are "significantly greater than 55 percent," from which monopoly power may be inferred. *FTC v. AbbVie Inc*, 976 F.3d 327, 371, 373 (3d Cir. 2020) (market shares "above 60" percent sufficient). The Complaint also alleges other indicia of monopoly power. Compl. ¶¶ 180-190. Apple wrongly claims that "less than 75% market share" is "well short of monopoly levels," Letter at 3, misconstruing *Kolon Industries v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160 (4th Cir. 2014), which itself recognized that a "market share of less than 60%" does not "foreclose a finding of monopoly power," *id.* at 174.

### II.    The Complaint Alleges That Apple Has Acted Anticompetitively

Conduct "may be deemed anticompetitive" if it "impairs the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007). This analysis "necessarily turn[s] on the facts and circumstances surrounding a company's alleged anticompetitive conduct." *Mylan Pharm. Inc. v. Warner Chilcott Public Ltd. Co.*, 838 F.3d 421, 441 (3d Cir. 2016). In particular, the Third Circuit has applied a burden-shifting framework where (1) the plaintiff first provides "evidence of the anticompetitive nature of a defendant's conduct," (2) "the defendant then has the burden of proffering nonpretextual procompetitive justifications for its

conduct," and (3) "the plaintiff may then either rebut those justifications or demonstrate that the anticompetitive harm outweighs the procompetitive benefit." *Id.* at 438 (cleaned up).[2]

This standard applies here. Contrary to Apple's argument, Letter at 2-3, the Complaint pleads facts linking the challenged acts to reduced smartphone competition, explaining how Apple's restrictions on cross-platform technologies keep iPhone users from switching to Apple's smartphone rivals. Compl. ¶¶ 66, 71, 79, 98-99, 104. Moreover, the Complaint contains many allegations of harm flowing from and linked to Apple's anticompetitive conduct: a worse user experience for both iPhones and rival smartphones, reduced consumer choice, higher prices and fees, lower quality smartphones, apps, and accessories, and less innovation. *E.g.*, *id.* ¶¶ 10, 13-14, 18, 54, 56, 67, 71, 90, 100, 104, 126, 132.

Apple wrongly seeks to supplant the general standard with a "refusal-to-deal framework [that only] applies to narrow situations." *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1173 (10th Cir. 2023). Apple's argument hinges on a mistaken, overbroad claim that all of a "firm's decisions about the terms on which it chooses to deal with third parties do not constitute exclusionary conduct." Letter at 2. Courts regularly analyze terms and conditions imposed by monopolists, including on-platform restrictions, without applying a refusal-to-deal framework—even in Apple's cited decisions. *See, e.g.*, *Lorain Journal Co. v. United States*, 342 U.S. 143, 152 (1951) (newspaper required advertisers to boycott competing radio station to advertise in its pages); *Microsoft*, 253 F.3d at 68, 70-71 (placement of AOL on Windows desktop conditioned on restrictions on promotion and use of non-Microsoft browsers). Here, a refusal-to-deal framework is inappropriate because the challenged practices are not refusals to provide requested products or services to smartphone rivals, *Chase*, 84 F.4th at 1173 ("We have never extended a refusal-to-deal-with-rivals analysis outside that situation [dealing with rivals].") but rather restrictions on developers, users, and others that harm the competitive process by, *inter alia*, reducing smartphone switching. Compl. ¶¶ 64, 79, 90, 97-98, 108-09.

Even if analyzed as refusals to deal, Apple's practices are anticompetitive. The proper analysis asks if the refusal is "predatory"—"attempting to exclude rivals on some basis other than efficiency," *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 605 (1985)— and the Complaint alleges just that, *see, e.g.*, Compl. ¶¶ 40, 51-53, 142, 147. A variety of factors inform the "case-by-case assessment[] of whether a challenged refusal to deal is indeed anticompetitive" and "no factor is always decisive by itself." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 457 (7th Cir. 2020); *see also IQVIA Inc. v. Veeva Sys. Inc.*, 2018 WL 4815547, at *3 (D.N.J. Oct. 3, 2018) ("termination of a voluntary agreement and the willingness to forsake short-term profits are not necessary elements of proving anticompetitive conduct").

The Complaint also alleges specific intent to monopolize, *e.g.*, Compl. ¶¶ 52-53, 133, 210, and "exclusionary conduct" from which specific intent "may be inferred," *Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 261 (3d Cir. 1984); *e.g.*, Compl. ¶¶ 141-147.

Respectfully Submitted,

s/ Jonathan H. Lasken

---

[2] Apple states that Plaintiffs cannot "combine a series of lawful practices," Letter at 2, but the alleged practices are unlawful individually, and courts examine "the monopolist's conduct taken as a whole rather than considering each aspect in isolation." *LePage's*, 324 F.3d at 162.

Jonathan H. Lasken
Assistant Chief, Civil Conduct Task Force
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Telephone: (202) 598-6517
Email: jonathan.lasken@usdoj.gov


PHILIP R. SELLINGER
United States Attorney

s/ J. Andrew Ruymann
Assistant United States Attorney
U.S. Attorney's Office
402 East State Street, Room 430
Trenton, NJ 08608
Telephone: 609-989-0563
Email: John.Ruymann@usdoj.gov

*Attorneys for Plaintiff United States of America*


MATTHEW J. PLATKIN

Attorney General of New Jersey

s/         Isabella R. Pitt
Isabella R. Pitt (NJ Bar No. 071002013)
Deputy Attorney General
Assistant Section Chief of Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: 973-648-3070
Isabella.Pitt@law.njoag.gov


*For Plaintiffs States of New Jersey, Arizona, California, Washington, D.C., Connecticut, Maine, Michigan, Minnesota, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Wisconsin*

PHILIP R. SELLINGER
United States Attorney

BY: JONATHAN LASKEN
Assistant Chief
Civil Conduct Task Force
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 8600
Washington, DC 20530
*Attorney for Plaintiff United States of America*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA et al.,<br><br>    *Plaintiff*,<br><br>  v.<br><br>APPLE INC.<br><br>    *Defendants*. | Case No. 2:24-cv-04055-JXN-LDW |

**CERTIFICATE OF SERVICE**

     I hereby certify that the above letter and this Certificate of Service were served upon defendant's counsel, Craig S. Primis, Esq., Devora W. Allen, Esq., Liza M. Walsh, Esq., and K. Winn Allen, Esq. 1301 Pennsylvania Avenue, NW, Washington, D.C., 20004, by CM/ECF on May 30.

 

                                                      BY: s/ Jonathan Lasken
                                                         JONATHAN LASKEN
                                                         Assistant Chief
                                                          Civil Conduct Task force
                                                          United States Department of Justice
                                                          Antitrust Division
                                                          *Attorney for Plaintiff United States*