

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

July 1, 2024

**VIA ECF**
Honorable Leda D. Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

  Re: *United States v. Apple Inc.*, No. 2:24-cv-04055-JXN-LDW (D.N.J.)

Dear Judge Wettre:

  This Firm, along with Kirkland & Ellis LLP, represents Defendant Apple Inc. in the above-captioned matter. We write in response to the Government's June 27 letter, in which the Government asks Your Honor to schedule a Rule 16.1 conference. Apple is of course happy to discuss this case with Your Honor at any time. And should this case proceed after the Court rules on Apple's forthcoming motion to dismiss, a Rule 16.1 conference may well be warranted. But as explained below, any Rule 16.1 conference and the formal commencement of discovery should take place only after the Court resolves Apple's forthcoming motion to dismiss.

  The Government's complaint alleges a sweeping and unprecedented theory of antitrust liability.[1] On May 21, 2024, Apple submitted a letter to the Court (ECF No. 42) explaining why the Government's case should be dismissed on the pleadings and requesting a pre-motion conference. Judge Neals has since ordered that the conference be held on July 17, *see* Order (ECF No. 63), after which Apple intends to file its motion to dismiss. For several reasons, the Court should have the opportunity to evaluate and resolve the fundamental legal issues raised in Apple's motion to dismiss before the parties press forward with a Rule 16.1 conference and far-reaching (and potentially unnecessary) discovery.

  ***First***, Apple's forthcoming motion to dismiss may eliminate or substantially narrow the issues in this case. The Government's claims amount to nothing more than a challenge to Apple's unilateral decisions about the terms and conditions under which it allows third parties access to its own proprietary platform—decisions that are protected by longstanding antitrust law. The complaint also does not plausibly allege that Apple's decisions about various disparate

---

[1] This case was initiated on March 21, 2024, *see* Compl. (ECF No. 1), but on June 11, 2024, the United States, 19 States, and the District of Columbia (collectively, the "Government") filed a First Amended Complaint (ECF No. 51) (the "complaint").

technologies substantially harm competition in the smartphone market, or that Apple has monopoly power in a properly defined market. Beyond that, many of the Government's allegations fail basic pleading requirements. The Court should resolve these significant legal questions before discovery begins.

**Second**, commencement of discovery after the Court resolves Apple's forthcoming motion to dismiss poses no prejudice to the Government. The Government has already had the benefit of a four-year pre-litigation investigation, during which Apple responded to over 45 requests for documents or other information; produced millions of documents; sat for 15 depositions; and participated in informal interviews and meetings with the Government on a variety of topics. The Government also had the opportunity to conduct extensive third-party discovery. Having already developed an enormous one-sided discovery record, the Government cannot claim prejudice if further discovery does not commence until after resolution of Apple's motion to dismiss. What is more, several of the practices the Government attacks in the complaint are no longer in effect, thus further obviating the need for immediate action. That said, even while the motion to dismiss is pending, the parties can continue to engage on various case-management items, including a case management order, protective order, and ESI agreement. This will ensure that the case is ready to proceed if the Government's claims survive Apple's motion to dismiss.

**Third**, the prejudice to Apple and third parties of additional discovery—on top of the significant discovery already conducted—weighs in favor of commencing discovery after the Court rules on Apple's forthcoming dispositive motion. The complaint's allegations target a handful of disparate policies and design decisions relating to so-called "super apps," cloud-streaming apps, messaging apps, smartwatches, and digital wallets. The complaint also includes a barrage of conclusory allegations that briefly reference over a dozen other products and services, often without any factual support whatsoever. Given the scope of those allegations, the floodgates to federal-court discovery should not be opened—if at all—until the Court has had an opportunity to evaluate and rule on whether the Government's claims are legally sufficient. The prejudice that would result from starting discovery now is especially apparent here, where discovery will implicate dozens of third parties across the country (the complaint alone names over twenty) from which Apple and the Government will seek documents and testimony.

For these reasons and those set forth below, Apple respectfully requests that the Court hold the Rule 16.1 conference, and any corresponding discovery, in abeyance until after the Court has ruled on Apple's motion to dismiss.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Actelion Pharms. Ltd. v. Apotex Inc.*, 2013 WL 5524078, at *3 (D.N.J. Sept. 6, 2013). District courts have "broad discretionary powers to stay the matters before them," *Saint-Jean v. Holland*, 2021 WL 5866901, at *3 (D.N.J. Dec. 9, 2021), and it is well-settled that such discretion includes the authority to stay discovery pending resolution of a motion to dismiss, *see, e.g.*, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001). That is because by resolving a

defendant's motion to dismiss, the district court could very well "simplify the issues for trial by 'narrowing' or 'outright eliminati[ng]' the need for discovery." *Actelion Pharms.*, 2013 WL 5524078, at *5; *see also Mann v. Brenner*, 375 F. App'x 232, 239–40 (3d Cir. 2010) (recognizing that a discovery stay pending resolution of a motion to dismiss is appropriate where, "if the motion is granted, discovery would be futile"); *see also* Minute Order, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C. May 11, 2021) (denying FTC's motion to compel Rule 26(f) conference in antitrust case where defendant's "[m]otion to [d]ismiss raise[d] a number of serious challenges to the Complaint" such that "it would [have been] premature for the parties to discuss discovery until the contours of what, if anything, remains are known").

Under Rule 26(c), a court has discretion to stay discovery "for good cause." Fed. R. Civ. P. 26(c); *see also* Fed. R. Civ. P. 1. Good cause exists where: (a) "a stay would simplify the issues and the trial of the case"; (b) a stay would not "unduly prejudice or present a clear tactical disadvantage to the non-moving party"; (c) "denial of the stay would create 'a clear case of hardship or inequity' for the moving party"; and (d) "discovery is [not] complete and/or a trial date has [not] been set." *Actelion Pharms.*, 2013 WL 5524078, at *2, *3.

## ARGUMENT

### A. Apple's Motion to Dismiss Likely Will Eliminate or Narrow the Case.

A stay pending a decision on Apple's motion to dismiss will simplify the issues in this case, thereby promoting judicial economy and efficiency, because resolution of Apple's dispositive motion may eliminate the Government's claims entirely or narrow the relevant issues for discovery and trial. *Sheridan v. iHeartMedia, Inc.*, 2016 WL 1059268, at *3–4 (D.N.J. Mar. 16, 2016) (noting that stays are appropriate where they "promote judicial economy" by mooting or limiting further proceedings); *Malhan v. Katz*, 2019 WL 13260421, at *2 (D.N.J. Apr. 24, 2019) (concluding that a stay pending resolution of a motion to dismiss would "clarify or simplify the appropriate subjects for discovery, and thereby promote the interests of economy and judicial efficiency"); *Cima Labs, Inc. v. Actavis Grp. HF*, 2007 WL 1672229, at *10 (D.N.J. June 7, 2007) (granting a stay "because it may result in the cancellation, clarification, or limitation of the claims").

As outlined in Apple's pre-motion letter (ECF No. 42), and as will be explained in detail in Apple's motion to dismiss, the Government's complaint suffers from fundamental legal deficiencies that warrant dismissal on the pleadings:

***Refusal to Deal***. The conduct challenged by the Government boils down to complaints that Apple has refused to deal with third parties on the terms and conditions of their choosing—a theory of antitrust liability the Supreme Court has repeatedly rejected. The Government alleges that Apple, by setting rules for the App Store and making available many but not all APIs[2] to third-party developers, has drawn lines around third-party access to the iPhone in an anticompetitive

---

[2] "APIs" or "Application Programming Interfaces" are protocols through which software applications communicate with each other to share data and information.

way.  Am. Compl. (ECF No. 51) ¶¶ 41–42.  The Government points to five "examples" of such conduct—ranging from Apple's policies related to so-called "super apps" to the access Apple affords smartwatches—and claims for each that Apple should afford third parties greater access to its proprietary platform than it currently does.  See id. ¶ 10.  The Supreme Court has made abundantly clear, however, that "[a]s a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009).  Courts have thus dismissed on the pleadings antitrust claims that do nothing more than challenge the terms and conditions on which an entity chooses to deal with others, just as the Government's complaint does in this case.  *See, e.g., id.* at 450; *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).  Indeed, just last year, the D.C. Circuit rejected the same theory the Government advances here.  *See New York v. Meta Platforms, Inc.*, 66 F.4th 288, 305–06 (D.C. Cir. 2023).

*No Anticompetitive Effects*.  The Government also does not plausibly allege substantial anticompetitive effects in the alleged smartphone markets, as it must to state a claim under the Sherman Act.  *See NCAA v. Alston*, 594 U.S. 69, 96 (2021) ("[T]he plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect."); *Mylan Pharms. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 438 (3d Cir. 2016) ("[T]he party seeking to impose liability must initially provide evidence of the anticompetitive nature of a defendant's conduct.").  The Government focuses its allegations on disparate design decisions Apple has made in non-smartphone markets (such as those for cloud-gaming apps, messaging apps, or digital wallets), but the complaint fails to allege sufficient facts linking those decisions to consumers' smartphone purchasing behavior.  *See Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 231 (3d Cir. 1987).  For example, it is implausible—and the complaint does not adequately allege—that Apple's cloud-gaming-review policy or practices around SMS availability for third-party messaging apps have somehow substantially and adversely impacted competition among smartphone providers.  This antitrust case cannot proceed in the absence of plausible allegations drawing that connection and others.

*No Monopoly Power*.  Apple is not a monopolist, and the Government fails to properly allege that Apple has monopoly power in its alleged markets.  *See Harrison Aire, Inc. v. Aerostar Int'l, Inc.*, 423 F.3d 374, 380 (3d Cir. 2005).  Apple faces "meaningful competitors" in the smartphone market, as the Government itself concedes, including global behemoths like Google and Samsung.  Am. Compl. (ECF No. 51) ¶ 186.  The Government also does not (and cannot) allege that Apple has or threatens to gain the power to charge a price in the smartphone market "higher than the competitive price without inducing so rapid and great an expansion of output from competing firms as to make the supracompetitive price untenable." *Harrison Aire*, 423 F.3d at 380.  The complaint proclaims that Apple has a market share of 65% to 70%, Am. Compl. (ECF No. 51) ¶ 22, but the Supreme Court has never found monopoly power "with less than 75% market share." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 174 (4th Cir. 2014).  And the Government only reaches its claimed 70% share by improperly focusing on revenue (rather than units sold) and narrowing the market to so-called "performance smartphone[s]"—an invented definition divorced from commercial reality.  Am. Compl. (ECF No. 51) ¶ 22.

*Additional Pleading Deficiencies*.  Various parts of the complaint also fail basic federal pleading requirements.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals

Honorable Leda D. Wettre, U.S.M.J.
July 1, 2024
Page 5

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Government makes cursory references to numerous other Apple products and services, beyond the aforementioned five "examples," that purportedly evidence a so-called "monopoly playbook." *See, e.g.*, Am. Compl. (ECF No. 51) ¶¶ 120, 136 (making one-line references to video-communications apps, cloud-storage apps, and eSIM technology, without alleging how Apple has purportedly "limited" or "impaired" those technologies). Because the complaint nowhere develops those allegations, the Government's claims should be dismissed to the extent they rely on them. In addition, the Government's attempted monopolization claims, *id.* ¶¶ 207, 220, should be dismissed for failure to plead specific intent.

\*     \*     \*

Each of these arguments warrants dismissal of the Government's complaint in its entirety or, at the very least, in substantial part. Such a dismissal would either eliminate or significantly narrow the issues in this case and the scope of discovery, making it inefficient for the parties to proceed with discovery now. *See Cima Labs*, 2007 WL 1672229, at \*10.

Importantly, regardless of the Court's adjudication of Apple's motion to dismiss, Apple's arguments indisputably meet the threshold for a stay because they raise substantial issues under longstanding principles of antitrust law and federal pleading standards. Courts routinely grant stays when a dispositive motion is pending, so long as the motion "does not appear to be without foundation in law." *Actelion Pharms.*, 2013 WL 5524078, at \*5–6; *see also Malhan*, 2019 WL 13260421, at \*1–2 (granting a stay where the defendant "raised sufficiently substantive arguments" in its motion to dismiss); *Victor v. Huber*, 2012 WL 2564841, at \*2–3 (M.D. Pa. July 2, 2012) ("[A] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.'"). For example, the Court in *Actelion Pharmaceuticals* granted a motion to stay discovery, observing that there could be "no contention" that Actelion's dispositive motion was without basis in law because—as Actelion submitted—it "rest[ed] on long-standing antitrust . . . principles that respect the fundamental right of a firm like Actelion to deal—and refuse to deal—with whomever it chooses." 2013 WL 5524078, at \*6. The same is true of Apple's arguments, which raise important threshold legal questions for the Court to resolve before discovery can proceed in this case.

**B.     The Government Will Not Be Unduly Prejudiced.**

The Government will not be prejudiced if discovery commences after the Court decides Apple's motion to dismiss.

To begin with, the Government already has access to substantial discovery. The Department of Justice investigated Apple for over four years before filing this case. During that time, it received millions of Apple documents, took 15 Apple depositions, and participated in multiple briefings and interviews with Apple personnel. In addition, the Government appears to have taken voluminous discovery from a multitude of third parties during its investigation, likely including document productions, depositions, white papers, and informal briefings. The State Plaintiffs have also been provided with these investigation materials. Considering the extensive

Honorable Leda D. Wettre, U.S.M.J.
July 1, 2024
Page 6

record the Government developed during the investigation, it can hardly contend that a limited stay would prejudice its ability to develop its legal and factual theories.

The duration of the Government's investigation also belies any claim that a limited stay is somehow a lever of prejudicial delay. The Department of Justice took over four years to conduct its investigation before filing its original Complaint (ECF No. 1) in March. Given how long the Government took to bring this action, a limited stay of a few months while the Court evaluates the legal sufficiency of the Government's claims will not cause undue prejudice. And in any event, it is well established in this district that "'mere' delay" is not sufficient to "necessitate a finding of undue prejudice" and denial of a stay. *Burress v. Freedom Mortg. Corp.*, 2022 WL 586606, at *2–4 (D.N.J. Jan. 31, 2022); *see also Operational Prods. Supply & Servs., LLC v. Intelligent Surveillance Corp.*, 2022 WL 16743860, at *2–3 (D.N.J. Apr. 14, 2022) (explaining that "[d]elay inherently results from the issuance of a stay," but "'mere' delay does not, without more, necessitate a finding of undue prejudice"); *MonoSol Rx, LLC v. BioDelivery Scis. Int'l, Inc.*, 2012 WL 762501, at *10–11 (D.N.J. Mar. 7, 2012) ("[D]elay alone is not a sufficient reason to deny a stay.").

Even though Apple maintains that substantive discovery is unwarranted while its motion to dismiss is pending, Apple will continue to work with the Government to negotiate various case-management and discovery-related orders, including a case management order, protective order, and ESI stipulation. Indeed, the parties have already met and conferred several times regarding these proposed orders, and they have exchanged several drafts. Although the parties have made substantial progress on a case management order, the Government claims court intervention is necessary now. But many matters in the case management order could likely be worked out given sufficient time, and the parties remain engaged in discussions over the protective order and ESI stipulation. In short, a temporary stay will not prevent the parties from continuing to work productively to reach agreement on those orders, which will be important for a case of this size and complexity.

The Government contends it has a statutory mandate to proceed expeditiously, but that does not foreclose a stay of discovery while the parties litigate potentially dispositive threshold issues. The Government's contention that discovery must proceed "urgen[tly]" based on alleged ongoing harm to the public should be rejected.[3] The four years the Government took before filing this case undermine any suggestion that speed is suddenly required; if there were truly some

---

[3] The Government cites no authority from this jurisdiction where the court denied a stay of discovery under 5 U.S.C. § 4 or 28 U.S.C. § 1407(g). The Government's citation to the out-of-jurisdiction decision in *United States v. Agri Stats, Inc.*, 2024 WL 3061570, at *5 (D. Minn. May 17, 2024), is inapposite here, where Apple's forthcoming motion could resolve the entire case and substantial discovery remains. The Government's invocation of *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999), and *United States v. Google LLC*, 661 F. Supp. 3d 480, 490 (E.D. Va. 2023), is also inapposite. Neither decision dealt with Rule 16.1 conferences or discovery-related disputes. Instead, those decisions dealt with motions to consolidate or transfer antitrust suits and involved the interpretation of the Multidistrict Litigation Act, 28 U.S.C. § 1407, which is not at issue here.

imminent or ongoing harm, presumably the Government would have acted much more quickly. The truth is that there is no ongoing public harm at all: The Government challenges Apple's design decisions only about whether and how to grant third parties access to Apple's platform. Those decisions *increase* consumer choice by allowing Apple to offer a private, secure user experience that is different from the experience that smartphone manufacturers like Google and Samsung offer. And in any event, many of the decisions the Government challenges are already obsolete. For example, Apple's App Store Guidelines no longer require "users to download cloud streaming software . . . for each individual game." *See* Am. Compl. (ECF No. 51) ¶ 77. Similarly, Apple has revised or removed limitations on developers' abilities to monetize mini-programs, access APIs necessary for in-app payments, or display apps using store-like interfaces. *See id*. ¶¶ 69–70. And, as the complaint itself acknowledges, Apple has also taken steps to enable enhanced cross-platform messaging through its "stated plans to adopt RCS" protocols. *Id*. ¶¶ 89, 135. Thus, even assuming Apple's old policies ever caused any harm (they did not), the Government cannot now rely on outdated practices to show ongoing harm.

Finally, Apple intends to take significant discovery from the Government, including from the multitude of federal and state agencies that have: purchased smartphones; set policies for their employees' use of smartphones; conducted analyses of the privacy, security, and other benefits of Apple's products in relation to its competitors; and investigated other issues relevant to this action. Those efforts will require the federal and state plaintiffs in this action to engage in significant document collections, reviews, and productions from the many federal and state agencies that have purchased smartphones or taken positions on issues relevant to the Government's claims. Those burdens will likewise be mitigated with a stay pending resolution of Apple's dispositive motion.

      **C.**     **Apple and Third Parties Face Substantial, Unnecessary Harm.**

Although Apple has engaged in good faith with the Government throughout its investigation, the Government will undoubtedly seek to take additional broad discovery in this litigation, both of Apple itself and of third parties. On the flip side, Apple is entitled to (and will) test the Government's claims if its motion to dismiss is denied, including by taking discovery of relevant third parties. There is thus no doubt that discovery in this case will impose significant burdens on Apple and third parties across the country.

Discovery in antitrust cases can be extremely burdensome. *See, e.g.*, *Actelion Pharms.*, 2013 WL 5524078, at *4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007) (cautioning courts not to ignore the potential for wide-ranging discovery in antitrust cases and corresponding burdens)). That is particularly so here, where the Government's complaint attacks varying and unconnected segments of Apple's business. Those patchwork allegations span over a decade, challenging conduct that purportedly began "soon after the iPhone's introduction" in 2007. *E.g.*, Am. Compl. (ECF No. 51) ¶¶ 3, 52, 91, 101. Building on its investigation, the Government may attempt to seek broad discovery into all those products and services going back over 15 years, including additional document productions, new custodians, and additional depositions.[4] This

---

[4]    Apple reserves all rights to contest, at the appropriate time, the breadth and scope of the discovery requests the Government is likely to issue. *See* Fed. R. Civ. P. 26(c)(1). For now,

Honorable Leda D. Wettre, U.S.M.J.
July 1, 2024
Page 8

expansive scope of potential discovery creates "a specific and substantiated risk of harm" to Apple. *Actelion Pharms.*, 2013 WL 5524078, at *4.

On top of that, the complaint includes references to over a dozen other products and services that are pleaded with little or no factual support. For example, the complaint includes one-line references to "video communications apps" and "cloud storage apps." *See* Am. Compl. (ECF No. 51) ¶ 120. The Government similarly refers to "sales channels," but fails to even explain what sales channels Apple purportedly restricted or what restrictions Apple allegedly imposed. *Id.* The complaint also vaguely speculates, without any factual support whatsoever, that Apple *may* use its "monopoly playbook" in the future, reciting eleven other technologies. *Id.* ¶¶ 136–37. To be clear, Apple contests that any of those products or services are fairly the subject of this lawsuit. But the risk that the Government will now pursue discovery related to them further demonstrates why a stay is warranted here: It makes no practical sense for the parties to expend resources to negotiate discovery across dozens of product lines and "sales channels" only to later course-correct once an order on Apple's motion to dismiss eliminates or sharpens the relevant issues.

This case will also require extensive third-party discovery. The Government's complaint refers to more than *twenty* named and unnamed third parties from whom the Government likely received information during its investigation, including smartphone manufacturers like Samsung and Google, wireless carriers like Verizon, and prominent apps and services like WhatsApp, Netflix, and Hulu. *See, e.g., id.* ¶¶ 93, 155. The Government will undoubtedly seek formal third-party discovery from all those entities in this case as well as others, and Apple for its part is also entitled to take discovery from those third parties, as well as any others that might possess relevant information.

Third-party discovery will thus impose significant costs on parties and non-parties alike. It will no doubt involve service of subpoenas and negotiations over their scope, the production of custodial documents and transactional data, depositions, and potential discovery disputes and motions practice. There is no reason to impose those burdens now, before a ruling on Apple's dispositive motion confirms what, if anything, remains in this case. *See Actelion Pharms.*, 2013 WL 5524078, at *4; *see also KH v. V.I. Water & Power Auth.*, 2024 WL 1313498, at *3 (D.V.I. Jan. 31, 2024) (considering substantial discovery on a third party when balancing defendants' hardships and the equities); *Pfizer Inc. v. Johnson & Johnson*, 2018 WL 1071932, at *2 (E.D. Pa. Feb. 27, 2018) (staying discovery and acknowledging the "enormous" scope of discovery in antitrust cases, including the "large and costly undertaking" of third-party discovery).[5]

---

it is enough to note that the Government is likely to seek such broad discovery, without conceding that it is appropriate.

[5] Setting the Rule 16.1 conference at a later time would also allow discovery to be coordinated with dozens of private lawsuits that are being transferred to this Court, which raise claims similar to those advanced by the Government here. Transfer Order, *In re Apple Inc. Smartphone Antitrust Litig.*, MDL No. 3113 (J.P.M.L. June 7, 2024), ECF No. 116 (transferring the private lawsuits, which "are highly complex and likely will involve time-consuming fact and expert discovery" in part to "provide opportunities for coordination with

Honorable Leda D. Wettre, U.S.M.J.
July 1, 2024
Page 9

      For these reasons, resolution of Apple's motion to dismiss could avoid imposing massive (and potentially unnecessary) discovery burdens not only on Apple, but also on the Government, its agencies, and scores of non-parties.[6]

*   *   *

      For the foregoing reasons, Apple respectfully requests that the Court set a Rule 16.1 conference following resolution of Apple's motion to dismiss and only if that motion is denied.

      Respectfully submitted,

      *s/ Liza M. Walsh*

      Liza M. Walsh

cc:    All Counsel of Record (via ECF)

---

    the government action"). A brief stay will facilitate coordination across matters, "avoid[ing] duplicative discovery, and minimiz[ing] the risk of inconsistent rulings on overlapping issues." *See id.*

[6]    As for the fourth factor of the stay analysis, this litigation remains in its early stages, and no trial date has been set. *Actelion Pharms.*, 2013 WL 5524078, at *3, *6. Like the other three, the fourth factor thus weighs in favor of a stay.