1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
2

3    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬        CIVIL ACTION NUMBER:
     UNITED STATES OF AMERICA, et
4    al,                        2:24 Civ. 04055

5         Plaintiffs,           PREMOTION CONFERENCE

6         v.

7    APPLE, INC.,

8         Defendant.

9    ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

10        Martin Luther King Building & U.S. Courthouse
          50 Walnut Street
          Newark, New Jersey 07101
11        Wednesday July 17, 2024
          Commencing at 11:08 a.m.
12

13   B E F O R E:              THE HONORABLE JULIEN XAVIER NEALS,
                               UNITED STATES DISTRICT JUDGE
14                                     - and -
                               THE HONORABLE LEDA D. WETTRE,
15                             UNITED STATES MAGISTRATE JUDGE

16   A P P E A R A N C E S:

17        DEPARTMENT OF JUSTICE - ANTITRUST DIVISION
          BY:  JONATHAN LASKEN, ESQUIRE
18             JEREMY KEENEY, ESQUIRE (VIA TEAMS)
          450 Fifth Street NW
19        Washington, DC 20530
          Counsel for Plaintiff United States of America
20

21
               MELISSA A. MORMILE, Official Court Reporter
22
                    melissa_mormile@njd.uscourts.gov
23                         973-776-7710

24    Proceedings recorded by mechanical stenography; transcript
                 produced by computer-aided transcription.
25

```
 1  A P P E A R A N C E S (Continued):

 2      OFFICE OF THE ATTORNEY GENERAL
        BY:  JOHN ANDREW RUYMANN, ESQUIRE
 3      402 East State Street
        Trenton, New Jersey 08608
 4      For the Plaintiff United States of America

 5      DEPARTMENT OF JUSTICE
        BY:  MATTHEW C. MANDELBERG, ESQUIRE
 6           PATRICK M. KUHLMANN, ESQUIRE
        950 Pennsylvania Avenue NW
 7      Washington, DC 20004
        Counsel for Plaintiff United States of America
 8
        DEPARTMENT OF JUSTICE - ANTITRUST DIVISION
 9      BY:  JENNIFER HANE, ESQUIRE
             NOLAN MAYTHER, ESQUIRE (VIA TEAMS)
10      450 Golden Gate Avenue - Suite 10-0101
        San Francisco, California 94102
11      Counsel for Plaintiff United States of America

12      STATE OF NEW JERSEY - OFFICE OF THE ATTORNEY GENERAL
        BY:  BRIAN FRANCIS MCDONOUGH, ESQUIRE
13           ISABELLA REGINA PITT, ESQUIRE
             LAUREN ELIZABETH VAN DRIESEN, ESQUIRE (VIA TEAMS)
14      124 Halsey Street
        Newark, New Jersey 07102
15      For the State of New Jersey

16      STATE OF ARIZONA - OFFICE OF THE ATTORNEY GENERAL
        BY:  SAIVIGNESH "VINNY" VENKAT, ESQUIRE (VIA TEAMS)
17      2005 North Central Avenue
        Phoenix, Arizona 85004
18      Counsel for the State of Arizona

19      STATE OF CALIFORNIA - OFFICE OF THE ATTORNEY GENERAL
        BY:  ROBERT MCNARY, ESQUIRE
20           CARI JEFFRIES, ESQUIRE (VIA TEAMS)
        455 Golden Gate Avenue - Suite 11000
21      San Francisco, California 94102
        Counsel for the State of California
22
        OFFICE OF THE ATTORNEY GENERAL - DISTRICT OF COLUMBIA
23      PUBLIC ADVOCACY DIVISION
        BY:  ELIZABETH G. ARTHUR, ESQUIRE (VIA TEAMS)
24      400 Sixth Street NW - 10th Floor
        Washington DC 20001
25      Counsel for the District of Columbia
```

```
 1   A P P E A R A N C E S (Continued):

 2       STATE OF INDIANA - OFFICE OF THE ATTORNEY GENERAL
         BY:  JESSE J. MOORE, ESQUIRE (VIA TEAMS)
 3       302 West Washington Street - Suite 5
         Indianapolis, Indiana 46204
 4       Counsel for the District of Columbia

 5       STATE OF MAINE - OFFICE OF THE ATTORNEY GENERAL
         CONSUMER PROTECTION DIVISION
 6       BY:  CHRISTINA M. MOYLAN, ESQUIRE (VIA TEAMS)
         6 State House Station
 7       Augusta, Maine 04333
         Counsel for the State of Maine
 8
         OFFICE OF THE ATTORNEY GENERAL - STATE OF MASSACHUSETTS
 9       BY:  DAVID MLAVER, ESQUIRE (VIA TEAMS)
         1 Ashburton Place - 18th Floor
10       Boston. <Massachusetts 02108
         Counsel for the District of Columbia
11
         STATE OF MICHIGAN - DEPARTMENT OF ATTORNEY GENERAL
12       BY:  LEANN D. SCOTT, ESQUIRE (VIA TEAMS)
         525 West Ottawa Street
13       Lansing, Michigan 48933
         Counsel for the State of Michigan
14
         STATE OF MINNESOTA - OFFICE OF THE ATTORNEY GENERAL
15       BY:  ERIN CONTI, ESQUIRE (VIA TEAMS)
         445 Minnesota Street - Suite 1400
16       Saint Paul, Minnesota 55101
         Counsel for the State of Minnesota
17
         STATE OF NORTH DAKOTA - OFFICE OF THE ATTORNEY GENERAL
18       CONSUMER PROTECTION AND ANTITRUST DIVISION
         BY:  CHRISTOPHER G. LINDBLAD, ESQUIRE (VIA TEAMS)
19            ELIN S. ALM, ESQUIRE (VIA TEAMS)
         1720 Burlington Drive - Suite C
20       Bismarck, North Dakota 58504
         Counsel for the State of North Dakota
21
         OFFICE OF THE ATTORNEY GENERAL - STATE OF NEVADA
22       BY:  SAMANTHA B. FEELEY, ESQUIRE (VIA TEAMS)
              RAQUEL Y. FULGHUM, ESQUIRE (VIA TEAMS)
23       400 Sixth Street NW - 10th Floor
         Washington DC 20001
24       Counsel for the District of Columbia

25
```

1    **A P P E A R A N C E S (Continued):**

2        STATE OF NEW YORK
         OFFICE OF THE ATTORNEY GENERAL - ANTITRUST BUREAU
3        BY:  ELINOR R. HOFFMAN, ESQUIRE
             BRYAN BLOOM, ESQUIRE
4        28 Liberty Street
         New York, New York 10005
5        Counsel for the State of New York

6        STATE OF OREGON - OFFICE OF THE ATTORNEY GENERAL
         ANTITRUST AND FALSE CLAIMS UNIT
7        BY:  TIMOTHY D. SMITH, ESQUIRE (VIA TEAMS)
         100 SW Market Street
8        Portland, Oregon 97201
         Counsel for the State of Oregon
9
         STATE OF TENNESSEE
10       OFFICE OF THE ATTORNEY GENERAL AND REPORTER
         CONSUMER PROTECTION DIVISION
11       BY:  SCOTT ETHAN BOWERS, ESQUIRE (VIA TEAMS)
         PO Box 20207
12       Nashville, Tennessee 37202
         Counsel for the State of Tennessee
13
         STATE OF VERMONT - OFFICE OF THE ATTORNEY GENERAL
14       BY:  ALEXANDRA SPRING, ESQUIRE (VIA TEAMS)
         109 State Street
15       Montpelier, Vermont 05602
         Counsel for the State of Vermont
16
     WALSH PIZZI O'REILLY FALANGA LLP
17       BY:  DOUGLAS E. ARPERT, ESQUIRE
         Three Gateway Center
18       100 Mulberry Street - 15th Floor
         Newark, New Jersey 07102
19       Counsel for the Defendant Apple, Inc.

20       KIRKLAND & ELLIS LLP
         BY:  CRAIG S. PRIMIS PC, ESQUIRE
21           DEVORA W. ALLON, ESQUIRE
             K. WINN ALLEN, PC
22       1301 Pennsylvania Avenue NW
         Washington, DC 20004
23       Counsel for the Defendant Apple, Inc.

24

25

1          (PROCEEDINGS held in open court before **The Honorable**

2  **JULIEN XAVIER NEALS,** United States District Judge.)

3          THE COURTROOM DEPUTY:  All rise.

4          The Honorable Julien Xavier Neals and the Honorable Leda

5  D. Wettre presiding.

6          HON. JULIEN X. NEALS:  Good morning, all.

7          Please be seated.

8          THE COURTROOM DEPUTY:  We are on the record in *United*

9  *States of America, et al, v. Apple, Inc.*; 24 Civ. 4055.

10          HON. JULIEN X. NEALS:  I hope I don't regret this,

11  but, counsel, your appearances, please.

12          MR. LASKEN:  Your Honor, would you like me to come to

13  the podium or from the tables?

14          HON. JULIEN X. NEALS:  You can do it from the tables,

15  that's fine.

16          MR. LASKEN:  Jonathan Lasken, counsel for the United

17  States.

18          Would you like me to introduce my other colleagues from

19  the United States?  Or shall I do the --

20          HON. JULIEN X. NEALS:  Yes, thank you.

21          MR. LASKEN:  This is Mr. Andy Ruymann, Chief of the

22  Civil Division for the US Attorney's Office.

23          Ms. Jennifer Hane from the Antitrust Division.

24          And Mr. Matthew Mandelberg from the Antitrust Division.

25          HON. JULIEN X. NEALS:  Good morning.

```
 1          MR. LASKEN:  Thank you, your Honor.

 2      And Ms. Isabella Pitt for the state.

 3          HON. JULIEN X. NEALS:  Thank you.

 4          MS. PITT:  Good morning, your Honor.

 5      May it please the Court.

 6          Isabella Pitt, for the New Jersey Attorney General's

 7  Office and for the 20 plaintiff states acting by and through

 8  their respective Attorney General's Offices.

 9          Here with me today from my office is Assistant Attorney

10  General Brian McDonough.

11          HON. JULIEN X. NEALS:  Good morning.

12          MS. PITT:  Also with us from New York Attorney

13  General's Office is Elinor Hoffmann and Bryan Bloom.  And

14  Robert McNary, from the California Attorney General's Office.

15          HON. JULIEN X. NEALS:  Good morning.  Thank you.

16          Counsel.

17          MR. ARPERT:  Good Morning, your Honor.  Judge Wettre.

18          Douglas Arpert, Walsh, Pizzi, O'Reilly & Falanga, on

19  behalf of Apple.

20          Ms. Walsh sends her apologies.  She is unable to be here

21  today.

22          I will let me colleagues from Kirkland & Ellis introduce

23  themselves.

24          HON. JULIEN X. NEALS:  Thank you.

25          MR. PRIMIS:  Good morning, your Honor.
```

1          Craig Primis, from Kirkland & Ellis, on behalf of Apple.

2          I do want to note, we have Apple's chief litigation

3     counsel, Heather Grenier, in the courtroom today for today's

4     hearing.

5              MS. GRENIER:  Good morning.

6              HON. JULIEN X. NEALS:  Good morning.

7              MR. ALLEN:  Good morning, your Honor.

8          Winn Allen, from Kirkland & Ellis, on behalf of Apple.

9              HON. JULIEN X. NEALS:  Okay.

10             MS. ALLEN:  Good morning, your Honor.

11         Devora Allon from Kirkland & Ellis on behalf of Apple.

12             HON. JULIEN X. NEALS:  Good morning.

13         Well, as you can see, there are so many of you, I

14    brought my own reinforcements as well.

15             HON. LEDA D. WETTRE:  That's right.

16             HON. JULIEN X. NEALS:  But just from a practical

17    matter, this is for the premotion conference.  And I am glad to

18    see all counsel here.  I note there also seem to be counsel who

19    are connected with the MDL who may be present as well, because

20    part of the biggest issue was wanting to just clarify some of

21    the issues that would be part of a motion to dismiss and

22    understanding and getting a sense of what the breadth of the

23    motion to dismiss would be as well.

24         I know earlier in the proceeding that there was a

25    scheduling order that was proposed back in May with regard to a

1   briefing schedule with regard to the motions to dismiss.

2          The Court will be asking that you do that again once we

3   finish today's proceeding.  There will be other things, likely,

4   that we will be asking from you, also.

5          First, I would like to hear from the defense with regard

6   to the anticipated motion to dismiss and just the breadth of

7   the motion and whether this is fully going to address all of

8   the claims or if we think it is going to be more of a partial.

9          Whichever counsel would like to address that.

10          MR. PRIMIS:  Good morning, your Honor.

11     Craig Primis again.

12          The motion to dismiss will address all claims and will

13  seek dismissal of the entire lawsuit.

14          So we will not be seeking partial dismissal.

15          HON. JULIEN X. NEALS:  I understand that would involve

16  some state law claims as well?

17          MR. PRIMIS:  Yes.  And I should -- the state law

18  claims parallel exactly the federal claims, so they will all

19  rise and fall on the same grounds.

20          HON. JULIEN X. NEALS:  All right.  Perfect.  Perfect.

21          Did plaintiffs want to be heard with regard to the

22  breadth of the motion?

23          MR. LASKEN:  Nothing in particular, your Honor.

24          We agree with Mr. Primis' assessment as best we can

25  tell.

```
 1           HON. JULIEN X. NEALS:  All right.  Thank you.

 2       As far as communication among the parties, has there

 3  been any discovery that has been conducted in the litigation to

 4  this point?

 5           MR. ALLEN:  Your Honor, this is Mr. Allen on behalf of

 6  Apple.

 7       There has not been any discovery to date.

 8       The parties have had discussions around certain

 9  administrative orders, like a potential CMO and protective

10  order and things of that nature, but no discovery has been

11  conducted to this point.

12           HON. JULIEN X. NEALS:  All right.

13       While the motion to dismiss is pending, I would like to

14  hear from the parties as to their respective positions as to

15  whether any discovery should or could take place while the

16  motions are pending.

17       I will hear from plaintiffs first.

18           MR. LASKEN:  Your Honor, we believe it is imperative

19  that discovery get started in this case.

20       This is a case that involves ongoing harm to the

21  American public and ongoing harm to American businesses.

22       For that reason, Congress has made various assessments

23  of the need to move these cases forward with appropriate speed.

24       They have been exempted from MDL consolidation.

25       There is a provision at 15 USC 4 that asks for the case
```

1  to move as forward as soon as may be practicable.

2      Most recently, in Minnesota the District Court

3  determined as part of a denial of a motion to stay that those

4  provisions militated against staying discovery pending a motion

5  to dismiss.

6      Your Honor, that's before we get to the fact that the

7  standard for a motion to dismiss or a stay, pending a motion to

8  dismiss, is not going to be met here.

9      You know, we understand that Apple is seeking full

10  dismissal, and I appreciate that probably at this moment.

11      I shouldn't get to the merits.

12      We don't anticipate -- we don't see merit to the motion.

13  We think it asks for a number of legal rules that are clearly

14  outside of the law.

15      And we think it mostly, frankly, raises factual

16  disputes.  And so, if we are going to be resolving factual

17  disputes, we should get to discovery, we should start moving.

18      Thank you, your Honor.

19      HON. JULIEN X. NEALS:  Thank you.

20      HON. LEDA D. WETTRE:  Mr. Lasken, could you address

21  how DOJ's opportunity to do some presuit investigation for

22  several years impacts your need for immediate discovery?

23      MR. LASKEN:  Sure.

24      So your Honor, we have had some opportunity to do an

25  investigation.

1          Our primary focus on discovery, frankly, is we
2    understand Apple is going to want a fair amount of discovery,
3    and that is going to impact the length of the schedule.
4          And so I think the -- we will need discovery to bring
5    our files forward.  Right?  So we in the course of an
6    investigation, will serve a civil investigative demand, get
7    information.  That information does not continue to be produced
8    typically.  And that is the case here.
9          So we will need to bring our files forward.  We will
10   need to address certain things that maybe were outside the
11   scope of that, but that we have learned about.
12         So we need that discovery.  But the important thing to
13   us in starting now is to get to resolution.
14         You know, Apple is seeking an incredibly long discovery
15   period in this case.  They are proposing 18 months of fact
16   discovery and another, I think, nine months of expert
17   discovery.
18         We have looked at this case relative to other cases like
19   it.  We think that's far too much.  But even at a more normal
20   amount of time, it will take some time.
21         And so we think it is important to get started on that
22   so that we can get to a resolution on behalf of the American
23   people and bring the violations to a close.
24         So, again, for us -- and I apologize, your Honor, if I
25   deviate a little bit from the question -- but that's the

1  driving reason why we feel it is important to get to discovery.

2  But we will need some discovery.  We anticipate Apple has

3  greater needs.

4      And one final point I would make on that is it is almost

5  always the case -- and it is true here -- that a great deal of

6  our file is from Apple.

7      And so Apple, although they have not had the opportunity

8  to investigate, they will have a lot of the same information as

9  us.

10      So thank you, your Honor.

11      HON. JULIEN X. NEALS:  Thank you.

12  Counsel.

13      MR. ALLEN:  Yes, your Honor.

14      We do believe that discovery should await the Court's

15  ruling on the motion to dismiss because that motion will either

16  completely obviate the need for discovery or at least provide

17  the parties with important guidance about the proper scope of

18  discovery.

19      Discovery in a case of this nature, your Honor, will

20  necessarily be quite burdensome.  The government's going to

21  seek broad discovery from Apple.  Apple will take appropriate

22  discovery of the government.  And there will be extensive

23  third-party discovery, as there is frequently in cases of this

24  nature.

25      There is a very real possibility, in light of the

1   arguments we are advancing in our letter and that will be

2   advanced in our motion to dismiss, that all of that discovery

3   will be unnecessary because of the threshold legal deficiencies

4   with the complaint that we can address here today if your

5   Honors would like to hear.  But we think the complaint is

6   legally defective and should be dismissed in its entirety.

7        And if it is, the parties would waste a lot of time and

8   effort on discovery that we don't think is appropriate.

9        But even if the complaint is not dismissed in its

10  entirety, we do believe that there are important threshold

11  questions about the proper scope of this case that would be in

12  everyone's interest to resolve as part of the motion to dismiss

13  process before the parties press ahead with that discovery.

14       For example, your Honor, there is a great deal of

15  uncertainty about what technologies and products and services

16  are properly subject to discovery in this case.  The

17  government's complaint focuses on five specific products and

18  services that are the core of its case.  But it then goes on to

19  list, in perfunctory fashion, roughly a dozen other Apple

20  products and services without any factual explanation about why

21  those technologies are relevant.

22       We don't believe that those additional technologies are

23  properly in this case.  We are going to seek, as part of our

24  motion, that those allegations be dismissed.  And that

25  discovery into those technologies and services is not

1    appropriate.

2         The government might well disagree.

3         So even if the complaint is not dismissed in its

4    entirety, which we expect it should be and will be after our

5    motion to dismiss, at least some clarity from the Court as to

6    whether these other technologies are in or out is quite

7    important for us to know before we open the doors to what will

8    undoubtedly be extremely burdensome and lengthy discovery, your

9    Honor.

10        So because the motion --

11         HON. LEDA D. WETTRE:  Mr. Allen --

12         MR. ALLEN:  Yes, your Honor.

13         HON. LEDA D. WETTRE:  -- couldn't discovery be scoped

14   so that the technologies where Apple alleges the claims may be

15   moot, could they be excluded from discovery at least for a

16   time; and then you can focus on the technologies that would

17   definitely be at issue if the case survives the motion to

18   dismiss?

19         MR. ALLEN:  It might be, your Honor.  And it would

20   certainly be a more preferable approach to us than having

21   discovery on everything at once.

22         However, I do still believe that there would be -- a

23   stay even as to those products and services is warranted here

24   for a few reasons.

25         One is discovery even into those five products and

1    services that are the core of the government's case will be

2    quite burdensome and extensive.  And in light of the threshold

3    legal deficiencies with the government's complaint, we don't

4    think those burdens on -- either on Apple or the government or

5    the third parties -- are warranted.

6          And in addition, there very well could be disputes, your

7    Honor, about what discovery is in scope or out of scope with

8    respect to those five items.

9          And so yes that would be a more preferable approach to

10   us as opposed to discovery on everything, but we still believe

11   that a stay of all discovery is warranted in light of the

12   fundamental legal deficiencies with the complaint that go to

13   the entirety of the government's allegations.

14         We also don't believe that there is any prejudice to the

15   government or the public from a brief stay while the Court

16   considers the motion to dismiss, given that the government

17   spent four years investigating this case before they filed it.

18         In light of that substantial delay, it is very difficult

19   for us to see how waiting a few months for the Court to read

20   and review and rule upon the motion to dismiss, provide the

21   parties with guidance as to whether the case will proceed at

22   all, and if so in what shape or fashion -- it is very difficult

23   for us to see how that poses additional prejudice to the public

24   or the government.

25         And, in fact, I think implied, it would provide

1    extremely important guidance to the parties about the scope of

2    the case, where the parties should be focusing their discovery

3    efforts as opposed to a free-for-all.  Having an order from the

4    Court that can guide the course of discovery would be extremely

5    beneficial.

6         And in addition, your Honor, it is -- Mr. Lasken on the

7    other side cited this District of Minnesota case.  We don't

8    think that case is on point here because in that case there was

9    a very low likelihood that the motion to dismiss would be

10   granted.  And the Court also emphasized that there would not be

11   much discovery in that case.

12        Here, we are looking at the exact opposite.  And we

13   believe there's a quite high likelihood that the motion to

14   dismiss will be granted, in all or in part.  And there will be

15   significant discovery that the government seeks and that both

16   parties seek from third parties.

17        The more instructive cases, we believe, your Honor, are

18   the *FTC*, the *Meta* case, which is an antitrust case brought by

19   the *FTC* against *Meta* in the Federal Court in the District of

20   Columbia, where Judge Boasberg did stay discovery pending a

21   decision on Meta's motion to dismiss.

22        And also, the *Actelion Pharmaceuticals* case from this

23   jurisdiction in which discovery was stayed while the plaintiff

24   in that case, because it was a declaratory judgment, advanced a

25   refusal-to-deal argument as to why the antitrust claims should

1  not proceed, which is similar to the refusal-to-deal argument

2  that Apple would be advancing here.

3       So, for those reasons, your Honors, we believe that in

4  the interest of the parties and of the Court, and that the

5  efficiency of this litigation would be best served by staying

6  all discovery until the motion to dismiss is resolved.

7            MR. LASKEN:  Your Honor, may I be heard?

8            HON. JULIEN X. NEALS:  Yes.

9       And before you go, Mr. Lasken, do you agree that whether

10 those technologies that are in or out, the scope of those

11 technologies is determined prior to a motion to dismiss?  Do

12 you feel that it has any impact on the motion at all?

13           MR. LASKEN:  I don't, your Honor.

14      And I think there is a couple of points here that I

15 would like to make about this.  This is a course of conduct

16 case.

17      One of the primary problems with Apple's motion is they

18 seem to be trying to transform this case into a case about

19 wallets.

20      This is a case about phones and the use of various

21 technologies to impede people's ability to compare phones on

22 their merits and choose different phones.

23      We have five examples.

24      We will prove those in detail.

25      Apple can't moot our case.  It couldn't even moot our

1  case, frankly, if it was asked of those technologies.  Because

2  as a government enforcement action, we would still be entitled

3  in our case, which we didn't cite in our letter because -- and

4  I appreciated that this argument would come up, but we can

5  brief it.

6       It talks about you can't voluntarily cease your conduct

7  in the face of a government enforcement action, especially as

8  to some of these policies a few weeks before we filed the suit

9  and say, look, it is done, the case is moot, no order gets

10 entered against me.

11      Regardless of whether it stopped, we would be entitled

12 to an injunction.

13      Leaving that aside -- right -- the case is not about

14 these individual technologies per se.

15      Yes, we will prove it through these individual

16 technologies and others, but -- if the scope of discovery

17 relates to the overall use of app review, of APIs -- right --

18 to suppress cross-platform technologies, these are examples.

19      So, whether one is in or out, could that have a small

20 impact on discovery?  I suppose so, but it's not going to be a

21 significant impact.

22      The thing I want to add to that, your Honor, is -- you

23 know, my colleague said, what is the prejudice?  The prejudice

24 is every day someone buys an iPhone, they're overpaying for it.

25 Every day someone uses an app and gets charged 30 percent fees,

 1  they are overpaying for it.  Right?

 2      People are unable to compete.  We're unable to have

 3  competition among phones.

 4      That is the prejudice.  The prejudice is not about

 5  discovery prejudice.  It is about the ongoing harm from the

 6  violation to people.

 7      And that is why Congress made the decision that cases

 8  like this move forward.

 9      So, *Dentsply*, which I don't recall if we recited this or

10  not because we had this sort of letter exchange with Apple,

11  right, over there should be a conference, and Apple got into

12  staying discovery.

13      The *Dentsply* decision in Delaware, which is

14  190 F.R.D. 140, In weighing the public interest in expedited

15  resolution of government antitrust actions against the

16  potential burdens of duplicative discovery on defendants --

17  this is about MDL cases, but it is the same idea -- Congress

18  chose to strike the balance in favor in the public's interest

19  in expedited relief.

20      That is what's at stake.

21      It is not about a couple of months of discovery.

22      It is not that we had an investigation.

23      It is that we need this resolved because people are

24  being harmed.

25      And so the final point I wanted to make on the four-year

1  investigation, you know, your Honor, we investigate these

2  things to determine if there is a violation.  We take that very

3  seriously.  We talk to a lot of people.  We try to really

4  understand, is what Apple is doing, are they harming the

5  public?  We don't take these suits lightly.  But that is what

6  we are doing in an investigation.  Right?

7        That is different from what we're doing in a litigation

8  where we are proving, we're creating -- we're putting together

9  evidence to prove the case.  And so it serves a different

10 purpose.  So saying we spent four years carefully looking at

11 what Apple did to determine whether or not it's violated the

12 law, doesn't -- it is not like we spent four years preparing a

13 case.

14       And so I think that is an important thing to understand.

15       Now, to be clear, we are prepared to move forward with

16 this case, but we have a different purpose in these

17 proceedings.  And I think that's an important point I wanted to

18 make.

19       Thank you, your Honor.

20          HON. JULIEN X. NEALS:  Thank you.

21       Counsel.

22          MR. ALLEN:  Your Honor, may I be heard briefly on

23 that?

24          HON. JULIEN X. NEALS:  Yes.

25          MR. ALLEN:  Thank you, your Honor.

1          I think what we just heard is that -- confirmation that

2     the government is not going to agree to limit the scope of

3     discovery in this case to the five products and services that

4     we believe discovery should be limited to.

5          I think what Mr. Lasken is saying is the government

6     fully intends to take very broad discovery into all manners of

7     services and technologies, including several services and

8     technologies that we do not believe are adequately pleaded in

9     the complaint under *Iqbal* and *Twombly*.  And we will argue as

10    such on the motion to dismiss stage.

11         So given what was just said, I think it is more

12    important than ever that we have some clarity up front about

13    the scope of discovery in this case as opposed to sending the

14    parties off and running into taking discovery about anything

15    and everything that Apple does.

16         Secondly, your Honor, the *Dentsply* case that Mr. Lasken

17    referred to was not a motion-to-stay case.

18         It was a case dealing with potential consolidation with

19    an MDL.  And the policy -- we are not even worrying the policy

20    rationale that's in 15 U.S.C. Section 4.  We just believe our

21    approach is fully consistent with it.

22         Again, structuring discovery in this case in a way

23    that's most efficient, that provides the parties with guidance

24    about what they should be focusing their efforts on is a more

25    efficient resolution of this case.

1          Secondly, your Honor, in the *Actelion Pharmaceuticals*

2   case from this Court, the Court noted the policy that

3   Mr. Lasken referred to and still granted a stay of discovery

4   because it was the most efficient way to proceed.

5          And thirdly, your Honor, again, I do think it is

6   important that the government took four years to bring this

7   case.  And we, obviously, disagree that anyone's paying more

8   for an iPhone because of these practices.  We don't believe

9   there is any anticompetitive harm at all because of the

10  practices they've alleged, and we will argue that in our motion

11  to dismiss.

12         But setting that aside, having taken four years to even

13  bring this case, it is very difficult to us to understand why

14  speed is needed now as opposed to structuring a case around a

15  resolution of the motion to dismiss.  And then once we

16  understand the scope and converse of the case, we can structure

17  a reasonable discovery process if the complaint remains at all.

18           HON. JULIEN X. NEALS:  The parties are more aware of

19  the breadth and potential discovery and the issues to be

20  presented in this case and what impact it will have and

21  interaction it will have with the MDL, understanding that it is

22  exempted from consolidation.

23         However, it kind of begs the question in terms of

24  hearing how the potential scope of the technologies -- what is

25  in and what is out -- whether it should be properly pled or not

1   in particular seems to imply that if there is some dispute over

2   the technologies that should be included, that that is going to

3   be a potential issue down the road of whether it was properly

4   pled or not, is what I heard defense to be saying.

5          Is that correct?

6           MR. ALLEN:  Yes, your Honor.

7          We are going to argue in our motion to dismiss that

8   anything outside the five key technologies and services that

9   they pleaded in their complaint is not properly pled and should

10  be out of the case.

11         And those technologies, they are -- several of them are

12  listed in paragraphs 120 to 125 of the complaint.

13         There are some other technologies listed later in the

14  complaint.

15         But the government in their complaint lists in cursory

16  fashion over those five paragraphs nine other products and

17  services that they are trying to insert into the case.  And we

18  do not believe that those allegations are adequately pled.  We

19  do not believe they should be part of the case.  We do not

20  believe they should be subject to discovery.

21          HON. JULIEN X. NEALS:  Counsel.

22          MR. LASKEN:  So, your Honor, a couple of notes.

23         First of all, *Actelion* -- if I pronounced that right --

24  is not a government enforcement action.  There are multiple

25  other cases that conflict with it.

1          So there is the *Maher Terminals* case.  There is the -- I

2     apologize.  I am on the wrong page here.

3          There's the Chamales {sp} case.  And what those say is

4     you only stay discovery if there is a clear and unmistakable

5     result for the motion.

6          So there is no clear and unmistakable result for this

7     motion.  It is far from clear.  Again, we don't believe it

8     should be -- has any merit at all.  But it is far from clear

9     that it merits granting -- will be -- merits being granted.

10         And so that would say under the vast majority of cases

11    in this district discovery moves forward.

12         So leaving aside the public interest, Apple can't meet

13    the standard.

14         So that is the first piece that I think I should say,

15    and maybe I should have started there.

16         *Meta*, which Apple referenced and I forgot to address,

17    involved 350 RFPs and 150 party depositions.

18         To me, your Honor, and maybe it is just to me, the

19    length of time and the amount of discovery depends on the work

20    we have to do.  Apple has proposed that we take five

21    depositions of Apple in discovery.

22         Apple wants a similar schedule, but it's -- now, we

23    don't agree with that parenthetically, but we are also not

24    seeking 150 depositions nor do we intend to serve 350 RFPs.

25    This case will not involve that much discovery.  That is the

1   wrong schedule to compare it to.  And that's what matters.

2       And I apologize for straying into issues that are maybe

3   not in front of the Court yet, but this case is not *Meta* in

4   terms of the scope of discovery.

5       I think what I heard from Mr. Allen, to borrow his

6   phrase, is confirmation that they are, essentially, going to

7   get into fact issues in the motion to dismiss.

8       They think we can't prove, as it is, that these

9   technologies had an effect.

10      So if you look at paragraph 120 of the complaint, which

11  my colleague referenced, what it says about, for example,

12  location traffickers is Apple has underlined third-party

13  location trafficable devices that fully function across

14  platforms.  Elsewhere in the complaint we have pleaded in

15  detail what and how that works.

16      Apple underlines the cross-platform technology, drives

17  you to an iPhone only technology, and that technology makes it

18  harder for you to switch phones.

19      Location trackers cost money.  We plead this in the

20  smartwatches.  They cost money.

21      Apple understands under Rule 8 what it's defending

22  against.  There is plenty of information there to -- and I am

23  not even sure I understand what the motion is because that

24  wouldn't be a dismissal of a claim.  I am not sure if this is a

25  motion for a more definite statement or a motion to strike a

1  pleading, but it is certainly not a motion to dismiss a claim

2  because that is not a claim in this case.

3        And so, I think, your Honor, again, on the subject, I am

4  not actually sure what Apple is asking for.  And the discovery

5  is not going to be purely structured to say, well, we want

6  discovery on watches.  We are taking discovery on Apple's

7  overall course of conduct, on its use of technologies, its

8  undermining of cross-platform technologies to make the iPhone

9  "sticky," and "sticky" in ways other than its merits.

10        And so, I think -- again, this goes back to the five

11  examples.  It is not the whole case.

12        And so I think that's a rewriting of the complaint.

13        Thank you, your Honor.

14         HON. JULIEN X. NEALS:  Part of the reason that we have

15  the premotion conference is just that, to define what is

16  actually to dismiss, what could be resolved by more definite

17  pleadings.  This is part of the whole process.

18        Just to be clear, defense is in no way foreclosed from

19  making its motion to dismiss.  You have the absolute right to

20  do that.

21        But in the context of the issues and everything involved

22  in this case, we thought it important to have this conference

23  to flesh out some of these issues.

24        Mr. Lasken, from the government's standpoint, you do not

25  agree then that based on the pleading as it stands that you

1    would be in any way foreclosed from wanting to add these

2    additional technologies for discovery purposes later on in the

3    case?

4            MR. LASKEN:  Yes, your Honor.

5            We are pleading a course of conduct or a pattern of

6    behavior.  What we are pleading is that Apple uses its control

7    over app review and APIs to undermine cross-platform

8    technologies, just as in *Microsoft* -- right -- to force you to

9    do things with your phone that make it hard for you to compare

10   the phones on the merits.  Right?

11           It is not competition on the merits to force people to

12   choose to be a green bubble if you want to go to an android

13   phone?  Right?

14           We are pleading a whole series of actions based on

15   certain mechanisms that go to that point.

16           Apple would like this case to be about individual

17   things.  And certainly, in the end -- right -- the proof will

18   have to come in, in that way, but that is not the core of the

19   case.  And so deciding this one or that one is in and out, that

20   is not really what the discovery is about.

21           The discovery is about the course of conduct.  It's

22   about the strategy to undermine competition on the merits.

23           To me, your Honor, it would be a challenging approach to

24   try to say, this is in, this is out, because there is no claim

25   for harm to a -- or monopolization of wallets.  Right?  That

1    claim isn't in the complaint.  And so it is not clear what

2    would be being dismissed even under that reading.

3         Thank you, your Honor.

4          MR. ALLEN:  Your Honor, just to be clear on a couple

5    of things.

6         First of all, our motion -- the primary argument of our

7    motion is a threshold legal argument that goes through

8    everything in the complaint, that the entirety of the complaint

9    should be dismissed under black letter Supreme Court precedent

10   regarding refusals to deal with competitors under cases like

11   Trinko {sp} and Lee Klein {sp}.

12        So the primary argument will be a purely legal argument

13   that the theory of the complaint is defective under binding

14   Supreme Court case law and other cases from the Courts of

15   Appeals that make clear that these theories, these claims that

16   Apple has some obligation to open up its platform to third

17   parties just because they want, it is barred by binding Supreme

18   Court case law.  So that is going to be argument one.

19        Later in the motion to dismiss we are going to argue

20   that there is -- even if you got past that argument, there are

21   certain technologies that are not adequately pleaded in the

22   complaint.

23        So I did want to be clear with the Court that these

24   arguments about what is in and what is out are part of our

25   motion, but they are not the tip of the spear of the motion, if

1   it will.  That is going to be a purely legal argument that the

2   entire theory of the complaint fails in its entirety.

3        So even the five examples, your Honor, that we referred

4   to in this argument, we believe those fail as a matter of law,

5   too.  But we have other arguments with respect to these other

6   technologies that the parties might have a fight about as to

7   whether they are within scope.

8        The other point I would make, your Honor, is there are a

9   number of tasks that the parties can do while the motion to

10  dismiss is pending to get this case ready to go if the motion

11  to dismiss is denied in whole or in part.

12       These are things we have already been doing and that we

13  are committed to doing while the motion to dismiss is under

14  consideration; including negotiating any aside protocols,

15  negotiating a protective order, negotiating a case schedule,

16  and a CMO.

17       Those actually are quite involved for a case of this

18  size, given the size of the case, the number of third parties

19  involved.  And those are things we are committed to doing.

20       So the case doesn't have to languish while the motion to

21  dismiss is pending.  The parties can do productive work to get

22  the case organized.  The Court can consider the legal arguments

23  that Apple has that go to the flaws in the case as a whole and

24  to the case as a part.

25       And we can proceed in an incremental-wise way in terms

1    of structuring the case.  Get it ready to go.

2        And then once we have a ruling on the motion to dismiss,

3    either no discovery is required or at least we know where the

4    parties should focus their discovery efforts in the case.

5        I know Mr. Lasken says there is not going to be a lot of

6    discovery here, I just don't believe that's the case.  I think

7    the government is going to take a substantial amount of

8    additional discovery from Apple.  I believe both parties will

9    take a substantial amount of discovery from third parties.  The

10   complaint alone mentions nearly 20 of them.

11       And so I do think it is unavoidable here that the

12   discovery process is going to be quite significant.

13       And the parties would benefit from some clarity at the

14   outscope as to whether the legal theory that underpins the

15   government's theory is even valid to begin with -- we don't

16   think it is.

17       And if it is, what the scope of the case would be.

18        HON. JULIEN X. NEALS:  Mr. Lasken.

19        MR. LASKEN:  Sure, your Honor.

20       I do want to say that I appreciate what I think was

21   Mr. Allen walking back from the position in the letters that we

22   shouldn't have a scheduling conference and get the various

23   orders entered.  Because that, to date, has been Apple's

24   position, is that we shouldn't even proceed to enter these

25   various orders.  Right?

1          We are at impasse on the CMO.  We agree.  We've worked

2   productively.  It has been several months.  There is nothing

3   more to do there, other than for us to come in front of the

4   Court and get guidance from the Court on how the Court wants to

5   schedule, how the Court wants those terms to look.

6          The various protocols Mr. Allen discussed, we've also

7   done a lot of work on those.

8          While I appreciate and agree with my colleague, I think

9   we are working productively on those things.  That is not going

10  to take much longer, if at all.  We could present those issues

11  to the Court very soon.

12         And so staying discovery pending a motion to dismiss for

13  that particular body of work -- which I agree, we should

14  complete and we should complete it now -- it doesn't jive with

15  where we are in that process.

16         We are basically done with that process subject to, of

17  course, coming in front of your Honors to resolve those issues

18  and get those orders done.

19           HON. JULIEN X. NEALS:  Thank you.

20         And I will give Judge Wettre the opportunity to address

21  Rule 16 and those types of conferences, when they will take

22  place.

23         I know what the Court would appreciate is another

24  briefing schedule, for one, outlining those tasks that are

25  outstanding that could be accomplished while the motion to

1    dismiss is, in fact, pending.  And also kind of outlining if

2    you see that there is any particular challenging discovery

3    issues or peculiar to this particular litigation, that you

4    anticipate may be types of things that have or need additional

5    types of attention.

6         Whether, in fact, discovery will be stayed pending the

7    motion to dismiss, we will likely make that determination once

8    we receive the motion.

9         But at the current status, as the case stands now, you

10   will hear from Judge Wettre separately with regard to Rule 16.

11        Judge Wettre, was there any questions you had for the

12   parties at this point?

13         HON. LEDA D. WETTRE:  No.  I will think about it.

14   Judge Neals and I will speak after this conference and

15   formulate our thoughts.

16        Then I will reach out to the parties about what I am

17   going to do about conducting a Rule 16 conference.  Okay?

18        And whether I will.

19         MR. LASKEN:  Your Honor, one thing I think we would

20   benefit from is some guidance from the Court on how long you

21   would like that process to take.

22        So, for example, as Your Honors may be aware, we agreed

23   to 60 days to respond to a pro se motion.  The government was

24   prepared to do that in seven.

25        Apple's view was we should wait until, I think, after

1    the entire motion to dismiss has been decided.

2        We feel that a lot of these things can be and are very

3    much ready to be presented.  And so I think we are going to

4    be -- I just want to flag the issue, that I think we're going

5    to be extremely far apart on how long it should take to

6    actually present them to the Court.

7        And so we would benefit from, I think, guidance from the

8    Court on that issue.

9            HON. LEDA D. WETTRE:  Mr. Lasken, what do you mean?

10           MR. LASKEN:  So, for example, I think -- we believe we

11   could present all of the issues on the CMO in ten days.  I

12   suspect, although I don't know --

13           HON. LEDA D. WETTRE:  You mean a joint discovery plan?

14           MR. LASKEN:  Correct, on the case management order

15   joint in ten days.

16           HON. LEDA D. WETTRE:  Okay.

17           MR. LASKEN:  I suspect, although I don't want to speak

18   for my colleague, Apple will say we need a much longer period

19   of time to do that.  And so I think that that is one of the

20   main sticking points between the parties, as Apple has told us

21   they are of the view that things should go very slowly.

22       And in part, they've told us they believe the Court

23   wants things to go slowly.  And that is a difficult position

24   for us to negotiate with because we don't know what is in the

25   Court's mind, obviously.

1          And so it is not really a dispute at some level with the

2    schedule over what we think the case needs versus what they

3    think it needs.  They think their...

4          HON. LEDA D. WETTRE:  Yeah.

5          MR. LASKEN:  They think their --

6          HON. LEDA D. WETTRE:  When I schedule a Rule 16

7    conference, it is a lot dependent on my own calendar, frankly,

8    and whether the parties have other obligations.

9          Then I will time a joint discovery plan to be submitted,

10   so that I can peruse it, probably in this case, about a week

11   before that conference.

12         So it will be more dependent if I am having a Rule 16

13   conference on my schedule than yours, frankly.

14         MR. LASKEN:  That's great.

15         Thank you, your Honor.

16         HON. JULIEN X. NEALS:  Counsel, to address the

17   elephant in the room -- or if it is not in the room, to drag

18   the elephant in the room -- although there is an exemption from

19   consolidation, what do you propose or see with regard to the

20   interplay with the MDL?

21         MR. LASKEN:  So, your Honor, we have not had a chance

22   to discuss that with Apple because right now -- again, we are

23   stuck at the threshold of Apple wants to slow our case down by

24   very significant amounts because it thinks that's the best way,

25   I think in part, to coordinate.

1          Although, there is a lot of different ways that this

2    could work, if Apple is able to speed up, there have been -- I

3    have been involved in cases where they, perhaps, reproduce all

4    of the materials and they are able to sit in on depositions.

5    Again, it wouldn't come from our deposition time.  Right?  But

6    they can join the depositions.

7          So there are opportunities, but the opportunities really

8    can't and shouldn't -- and this is what, I think it is 1407

9    says those opportunities should not be -- come about because

10   the government's case is slowed down.  They need to come about

11   because Apple makes the effort to speed itself up.

12         And so once we get past that, what I would call gating

13   or threshold issue, I think we could have conversations with

14   them.  And I suspect we would be able to agree to certain

15   things that will avoid duplication.  But for us that is really

16   a threshold issue.

17             MS. ALLON:  Your Honor, I can address that.

18         We have discussed this with the government.  And we have

19   emphasized to the government our view that the cases should be

20   coordinated.  After there is class leadership and the MDL moves

21   forward, to the extent there is discovery, discovery,

22   obviously, should be coordinated.  Witnesses don't want to be

23   deposed twice.  That would be an excess burden.  And so we have

24   flagged those issues for the government.

25         And so I think what will happen is there are some things

1  in the MDL that need to be worked out in terms of class

2  leadership so those cases can move forward.  And then the

3  parties should all work together from when discovery proceeds

4  to coordinate that discovery to minimize the burden to

5  everyone.

6         So that's certainly our intention.

7         And we have begun to flag those issues for the

8  government, as we discussed.

9         For example, a case management order, we have talked

10 about the need to coordinate that discovery.

11          HON. JULIEN X. NEALS:  Thank you, counsel.

12        Is there anything else, Mr. Lasken?

13          MR. LASKEN:  The only thing I would say, your Honor,

14 at risk of being repetitive is, again, my colleague flagged we

15 should wait for the MDL to get organized.  That is the exact

16 thing the statute says we don't do.  Right?

17        And so I think that we need to explore other ways.

18        I understand Apple has a desire to do this by making

19 this case go slowly, which is fine.  Like, that is their

20 prerogative.

21        But that is the one way we really can't do it.

22        And so until we could get over that hurdle, I think it

23 is going to be hard for us to have meaningful conversations

24 about how and what can be done, but I do believe there are

25 things that can be done.  We just need to get past that hurdle

1    of slowing the case down to make it work.

2         Thank you, your Honor.

3          MR. ALLEN:  Can I just add, your Honor?

4          HON. JULIEN X. NEALS:  Of course.

5          MR. ALLEN:  We are not trying to -- our proposals

6    about discovery in this case don't really relate to the MDL.

7          They relate to what is the most efficient, orderly way

8    to proceed in this case so I can test the premise that we are

9    relying on the MDL statute.

10         It is about what makes sense for this case in light of

11   the motion to dismiss we are going to file and will make the

12   most efficient case going forward.

13         I will say one added benefit of taking the approach we

14   propose, which is doing discovery after the motion to dismiss

15   is decided, if it will allow for the class leadership process

16   in the MDL to take place while that happens.  So that is an

17   ancillary benefit of it.  It's not the reason or the driving

18   force of it, your Honor.

19          HON. JULIEN X. NEALS:  Just to be clear, discovery,

20   there is a lot to discover.

21         It is whether you get to the point of taking

22   depositions.  Whether you get to the point of serving

23   interrogatories.  And searching computer files.

24         And part of the premise for the Court's purpose is to

25   know what productively can be done while the motion to dismiss

1    is pending and whether it is starting to check things off the

2    task list or other things that you have.

3         The overarching interest for the Court's purpose is that

4    there is going to be some productive time made of the time it

5    takes to decide the motions to dismiss.

6         MR. ALLEN:  Your Honor, I think that makes immanent

7    sense.  And so when we file with the Court that -- AT the

8    Court's request, the list of tasks that we think could get

9    done, we will give some creative thought to, okay, what else

10   can we do and what can we do to move the case along while the

11   motion to dismiss is pending.

12        We are certainly happy do that.

13        HON. JULIEN X. NEALS:  Just so you know from the

14   Court's perspective as well, the motion to dismiss, once filed,

15   will take some priority as far as my particular calendar is

16   concerned because the idea is going to be wanting to move this

17   case forward as expeditiously as possible.

18        And the hope is that there will be aspects of the MDL

19   that will have been organized to the degree that we can

20   coordinate the cases as much as possible because that is the

21   only thing that is going to make sense, candidly.

22        So we are going to be working very rationally and

23   practically from this standpoint.

24        Both sides are very learned, very experienced.  So we

25   are going to be expecting that counsel will be participating to

1    that degree to a large extent as well.

2        Mr. Lasken, you wanted to say something?

3        MR. LASKEN:  I just wanted to express my agreement

4    with everything that's being said.

5        I do think we're going to be able to work on this.  I

6    just think there is a threshold issue that we're identifying.

7        So, I do -- just don't want to be misunderstood as

8    saying we refused to coordinate or something like that.

9        I think that what we are trying to say is we need to

10   find a way to do it that allows us to get to expeditious

11   relief.

12       HON. JULIEN X. NEALS:  Okay.  To the degree of what

13   the Court has asked for today, we are going to do a text order.

14   So you don't have to rely on your notes necessarily.

15       We will spell it all out in the text order.  That will

16   probably be up before the end of the day as well.  That will

17   give you guidance in terms of what exactly we are going to be

18   expecting from the parties.

19       Was there anything else, Judge Wettre?

20       HON. LEDA D. WETTRE:  I can't think of anything.

21       HON. JULIEN X. NEALS:  Counsel, anything else?

22       Plaintiffs.

23       MR. LASKEN:  Nothing else from the United States.

24   Thank you, your Honor.

25       MR. PRIMIS:  Nothing for Apple, your Honor.

```
 1          HON. JULIEN X. NEALS:  Well, I thank you all.
 2          I also thank you for the assistance with injecting
 3  some of the case law in your letters as well.
 4          One thing to think about in terms of these
 5  technologies is whether you think, at some point in time, a
 6  tutorial or something along those lines would be something you
 7  think would be in the Court's best interest.
 8          You will know better how in-depth or the breadth of
 9  what that technology is, but just anticipate something along
10  those lines as well because the Court would be happy to
11  entertain that as well.
12          MR. LASKEN:  Yes, your Honor.  We can think about
13  that.
14          HON. JULIEN X. NEALS:  All right.  Thank you.
15          Thank you, all.
16          THE COURTROOM DEPUTY:  All rise.
17
18
19
20
21
22
23
24
25
```