

**U.S. Department of Justice**

Antitrust Division

*Liberty Square Building*
*450 5ᵗʰ Street, N.W.*
*Washington, DC 20530*

August 1, 2024

<u>**VIA ECF**</u>
Honorable Julien X. Neals, U.S.D.J.
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:     ***United States of America, et al. v. Apple Inc.,*** No. 2:24-cv-04055 (JXN-LDW)
          **Joint Letter Regarding July 17, 2024 Requests**

Dear Judge Neals and Judge Wettre:

        Plaintiffs and Defendant respectfully submit this joint letter pursuant to the Court's text order, ECF No. 79, and direction at the premotion conference to identify discovery related tasks that can be accomplished pending the Court's resolution of Apple's motion to dismiss and to identify any anticipated complex discovery issues. This letter identifies the parties' areas of agreement and disagreement, as well as related proposals.

**1.   Tasks That Can Be Accomplished While The Motion To Dismiss Is Pending**

        The parties met and conferred on a list of discovery-related "tasks" that could be accomplished while the Court considers Apple's motion to dismiss. The parties agree to serve their initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure by August 23. The parties were not able to reach agreement on the other items for such a list. As a result, each party sets forth below their respective positions regarding the tasks that they believe should be undertaken during the pendency of the motion to dismiss.

        **a.   Plaintiffs' Position**

        Plaintiffs propose that the parties complete the following tasks on the timeline set forth below while the motion to dismiss is pending:

- August 15: File Case Management Order (CMO) and Protective Order (PO)
- August 22: Begin document and written discovery
- August 28: File ESI Protocol and Source Code Protocol

1

- September 30, 2024 or before: 30(b)(6) deposition of Apple on data issues
- January 2, 2025: Begin other deposition discovery

This phased process, while slower than usual for a government antitrust case, will create efficiencies and meaningful progress while the motion to dismiss is pending. Plaintiffs submit that real progress will only occur if the Court imposes reasonable deadlines and allows the parties to begin document discovery. Court-ordered deadlines are necessary to incentivize Apple to participate expeditiously in the collaborative work the parties must undertake. This process will also preserve opportunities for coordination with the MDL without slowing this case down. For example, allowing document and written discovery now, while deferring depositions until January 2025, will let the MDL get organized without impeding discovery here. This will enable the parties to discuss ways to avoid duplicative depositions of senior Apple executives, the only concrete concern Apple identified, while moving this case forward. Plaintiffs remain willing to work with Apple to resolve other burden concerns it may have.

**August 15: File Case Management Order (CMO) and Protective Order (PO).** Completing the protracted negotiations for a CMO (i.e., joint discovery plan) and PO is critical to move this case forward. The parties have been negotiating these documents for nearly four months—far longer than required for such negotiations in Plaintiffs' experience. Despite these delays, CMO negotiations are complete, and the parties are at impasse. One final term remains at issue in the PO. To enter these orders, the Court will unfortunately be required to resolve significant disputes. For example, disputed terms in the CMO include: Apple seeks to serve 700 separate interrogatories on Plaintiffs but limit Plaintiffs to serving 35, while Plaintiffs propose 35 per side; Apple seeks to serve unlimited deposition subpoenas on third parties but tightly limit the number of Apple executives deposed, while Plaintiffs propose to cap fact depositions to 50 per side (party and nonparty); and Apple proposes to take more than two years to complete fact and expert discovery, while Plaintiffs believe this can be accomplished in less than 18 months. Apple's positions on these issues have not changed since May 10, 2024. Apple's desire to withhold these and other ripe disputes from the Court for another six weeks will not lead to more agreement, but it will introduce continued delay into an already prolonged process.

Apple's contention that more time will narrow disputes is inaccurate, because there are no disputes under discussion—Apple has submitted no compromise proposals for weeks. Last night, Apple wrote that it does "not understand why the Government is so eager to claim impasse. The CMO is not due to be submitted by the parties to the Court unless and until Magistrate Judge Wettre sets a deadline for doing so in connection with scheduling a Rule 16 conference." But the parties are already at impasse—nothing is under discussion. In the same email, Apple shared that it was working on unspecified "revisions to the proposed CMO" of which Plaintiffs were unaware. Any meaningful revisions would require Apple to reverse positions it has taken for months. Apple's desire to compromise in the face of a court filing only underscores that the parties' ability to collaborate will be aided by prompt, court-ordered deadlines that move the case forward.

**August 22: Begin document and written discovery.** The parties should begin document and written discovery. In Plaintiffs' experience, the length of the fact discovery period is driven primarily by the time it takes for the defendant (and some third parties) to complete their

productions. Any proposal that does not promptly begin document discovery will cause delay. Nor does beginning these tasks implicate MDL coordination or create party burdens beyond those of ordinary litigation, which are not appropriately deferred by the filing of a motion to dismiss. Beginning with document discovery will move the case forward efficiently in the face of ongoing harm to the public and save Apple the burden of preparing its executives for deposition while the motion is pending. Plaintiffs have offered to discuss with Apple practical ways to move forward with bilateral discovery such as prioritizing discovery from certain custodians and exchanging preliminary witness lists at an early time to narrow the fact witnesses at issue. Apple rejected these solutions and refuses to discuss discovery phasing mechanisms, standing on its view that all discovery should be stayed in an effort to draw out this process.

Apple's proposal made at the July 17 hearing to limit the scope of Plaintiffs' discovery (if permitted to go forward at all) to specific cross platform technologies would be inefficient, increase the burden on the Court and the parties, and ignore the nature of Plaintiffs' allegations. This case is about Apple's anticompetitive behavior that has undermined smartphone innovation using App Review and private APIs, among other tools, and the discovery will likely reflect that. Relevant documents may relate to multiple technologies, and Apple will have to review them to determine whether a document is responsive to a production request or not. It may even seek to exclude them as not sufficiently within those requests. The parties' disagreement about what constitutes a relevant document could lead to further disputes that will require Court involvement. Apple's suggestion that all discovery can be structured in this way is further belied by its own planned discovery: Apple has stated that it plans to serve discovery on Plaintiffs to get information about why government entities choose smartphones not smartwatches, wallets, or apps.

Apple has informed Plaintiffs that it believes "there are significant disagreements between the parties about whether certain allegations in the complaint meet federal pleading requirements and therefore whether certain products and services are appropriately subject to discovery." Plaintiffs do not understand this dispute, and Apple has provided no clarity in meet and confers. Plaintiffs are unaware of a federal pleading requirement that individual *allegations* must meet. Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure set forth a pleading standard for claims, not piecemeal parts of claims. Nor is a complaint required to identify every fact that will be proven at trial, let alone every fact on which discovery may be sought.

**August 28: File ESI Protocol and Source Code Protocol.** The parties have been negotiating the ESI protocol and the Source Code Protocol for months. These protocols are not necessary to begin discovery, and some progress can be made in a final meet and confer. Appropriate progress on these protocols will only happen in a timely manner, however, if the Court imposes reasonable deadlines such as those proposed by Plaintiffs.

**On or Before September 30, 2024: 30(b)(6) deposition of Apple on data issues.** To negotiate a targeted production of Apple's data, Plaintiffs propose taking a 30(b)(6) deposition by September 30, 2024 (and sooner if Apple is available). This deposition will facilitate the production of data and decrease the burden on Apple.

**January 2, 2025: All other 30(b)(6) and fact depositions to begin.** Plaintiffs propose that other depositions begin after January 2, 2025, which will allow for over four months of

document discovery.  Deferring depositions will allow time for the MDL to organize, enabling meaningful discussions on coordination to avoid duplicative depositions of Apple executives.

**Coordination of Discovery with the MDL.**  Although the MDL statute does not apply "to any action in which the United States or a State is a complainant arising under the antitrust laws," 18 U.S.C. § 1407(g), Plaintiffs agree that practical discussions around MDL coordination may create efficiency for the Court and avoid certain burdens on Apple.  But those benefits must be achieved without delaying this case: "[T]he legislative history of the Multidistrict Litigation Act shows that Congress exempted federal antitrust enforcement actions from MDL treatment to avoid the delays that might be caused by consolidation with private suits." *United States v. Google*, 661 F. Supp. 3d 480, 488 (E.D. Va. 2023).  Practicality and targeted solutions are important given the significant differences between a government enforcement action and private class cases.  Apple has not identified specific burdens it wants addressed through coordination, but it does want to force this case into the same schedule as the MDL.  That approach is statutorily barred and inefficient.  The private actions are not ready for coordination and will face substantive and procedural hurdles—appointment of interim class counsel, filing of consolidated complaints, class certification proceedings, and discovery and expert work relating to damages—that do not apply here.  Placing the government action on a similar timeline to the MDL will therefore create the delays that Congress sought to avoid.  *See Google*, 661 F. Supp. 3d at 488 ("Congress prioritized concerns about [avoiding] delay of government antitrust suits above the goals of efficiency and judicial economy.") (citing *United States v. Dentsply*, 190 F.R.D. 140, 145 (D. Del. 1999)).  Plaintiffs remain available to collaborate on practical measures with Apple.

**Apple's Discovery Obligations Should Not Be Stayed.**  Apple has no basis to seek a full stay of its own discovery obligations, which would undermine the Congressional directive to prioritize government enforcement actions to eliminate ongoing harms to consumers and businesses.  *See* Plaintiffs' Letter, Dkt. 64, pp. 1-2 (citing *Dentsply*, 190 F.R.D. at 145; *Google*, 661 F. Supp. 3d at 490, and *United States v. Agri Stats, Inc.*, 2024 WL 3061570, at *5 (D. Minn. May 17, 2024)).  Those harms are particularly significant here, impacting hundreds of millions of American consumers and many businesses throughout the economy.

To determine whether a stay is appropriate, "the Court is asked to balance the burden of a stay on [Defendant] with the Congressional imperative to act quickly in antitrust enforcement where the United States is a plaintiff." *Agri Stats*, 2024 WL 3061570, at *5.  The need to swiftly end Apple's ongoing violation is not outweighed by the cost to Apple of several months of discovery.  Apple also fails to show harm because it has not demonstrated "a clear case of hardship or inequity in being required to go forward" with discovery. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 255 (1936); *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139-140 (3d Cir. 2004).  "[R]outine costs of litigation, without more, do not constitute a particular hardship." *Cammie's Spectacular Salon v. Mid-Century Ins. Co.*, 2022 WL 488945, at *2 (D.N.J. Feb. 17, 2022); *Akishev v. Kapustin*, 23 F.Supp.3d 440, 448 (D.N.J. 2014).

Nor can Apple show that its motion to dismiss will produce a "clear and unmistakable result" that will simplify or eliminate issues in the case as is required to stay the case. *Maher Terminals v. Port Authority of New York and New Jersey*, No. 12-6090, 2013 WL 2253532, at *3 (D.N.J. May 22, 2013); *United States v. Pechiney Plastic Packaging*, No. 09-5692, 2013 WL 3336792, at *4 (D.N.J. July 2, 2013); *Chamales Corp. v. Oki Data, America, Inc.*, 247 F.R.D. 453, 454, (D.N.J. 2007) (stay denied pending resolution of defendants' summary judgment motion where the court's review of motion did not establish a clear and unmistakable result or that only one result could be reached). Apple primarily asks this Court to dismiss Plaintiffs' claims by extending *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), and *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009), well beyond their reach. These cases apply to a rare form of antitrust claim that seeks to force a monopolist to cooperate, rather than compete, with its direct competitors (often by sharing infrastructure or technology). Plaintiffs are not asserting such a claim. Plaintiffs do not seek to force Apple to share its physical technologies or operating system with smartphone rivals. Recognizing this, Apple asks the Court to extend refusal-to-deal-with-rivals law to dealings with any third party, but "[w]e have never extended a refusal-to-deal-*with-rivals* analysis outside that situation." *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1173 (10th Cir. 2023) (emphasis added). Further, Apple must inappropriately rewrite the complaint and create factual disputes to make its argument. Finally, even if the Court were to adopt Apple's novel reading of the law, the complaint alleges the facts necessary to state a refusal to deal claim, so dismissal is unwarranted.

*Actelion Pharmaceuticals v. Apotex Inc.*, 2013 WL 5524078 (D.N.J. Sept. 6, 2013), the primary case Apple relied upon in its letter seeking a discovery stay, is inapposite. *Actelion* was a declaratory judgment action involving few contested facts, which strongly supported a stay. This case involves many contested facts. And if *Actelion* is read to support a discovery stay in any case where a motion to dismiss is "without foundation in law" as Apple suggests, *Actelion* would conflict with multiple in-district cases like *Chamales* and *Maher Terminals*, which require a showing of a "clear and unmistakable" result for the motion to dismiss to support a stay.

The United States and Plaintiff States are entitled to prosecute this action to an efficient resolution in order bring an end to Apple's ongoing violation that harms hundreds of millions of American consumers and businesses. Delaying that prosecution is contrary to congressional intent, applicable case law, and general principles of litigation efficiency embodied in the Federal Rules and this Court's local rules. Plaintiffs look forward to working collaboratively with Apple to litigate this case in a timely manner. That process will be greatly aided by the Court imposing the reasonable deadlines and phasing proposed by Plaintiffs.

### b.  Defendant's Position

At the pre-motion conference held on July 17, 2024, the Court instructed the parties to outline the "tasks that are outstanding that could be accomplished while the motion to dismiss is, in fact, pending." 7/17/2024 Hr'g Tr. at 31:23–32:5; *see also* ECF No. 79 (ordering the parties to file a joint letter outlining "discovery related 'tasks' that can be accomplished pending the Court's resolution of the proposed motion to dismiss"). Consistent with the Court's directives during and following the July 17 pre-motion conference, Apple respectfully submits that the following tasks

would be appropriate for the parties to undertake while the motion to dismiss is pending, in addition to serving initial disclosures by August 23 as the parties have agreed:

- **Case Management Order.** The parties can conclude their negotiations over the proposed Case Management Order and either reach agreement or submit letter briefs to the Court on any remaining disagreements. Apple disagrees with the Government's claim that the parties are at impasse in these negotiations. The parties have been negotiating productively and have narrowed their disagreements but have not yet reached full agreement or impasse. For example, while the Government believes Apple is seeking to serve "700 separate interrogatories," Apple is simply seeking to preserve its right under the Federal Rules to take individualized discovery of each of the 21 named plaintiffs in this case. That is a disagreement that presumably can be resolved. Apple believes that additional areas of disagreement could be resolved once the Court provides guidance on what discovery-related "tasks" the parties should complete during the pendency of the motion to dismiss, and it looks forward to working with the Government to reach agreement on as many issues as possible. This can be completed by mid-September. (Although the Government quotes a recent email from Apple in which it noted that the parties currently had no deadline for completing CMO negotiations because no Rule 16 Conference has yet been set, the Government selectively omitted the three sentences that followed the text it chose to quote. Apple also wrote: "Because the Court has not set such a conference, the parties have time to continue working together to narrow areas of disagreement and lessen burdens on the Court. In all events, we have proposed that the parties aim to complete their CMO negotiations by mid-September. We have some revisions to the proposed CMO, which we are currently working on and will get to the Government.").

- **Protective Order.** The parties can conclude their negotiations over the Protective Order and either reach agreement or submit letter briefs to the Court on any remaining disagreements. The parties have begun negotiating the Protective Order, and, contrary to the Government's claim, the parties have more than "[o]ne final term" to discuss. Indeed, Apple only received the Government's most-recent proposed Protective Order on July 25, and even that version was incomplete as it did not include proposals relating to important data-security matters on which the Government says it is continuing to deliberate. Apple expects that, during the pendency of the motion to dismiss, the parties will be able to continue their negotiations and eliminate or substantially narrow any remaining disagreements. This can be completed by mid-September.

- **ESI Protocol.** The parties can conclude their negotiations over the ESI Protocol and either reach agreement or submit letter briefs to the Court on any remaining disagreements. The parties have begun negotiating an ESI Protocol, and Apple expects that, during the pendency of the motion to dismiss, the parties will be able to eliminate or substantially narrow any remaining disagreements. This can be completed by mid-September.

- **Source Code Protocol.** Given the highly proprietary nature of Apple's source code and information regarding unannounced products, Apple requires certain detailed protections for this information. The parties can conclude their negotiations over a protocol for reviewing source code and either reach agreement or submit letter briefs to the Court on any remaining disagreements. While the parties have begun negotiating a Source Code Protocol, those negotiations remain ongoing. Indeed, Apple did not receive the Government's draft of the protocol until July 22. Apple expects that, during the pendency of the motion to dismiss, the

parties will be able to eliminate or substantially narrow any remaining disagreements.  This can be completed by mid-September.

- ***MDL Coordination.***  The parties can exchange proposals about how to best coordinate discovery in this case with the private actions in *In re Apple Inc. Smartphone Antitrust Litigation*, MDL No. 3113.  These proposals could address topics such as the coordination of appropriate document custodians, search terms, document review protocols, depositions, and other discovery-related items.  Apple thinks it would be efficient and productive to include the private plaintiffs in their negotiations over MDL coordination once the MDL leadership is determined.

- ***Requests for Production.***  The parties can serve their first sets of document requests, so that the parties can prepare for document collections, reviews, and productions, if any are required.  The parties should defer serving responses and objections to the requests until after the motion to dismiss is resolved, because the Court's order could moot many—or all—of the parties' potential disputes over the requests and the Court's ruling will give the parties important guidance over the proper scope of document discovery.  The parties should similarly defer document productions until after the motion to dismiss is resolved.

*      *      *

Rather than a list of focused tasks, the Government effectively proposes that the parties proceed with full-bore discovery while the motion to dismiss is pending, including by setting forth a detailed and unrealistic set of specific deadlines that would be more appropriately discussed in connection with a Rule 16 Conference undertaken at the appropriate time.  For example, the Government proposes that the parties proceed with full written discovery, including serving and responding to requests for production, interrogatories, and requests for admission.  The Government proposes that the parties commence almost immediately with potentially unnecessary and burdensome document productions.  The Government proposes that an Apple representative sit for a Rule 30(b)(6) deposition "concerning Apple's data," without explaining what "data" the deposition would concern.  And the Government proposes that the parties proceed with fact depositions in just a few months, presumably based on the unrealistic expectation that document discovery (including party and non-party discovery) can be completed between now and early January.

These items are not discrete "discovery related 'tasks'" that can be accomplished while the motion to dismiss is pending.  Rather, they reflect the Government's desire to immediately commence general discovery in this case without any meaningful limitation.  For reasons explained in Apple's July 1, 2024 submission (ECF No. 67), and as discussed with the Court at the July 17 conference, Apple does not believe that proceeding with such significant discovery is the most efficient way to proceed.  Apple's motion to dismiss sets forth important threshold legal issues.  The Court's resolution of those issues will either completely obviate the need for discovery or at the very least provide the parties with important guidance about the proper scope of discovery.  For example, Apple contends that all of the Government's claims are barred by the Supreme Court's decisions in *Trinko* and *linkLine*, ECF No. 42 at 1–2, and if the Court agrees, the case will be dismissed in its entirety.  Similarly, there are significant disagreements between the parties about whether certain allegations in the complaint meet federal pleading requirements and

7

therefore whether certain products and services are appropriately subject to discovery. The Court's resolution of those disagreements in the context of deciding Apple's motion will provide significant guidance that will streamline and economize discovery efforts.

Proceeding with the Government's proposal now, in contrast, would introduce the very inefficiencies and burdens that Apple's proposal seeks to avoid. Commencing full-blown document discovery and written discovery would impose substantial costs and burdens that might be entirely unnecessary. Starting such significant discovery now, moreover, would very likely trigger immediate disputes over the proper scope of the case, including disputes over what Apple products and services are fair game. The Government's proposal confirms just how burdensome and unbounded document discovery threatens to be, as the Government proposes now (and also made clear during the July 17 hearing, Tr. at 18:13–21) that it will seek production of documents relating to potentially dozens of Apple products and services without meaningful limitation. That is not a proposal for "phased" or "bilateral" discovery, as the Government now submits. Also, it makes little sense to proceed with fact depositions or to conduct a Rule 30(b)(6) deposition on "data" issues, without this Court's decision on the scope of the case and guidance as to what issues and topics are most relevant.

In short, given the case-dispositive arguments raised by Apple's motion to dismiss, interests of litigation efficiency and judicial economy counsel in favor of a more deliberate and measured approach than what the Government envisions. While the Court is considering Apple's legal challenges to the complaint, the parties should focus on the tasks Apple has outlined above, which will ensure that the case is well-positioned to proceed efficiently if Apple's motion to dismiss is denied. Additional discovery should be deferred while the motion is pending. That brief deferral does not unduly prejudice the Government, which already has access to the substantial discovery it obtained during its four-year investigation. It also avoids costly and burdensome other discovery (including on dozens of third parties) that might well be unnecessary, and it ensures that any future discovery efforts are focused on the issues the Court deems relevant.[1]

Proceeding in the manner Apple proposes is consistent with statutory provisions exempting governmental enforcement actions from the MDL statute or with other congressional policy preferences. Congress left federal courts with significant discretion to appropriately structure antitrust matters—including cases involving the Government—in a manner that most efficiently utilizes the parties' and the Court's resources, and that yields the most sensible process over the course of the entire case. Here, for reasons Apple has explained, those interests are best served by (1) undertaking now the discrete discovery-related tasks Apple has proposed; and (2) not commencing further discovery until the parties have clarity as to whether this case will proceed at all and, if so, in what fashion. Indeed, it was precisely for this reason that the court overseeing the FTC's recent antitrust action against Meta in the United States District Court for the District of

---

[1] Nor is there any "overwhelming and ongoing harm to the public," as the Government claims. As Apple explained in its July 1, 2024 submission (ECF No. 67), many of the practices the Government challenges are no longer in effect, and even those that are present no ongoing harm. And with the Government having taken four years before initiating this action, there is no basis for claiming that delaying discovery for a short period pending the resolution of Apple's motion to dismiss poses any meaningful prejudice.

Columbia stayed all discovery pending the Court's resolution of Meta's motion to dismiss.  Minute Order, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C. May 11, 2021); *see also Actelion Pharms. Ltd. v. Apotex Inc.*, 2013 WL 5524078, at *3 (D.N.J. Sept. 6, 2013) ("[T]he appropriate standard considers whether the pending dispositive motion 'does not appear to be without foundation in law.' . . . [I]f there is no such showing, then the filing of a dispositive motion may favor the issuance of a stay where, as here, the Court finds that resolution of the dispositive motion may 'narrow[ ]' or 'outright eliminat[e]' the need for discovery." (citation omitted)).

None of the cases the Government cites warrant discovery starting now, before a Rule 16 conference and before a decision on Apple's motion to dismiss.  Tellingly, the Government continues to rely on one inapposite out-of-jurisdiction decision, *see* ECF No. 67 at 6 n.3, and other cases that do not apply to the circumstances here.  Unlike the cases cited by the Government, this Court is faced with (i) a motion to dismiss the entire case in light of the fundamental legal deficiencies with the Government's claims; (ii) the prospect of highly burdensome party and non-party discovery; and (iii) an alternative way to proceed, which would involve accomplishing discrete discovery related tasks while the balance of discovery is delayed pending resolution of the motion to dismiss.  For all of these reasons, the parties should undertake the discovery-related tasks that Apple identifies above, but further discovery should be stayed pending resolution of Apple's motion to dismiss.

## 2.  Anticipated Complex Discovery Issues.

During the July 17 pre-motion conference, the Court asked the parties to describe "any particularly challenging discovery issues" that they anticipate "may be the types of things that have or need additional types of attention."  7/17/2024 Hr'g Tr. at 32:1-5.  The parties note they have differing views about the extent to which the issues below are appropriately described as "complex" or the extent to which they present issues that differ from other large antitrust cases.  That said the parties have set aside those disagreements for purposes of this submission without prejudice to any future arguments either side may make.  The parties list the following issues as ones that either side views as potentially posing a challenging discovery issue in this matter that might require additional attention:

- **MDL Coordination.**  Dozens of "follow on" actions were filed after this case was filed and were consolidated into an MDL.  Finding opportunities to coordinate and ensure efficiency with the MDL in light of 28 U.S.C. § 1407(g) is a potentially complex issue.

- **Federal & State Entity Discovery.**  Which Federal and State entities may be considered parties to this case—and are therefore subject to party discovery and preservation obligations—is an issue the Court may need to resolve.

- **Data Productions.**  Data productions in antitrust cases can present complex issues given the significant volume of data typically requested and produced.

- **Scope of Third-Party Discovery.**  The volume of third parties implicated in this case may be larger than some other antitrust cases.  As a result, the scope of discovery from third parties and confidentiality issues as to third parties may be a significant issue.

- **Scope of Discovery.**

a. **Defendant's Position**

In addition to the above, Apple believes that the scope of Apple products and/or services that are properly subject to discovery could be a disputed issue that will require the Court's attention. Although the Amended Complaint focuses on five specific Apple products/services, it also mentions a dozen other Apple products/services, without explaining in adequate detail why those products/services are relevant or properly included in this litigation. Apple does not believe that discovery into those irrelevant products/services is appropriate.

b. **Plaintiffs' Position**

Plaintiffs understand that Apple intends to ask the Court to parse the complaint and deny Plaintiffs' discovery on individual allegations. It would be inappropriate to narrow discovery in this way. Information is generally discoverable if it is not privileged, "relevant to any parties claim or defense," and proportional to case needs. Fed. R. Civ. P. 26(b). Complaints merely serve to put defendants on notice of the claim's factual basis and are not required to—and as a practical matter cannot—state every fact that will be proven at trial or learned in discovery, let alone plead those facts in detail. *See* Fed. R. Civ. P. 8, 26(b). To the extent Apple finds Plaintiffs' requests burdensome when served, Plaintiffs will work with Apple in the traditional manner to address its concerns by negotiating specific items like custodians and search terms. And as to overall discovery scoping in this case, Apple has repeatedly rejected traditional and creative means to limit discovery such as early exchanges of witness lists to narrow the Apple executives and third parties at issue, limits on overall deposition subpoenas, and a 30(b)(6) deposition to learn what data Apple has and how it is kept to allow for targeted data requests, among others. These traditional mechanisms of discovery scoping are more than adequate in antitrust matters and will prove adequate in this one, once Apple is incentivized to participate in collaborative discussions around this issue. If the Court were to adopt Apple's preferred scoping mechanism, discovery would be more complex than is necessary and there would be additional disputes that the Court would need to resolve for the reasons described in Part 1 of this letter.

Respectfully submitted,

/s/ Jonathan H. Lasken
Jonathan H. Lasken
Assistant Chief, Civil Conduct Task Force
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Telephone: (202) 598-6517
Email: jonathan.lasken@usdoj.gov

PHILIP R. SELLINGER
United States Attorney

/s/ J. Andrew Ruymann
J. Andrew Ruymann
Assistant United States Attorney
U.S. Attorney's Office
402 East State Street, Room 430
Trenton, NJ 08608
Telephone: (609) 989-0563
Email: John.Ruymann@usdoj.gov

MATTHEW J. PLATKIN
Attorney General of New Jersey

/s/ Isabella R. Pitt
Isabella R. Pitt (NJ Bar No. 071002013)
Deputy Attorney General
Assistant Section Chief of Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Telephone: (973) 648-3070
Isabella.Pitt@law.njoag.gov

*Attorney for Plaintiff State of New Jersey,
Arizona, California, Washington D.C.,
Connecticut, Indiana, Maine,
Massachusetts, Michigan, Minnesota,
Nevada, New Hampshire, New York, North
Dakota, Oklahoma, Oregon, Tennessee,
Vermont, Washington, and Wisconsin*

/s/ Liza M. Walsh
Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Email: lwalsh@walsh.law
Email: darpert@walsh.law

/s/ Craig S. Primis
Craig S. Primis, P.C.
Winn Allen, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
Email: winn.allen@kirkland.com

/s/ Devora W. Allon
Devora W. Allon, P.C.
Alexia R. Brancato
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Email: devora.allon@kirkland.com

*Attorneys for Defendant Apple Inc.*

PHILIP R. SELLINGER
United States Attorney

BY: JONATHAN LASKEN
Assistant Chief
Civil Conduct Task Force
United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 8600
Washington, DC 20530
*Attorney for Plaintiff United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA et al., <br><br> *Plaintiff*, <br><br> v. <br><br> APPLE INC. <br><br> *Defendants*. | Case No. 2:24-cv-04055-JXN-LDW |

**CERTIFICATE OF SERVICE**

I hereby certify that the above letter and this Certificate of Service were served upon defendant's counsel, Liza M. Walsh, Esq., Craig S. Primis, Esq., Devora W. Allen, Esq., and K. Winn Allen, Esq., 1301 Pennsylvania Avenue, NW, Washington, D.C., 20004, by CM/ECF on August 1, 2024.

BY: *s/ Jonathan H. Lasken*
Jonathan H. Lasken
Assistant Chief
Civil Conduct Task force
United States Department of Justice
Antitrust Division
*Attorney for Plaintiff United States*