# Vinson&Elkins

Matthew R. Friedenberg  mfriedenberg@velaw.com
**Tel** +1.212.237.0067  **Fax** +1.917.849.5385

September 27, 2024

**VIA ECF**

Honorable Leda D. Wettre
United States Magistrate Judge
USDC District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

    Re:    *United States, et al. v. Apple Inc*., Case No. 2:24-cv-04055 (JXN-LDW)
           Non-Party Samsung Electronics America, Inc.'s Response to Joint Letter re
           Disputes Over the Protective Order (ECF 117)

Dear Judge Wettre:

    I write on behalf of non-party Samsung Electronics America, Inc. ("Samsung") in response to the proposed Protective Orders recently submitted by the parties to this action, both of which omit standard confidentiality protections for information provided by non-parties who, like Samsung, directly compete with Apple. (ECF Nos. 117, 117-1 & 117-2). Unquestionably, the parties will seek competitively sensitive documents and testimony from Samsung (and other non-parties), and Samsung makes this submission to provide the Court with a revised proposed protective order that will adequately protect its confidentiality interests.

    *First*, neither party's proposal allows non-parties to provide Highly Confidential Information on a true "outside counsel only" basis; instead, both proposals would expose even the most competitively-sensitive non-party materials to an evolving four-person roster of Apple's in-house counsel, based only on Apple's unsupported and heavily-caveated representation that those individuals are "not involved in business decisions." (*See* ECF Nos. 117-2 (Apple's proposal) at ¶ 22(e); 117-1 (Plaintiffs' proposal) at ¶ 21(e)). *Second*, Apple's proposal would go even further by exposing a non-party's Confidential Information to *any Apple officer, director or employee* whenever Apple unilaterally deems such disclosure "reasonably necessary." (ECF No. 117-2 at ¶ 21(f)).

    Such expansive disclosure of non-party materials is extraordinary and improper in a modern federal antitrust case, particularly when Apple has specifically identified its competition with Samsung and other non-parties as a central fact issue and subject of discovery. *See FTC v. Advoc. Health Care Network*, 162 F. Supp. 3d 666, 670 (N.D. Ill. 2016) (recognizing in a government-initiated antitrust action that the "risk" of "inadvertent disclosure" of confidential information "is not one that a nonparty ought to be forced to take where the party seeking the information is its foremost competitor"). Instead, courts in these cases have consistently adopted a two-tiered confidentiality structure that: (1) restricts the disclosure

**V&E**

of Highly Confidential Information to the defendant's outside counsel, and (2) restricts the disclosure of Confidential Information to the defendant's outside counsel and a limited set of in-house counsel with litigation responsibilities. These restrictions minimize the risk that such materials will be used as a basis for competitive decision-making, while fully preserving the defendant's access to the materials for legitimate litigation purposes.

Indeed, these are exactly the same confidentiality protections that *Apple itself* has requested when it is an important non-party in antitrust cases involving one of its competitors. For example, in DOJ's ongoing antitrust litigation against Google regarding online search services (arguably the most recent analog to this case), Apple successfully urged the Honorable Amit P. Mehta to reject the very same loose disclosure regime it now proposes here, including provisions that would have allowed Google to share Highly Confidential non-party materials with certain of its in-house counsel. *See, e.g.,* **Exhibit A** (*United States, et al., v. Google LLC*, Case No. 1:20-cv-03010-APM (D.D.C.) (the "Google Search Case"), ECF No. 47 (Non-Party Apple Inc.'s Position Statement on Protective Order)); **Exhibit B** (Google Search Case Protective Order, ECF Nos. 98 & 286).

Apple cannot have it both ways, to the competitive disadvantage of its rivals like Samsung. Just as Apple argued successfully in the Google Search Case, this Court should reject expansive disclosure of confidential non-party materials and adopt the standard two-tier confidentiality structure routinely used in federal antitrust cases. These changes can be implemented easily by following the simple framework that courts across the country—and Apple, until now—have long heralded as reasonable: limit disclosure of Highly Confidential Information to Apple's outside counsel (*see* Section 1, *infra*); and allow disclosure of Confidential Information to a limited set of in-house counsel only (*see* Section 2, *infra*).[1] In addition, Apple should not be allowed to disclose Highly Confidential non-party discovery materials to deponents or witnesses who are not authors or recipients of documents merely because it contends that individual had some undefined "involvement or responsibilities regarding" the Highly Confidential Information (*see* Section 3, *infra*).

Samsung's proposals to effect these changes are attached as **Exhibit C** (Samsung's Redline to Apple's Proposed Protective Order at ECF No. 117-2) and **Exhibit D** (Clean Version of Samsung's Proposed Revised Protective Order).

1. **As Apple Insists When It Is A Non-Party, and As Is Routine In Similar Antitrust Litigation, A Non-Party's Highly Confidential Materials Should Not Be Disclosed to A Direct Competitor Party's In-House Counsel**

Apple's proposed Protective Order would allow four as-yet unidentified in-house counsel to review all Highly Confidential non-party materials in this action, based solely on Apple's unilateral and unsupported representation that those counsel are "not involved in business decisions."[2] ECF No. 117-2 at 16-17, ¶ 22(e). Apple makes no attempt to define this phrase, other than to say that it *does not* preclude

---

[1] For the Court's convenience, Samsung has submitted its proposed modifications as a redline to Apple's proposed Protective Order (ECF No. 117-2). Samsung does not take a position on any other provisions of Apple's proposal or on any the disputes between the parties unrelated to the non-party confidentiality issues specifically addressed in this letter.

[2] In this regard, Apple's proposal provides even less protection to non-parties than the Google proposal Apple successfully opposed in the Google Search Case, which would have required Google to provide affidavits substantiating that each proposed in-house counsel had no involvement in competitive decision-making. As Apple argued in that case, even such affidavits are insufficient to address the risk of inadvertent competitive harm to third parties. Exhibit A at 3.

Apple from designating any in-house counsel who advises non-legal employees on "litigation, compliance, regulatory, or liability issues related to business decisions"—a vague and expansive exception that renders the limitation effectively meaningless. *Id*. at ¶ 22(e). This simply does not suffice. The question of whether allowing a party's in-house counsel access to a non-party's Highly Confidential Information would pose an unacceptably high risk of improper disclosure is "an inevitably complex inquiry." *Advoc. Health Care Network*, 162 F. Supp. 3d at 669. Apple's surface-level representation that its designees are "not involved in business decisions" puts form over substance and falls far short of what other courts have required. *See id*. ("[M]erely insisting that one is not 'involved in competitive decision-making' cannot pretermit inquiry into the underling facts or serve as a shibboleth the mere invocation of which permits access to Highly Confidential information.").

Moreover, Apple says it should be able to change its roster of four in-house counsel at any time, with only five business days' notice to Plaintiffs, and no notice at all to non-parties. *See* ECF No. 117-2 at ¶ 22(e). While Plaintiffs' proposal features only a single confidentiality tier for Confidential Information—drawing no distinction between Confidential Information and Highly Confidential Information—it permits disclosure of such information to Apple's in-house counsel on the same terms proposed by Apple. *See* ECF No. 117-1 at 13, ¶ 21(e). Plaintiffs alternatively submit that "[i]f the Court is inclined to establish two tiers, then the Highly Confidential designation should impose even greater restrictions, limiting disclosure to outside counsel only." ECF No. 117 at 8. Samsung agrees with this latter position.

Apple already has made clear that it will attempt to make its competition with Samsung in the alleged relevant markets a core fact issue in this case. *See* ECF No. 86-1 (Apple's Memorandum in support of Motion to Dismiss) at 1, 3-5, 36 (asserting that there is a "fiercely competitive smartphone market"; that "Apple competes against global behemoths like…Samsung (the global leader in smartphone sales)"; that "Apple faces robust competition from other smartphone manufacturers around the world, including Google and Samsung"; and that "Google and Samsung are powerful competitors to Apple."). Inevitably, Apple is expected to seek discovery of Samsung's competitively-sensitive information, including information about Samsung's past, current, and future strategies, product roadmaps, and negotiations with other industry participants that could be used by Apple as a basis for business decisions that result in competitive harm to Samsung. *See United States v. Aetna Inc*., Case No. 1:16-cv-01494 (JDB), 2016 WL 8738420, at *6 (D.D.C. Sept. 5, 2016) (noting that information about rates negotiated with Defendant's competitors, projections, or cost and profitability data "could provide the Defendants with a significant advantage in future negotiations with these [non-parties]").

Parties that litigate against their competitors must, as a practical "necessity," bear the "risk" that the other side's in-house counsel could inadvertently disclose or misuse competitively sensitive information produced during litigation, potentially harming the producing party. *Advoc. Health Care Network*, 162 F. Supp. 3d at 670. But that risk "is not one that a nonparty ought to be forced to take"—especially "where the party seeking the information is its foremost competitor." *Id*. In the "fiercely competitive" U.S. smartphone and performance smartphone markets, Apple *is* non-party Samsung's foremost competitor. ECF No. 86-1 at 36.

In fashioning a Protective Order, courts should "preclude access to information to anyone who was positioned to advise the client as to business decisions that the client would make regarding, for example, pricing, marketing, or design issues when that party granted access has seen how a competitor has made those decisions." *FTC v. Whole Foods Mkt., Inc*., Civil Action No. 07-1021 (PLF), 2007 WL 2059741,

V&E

at *2 (D.D.C. July 6, 2007). As Apple itself argued in the Google Search Case, here "[t]here is substantial risk that it would be impossible for [Apple's] in-house counsel to disentangle their duty to provide zealous legal advice" from the confidential information they learned about Samsung's business. Exhibit A at 4-5; *see also FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."). This risk is only compounded in this case by Apple's insistence that in-house counsel be permitted to view non-party Highly Confidential materials even if they advise on "issues related to business decisions." ECF No. 117-2 at ¶ 22(e). These facts yield an "unacceptably high risk of either utilization or inadvertent disclosure to the severe detriment of a non-party; and, at a minimum," rendering it "incumbent on the Defendant to provide an extraordinary detailing of the circumstances warranting disclosure and an explanation of why reliance on the representations and opinions of outside counsel would not be adequate." Exhibit A at 5 (quoting *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 161-62 (D. Del. 1999)) (internal quotations and punctuation omitted). Apple has not and cannot do so.

This reality—that an in-house lawyer is a mere human being, incapable of storing competitors' Highly Confidential Information in a separate part of the brain that is walled-off from the one employed in the performance of counsel's other work duties—is why courts routinely deny a party's in-house counsel access to non-party highly confidential information, not only when they lack involvement in business decisions, but when they report to or advise business decision-makers. *See, e.g.*, *Aetna*, 2016 WL 8738420, at *5 (denying Defendants' motion to modify protective order and allow four in-house counsel that were ostensibly uninvolved with competitive decision-making to view nonparties competitors' confidential information because "information, once learned, is impossible to forget"); *Exxon*, 636 F.2d at 1350 (denying access to in-house counsel because "their continuing employment often intimately involves them in the management and operation of the corporation of which they are a part"); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (denying access to an in-house lawyer who reported to a vice president with a competitive decision-making role). Accordingly, as Apple observed in the Google Search Case, countless "courts have adopted such a two-tier confidentiality system, in which in-house counsel of defendants could not access information marked in a higher confidentiality tier." Exhibit A at 5; *see also* Protective Order at ¶ A(1)(g)(i), *United States v. Sabre Corp.*, No. 19-cv-1548 (D. Del. Sept. 10, 2019), ECF No. 24; Protective Order at ¶ 4, *FTC v. Vyera Pharms.*, No. 20-cv-00706, ECF No. 92 (S.D.N.Y. Apr. 20, 2020) Protective Order at ¶ E(2), *New York v. Deutsche Telekom AG*, No. 19-cv-05434 (S.D.N.Y. Aug. 14, 2019), ECF No. 185; Protective Order at ¶ 7.3, *United States v. Bazaarvoice, Inc.*, No. 13-cv-00133, (N.D. Cal. Mar. 4, 2013), ECF No. 35; Protective Order at ¶ 14, *United States v. Am. Express Co.* No. 10-cv-4496, (E.D.N.Y. April 7, 2011), ECF No. 102.

The fact that Apple's in-house counsel would agree to comply with the Protective Order before viewing Samsung's sensitive information is not an effective antidote for such potential competitive harm. "[G]ood intentions are insufficient to prevent inadvertent disclosure of confidential information because it is not possible for counsel to 'lock-up trade secrets in her mind.'" *Intel*, 198 F.R.D. at 531 (alterations omitted) (quoting *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992)); *see also Exxon*, 636 F.2d at 1350.

Samsung's proposed two-tier confidentiality structure would not unfairly prejudice Apple in any way. As Apple has observed, there is no need for "in-house counsel to have access to highly confidential third-party documents, especially where capable outside counsel of record has access." Exhibit A at 3-4; *New York v. Microsoft Corp.*, No. Civ.A. 98–1233 CKK, 2002 WL 31628220, at *2 (D.D.C. Nov. 18,

**V&E**

2002) (citation omitted); *see also Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 407 (N.D. Ill. 2006) (stating that "attorneys'-eyes-only" protective orders "have become *de rigeur*, at least where outside counsel are to have access to the information"). Moreover, Apple would retain the right to object in good faith to specific confidentiality designations by Samsung or any other non-party with which it disagreed. Indeed, Apple specifically identified the defendant's right to object as a sufficient safeguard for prohibiting disclosure of Highly Confidential Information to the defendant's in-house counsel in the Google Search Case. Exhibit A at 5-6.

If—notwithstanding the competitive threats to Samsung explained above, on-point case law, and the strong policy arguments militating against letting Apple's in-house counsel review Highly Confidential Information from a nonparty against which it "fiercely" competes—the Court is disinclined to categorically prohibit Apple's in-house counsel from viewing Highly Confidential Information, the Court should leave Apple with the burden of demonstrating the need for such disclosure on a case-by-case basis. Indeed, Judge Mehta employed precisely this framework in the Google Search case as a backstop to the default provisions regarding the disclosure of Highly Confidential Information. *See* Exhibit B at ¶ 17. There, the protective order allowed Google to request disclosure of Highly Confidential information to certain in-house counsel on an individual basis, by either consent of the party that designated the information as Highly Confidential, or on motion to the court based on demonstrated need. *See id*. Google had to issue a written notice "stating with particularity the need for such disclosure," and if the designating party and Google could not come to an agreement, the court would allow disclosure if the in-house counsel could demonstrate "a particularized need for access to the Highly Confidential Information that outweighs the risk of harm" to the producing party or the public interest. *Id*. To be clear, Samsung opposes allowing Apple's in-house counsel to review its Highly Confidential Information in any instance, but if the Court is inclined to give Apple the option to attempt an appropriate showing of need as to certain protected information, Judge Mehta's approach could be easily replicated here.

2. **Non-Party Confidential Information Should Be Protected from Disclosure to Apple's Non-Legal Officers, Directors and Employees**

The points above apply even more strongly to Apple's extreme proposal that it be allowed to freely disseminate a non-party competitor's Confidential Information to Apple's non-legal "officers, directors or employees," based only on its own unilateral determination that such disclosure is "reasonably necessary." ECF No. 117-2, ¶ 21(f). No party took such an extreme position in the Google Search Case, and Judge Mehta joined countless other courts presiding over antitrust enforcement actions by entering a Protective Order that prohibits the disclosure of Confidential Information to non-legal personnel. The primary reasons are twofold.

*First*, in-house counsel—unlike non-legal personnel—"are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions." *Advoc. Health Care Network*, 162 F. Supp. 3d at 668. Non-legal personnel assume none of these obligations, rendering a categorical bar on disclosure of Confidential Information all the more appropriate. *Second*, when a competitor's Confidential Information is provided directly to non-legal employees, officers or directors, there is not even a nominal firewall between the Confidential Information and personnel who engage in competitive decision-making. *See Whole Foods Mkt., Inc.*, 2007 WL 2059741, at *2 (non-party confidential information may not be accessed by persons in a position to make "business decisions…regarding, for example, pricing, marketing, or design issues"). Both distinctions militate

**V&E**

strongly against allowing any non-legal personnel—including Apple's executive leadership and Board members—to view non-party Confidential Information.

To prevent this misuse of non-party protected materials, and as is routine in comparable antitrust litigation, Samsung proposes that non-party Confidential Information be disclosable only to Apple's outside counsel and four of Apple's in-house counsel who have no involvement in business decisions or competitive decision-making. *See* Exhibit C, ¶ 21(d-e). In this regard, Samsung requests that the Court impose the same requirements on Apple's in-house counsel as were imposed in the Google Search Case, including that they continue to refrain from all involvement in business decisions, and refrain from involvement in any legal matter involving a non-party whose Confidential Information they have accessed. *Compare id. with* Exhibit B at ¶ 12(d).

3. **Apple Should Not Be Allowed to Disclose A Non-Party's Highly Confidential Information to Deponents or Witnesses Merely Because It Believes The Individual Had Undefined "Involvement or Responsibilities Regarding The Subject Matter Discussed in the Document"**

Apple's proposed Protective Order would allow disclosure of Highly Confidential Information to *any* deponent or witness—not just outside experts or the authors or recipients of documents—if Apple unilaterally deems that the deponent or witness "had involvement or responsibilities regarding the subject matter discussed in the document." ECF No. 117-2, ¶ 22(f). Apple makes no attempt to define "involvement or responsibilities," which opens the door to disclosure of Highly Confidential Information to employees of Apple or other non-parties where such individuals have only a tangential relationship to the material discussed in the document, or indeed, have involvement with the protected subject matter *only as a competitor*. Moreover, the proposed Protective Order does not require Apple to justify its determinations, nor does it allow the Producing Party to weigh in on the appropriateness of disclosing Highly Confidential Information to that witness.

Non-legal employees of Apple and other non-parties are certain to be designated as deponents and witnesses in this litigation. Unlike in-house counsel, these employees are not "officers of the court," and are thus not "bound by the same Code of Professional Responsibility" nor "subject to the same sanctions." *Advoc. Health Care Network*, 162 F. Supp. 3d at 668. It is thus imperative that deponents and witnesses who work for Apple and other competitors of Samsung not be shown Samsung's Highly Confidential Information simply because they have "involvement" in the same subject matter discussed in the protected material, as this could result in significant competitive injury to Samsung. Importantly, Apple and Plaintiffs still would be able to show Highly Confidential Information to expert witnesses and any author or recipient of the document containing Highly Confidential Information, so the parties' hands would not be unduly restricted in the discovery process.

If the court is inclined to allow Apple the opportunity to argue for broader disclosure to deponents and witnesses, it should require that Apple first provide written notice, stating with particularity how the deponent or witness has "had involvement or responsibilities regarding the subject matter discussed in the document," the purposes for which the document is being disclosed to the deponent or witness, and why the deponent or witness cannot be briefed using other, non-Highly Confidential sources. Apple should be required to serve the written notice on the Producing Party (including non-parties), and those non-parties should have an opportunity to either consent or oppose the disclosure.

**V&E**

**Conclusion**

      For the foregoing reasons, Samsung requests that the Court enter a Protective Order with a two-tier confidentiality structure that (1) limits disclosure of Highly Confidential Information to Apple's outside counsel; (2) limits disclosure of Confidential Information to Apple's outside counsel and a narrowly defined set of in-house counsel; and (3) prohibits disclosure of Highly Confidential non-party discovery materials to deponents or witnesses who have undefined "involvement or responsibilities regarding the subject matter discussed" in those Highly Confidential materials. *See* **Exhibit C** (Samsung's redline of Apple's proposal); **Exhibit D** (clean version of Samsung's revised protective order). These limitations are standard in antitrust cases in which discovery is likely to be taken of non-parties like Samsung who directly compete with one of the parties, and will substantially reduce the risk of material competitive harm to such non-parties. No broader disclosure is necessary for Apple to fully defend itself in this litigation.

Dated: September 27, 2024

Respectfully submitted,

**VINSON & ELKINS LLP**

*/s/ Matthew R. Friedenberg*
Matthew R. Friedenberg
Mackenzie G. Newman (*pro hac vice* forthcoming)
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 237-0000
Fax: (212) 237-0100
mfriedenberg@velaw.com
mnewman@velaw.com

Michael W. Scarborough (*pro hac vice* forthcoming)
Dylan I. Ballard (*pro hac vice* forthcoming)
M. Kevin Costello (*pro hac vice* forthcoming)
555 Mission Street
Suite 2000
San Francisco, CA 94105
Tel: (415) 979-6900
Fax: (415) 651-8786
mscarborough@velaw.com
dballard@velaw.com
kcostello@velaw.com

*Counsel for Non-Party*
*Samsung Electronics America, Inc.*

cc:    All Counsel of Record via ECF