# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

UNITED STATES, et al.,

               *Plaintiffs,*

vs.

APPLE, INC.,

               *Defendant.*

**Civil Action No. 2-24-cv-04055 (JXN-LDW)**

## NON-PARTY MATCH GROUP, INC.'S

## POSITION STATEMENT ON PROTECTIVE ORDER

CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ  07068

HUESTON HENNIGAN LLP
620 Newport Center Dr., Suite 1300
Newport Beach, CA 92660

KRESSIN MEADOR POWERS LLC
300 New Jersey Avenue NW, Suite 900
Washington, DC 20001

6762611

# **TABLE OF CONTENTS**

**Page(s)**

I.     PLAINTIFFS INTEND TO PRODUCE MATCH GROUP'S AND ITS PORTFOLIO COMPANIES' COMPETITIVELY SENSITIVE INFORMATION TO APPLE IN THIS LAWSUIT .................................... 3

II.    DISCLOSURE OF COMPETITIVELY SENSITIVE NON-PARTY MATERIALS TO APPLE COULD FACILITATE THE VERY ANTITRUST VIOLATIONS THIS LAWSUIT IS INTENDED TO REMEDY ..................................................................................... 5

III.   MATCH GROUP IS UNAWARE OF ANY PREJUDICE THAT APPLE WOULD SUFFER ......................................................................... 9

IV.    CONCLUSION........................................................................................ 11

6762611

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
    237 F.R.D. 405 (N.D. Ill. 2006)...........................................................................10

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan*,
    1998 WL 1297329 (D.N.J. May 7, 1998)..............................................................8

*Harding v. Dana Transp., Inc.*,
    914 F. Supp. 1084 (D.N.J. 1996) ...........................................................................9

*Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*,
    2015 WL 5163035 (D. Del. Sept. 3, 2015).............................................................9

*New York v. Microsoft Corp.*,
    2002 WL 31628220 (D.D.C. Nov. 18, 2002) .......................................................10

*United States v. Dentsply Int'l, Inc.*,
    187 F.R.D. 152 (D. Del. 1999) ............................................................................11

*Watch Network v. United States Immigr. & Customs,
    Enf't*, 2016 WL 11793613 (S.D.N.Y. Sept. 1, 2016) ...........................................9

6762611

Non-Party Match Group, Inc. ("Match Group") respectfully submits this position statement in support of obtaining protective order provisions preventing Apple employees from accessing highly confidential and competitively sensitive information produced by Match Group on behalf of its portfolio companies.

In response to a compulsory Civil Investigative Demand from the U.S. Department of Justice, Match Group, on behalf of its portfolio companies that operate online dating brands, produced competitively sensitive documents regarding popular dating app Tinder and other dating brands under cover of confidentiality. These documents reflect pricing information and data, user behavior information and data, and detailed financial information pertaining to Match Group's portfolio companies. The production also included business and negotiation strategy documents concerning counterparties, including Apple. Match Group also expects that the parties will seek further discovery from it and other third parties in the course of this litigation.

Disclosure of these materials to Apple's employees and in-house counsel creates a substantial risk that discovery in this matter might facilitate the very antitrust violations that the lawsuit against Apple was intended to remedy. Indeed, the opening paragraph of Plaintiffs' First Amended Complaint alleges that "Apple would 'force' developers to use its payment system to lock in both developers and users on its platform . . . by making it harder or more expensive for its . . .

- 1 -

6762611

developers to leave than by making it more attractive for them to stay." Dkt. 51 at

3. Allowing Apple to access asymmetric information into its competitors' and

counterparties' businesses—particularly where those non-parties will not likewise

have access to Apple's confidential information designated under any protective

order in this litigation—could have the effect of stifling innovation and

competition.

In other litigation brought by the government where Apple was a non-party,

Apple has requested—and obtained—similar protective order provisions to those

that Match Group seeks that prevented the party's in-house counsel and employees

from accessing non-party Apple's materials. The extreme prejudice to Match

Group and its portfolio companies, as well as potential harm to other third parties,

substantially outweighs any need that Apple employees might have for these

materials in adequately supervising or purportedly aiding the litigation.

As such, Match Group respectfully requests that the Court enter a protective

order with multiple tiers of protection, including a "Non-Party Highly

Confidential—Outside Counsel's Eyes' Only" tier that safeguards Match Group's

and its portfolio companies' competitively sensitive information by preventing

Apple's employees and in-house counsel from accessing such materials. While

much of the materials Match Group and its portfolio companies produce will be

adequately protected by a "Confidential" tier, permitting access by some Apple

- 2 -

employees, certain competitively sensitive information should be limited to outside

counsel only through a Non-Party Highly Confidential designation. Match Group's

proposed protective order provisions are attached as Exhibit A (Match Group's

Redline Revisions to Apple's Proposed Protective Order, Dkt. 117-2) and Exhibit

B (Match Group's Clean Version of Its Revisions to Apple's Proposed Protective

Order, Dkt. 117-2).[1]

## I.    PLAINTIFFS INTEND TO PRODUCE MATCH GROUP'S AND ITS PORTFOLIO COMPANIES' COMPETITIVELY SENSITIVE INFORMATION TO APPLE IN THIS LAWSUIT

During the U.S. Department of Justice's investigation before filing this case,

Match Group, on behalf of its portfolio companies, submitted sensitive materials to

the U.S. Department of Justice in response to a compulsory Civil Investigative

Demand. Declaration of Brandon Kressin ("Kressin Decl.") ¶ 6. The documents

reflect competitively sensitive documents that could irreparably harm Match Group

and its portfolio companies if Apple's employees and in-house counsel were able

to access them. *Id.* ¶¶ 4, 6, 8. For example, the documents submitted contain

detailed pricing information, testing, data, and user behavior information and data

---

[1] If the Court adopts protective order provisions that allow Apple's employees and in-house counsel to access non-party information and materials, Match Group respectfully requests that Apple maintain the burden of demonstrating the need for such disclosure on a document-by-document basis, like Google was required to do in *United States v. Google LLC*, Case No. 1:20-cv-03010-APM, Dkt. 98 (D.D.C. Feb. 11, 2022), where the protective order required either agreement of Google and the non-party or Google to file a motion "stating with particularity the need for such disclosure," *id.* ¶ 17.

- 3 -

regarding Match Group's portfolio companies. *Id.* ¶¶ 6, 8. A party with such information could use it in negotiations that would harm Match Group's portfolio companies' competitive positions in dealing with Match Group's portfolio companies' competitors. *Id.* ¶¶ 6, 8. Further documents contain sensitive business and negotiation strategy, detailed financial information, and submissions to foreign regulatory bodies in proceedings involving Apple. These documents could be used by Apple in business negotiations or to further the conduct alleged by Plaintiffs such as stifling innovation and competition in Apple's smartphone ecosystem. *Id.* ¶¶ 6, 8. For example, such insight into a major developers' plans and operations could allow Apple to favor dating brands that do not challenge Apple's App Store rules and business strategies, to create rules that prevent app developers from introducing new features and products that challenge Apple's dominance and bottom line, or to create its own competing apps.[2] *Id.* ¶ 6.

---

[2] *See, e.g.*, Mark Gurman, Apple to Debut Passwords App in Challenge to 1Password, LastPass, Bloomberg (June 6, 2024), available at https://www.bloomberg.com/news/articles/2024-06-06/apple-to-debut-passwords-app-in-challenge-to-1password-lastpass?embedded-checkout=true ("Apple Inc. will introduce a new homegrown app next week called Passwords . . . . The new app will take on password managers like 1Password and LastPass, and Apple will allow users to import passwords from rival services.").

- 4 -

Match Group also expects that it and/or its portfolio companies will be subpoenaed during this litigation for additional competitively sensitive materials and testimony.[3] *Id.* ¶ 7.

## II. DISCLOSURE OF COMPETITIVELY SENSITIVE NON-PARTY MATERIALS TO APPLE COULD FACILITATE THE VERY ANTITRUST VIOLATIONS THIS LAWSUIT IS INTENDED TO REMEDY

Neither Apple's nor Plaintiffs' primary proposals would restrict disclosure of competitively sensitive information to outside counsel only. Apple's proposed protective order has two tiers of confidentiality, both of which would allow Apple's as-yet unnamed in-house counsel to access Match Group's and other non-parties' materials. Dkt. 117-2 ¶ 22.  Specifically, Apple's proposed first tier of confidentiality would allow Apple's employees and in-house counsel to access designated materials, and its second tier of confidentiality would still allow as-of-yet unnamed in-house counsel to view non-parties' designated materials. *Id.* ¶¶ 21, 22. Even under its more restrictive second tier, Apple's proposal would allow in-house counsel whose role relates to "litigation, compliance, regulatory, or liability issues related to business decisions" to view Match Group's and its portfolio companies' competitively sensitive materials. *Id.* ¶ 22(e). Such broad categories

---

[3] If the parties improperly serve Match Group seeking testimony or materials from its portfolio companies, Match Group reserves all rights, including to object based on improper service.

- 5 -

6762611

could include employees and/or in-house counsel who are advising Apple in regulatory proceedings around the world involving Match Group's portfolio brands. The Plaintiffs' proposed protective order providing a single level of confidentiality is effectively the same as Apple's higher tier and would likewise risk disclosure to Apple employees who are directly adverse to Match Group and its portfolio companies to view those companies' competitively sensitive material. *Compare* Dkt. 117-1 ¶ 21(e), *with* 117-2 ¶ 22(e).[4] What's more, Match Group would not have the opportunity to object to Apple's proposed in-house counsel who would be given unfettered access under either proposal.

Apple's dealings with third-party developers and their internal responses and decision-making in response to Apple's actions are at the heart of this litigation. *See, e.g.*, First Am. Compl. at 4 ("Rather than respond to competitive threats by offering . . . better monetization for [third-party] developers, Apple would meet competitive threats by imposing a series of shapeshifting rules and restrictions in its App Store guidelines and developer agreements that would allow Apple to extract higher fees, thwart innovation, offer a less secure or degraded user experience, and throttle competitive alternatives."); *id.* ¶ 41 (Apple "frequently

---

[4] In the alternative, Plaintiffs proposed that "[i]f the Court is inclined to establish two tiers [of confidentiality], then the Highly Confidential designation should impose even greater restrictions, limiting disclosure to outside counsel only." Dkt. 117 at 8. Match Group agrees with this proposal.

uses App Store rules and restrictions to penalize and restrict [third-party] developers that take advantage of technologies that threaten to disrupt, disintermediate, compete with, or erode Apple's monopoly power."); *id.* ¶ 70 ("Apple also selectively enforced its contractual rules with [third-party] developers"). Both Apple and Plaintiffs have indicated that this case will involve extensive third-party discovery to prove and/or defend against the Plaintiffs' competition claims. *See* Dkt. 88 at 2 ("Apple seeks to serve unlimited deposition subpoenas on third parties"); Dkt. 117 at 11–12 (arguing for disclosure of third-party materials to Apple's employees and in-house counsel).

Protective order provisions that limit disclosure to outside counsel only are common, particularly in complex antitrust litigation. *See, e.g.*, *Epic Games, Inc. v. Apple, Inc.*, Case No. 4:11-cv-06714-YGR-TSH, Dkts. 423, 798, 799, 800, 801, 834 (N.D. Cal. Nov. 22, 2021) (protective orders limiting access to information produced by third parties Google, Niantic, Electronic Arts, Walk Disney Company, and Zynga); *In re Google Play Store Antitrust Litig.*, Case No. 3:21-md-02981-JD, Dkt. 248 (N.D. Cal. May 25, 2022) (limiting disclosure of third-party material such that no in-house counsel or employees may view third-party protected material); *United States, v. Google LLC*, Case No. 1:20-cv-03010-APM, Dkts. 98 & 286 (D.D.C. Jan. 21, 2021) (allowing disclosure to outside counsel "but not In-House Counsel, including Designated In-House Counsel, for the Defendant"); *United*

- 7 -

*States v. Aetna*, Case No. 1:16-cv-01494, Dkt. 132 (D.D.C. Sept. 30, 2016); *United*

*States v. Anthem*, Case No. 1:16-cv-01493, Dkt. 161 (D.D.C. Sept. 26, 2016).

Indeed, in other litigation brought by the government where Apple was a

non-party, Apple has sought—and obtained—similar protective order provisions

that prevented the party's in-house counsel and employees from accessing non-

party Apple's materials. *See* Non-Party Apple Inc.'s Position Statement on

Protective Order at 5, *United States v. Google LLC*, Case No. 1:20-cv-03010-

APM, Dkt. 47 (D.D.C Nov. 20, 2020) ("Due to the high risk of harm that would

result from disclosure of its highly sensitive information to [party] Google, [non-

party] Apple respectfully submits that the issues before the Court . . . warrant

limiting access to the most sensitive third-party information to Google's outside

counsel only."). Nor can Apple now claim that its in-house counsel will adequately

compartmentalize non-party information to which they receive access. As Apple

has previously argued, "[i]t is very difficult for the human mind to

compartmentalize and selectively suppress information once learned, no matter

how well-intentioned the effort may be to do so." *Id.* at 5, 4 ("There is substantial

risk that it would be impossible for [a party's] in-house counsel to disentangle their

duty to provide zealous legal advice" from the confidential information they

learned from non-parties.).

- 8 -

Furthermore, a protective order that prevents Apple employees, including in-house counsel, from accessing non-party highly confidential information and materials would help facilitate third-party discovery. "[C]onfidentiality is essential to the free flow of information and the free flow of information is essential to promote recognized public interests." *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 1998 WL 1297329, at \*10 (D.N.J. May 7, 1998); *Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1100 (D.N.J. 1996) (same). Because third parties would have less reason to fear retaliation or that their information might fall into wrong hands, they may be more likely to disseminate their sensitive materials under the confidence of an adequate protective order.

## III.    MATCH GROUP IS UNAWARE OF ANY PREJUDICE THAT APPLE WOULD SUFFER

Match Group is unaware of any prejudice to Apple from preventing its employees and in-house counsel from accessing Match Group's and its portfolio companies' competitively sensitive confidential information, as this litigation centers on Apple's own conduct, not that of Match Group or any of its portfolio companies. Yet the risk to Match Group and its portfolio companies is significant, as disclosure of Non-Party Highly Confidential Information might facilitate the very conduct that is the subject of this lawsuit. *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, 2015 WL 5163035, at \*3 (D. Del. Sept. 3, 2015) (finding that "potential for prejudice is clear" for intervenor in a similar pharmaceutical

- 9 -

market to parties where there is "substantial risk of disclosure and/or adverse use,"

including "inadvertent use," by the parties to the litigation); *Det. Watch Network v.*

*United States Immigr. & Customs Enf't*, 2016 WL 11793613, at \*3 (S.D.N.Y. Sept.

1, 2016) (granting motion to intervene where there may be some prejudice to

plaintiff but the "risk to the prospective intervenors is significant" and finding that

"district courts may impose conditions or restrictions upon an intervenor's

participation in the action, which can ameliorate potential prejudice").

As Apple has previously argued where it was a non-party to antitrust

litigation, "[c]ourts routinely deny a party's in-house counsel access to non-party

confidential information" and "'fundamental fairness' to the parties in a litigation

does not require in-house counsel to have access to highly confidential third-party

documents, especially where capable outside counsel of record has access." Non-

Party Apple Inc.'s Position Statement on Protective Order at 3–4, *United States v.*

*Google LLC*, Case No. 1:20-cv-03010-APM, Dkt. 47 (D.D.C Nov. 20, 2020)

(quoting *New York v. Microsoft Corp.*, 2002 WL 31628220, at \*2 (D.D.C. Nov. 18,

2002)); *see also Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 237

F.R.D. 405, 407 (N.D. Ill. 2006) (stating that "attorneys'-eyes-only" protective

orders "have become *de rigeur*, at least where outside counsel are to have access to

the information"); *see also supra* § II (citing protective orders that limit access to

outside counsel only for certain categories of information). Apple cannot credibly

- 10 -

switch positions now, unless it claims its outside counsel is not "capable," which is

not an argument Apple has made.

"At a minimum" Apple's "requisite showing" to "have [in-house counsel]

access to the specified detailed confidential information to allow [it] to defend

itself" "should include: [] ***extraordinary detailing*** of the circumstances warranting

disclosure; . . . and [] an explanation of why reliance on the representations and

opinions of outside counsel would not be adequate." *United States v. Dentsply*

*Int'l, Inc.*, 187 F.R.D. 152, 162 (D. Del. 1999) (emphasis added). Match Group is

unaware of circumstances justifying either, nor has Apple provided such

"extraordinary detailing" in its position statement. Dkt. 117 at 11–12.

## IV.     CONCLUSION

For the foregoing reasons, Match Group respectfully requests that the Court

enter a protective order that prevents Apple's employees and in-house counsel

from accessing materials designated as "Non-Party Highly Confidential – Outside

Counsel Eyes' Only."

6762611

Dated:  October 8, 2024                          Respectfully submitted,


                                                 <u>    /s/      Marisa Rauchway    </u>
Douglas J. Dixon (*pro hac vice*                 Marisa Rauchway
pending)                                         April Campos
Tate Harshbarger (*pro hac vice*                 CHIESA SHAHINIAN &
pending)                                         GIANTOMASI PC
HUESTON HENNIGAN LLP                             105 Eisenhower Parkway
620 Newport Center Dr., Suite                    Roseland, New Jersey 07068
1300                                              (973) 325-1500
Newport Beach, CA 92660                          mrauchway@csglaw.com
(213) 788-4340                                   acampos@csglaw.com
ddixon@hueston.com
tharshbarger@hueston.com


Brandon Kressin (*pro hac vice*
pending)
KRESSIN MEADOR POWERS
LLC
300 New Jersey Avenue NW
Suite 900
Washington, DC 20001
(202) 464-2905
brandon@kressinmeador.com

                                                 *Counsel for Non-Party Match
                                                 Group, Inc.*

- 12 -

6762611

## <u>CERIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was served on this date upon all counsel

of record via ECF filing.

<div style="margin-left: 45%;">

CHIESA SHAHINIAN & GIANTOMASI
  PC
*Local Counsel for Non-Party Match Group,
Inc.*

</div>

<table>
<tr><td>Dated:  October 8, 2024</td><td>By   <u>/s/ Marisa Rauchway</u><br>     MARISA RAUCHWAY<br>     105 Eisenhower Parkway<br>     Roseland, New Jersey<br>     (973) 325-1500</td></tr>
</table>

6762611