# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES, et al., *Plaintiffs,* vs. APPLE, INC., *Defendant.* | **Civil Action No. 2-24-cv-04055 (JXN-LDW)** *Document filed electronically* |

## DECLARATION OF BRANDON KRESSIN IN SUPPORT OF NON-PARTY MATCH GROUP, INC.'S MOTION TO INTERVENE AND POSITION STATEMENT ON PROTECTIVE ORDER

CHIESA SHAHINIAN & GIANTOMASI PC
105 Eisenhower Parkway
Roseland, NJ  07068

HUESTON HENNIGAN LLP
620 Newport Center Dr., Suite 1300
Newport Beach, CA 92660

KRESSIN MEADOR POWERS LLC
300 New Jersey Avenue NW, Suite 900
Washington, DC 20001

I, Brandon Kressin, declare as follows:

1. I am an attorney at law duly licensed to practice before all courts in New York, Kansas, and Washington, D.C. I am a founding member of the law firm of Kressin Meador Powers LLC, counsel for Non-Party Match Group, Inc. ("Match Group"). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. Match Group's portfolio companies own and operate online dating brands within the highly competitive online dating category.

3. I have represented Match Group and its portfolio companies for over four years, and through the course of my representation, I have become familiar with how those portfolio companies handle confidential and proprietary business information pertaining to their respective brands. For example, I am familiar with how Tinder LLC—an indirect subsidiary of Match Group and the operating entity of the Tinder brand, one of the Match Group portfolio's most popular dating brands—handles its respective proprietary business information. Tinder is available to users at no charge, including on Apple mobile devices, and Tinder users have the option of purchasing various subscription tiers as well as certain features on an á la carte basis.

4. Companies in the online dating category, including Match Group and its portfolio companies, undertake extensive measures to protect their confidential information from competitors to ensure that they maintain their competitive advantages. Match Group and its portfolio companies are key innovators and constantly seek to gain—and maintain—an edge in this always evolving industry; they compete vigorously with both new and established companies that are eager to imitate ideas or garner strategic insights from others in the industry like Match Group and its portfolio companies. There is no doubt that Apple and dating service competitors with which Apple deals would be very eager to acquire and study Match Group and its portfolio companies' non-public, confidential and proprietary business information and exploit it to gain competitive advantage.

5. I understand that the parties to the above-captioned matter have filed their respective positions on the entering of a protective order in this case and that the parties' primary positions do not include a category of information that prevents Apple's employees, including its in-house counsel, from accessing non-parties' competitively sensitive and highly confidential information and documents.

6. During the U.S. Department of Justice's investigation before filing this case, Match Group, on behalf of its portfolio companies, submitted sensitive materials to the U.S. Department of Justice in response to a compulsory Civil

Investigative Demand. The documents reflect competitively sensitive and highly confidential documents that could irreparably harm Match Group and its portfolio companies if Apple's employees and in-house counsel were able to access them. For example, the documents submitted contain competitively sensitive, highly confidential, and detailed pricing information, testing, data, and user behavior information and data regarding Match Group's portfolio companies. A party with such information could use it in negotiations that would harm Match Group's portfolio companies' competitive positions and in dealing with Match Group's portfolio companies' competitors. Further documents contain competitively sensitive and highly confidential business and negotiation strategy, detailed financial information, and submissions to foreign regulatory bodies in proceedings involving Apple. These documents could be used by Apple in business negotiations or to further the conduct alleged by Plaintiffs, such as stifling innovation and competition in Apple's smartphone ecosystem. For example, such insight into a major developers' plans and operations could allow Apple to favor dating brands that do not challenge Apple's App Store rules and business strategies, to create rules that prevent app developers from introducing new

features and products that challenge Apple's dominance and bottom line, or to create its own competing apps.[1]

7. I understand that Match Group's sensitive materials that were submitted in response to the U.S. Department of Justice's Civil Investigative Demand on behalf of its portfolio companies have not yet been produced to Apple in this litigation, but that they will likely be produced after the entry of an adequate protective order. Match Group also expects that it and/or its portfolio companies will be subpoenaed during this litigation for additional competitively sensitive materials and testimony.

8. Disclosing this information to employees and in-house counsel at Apple could be used against Match Group and its portfolio companies in their future business negotiations with Apple. Information that may seem insignificant on its own can (individually or with other documents) give an expert reader, industry competitor, or counterparty meaningful insight. This insight can be derived even if the information is several years old. For example, the amount of

---

[1] *See, e.g.*, Mark Gurman, Apple to Debut Passwords App in Challenge to 1Password, LastPass, Bloomberg (June 6, 2024), available at https://www.bloomberg.com/news/articles/2024-06-06/apple-to-debut-passwords-app-in-challenge-to-1password-lastpass?embedded-checkout=true ("Apple Inc. will introduce a new homegrown app next week called Passwords . . . . The new app will take on password managers like 1Password and LastPass, and Apple will allow users to import passwords from rival services.").

consumer spending that took place on a particular portfolio company's dating app during a particular time period could allow a competitor or counterparty to selectively compete against Match Group and its portfolio companies or disadvantage Match Group and its portfolio companies as compared to their competitors within the Apple smartphone ecosystem. For these reasons, an adequate protective order should prevent Apple's employees and in-house counsel from accessing non-parties' competitively sensitive and highly confidential information and documents.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

      Executed this 8th day of October 2024, at Overland Park, Kansas.

                                               */s/ Brandon Kressin*
                                                 Brandon Kressin

## CERTIFICATION OF SERVICE

I certify that a copy of the foregoing was served on this date upon all counsel of record via ECF filing.

                                          CHIESA SHAHINIAN & GIANTOMASI PC
*Local Counsel for Non-Party Match Group, Inc.*

Dated: October 8, 2024

                                          By   */s/ Marisa Rauchway*
                                                   MARISA RAUCHWAY
                                                   105 Eisenhower Parkway
                                                   Roseland, New Jersey
                                                   (973) 325-1500