# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>     Defendant. | Case No. 2:24-cv-04055<br><br>Hon. Julien X. Neals, U.S.D.J.<br>Hon. Leda D. Wettre, U.S.M.J.<br><br>***Oral argument requested***<br><br>***Document filed electronically*** |

## REPLY IN SUPPORT OF APPLE INC.'S
## <u>MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

WALSH PIZZI O'REILLY FALANGA LLP
100 Mulberry Street, 15th Floor
Newark, NJ 07102

KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004

GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................2

I.    The Complaint Does Not Allege Unlawful Conduct .....................................2

      A.    Apple's Alleged Conduct Does Not Violate Section 2 .........................2

      B.    The *Aspen Skiing* Exception Does Not Apply .......................................8

II.   The Complaint Does Not Allege Substantial Anticompetitive Effects
      In The Smartphone Market ..........................................................................10

III.  The Complaint Does Not Allege Monopoly Power .....................................12

IV.   The Attempted Monopolization Claims Fail ...............................................14

V.    The Kitchen-Sink Allegations Should Be Dismissed ..................................14

CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3Shape Trios A/S v. Align Tech., Inc.*,
  2019 WL 3824209 (D. Del. Aug. 15, 2019)......................................................11

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
  458 U.S. 592 (1982)..........................................................................................12

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985).......................................................................................8, 9

*Bakay v. Apple Inc.*,
  2024 WL 3381034 (N.D. Cal. July 11, 2024) ..................................................10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................2, 14

*California v. Am. Stores Co.*,
  495 U.S. 271 (1990)..........................................................................................12

*Chase Mfg., Inc. v. Johns Manville Corp.*,
  84 F.4th 1157 (10th Cir. 2023) ..........................................................................6

*Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp.*,
  579 F.2d 20 (3d Cir. 1978) ...............................................................................13

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
  111 F.4th 337 (4th Cir. 2024) ...................................................................6, 9, 11

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992)............................................................................................6

*In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
  44 F.4th 959 (10th Cir. 2022) ..........................................................................11

*FTC v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020) .............................................................................13

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ...................................................................................8

*FTC v. Wilh. Wilhelmsen Holding ASA*,
341 F. Supp. 3d 27 (D.D.C. 2018) ........................................................................13

*Harrison v. Jefferson Par. Sch. Bd.*,
78 F.4th 765 (5th Cir. 2023) ..................................................................................12

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
32 F.4th 242 (3d Cir. 2022) ..........................................................................8, 9, 10

*IQVIA Inc. v. Veeva Sys. Inc.*,
2018 WL 4815547 (D.N.J. Oct. 3, 2018) ................................................................9

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*,
748 F.3d 160 (4th Cir. 2014) ................................................................................13

*L.A. Land Co. v. Brunswick Corp.*,
6 F.3d 1422 (9th Cir. 1993) ..................................................................................12

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003) ................................................................................11

*loanDepot.com v. CrossCountry Mortg., Inc.*,
399 F. Supp. 3d 226 (D.N.J. 2019)........................................................................15

*Lorain Journal Co. v. United States*,
342 U.S. 143 (1951)................................................................................................6

*New York v. Facebook, Inc.*,
549 F. Supp. 3d 6 (D.D.C. 2021)............................................................................6

*New York v. Meta Platforms, Inc.*,
66 F.4th 288 (D.C. Cir. 2023).......................................................................3, 5, 6

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013) ...................................................................2, 4, 8

*Otter Tail Power Co. v. United States*,
410 U.S. 366 (1973)................................................................................................9

iii

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009)....................................................................................1, 2, 3, 8

*Phila. Taxi Ass'n v. Uber Techs., Inc.*,
   886 F.3d 332 (3d Cir. 2018) ..................................................................14

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) .........................................................12, 13

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
   2024 WL 2861865 (D.N.J. June 6, 2024)..............................................9

*Stepan Co. v. Pfizer, Inc.*,
   2024 WL 3199834 (D.N.J. June 26, 2024)............................................15

*In re Thalomid & Revlimid Antitrust Litig.*,
   2015 WL 9589217 (D.N.J. Oct. 29, 2015) .............................................9

*Times-Picayune Publ'g Co. v. United States*,
   345 U.S. 594 (1953).............................................................................14

*United States v. Colgate & Co.*,
   250 U.S. 300 (1919)............................................................................2, 3

*United States v. Dentsply Int'l, Inc.*,
   399 F.3d 181 (3d Cir. 2005) .......................................................11, 12, 13

*United States v. Google LLC*,
   2024 WL 3647498 (D.D.C. Aug. 5, 2024) .......................................2, 6, 9

*United States v. Microsoft*,
   253 F.3d 34 (D.C. Cir. 2001)........................................................*passim*

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004).........................................................................1, 2, 7, 8

*Viamedia, Inc. v. Comcast Corp.*,
   951 F.3d 429 (7th Cir. 2020) ................................................................9

## INTRODUCTION

The Government's opposition confirms it is trying to compel Apple to grant access to iPhone on the terms and conditions that it and third parties prefer. Supreme Court cases like *Trinko* and *linkLine* expressly rejected on the pleadings the notion that firms have a duty to grant such access at all, much less on the specific terms that third parties demand. The Government's brief tries all manner of tactics to avoid that straightforward conclusion, retreating to recycled arguments (many rejected by other courts) that refusal-to-deal doctrine applies only in narrow circumstances not applicable here. Despite the Government's contortions, the Court should recognize this case for what it is: an overreaching theory of liability that seeks to create new law and impose judicial oversight over unilateral design decisions.

The Government has no real answer to its failure to plausibly allege how Apple's challenged design decisions about five disparate products or services have affected smartphone competition or that Apple can even control prices and output— prerequisites to alleging monopoly power—in a market including such behemoths as Samsung and Google. On top of these pleading deficiencies, the Government devotes just three perfunctory sentences to defending its effort to stretch this case beyond a dispute over five discrete products and services into a fishing expedition targeting broad swaths of Apple's business. This case should be dismissed in its

entirety, but regardless, the Government's anemic effort to defend its "monopoly playbook" allegations clearly fails under *Twombly*.

## ARGUMENT

## I.    THE COMPLAINT DOES NOT ALLEGE UNLAWFUL CONDUCT

### A.    Apple's Alleged Conduct Does Not Violate Section 2

The Government's opposition dodges the central reason why this case must be dismissed: Apple's unilateral decisions about the terms of third-party access to its proprietary platform are protected under longstanding Supreme Court precedent. *See, e.g.*, *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004); *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). These cases, decided on the pleadings and not the balancing test in *United States v. Microsoft*, 253 F.3d 34, 58–60 (D.C. Cir. 2001) (en banc) (per curiam), Opp. 9, articulate the framework for evaluating the Government's claims.

The Government claims that it does not seek to force Apple to share its technology, but only "to lift restrictions on developers." Opp. 33. That is one and the same: The Government would require Apple to further open third-party access to its proprietary hardware and software and even require Apple to create new technology for others to access iPhone. *See* FAC ¶¶ 85, 101, 111. Cases like *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064 (10th Cir. 2013) and *United States v. Google*

*LLC*, 2024 WL 3647498 (D.D.C. Aug. 5, 2024) make clear that the refusal-to-deal framework governs such forced-sharing claims.

Next, the Government tries to limit the refusal-to-deal doctrine to "*outright refusal[s].*" Opp. 28. That's wrong, too. Neither the Supreme Court nor any court of appeals has adopted so narrow an interpretation. The Government made this argument in *New York v. Meta Platforms, Inc.*, 2022 WL 266802, at *14–15, and the D.C. Circuit correctly rejected it as just "another way of saying that Facebook refused to deal with its rivals on the rivals' preferred terms," 66 F.4th 288, 306.

The Government contends that the doctrine does not apply because the complaint is not challenging Apple's refusals to deal with rivals *in the smartphone market*, but is instead focused on Apple's refusal to deal with developers Apple also competes with in *adjacent markets*, like markets for smartwatches, messaging apps, and digital wallets. Opp. 28. But refusal-to-deal precedent does not depend on the market alleged in the complaint or on the identity of the refused party: *Colgate* established more than a century ago that even a monopolist generally has no duty to deal with third parties, regardless of whether they are "rivals" in the alleged market, other markets, or even rivals at all. *See also linkLine*, 555 U.S. at 448 ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.").

Instead, "section 2 misconduct usually involves some assay by the monopolist into the marketplace," such as an effort to "limit the abilities of third parties to deal with rivals" or "requir[ing] third parties to purchase a bundle of goods." *Novell*, 731 F.3d at 1072. In fact, *Novell* explains why the Government's reconceptualization of the refusal-to-deal doctrine is wrong. Novell alleged that Microsoft monopolized the operating system market by withdrawing software vendors' access to APIs. The vendors did not offer rival operating systems; they competed with Microsoft in the adjacent word processing applications market. 731 F.3d at 1067, 1069. Novell's theory was that Microsoft maintained its operating-system monopoly by suppressing software vendors' ability to offer middleware for operating systems. *Id.* at 1070. The court still applied the refusal-to-deal framework. *Id.* at 1078–79 ("Unable to travel the hard road of refusal to deal doctrine, Novell seeks an escape route … [but] [t]raditional refusal to deal doctrine is not so easily evaded.").

The circumstances here warrant a similar result. As the Government alleges, Apple offers mobile games, a messaging app, smartwatches, a digital wallet, a mobile operating system, and an app store—and it competes with developers across those offerings. The developers to whom the Government seeks to grant compelled access thus *are* "rivals" in these concededly "implicated" markets, ECF 45 at 2. The Government cannot avoid refusal-to-deal doctrine, as the plaintiff in *Novell* could not, solely because it does not consider the relevant developers "smartphone rivals."

To conclude otherwise would be to allow the Government, by artful pleading, to evade fundamental antitrust principles.  The Government could simply allege that refusals to deal in unpled markets, like smartwatches or digital wallets, harmed competition in the pled market, and avoid the refusal-to-deal doctrine entirely because the refused parties are rivals only in the unpled markets.  The Government is attempting to elevate form over substance by disregarding competition in adjacent markets and allegedly emerging competitive threats to iPhone.  But refusal-to-deal principles are not so easily avoided.  The lawfulness of alleged conduct does not depend on the Government's cherry-picked market.

Regardless, even if the Government were correct that refusal-to-deal doctrine applies only to "rivals in the smartphone market," its argument fails on its own terms because the complaint repeatedly alleges that Apple refused to deal with actual or potential competitors to maintain its purported monopoly in the smartphone market.  *See, e.g.*, FAC ¶ 41 (Apple restricts "developers that … *compete with*, or erode Apple's monopoly power"); *id.* ¶ 46 (Apple "protect[s] itself from the *competitive threats*" from "third-party developers"); *see also* Opp. 7, 8, 23.

The cases the Government cites either support dismissal or are inapposite.  The Government suggests *New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) is helpful to it, but *Meta* rejected on the pleadings the exact theory the Government alleges here: Section 2 liability based on Meta's alleged policies to

"foreclose and forestall the rise of new competitors" by withholding API access. *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 16 (D.D.C. 2021). The Government tries to distinguish *Meta* as an exclusive-dealing case, Opp. 32, but both the district court and D.C. Circuit concluded that the challenged conduct was "*nothing like* the exclusive dealing" in the plaintiffs' cited case. 66 F.4th at 304.[1]

The Government's remaining cases involved businesses attempting to prevent their customers from purchasing products or services from rival businesses. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 463 n.8 (1992) (selling photocopiers only to customers who agree not to have them serviced elsewhere); *Lorain Journal Co. v. United States*, 342 U.S. 143, 152 (1951) (selling newspaper advertising space only to customers agreeing not to advertise with a radio station); *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1162 (10th Cir. 2023) (threatening to stop selling an insulation product to customers buying it from another supplier); *Microsoft*, 253 F.3d at 59–78 (licensing Windows only to customers agreeing not to distribute Netscape). There are no such allegations here. And *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354 (4th Cir. 2024), which involved a campaign by a power wholesaler to exclude a particular rival, supports Apple because it reaffirmed that when a firm is allegedly refusing to

---

[1] *Google* confirms that a firm generally does not act anticompetitively by not providing others with access to its technology. 2024 WL 3647498, at *129.

deal, "case law has developed tests for analyzing such claims" apart from the *Microsoft* balancing test the Government favors.

The Government presents this case as another *Microsoft*, but the two are worlds apart. Facing no competition and controlling a "greater than 95% share," Microsoft imposed various restrictions inhibiting third parties from dealing with Microsoft's nascent competitors as part of a campaign to foreclose competition. 253 F.3d at 54, 79. Apple is not alleged to have placed any comparable restrictions on developers affecting their ability to deal with Apple's smartphone rivals. Even Microsoft's "on platform" conduct—like restrictions on the removal of desktop icons or commingled browser and operating system code, *id.* at 61, 66—was aimed at forcing third parties to deal exclusively with Microsoft and amounted to interference with specific Microsoft rivals in the browser market, unlike anything alleged here. *Microsoft* was also decided before *Trinko*, and Microsoft did not argue its conduct was protected by refusal-to-deal doctrine.

Ultimately, adopting the Government's theory would gut well-settled protections that enable innovative companies like Apple to compete on the merits and would require court intervention in innumerable design decisions and business judgments—like whether to develop an Android-compatible smartwatch—that Apple makes every day. Unable to offer a Section 2 theory consistent with controlling Supreme Court precedent, the Government resorts to hyperbole,

claiming that Apple is asserting an "unfettered" right to make business judgments. Opp. 34. Apple's argument is simpler, and much narrower: The Court should adhere to *Trinko*, *linkLine*, *Novell*, and the many other decisions confirming that the Government cannot compel Apple to share access to its proprietary technology, subject to narrow exceptions inapplicable here.

### B.     The *Aspen Skiing* Exception Does Not Apply

The Government does not attempt to argue it meets the Third Circuit's requirements for application of the *Aspen Skiing* exception: It has not alleged that Apple terminated any existing course of dealing by ceasing to deal with developers or withdrawing access to iPhone previously provided, let alone that Apple's "only conceivable rationale or purpose" in doing so was "to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition," *FTC v. Qualcomm Inc.*, 969 F.3d 974, 993–94 (9th Cir. 2020); *see also Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 250 n.7 (3d Cir. 2022).

Relying principally on out-of-circuit decisions, the Government seeks to radically change the law by arguing it only needs to plead Apple's conduct was "predatory." Opp. 36. But *Aspen Skiing* does not recognize an exception to refusal-to-deal doctrine for allegedly "predatory" conduct, and doing so would turn that exception into the rule: Almost every antitrust plaintiff believes they have identified "predatory" conduct. Recent decisions in this District and elsewhere are clear that

refusal-to-deal allegations cannot survive "without alleging the unilateral termination of a voluntary and thus presumably profitable course of dealing, suggesting a willingness to forsake short-term profits to achieve an anti-competitive end." *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, 2024 WL 2861865, at *43–45 (D.N.J. June 6, 2024); *Google*, 2024 WL 3647498, at *130 ("To fit within the *Aspen Skiing* exception, a plaintiff must make at least" these two showings).

The Government's cases do not support the application of *Aspen Skiing* here. This year's *Revlimid* decision, 2024 WL 2861865, at *45, declined to follow *IQVIA Inc. v. Veeva Sys. Inc.*, 2018 WL 4815547 (D.N.J. Oct. 3, 2018), and the earlier *In re Thalomid & Revlimid Antitrust Litig.*, 2015 WL 9589217 (D.N.J. Oct. 29, 2015), both of which predated the Third Circuit's 2022 decision in *Host*, 32 F.4th at 250 n.7. The Government's other cases, like *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 463 (7th Cir. 2020) and *Duke Energy*, 111 F.4th at 364–65, applied *Aspen Skiing* only after the "key element[]" of a termination of a prior course of dealing was established. *Otter Tail Power Co. v. United States*, 410 U.S. 366, 378 (1973), is even further afield because it was based on a firm's refusal to deal with some customers while dealing with others, allegations entirely lacking here. *See Revlimid*, 2024 WL 2861865, at *46–47 (distinguishing *Otter Tail*).

Even if the Government had to plead only "predatory purpose," it has not. Its theory that "Apple has forsaken commissions on super apps and cloud games and

sacrificed Apple Watch sales," Opp. 37, is just conjecture. The complaint's allegations along these lines are "unsupported conclusions and unwarranted inferences" not entitled to a presumption of truth. *See Host*, 32 F.4th at 248.

## II. THE COMPLAINT DOES NOT ALLEGE SUBSTANTIAL ANTICOMPETITIVE EFFECTS IN THE SMARTPHONE MARKET

The Government offers no plausible allegation that Apple's conduct has produced a substantial "anticompetitive effect" in the smartphone market. *See Microsoft*, 253 F.3d at 58–59. The Government simply speculates that consumers would have switched to other smartphones if the challenged conduct ceased. *See, e.g.*, FAC ¶¶ 73–78, 83–84, 90. This theory depends on a convoluted series of hypothetical actions by third parties: that app developers would offer the features the Government alleges Apple has restricted, *then* they would become popular, *then* consumers would find them so compelling that they would choose another phone over an iPhone offering the same feature, and *then* phone prices would decrease. *See* Opp. 23–24. The vague theory that consumers are harmed because some cross-platform technologies could exist or be better does not state a claim under *Microsoft*. *See Bakay v. Apple Inc.*, 2024 WL 3381034, at *6 (N.D. Cal. July 11, 2024).

The Government tries to sidestep its pleading obligations, suggesting it need not allege "an actual adverse effect on competition in the relevant market" that is "substantial." Opp. 26. But it elsewhere acknowledges that under *Microsoft*'s balancing test, "the plaintiff must initially provide evidence of the anticompetitive

nature of a defendant's conduct."  Opp. 18–19; *see also id.* at 25; ECF 45 at 1 n.1. The Government cites the very portion of *Microsoft* that explained that "to be condemned as exclusionary, a monopolist's act must have an 'anticompetitive effect.'"  253 F.3d at 58–59; *see also United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005) (requiring anticompetitive effects).  Strangely, the Government even suggests that anticompetitive effects are relevant only under Section 1, Opp. 26, even though both *Microsoft* and *Dentsply* were Section 2 cases.

The Government's attempt to aggregate the purported effects of separate design decisions across a disparate swath of Apple's business, Opp. 25, is contrary to Third Circuit precedent.  Courts may evaluate "the anticompetitive effect of [the defendant's] exclusionary practices considered together" only *after* the challenged practices have been deemed "exclusionary."  *LePage's Inc. v. 3M*, 324 F.3d 141, 159, 162 (3d Cir. 2003) (en banc).  The Government does not acknowledge *LePage's*, instead relying on the out-of-circuit decision in *Duke Energy*.  But that case recognized that aggregation is improper when the challenged conduct is protected as a matter of law.  111 F.4th at 355.  *Microsoft* expressly declined to aggregate effects, 253 F.3d at 78, as have many other courts, *e.g.*, *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 982 (10th Cir. 2022); *3Shape Trios A/S v. Align Tech., Inc.*, 2019 WL 3824209, at *12 (D. Del. Aug. 15, 2019).

Even if the court aggregates effects, the Government still has not alleged harm to smartphone competition.[2]

## III.   THE COMPLAINT DOES NOT ALLEGE MONOPOLY POWER

The Government fails to plausibly allege Apple possesses monopoly power in the smartphone market by either direct or indirect evidence.[3]  This is not one of the rare cases involving direct evidence, *see Microsoft*, 253 F.3d at 51, because by its own admission the Government has not alleged Apple has the "ability to control output and prices," *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434, 1441 (9th Cir. 1995); Opp. 18.  The one argument the Government musters, an implausible theory that Apple's conduct is irrational *unless* it knows it has monopoly power, Opp. 17, is circular and not a direct-evidence argument at all.  *See L.A. Land Co. v. Brunswick Corp.*, 6 F.3d 1422, 1426–27 (9th Cir. 1993).

The Government's indirect-evidence argument fares no better.  It depends on dubious market-share calculations.  *See* Opp. 13 (implicitly conceding the existence of a global market); *id.* at 14 (citing *Dentsply*, which measured market share by both

---

[2]   The Plaintiff States also lack standing to sue because they have not alleged a "tangible interference" with their "authority to regulate or enforce [their] laws," *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 769–74 (5th Cir. 2023).  That *Harrison* involved a state subordinate is immaterial, and the States' remaining cases are not to the contrary because they involved harms to a specific State's residents.  *See California v. Am. Stores Co.*, 495 U.S. 271, 283–84 (1990); *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 608 (1982).

[3]   Apple disputes that the complaint defines a proper market but assumes that it has for the purposes of this motion.

unit and revenue, and *FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 59–61 (D.D.C. 2018), which measured by revenue only "because measuring by unit would have been misleading").  It describes Apple's alleged 65–70% market shares as "dominant" and "significantly larger than 55%," but relies on cases involving very different market conditions.  *E.g.*, *Dentsply*, 399 F.3d at 187–88 ("persistently high market share between 75% and 80%" "for more than ten years"); *FTC v. AbbVie Inc.*, 976 F.3d 327, 373 (3d Cir. 2020) (71.5% share sufficient where no other competitor had even 10%).  It has no valid response to the reality that the Supreme Court has never found monopoly power "with less than 75%" share.  *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 174 (4th Cir. 2014).  And it wrongly characterizes pleading deficiencies as fact disputes.  *See, e.g.*, Opp. 14–15.

The Government cannot plausibly establish monopoly power where Apple's share of the market is weighed against competitors like Samsung and Google.  FAC ¶ 181.  That is compelling "evidence of countervailing power which would preclude monopolization." *Columbia Metal Culvert Co. v. Kaiser Aluminum & Chem. Corp.*, 579 F.2d 20, 27 n.11 (3d Cir. 1978).  The Government alleges no barriers to *expansion* by Samsung, Google, or others, *see* Opp. 15, and their ability to increase output prevents Apple from controlling smartphone output or prices.  *See Rebel Oil*, 51 F.3d at 1434.  The obvious reality is that smartphone competition is vigorous, as even the complaint implicitly recognizes.  *See* FAC ¶¶ 59, 119.

13

## IV.    THE ATTEMPTED MONOPOLIZATION CLAIMS FAIL

The Government's attempted monopolization claims are not supported by "specific, egregious conduct that evinced a predatory motivation and a specific intent to monopolize." *See Phila. Taxi Ass'n v. Uber Techs., Inc.*, 886 F.3d 332, 341 (3d Cir. 2018). The Government simply saying that Apple's conduct "lack[s] a legitimate business justification," Opp. 39, does not make it so, and there is no "smoking gun" evidence of specific intent as in the Government's cited cases. *See, e.g.*, *Microsoft*, 253 F.3d at 73. The complaint's allegations that Apple sought to make iPhone more attractive to consumers, or purportedly "sacrificed" short-term profits from apps Apple viewed as inconsistent with platform privacy and security, are most reasonably viewed as "predominantly motivated by legitimate business aims," *Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 627 (1953).

## V.    THE KITCHEN-SINK ALLEGATIONS SHOULD BE DISMISSED

If nothing else, this Court should dismiss the allegations in the Government's complaint that extend beyond the "five examples" of Apple "suppress[ing] technologies," FAC ¶ 10, and that pertain to other products and services across Apple's business. Those allegations, which are a transparent attempt to sweep into this case virtually Apple's entire business, are deficient under a straightforward application of *Twombly*. As to many, the complaint pleads no facts at all; as to others, there are no developed factual allegations explaining *what* specific practices

14

Apple engaged in, when Apple purportedly adopted those practices, or how they have affected smartphone competition. *See* FAC ¶¶ 119–25, 136–40.

The Government all but concedes its so-called "monopoly playbook" allegations should be dismissed. Opp. 27. Devoting just three sentences in response, it suggests Rule 12 "provides for dismissal of 'claims,' not allegations." *Id*. It then cites a decision from this Court, which expressly *rejected* that argument and limited surviving claims to certain well-pleaded allegations. *Stepan Co. v. Pfizer, Inc.*, 2024 WL 3199834, at *2, *5 (D.N.J. June 26, 2024). As this Court explained, the Third Circuit requires courts to first "determine which *allegations* in the complaint are merely conclusory and therefore need not be given an assumption of truth" and then "assess whether Plaintiff has provided adequate factual support for a particular claim" at the pleading stage. *Id.* at *2; *see also loanDepot.com v. CrossCountry Mortg., Inc.*, 399 F. Supp. 3d 226, 235–36 (D.N.J. 2019) (noting courts have "routinely dismissed sub-theories contained within a claim while allowing other sub-theories to survive"). No rule requires that unsubstantiated allegations remain part of this case and the basis for far-reaching, unnecessary discovery. Thus, if this Court is inclined to allow this case to proceed, at the very least the complaint's deficient allegations in paragraphs 119–125 and 136–40 should be dismissed.

## CONCLUSION

The complaint should be dismissed with prejudice in its entirety.

Dated:  October 10, 2024

Devora W. Allon, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.:    (212) 446-5967
Email:  devora.allon@kirkland.com

Cynthia E. Richman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Tel.:    (202) 955-8500
Email: crichman@gibsondunn.com

Daniel G. Swanson (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.:    (213) 219-7000
Email: dswanson@gibsondunn.com

Julian W. Kleinbrodt (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.:    (415) 393-8200
Email: jkleinbrodt@gibsondunn.com

Respectfully submitted,

*/s/ Liza M. Walsh*

Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
Tel.:    (973) 757-1100
Email:  LWalsh@walsh.law
             DArpert@walsh.law

Craig S. Primis, P.C. (*pro hac vice*)
Matthew J. Reilly, P.C. (*pro hac vice*)
K. Winn Allen, P.C. (*pro hac vice*)
Mary Elizabeth Miller (*pro hac vice*)
Luke P. McGuire (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.:    (202) 389-5000
Email:  craig.primis@kirkland.com
             matt.reilly@kirkland.com
             winn.allen@kirkland.com
             mary.miller@kirkland.com
             luke.mcguire@kirkland.com

*Counsel for Defendant Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 10, 2024, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*/s/ Liza M. Walsh*
Liza M. Walsh