UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA, *et al.*,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No. 2:24-cv-04055 (JXN) (LDW)

## STIPULATION AND ORDER GOVERNING
## ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

The Parties hereby submit the following Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents ("ESI Order").

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the Parties must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials.

NOW THEREFORE, it is hereby ORDERED.

1

## I.    DEFINED TERMS

For purposes of this ESI Order, the Definitions below shall apply.

**1.**    "Action" means the action filed in this Court under the caption *United States v. Apple Inc.*, No. 2:24-cv-04055 (JXN)(LDW), as well as any additional actions subsequently consolidated with this Action, including any consolidated discovery, pretrial, trial, post-trial, or appellate proceedings. For the avoidance of doubt, "Action" excludes pre-Complaint investigations by Plaintiffs.

**2.**    "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a), including, but not limited to, emails, calendar items, instant messages, text messages, chat messages, and other ESI.

**3.**    "DeNIST" means the act of filtering and removing system files, executable files, application files, program files, and other non-user created data from ESI that has been collected.

**4.**    "Document" means any document or electronically stored information, as the term is used in Federal Rule of Civil Procedure 34(a).

**5.**    "Format" means the internal structure of a file, which defines the way it is stored and used.

**6.**    "Native File" or "Native Format" means or refers to the Format of ESI in the application in which it was originally created and/or used by the Producing Party in the usual course of business and in its regularly conducted activities. If the Receiving Party is unable to use the native application, either due to third-party licensing issues or because the software is hardware-dependent, the Parties will meet and confer to identify an acceptable substitute production format.

2

7.      "Non-Custodial Data Source" means an enterprise system or application that stores ESI, such as a collaboration platform or database, but over which an individual custodian does not organize, manage, or maintain the ESI.

8.      "Parties" means the United States, each of the Plaintiff States, and Apple, without prejudice to or waiver of the Parties' ongoing disputes as to the proper scope of preservation or discovery.

9.      "Plaintiff State" means the State of New Jersey, State of Arizona, State of California, District of Columbia, State of Connecticut, State of Indiana, State of Maine, Commonwealth of Massachusetts, State of Michigan, State of Minnesota, State of Nevada, State of New Hampshire, State of New York, State of North Dakota, State of Oklahoma, State of Oregon, State of Tennessee, State of Vermont, State of Washington, and State of Wisconsin acting by and through their respective Attorneys General, or any other State acting by and through their respective Attorneys General which joins this Action. "Plaintiff State" and "Plaintiff States" are defined for purposes of this ESI Protocol without prejudice to or waiver of the Parties' ongoing disputes as to the proper scope of preservation or discovery.

10.     "Producing Party" means a Party that produces documents.

11.     "Receiving Party" means a Party to whom documents are produced.

12.     "Bates Number" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image or PDF page, or other tangible thing, consisting of:

      A.      An alphanumeric portion identifying the Producing party and/or other characteristics of the production; and

B.    A numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image or PDF page, or other tangible thing is unique. The alphanumeric identifier shall be no more than 25 characters in length.

13.    "Metadata" means reasonably accessible non-privileged information (i) embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

14.    "Static Image" means a representation of ESI produced by converting a Native File into a standard image Format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

15.    "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded-data, as well as extracted text files containing any text extracted from a Document or Native File. Generally, optical character recognition ("OCR") may only be used for Load Files when there is no text to extract or when a document contains redactions.

## II.    GENERAL PROVISIONS

1.    Except as specifically set forth herein, this ESI Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the District of New Jersey.

2.      The production specifications set forth in this ESI Order apply to Documents and ESI that are to be produced in the first instance in this Action.  This ESI Order does not apply to materials previously produced to any Plaintiff as part of a pre-Complaint investigation. No Party is obligated to reformat any such prior production in accordance with the production specifications in this ESI Order.

3.      This ESI Order may be modified for good cause by a Stipulated Order of all Parties or by the Court. Parties reserve their rights to seek reasonable modifications of these procedures as appropriate.

4.      If disputes arise concerning the scope and nature of a production, the Parties must promptly meet and confer to reach agreement prior to seeking leave of the Court to resolve any disputed issues. If the Parties' disagreement persists after meeting and conferring in good faith, the Parties must notify the Court of their unresolved dispute(s) and seek resolution from the Court.

5.      The Parties agree to meet and confer to the extent that new plaintiff states are added later to the Action and those states request reasonable modifications to these production specifications.

III.    **PRESERVATION**

1.      **Materials to Be Preserved.** Each Party will take reasonable and proportionate steps to preserve potentially relevant and discoverable Documents and ESI in compliance with its duties to preserve material under the Federal Rules of Evidence and the Federal Rules of Civil Procedure. The Parties agree to preserve Documents and ESI in such a way that it can be produced as stored in the ordinary course of business or in a reasonably usable form in accordance with Fed. R. Civ. P. 34(b)(2)(E)(ii).

2.      **Reduction of Costs.** To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that each Party must preserve only non-duplicative

potentially relevant ESI in its possession, custody, or control. Subject to and without waiving any protection described above, the Parties agree that:

    **A.**      The Parties will endeavor to agree upon a date limitation for the preservation of ESI; and

    **B.**      The Parties will endeavor to agree upon a list of the types of relevant ESI that should be preserved and the custodians for whom relevant ESI should be preserved. The Parties will add or remove custodians as reasonably necessary.

    **3.**     **Evidence Preservation.** The Parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) and L. Civ. R. 26.1 regarding reasonable and proportionate steps taken and to be taken to preserve evidence relevant to the issues reasonably evident in this case. The Parties agree that the following categories of ESI need not be preserved:

    **A.**      Back-up and legacy IT systems and tapes used for disaster recovery;

    **B.**      Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

    **C.**      Logs of calls made from cellular phones;

    **D.**      Deleted, fragmented, slack, or unallocated data accessible only by forensics;

    **E.**      Data stored in random access memory ("RAM"), temporary files, or other ephemeral non-message data that are difficult to preserve without disabling the operating system;

    **F.**      Systems, server, or network logs;

G.    Dynamic fields of databases or log files that are not retained in the usual course of business;

H.    Automatically saved interim versions of documents and email;

I.    Temporary files;

J.    On-line access data such as temporary internet files, history, cache, and cookies;

K.    Data in Metadata fields that are frequently updated automatically, such as last-opened date or similar fields;

L.    Systems no longer in use that cannot be accessed as of January 6, 2020;

M.    Individuals' data subject to routine disposition required by privacy regulations;

N.    Information created or copied during the routine, good-faith performance of processes for the deployment, migration, retirement, and/or disposition of computer equipment by the Party that is duplicative of information that resides in a reasonably accessible data source; and

O.    Voicemail messages that are not contained in a party's email system.

4.    **No Preclusion.** Nothing in this ESI Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of Documents or ESI are not reasonably accessible or otherwise subject to preservation, collection, or production obligations.

5.    **Preservation Does Not Affect Discoverability or Claims of Privilege.** By preserving Documents and ESI for the purpose of this Action, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

7

IV.    **COLLECTION AND REVIEW**

1.    **Meet and Confer.** The Parties agree that in responding to any Fed. R. Civ. P. 34 request, they will meet and confer about methods to search Documents in order to identify Documents that are subject to production in discovery and filter out Documents that are not subject to discovery.

2.    **Excluded from Collection, Review, and Production.** The Parties do not need to collect and review the excluded ESI listed in Section III.3. The State Plaintiffs do not need to produce duplicate materials already produced, or expected to be produced, by the United States.

3.    **TAR, Search Terms, or Other Methods.** The Parties will meet and confer in good faith regarding the use of technology-assisted review ("TAR") or a similar tool, or search terms and custodians used to identify responsive Documents and ESI. If the Parties agree to use search terms and custodians to identify responsive documents, Parties serving requests for production of documents may identify search terms and custodians following service of the requests as a part of the meet and confer process. The Parties will meet and confer in good faith regarding the process for fulfilling document production obligations within 10 days after service of responses and objections. As part of the meet and confer process, when requested, Parties must serve hit reports (at the search phrase and search term level) within 10 days from the date of the request and will provide counterproposals on search terms within 10 days of serving the requested hit reports. The Parties will provide counterproposals on custodians within 10 days after the meet and confer. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search methods, the Parties may raise such issues for resolution by the Court or its designee.

4.    **Responsiveness Review Permitted.** Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to

determine if Documents and ESI captured by search terms are in fact responsive to the Receiving Party's request.

5.      **Production of All Documents Captured.** Nothing in this Order may be construed or interpreted as requiring the production of all Documents and ESI captured by any search term or TAR if any such Documents are reasonably deemed not responsive to the Receiving Party's request or are otherwise privileged.

6.      **Processing and Filtering.** Each Party will use its best efforts to filter out all common system files, executable files, program files, application executable files, and any other non-user created data, such as those that exist in the National Software Reference Library ("NSRL") hash set list produced by the National Institute of Standards and Technology ("NIST"). The above-described filtering is commonly referred to as "deNISTing." The Parties may also filter out the following files or file types:

    (a)     ESI affected by ransomware or malware or that otherwise has been corrupted or is unable to be processed without extraordinary efforts;

    (b)     Files that are zero bytes in size (i.e., do not contain content); and

    (c)     Other files or file types as agreed to by the Parties.

7.      **De-Duplication.** Each Party is required to produce only a single copy of a responsive document. A Producing Party will use its best efforts to de-duplicate across custodians and at the family-level (i.e., if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document). Each Party will use its best efforts to de-duplicate responsive Documents and ESI based on Source Hash, MD5 hash values, or other industry standard methods. For emails with families, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through hash values is not possible, the

Parties must meet and confer to discuss any other proposed method of de-duplication. A Producing Party must make a reasonable effort to identify all agreed upon Custodians who were in possession of any de-duplicated Documents and ESI through an appropriate Load File field, such as All Custodians. In the event of rolling productions of Documents or ESI, the Producing Party will, as needed, supplement Load Files with updated All Custodian information.

**8.    Email Threading.** Production of a most inclusive email thread does not relieve the Producing Party of its obligation to produce responsive prior or lesser-included emails. No Document or ESI will be intentionally withheld from production solely on the basis that it is included in a produced more-inclusive email.

**V.    PRODUCTION OF ESI**

The Parties must produce all Documents and ESI in the following Format:

**1.    ESI.** ESI and Documents that are produced as scanned images should be produced in Standard Group IV black and white single-page TIFF images at a minimum of 300 DPI, 1 bit, with the exception of certain Documents and ESI identified in Section V.2, below, which may be produced in native Format. If after reviewing any black and white Document or ESI, a Receiving Party requests color in a document, the Parties must engage in discussion regarding production of the specified document in color, which production will not be unreasonably withheld. Any Documents produced in color should be produced as .JPEG files. Hidden content (comments, draft markup, etc.) will be made visible prior to image conversion; if doing so is not technically feasible or reasonable for specific file formats, the Producing Party will so inform the Receiving Party. The Parties must provide image Load Files in Concordance (.OPT) Format to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant Metadata (including the fields described in Appendix A) should be provided in a Concordance .DAT Format, or other standard, compatible file Format and extension as the Receiving Party

specifies. For Documents and ESI from which text cannot be extracted, such as non-native or non-searchable Native Files, the text will be generated using Optical Character Recognition ("OCR") and provided as multi-page text (.txt) files or other standard, compatible file Format as specified by the Receiving Party.

2.     **Native Format.** Parties will produce agreed-upon Documents and ESI in Native Format, including PowerPoints and spreadsheets (e.g., Excel or CSV files), and other files that cannot be converted to TIFF or PDF (such as audio and video files). Native Files should contain the Bates Number in the file title. Native Files should be accompanied by a Bates stamped placeholder slipsheet that contains the beginning Bates Number, any confidentiality designation, and text indicating "FILE PRODUCED NATIVELY" displayed on the page. Wherever feasible, the Producing Party must include accompanying Metadata in the Load File. Spreadsheets with redacted information may be redacted and produced in Native Format; all other documents with privileged or redacted information must be redacted and produced in non-Native Format. For any other types of documents, the Parties will meet and confer to discuss requests for the production of files in Native Format on a case-by-case basis. Notwithstanding any production permitted under this ESI Order in non-Native Format, where the Receiving Party believes that production of the Native File is reasonably necessary to the document's comprehension or use, a request for the Native File shall not be unreasonably denied.

3.     **Parent-Child Relationships.** Except as to the materials listed in Section III.3 that need not be preserved or collected, parent-child relationships (the association between an attachment and its parent Document or ESI) must be preserved whenever reasonable in such a way that a Document or ESI and any attachments to that Document or ESI are produced in the same production set and are identifiable as parent and child. For avoidance of doubt, documents that are

linked are not part of the same family for purposes of this ESI Order. Linked Documents are governed by Section V.10 below.

**4.     Metadata Fields.** The Parties will provide the Metadata fields identified in the attached Appendix A to the extent such fields are reasonably available.

**5.     Document Unitization.** If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments must be maintained as it existed in the original when creating the image file. For Documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of Documents in a Document collection (*e.g.*, cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) must be maintained through the scanning or conversion process.

**6.     Redacted Documents.** The Parties may redact information that is (1) privileged or protected from discovery as work product or by reason of other applicable privilege or immunity, (2) protected Personal Information as defined in the Protective Order, (3) Highly Confidential Source Code, as defined in the Source Code Protocol or (4) information about unannounced, non-iPhone hardware products that are still in active development. A Party or non-party asserting a privilege claim must redact only those portions of the document that are protected by the privilege. If a document contains both privileged and non-privileged communications, the non-privileged communications must be produced. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

Documents that contain redactions will be produced in TIFF/JPG or PDF. The Producing Party will provide searchable OCR text for those portions of the document that have not been

redacted. The Producing Party will provide a Concordance-delimited DAT file containing the Metadata fields outlined in Appendix A to the extent that such Metadata fields are not part of the redaction, with the exception that if a Party utilizes technology that permits the redaction of files that are not typically produced in image Format (such as spreadsheets), those files may be produced in Native Format with redactions. Documents that are produced with redactions will be noted as "Redacted" in the EProperties field. Documents with any Metadata field redacted will be produced with a Redaction Status "Metadata Redacted" in the EProperties field indicating the Metadata for that document has been redacted in the DAT file.

7.     **Production Media.** A Producing Party must produce responsive documents in an encrypted electronic form via Secure File Transfer, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon ("Production Media"). The following information must be provided on the physical Production Media: (1) a reference to this case number, (2) the Producing Party's name, (3) the production date, and (4) the production volume. The Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, where practicable, and shall also be provided in an accompanying letter.

8.     **Embedded Objects.** Non-image files embedded within Documents and ESI, such as spreadsheets within a PowerPoint or Keynote, must be extracted as separate Documents and treated like attachments to the Document in which they were embedded. Graphic objects embedded within Documents or emails, such as logos, signature blocks, and backgrounds need not be extracted as separate Documents. To the extent that embedded images present recognition problems during processing, the Parties will meet and confer to discuss any proportional and appropriate countervailing measures.

9.      **Compressed Files.** Container file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) must be decompressed in a manner that ensures any and all nested containers are also decompressed into the lowest uncompressed element, resulting in individual files. The container file(s) itself must not be produced.

10.     **Linked Files and Collaborative Work Environments.** For each document produced from Collaborative Work Environments for which document-specific URLs are reasonably accessible ("Accessible CWEs"), the Producing Party will populate a metadata field (DOCUMENTURL) with a delimited list of all URLs that uniquely point to that document. The Producing Party will also extract all Accessible CWE URLs from produced documents (HYPERLINKADDRESS), and match the HYPERLINKADDRESS values for produced documents with the DOCUMENTURL metadata for documents produced from Accessible CWEs. For any matches, the Producing Party will provide a cross-reference log that identifies the match. The log will include the following fields: DOCID, populated with the document control number Bates stamped on the first page of the document; HYPERLINKADDRESS, populated with the extracted URLs that link to any Accessible CWEs; and LINKEDATTACHIDS, populated with the DOCIDs of produced documents with DOCUMENTURL values corresponding to that document's HYPERLINKADDRESS entries.

A Receiving Party may make reasonable and proportionate requests that the Producing Party conduct a reasonable manual search for Documents corresponding to links identified by the Receiving Party in produced documents. A Receiving Party will not request documents that are already available in the production and identified by the LINKEDATTACHIDS and DOCUMENTURL fields. That Producing Party shall consider that request in good faith and the request shall not be unreasonably denied if it appears on the face of the produced document that

the linked document is relevant. For each link identified by the Receiving Party, the Producing Party shall conduct a reasonable search for the document corresponding with the link. To the extent the Producing Party is able to locate and access the linked documents, the Producing Party shall process and produce relevant, non-privileged documents corresponding with the links with reasonably available Metadata, including DOCUMENTURL, HYPERLINKADDRESS, and LINKEDATTACHIDs, as appropriate. The Producing Party may not be able to guarantee that the document collected is the same version as the shared link but will conduct a reasonable search given available information. For documents produced pursuant to this Section V.10, the Producing Party is not required to conduct any further search of documents corresponding with the links. The provisions of this Section apply to any type of ESI (including emails, presentations, spreadsheets, and other types of documents).

11.     **Text and Chat Messages.** The Parties must preserve, collect, and produce relevant text, chat, and ephemeral messages. When producing text and chat messages (*e.g.*, messages sent via SMS, Teams, Slack, WhatsApp, Signal, iMessage, or other short messaging platforms), those messages must be unitized on the conversation/channel level into 24-hour calendar-day chunks, or conversation days, with each conversation day including all messages in that conversation or channel on a given calendar day. Each conversation day must be reviewed and produced as a single record, with any applicable redactions as provided in Section V.6. The records must be produced with the Metadata specified in the "IM/Text/Chat" column in Appendix A, including TXT-THREAD-GROUP (the DOCID of the first conversation day in a given discussion/channel) and TXT-PARTICIPANTS (a list of participant names). The Producing Party will use best available automated solutions to assign full names to participants who are identified only by phone number, email address, handle, or other identifier. If requested by the Receiving Party, the Producing Party

agrees to employ commercially reasonable efforts to locate the full names of participants in specific documents identified by the Receiving Party.

12.    **Voice Messages, Audio Files, and Video Files.** The Parties must preserve, and take reasonable steps to identify, collect, and produce all relevant voice messages, audio files, and video files. These records should be produced in MP4, AVI, WAV or MP3 format and adhere to the specifications regarding Native Format. The records must be produced with any applicable metadata fields listed in Section 6(n), including, but not limited to, SENTDATETIME, FROM, and TO fields (with full names assigned for any participants identified only by phone number when those names may be determined by best available automated solutions or manually when specifically requested by the receiving party). In the event a Party is unable to collect and produce the voice messages as native audio or video files, the party shall produce a manual transcription of each relevant file.

13.    **Passwords and Encryption.** To the extent Documents and ESI are password-protected or encrypted, the Producing Party shall use reasonable efforts to produce relevant non-privileged documents without protection or encryption where possible and proportionate to do so. The Parties shall meet and confer to resolve any disputes.

14.    **Foreign Language Documents.** All documents shall be produced in their original language. Where a requested document exists in a foreign language and the Producing Party also has an English-language version or English-language summary of that document that it prepared for non-litigation purposes, the Producing Party shall produce both the original document and all English-language versions or summaries. Any foreign language documents that are referenced or included in an answer to an interrogatory shall be machine translated into English by the Producing Party upon request from the Receiving Party. Nothing in this ESI Order shall require a Producing

Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

15.     **Re-productions.**  Documents previously produced by Defendant in response to any civil investigative demand issued by any Plaintiff need not be re-produced in this case. Documents previously produced in another litigation, arbitration, government inquiry or other matter that are re-produced in this matter may be re-produced in the same manner and form as originally produced in the other matter. For any documents that are reproduced in this manner, if a privilege log was provided in the original matter, the corresponding privilege log entries from the original matter will be produced simultaneously. The Receiving Party may challenge privilege designations using the procedures governing privilege challenges as detailed in the Protective Order in this Action.

16.     **Third-Party Productions.** Notwithstanding the foregoing, all documents that the Producing Party received from third parties should be produced in the same manner and form, including Native Files and all Metadata, as the Producing Party received from the producing third party.

17.     **Databases and Structured Data.** The Parties agree to meet and confer as needed regarding the production Format and scope of data contained in databases, data sources, and logs to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party.  To avoid doubt, information will be considered reasonably usable when produced in CSV format or other commonly used electronic formats, including other character-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-

dependent, the Parties agree to meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the Receiving Party to view or access the ESI.

## VI.     PRIVILEGE LOGS

1.     **Privilege Log Production.** L. Civ. R. 33.1(c), 34.1, and 36.1(b) apply to assertions of a claim of privilege. All Parties and non-parties will produce privilege logs within 45 days after each document production. For each document on which a privilege is claimed, the privilege logs must provide sufficient information to enable the parties to assess the applicability of the privilege claimed. For any Document or ESI withheld or redacted, the Producing Party will produce privilege logs in MS Excel (.xlsx) Format. A Party or non-party seeking to withhold or redact a document under the attorney-client privilege, deliberative process privilege, work product protection, or any other privilege or protection must, at a minimum, provide the essential elements necessary to sustain a claim of privilege, including a description of the document's subject matter with sufficient detail to enable the Parties to assess the privilege claim and the facts relied upon to support the claim.

The Parties agree that the following privileged or otherwise protected communications may be excluded from privilege logs and can be excluded from production:

> A.     Documents or communications sent solely between outside counsel for Defendant (or persons employed by or acting on behalf of such counsel);
>
> B.     Documents or communications sent solely between outside counsel for Defendant (or persons employed by or acting on behalf of such counsel) and Defendant;
>
> C.     Documents or communications sent solely between counsel for the United States (or persons employed by or acting on behalf of such counsel for the

U.S. Department of Justice including the United States Attorney for the District of New Jersey);

**D.**      Documents or communications sent solely between counsel for any Plaintiff States (or persons employed by or acting on behalf of the office of the attorney general of any State);

**E.**      Documents or communications sent solely between or among counsel for the United States (or persons employed by or acting on behalf of such counsel) and counsel for any Plaintiff States (or persons employed by or acting on behalf of the office of the attorney general of any Plaintiff State);

**F.**      Privileged draft regulatory filings; and

**G.**      Privileged draft investigation or litigation filings.

    **2.**      **Placeholder Slipsheets.** If any member of a produced Document family is withheld on grounds of privilege or work-product, the Producing Party will produce a Bates stamped placeholder slipsheet that identifies the Document as withheld as privileged and will identify the Document in the Privilege Log by the Bates Number on the placeholder slipsheet. If the withheld Document is part of a responsive document family, the Parties will insert a placeholder to indicate that the Document has been withheld from that family and will produce all non-privileged Documents in the family.

    **3.**      **Privilege Log Contents.** Privilege logs must contain the following information, to the extent reasonably available:

**A.**      BegBates;

**B.**      Where applicable, Parent BegBates;

**C.**     The Custodian or Custodial or Non-Custodial Data Source from which the Document was collected;

**D.**     The author or sender of the document according to Document Metadata (to the extent a document is comprised of an email chain, the name of the sender on the most recent email in the chain will be identified);

**E.**     The designated addressees or copyees of the document, including CC and BCC (copyees and blind copyees shall appear in separate fields) according to Document Metadata where available (to the extent a document is comprised of an email chain, the name(s) of the addressee(s) on the most recent email in the chain will be identified);

**F.**     The number of pages;

**G.**     The date of the document or communication according to Document Metadata;

**H.**     The title of the Document or email subject line or Document file name, according to Document Metadata, which may be designated as redacted on the log in accordance with Section V.6;

**I.**     A description, pursuant to Fed. R. Civ. P. 26(b)(5)(A)(ii), of the nature of the withheld Document that, without revealing privileged or protected information, enables other Parties to assess the claim of privilege or other protection from disclosure;

**J.**     The name of the attorney(s) or legal organization who provided the legal advice at issue, from whom the legal advice at issue is requested, who

directed the facilitation of the legal advice at issue, and/or who requested or prepared the Document; and

K.   The privilege or protection asserted (i.e., attorney-client privilege, work product doctrine).

4.   **Accompanying Legends.** Each privilege log must include a separate legend that identifies attorneys who acted in a legal capacity that appear on the privilege log. For each entry of the privilege log, all attorneys acting in a legal capacity with respect to that particular document or communication will be marked with the designation ESQ after their names. The privilege log must also include the name and company affiliation for each listed individual. Upon request, a Producing Party must make reasonable efforts to produce the names of all members of a Producing Party's email listserv or group (including last name, first name, and any ESQ designation) for a listserv or group in a privilege log. Upon request, a Producing Party must make reasonable efforts to produce the title of specific individuals listed in a privilege log.

5.   **Categorical Privilege Designations.** If a Producing Party contends that all Documents or ESI of a particular type or category are privileged, or requiring the creation of an individualized privilege log is not reasonable or proportionate for documents of a particular type or category, they will meet and confer with the Receiving Party on identifying such Documents or ESI on a privilege log by category rather than individually. The Receiving Party will consider any such request in good faith. The Producing Party's categorical privilege log entry must still provide the Receiving Party, and the Court if necessary, with information sufficient to evaluate the Producing Party's privilege claims. The Parties need not include in any privilege log the ESI listed in Section III.3.

6.    **Single Entries.** A single Document containing multiple email messages in the body of the document (i.e., in an email chain) may be logged as a single entry.

7.    **Assert All Bases.** If the Producing Party contends that more than one basis for withholding applies to a single document, all bases must be asserted in the privilege log.

8.    **Privilege Disputes.** The Parties will comply with L. Civ. R. 37.1 to address any dispute over a Party's claim of privilege or privilege log before seeking the Court's intervention. Upon production of deprivileged documents, the Producing Party will produce an index mapping the Bates Number of each deprivileged document to the privilege log entry number used to identify that document on the privilege log.

VII.   **MISCELLANEOUS**

1.    **Costs of Production.** Unless this Court orders otherwise for good cause shown, each Party and non-party will bear the costs of collecting, processing, reviewing, and producing its own documents.

2.    **No Waiver.** Matters not addressed in this ESI Order shall not be deemed waived. Rather, any such matters shall be addressed by the Parties at a later time through additional meeting and conferring, and, if necessary, submitted to the Court for resolution.

3.    **Modification.** This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

Dated: March 31, 2025

*/s/ Johnathan Lasken*
Jonathan H. Lasken
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Tel: (202) 598-6517
Email: jonathan.lasken@usdoj.gov

*Attorneys for Plaintiff United States of America*

Dated: March 31, 2025

/s/ Lauren Van Driesen
Lauren E. Van Driesen
Deputy Attorney General
Division of Law – Special Litigation
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-5271
Email: lauren.vandriesen@law.njoag.gov
*Attorney for Plaintiff State of New Jersey*

Dated: March 31, 2025

/s/ Vinny Venkat
Vinny Venkat
Assistant Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Tel: (602) 542-7757
Email: vinny.venkat@azag.gov

*Attorney for Plaintiff State of Arizona*

Dated: March 31, 2025

/s/ Brian Wang
Brian Wang
Deputy Attorney General
Office of the Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco CA 94102
Tel: (415) 510-3487
Email: Brian.Wang@doj.ca.gov

*Attorney for Plaintiff State of California*

Dated: March 31, 2025

/s/ Elizabeth Arthur
Elizabeth G. Arthur
Assistant Attorney General
Public Advocacy Division
400 6th Street NW, 10th Floor
Washington, D.C. 20001
Tel.: (202) 442-9864
Email: elizabeth.arthur@dc.gov

*Attorney for Plaintiff District of Columbia*

23

Dated: March 31, 2025

*/s/ Nicole Demers*
Nicole Demers
Deputy Associate Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06106
Tel.: (860) 808-5030
Email: nicole.demers@ct.gov

*Attorney for Plaintiff State of Connecticut*

Dated: March 31, 2025

*/s/ Jennifer Linsey*
Jennifer Linsey
Deputy Attorney General
Consumer Protection Division
Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204
Tel.: (463) 261-7401
Email: Jennifer.Linsey@tg.in.gov

*Attorney for Plaintiff State of Indiana*

Dated: March 31, 2025

*/s/ Christina Moylan*
Christina M. Moylan
Assistant Attorney General
Consumer Protection Division
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel.: (207) 626-8800
Email: christina.moylan@maine.gov

*Attorney for Plaintiff State of Maine*

Dated: March 31, 2025

*/s/ David Mlaver*
David Mlaver
Assistant Attorney General
Antitrust Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Tel.: (617) 963-2414
Email: David.mlaver @mass.gov

*Attorney for Plaintiff State of Massachusetts*

Dated: March 31, 2025

*/s/ Jason Evans*
Jason R. Evans
Division Chief
Corporate Oversight Division
Michigan Department of Attorney General
525 W Ottawa St.
Lansing, MI 48933
Tel.: (517) 335-7622
Email: EvansJ@michigan.gov

*Attorney for Plaintiff State of Michigan*

Dated: March 31, 2025

*/s/ Justin Moor*
Justin Moor
Assistant Attorney General
455 Minnesota Street, Suite 1400
Saint Paul, MN 55101-2130
Tel.: (651) 724-9627
Email: justin.moor@ag.state.mn.us

*Attorney for Plaintiff State of Minnesota*

Dated: March 31, 2025

*/s/ Raquel Fulghum*
Raquel Fulghum
Deputy Attorney General
Office of the Nevada Attorney General
100 North Carson Street
Carson City, NV 89701-4717
Tel.: (775) 684-1100
Email: rfulghum@ag.nv.gov

*Attorney for Plaintiff State of Nevada*

Dated: March 31, 2025

*/s/ Alexandra Sosnowski*
Alexandra C. Sosnowski
Assistant Attorney General
Consumer Protection and Antitrust Bureau
New Hampshire Department of Justice
Office of the Attorney General
One Granite Place South
Concord, NH 03301
Tel.: (603) 271-2678

25

Email: Alexandra.C.Sosnowski@doj.nh.gov

*Attorney for Plaintiff State of New Hampshire*

Dated: March 31, 2025

*/s/ Elinor Hoffmann*
Elinor R. Hoffmann
Chief, Antitrust Bureau
New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
Tel.: (212) 416-8598
Email: Elinor.Hoffmann@ag.ny.gov

*Attorney For Plaintiff State of New York*

Dated: March 31, 2025

*/s/ Elin Alm*
Elin S. Alm
Assistant Attorney General
Christopher G. Lindblad
Assistant Attorney General
Consumer Protection and Antitrust Division
Office of Attorney General
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Tel.: (701) 328-5570
Email: ealm@nd.gov
clindblad@nd.gov

*Attorney for Plaintiff State of North Dakota*

Dated: March 31, 2025

*/s/ Robert Carlson*
Robert J. Carlson
Senior Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street, Suite 1000
Tulsa, OK 74119
Tel.: (918) 581-2285
Email: robert.carlson@oag.ok.gov

*Attorney for Plaintiff State of Oklahoma*

Dated: March 31, 2025

*/s/ Timothy Smith*
Timothy D. Smith
Senior Assistant Attorney General

Antitrust and False Claims Unit
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel.: (503) 934-4400
Email: tim.smith@doj.state.or.us

*Attorney for Plaintiff State of Oregon*

Dated: March 31, 2025

*/s/ David McDowell*
J. David McDowell
Deputy, Consumer Protection Division
Office of the Attorney General and Reporter
P.O Box 20207
Nashville, TN 37202
Tel.: (615) 741-8722
Email: David.McDowell@ag.tn.gov

*Attorney for Plaintiff State of Tennessee*

Dated: March 31, 2025

*/s/ Luminita Nodita*
Luminita Nodit
Assistant Attorney General
Antitrust Division
Washington Attorney General's Office
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
Tel.: (206) 254-0568
Email: lumi.nodit@atg.wa.gov

*Attorney for Plaintiff State of Washington*

Dated: March 31, 2025

*/s/ Laura McFarlane*
Laura E. McFarlane
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
Tel. (608) 261-5810
Email: mcfarlanele@doj.state.wi.us

*Attorney for Plaintiff State of Wisconsin*

Dated: March 31, 2025

*/s/ Jill Abrams*
Jill S. Abrams
Assistant Attorney General

27

109 State Street
Montpelier, Vermont
Tel.: (802) 828-1106
Email: jill.abrams@vermont.gov

*Attorney for Plaintiff State of Vermont*

Dated: March 31, 2025                    */s/ Lisa Walsh*
                                         Liza M. Walsh
                                         Douglas E. Arpert
                                         WALSH PIZZI O'REILLY FALANGA LLP
                                         Three Gateway Center
                                         100 Mulberry Street, 15th Floor
                                         Newark, New Jersey 07102
                                         Tel.: (973) 757-1100
                                         Email: lwalsh@walsh.law
                                         Email: darpert@walsh.law

                                         Craig S. Primis, P.C.
                                         Winn Allen, P.C.
                                         KIRKLAND & ELLIS LLP
                                         1301 Pennsylvania Avenue, N.W.
                                         Washington, DC 20004
                                         Tel.: (202) 389-5000
                                         Email: craig.primis@kirkland.com
                                         Email: winn.allen@kirkland.com

                                         Devora W. Allon, P.C.
                                         Alexia R. Brancato, P.C.
                                         KIRKLAND & ELLIS LLP
                                         601 Lexington Avenue
                                         New York, NY 10022
                                         Tel.: (212) 446-4800
                                         Email: devora.allon@kirkland.com
                                         Email: alexia.brancato@kirkland.com

                                         *Attorneys for Defendant Apple Inc.*

**IT IS SO ORDERED.**

Dated:  May 22 , 2025                    _____
                                         HON. LEDA DUNN WETTRE
                                         United Stated Magistrate Judge

APPENDIX A: METADATA FIELDS FOR EDISCOVERY

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/ Chat |
|---|---|---|:---:|:---:|:---:|:---:|:---:|
| DOCID | The unique sequential document control number of the first page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDDOC | The unique sequential control number of the last page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| COMPANIES | Globally populated field containing the name of producing party (not the law firm or vendor name). Not pulled from metadata. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| CUSTODIAN | Name of the individual, or group/department for shared resources, from whose files the document originated. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ALLCUSTODIANS | All custodians who were in possession of a deduplicated document, including the person or group identified in the CUSTODIAN field. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| MEDIAID | The unique identifier applied to each physical piece of media delivered (e.g., ABC001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| VOLUMENAME | Unique production volume identifier applied (e.g., ABC001-001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| BEGATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the document control number of the parent document. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |

1

APPENDIX A: METADATA FIELDS FOR EDISCOVERY

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/ Chat |
|---|---|---|---|---|---|---|---|
| ENDATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the ENDDOC of the last child record in the family group. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| EPROPERTIES | Indicates record type, privilege, translation, and other notations. Include all that apply, only the applicable record type or notation category names should be entered: Record Type: Edoc, Edoc Attachment, Email, Email Attachment, Hard Copy, Calendar, Text Message, Text Attachment, IM, Chat, Chat Attachment, Audio, Video, Voicemail Other Notations: Placeholder, Translation, Translated Privilege Notations: Redacted, Privileged, Family Member of Priv Doc | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| TIMEZONE | The time zone in which the custodian is normally located. | Note Text | | ✓ | ✓ | ✓ | ✓ |
| FOLDERLABEL | Full folder path of email within a mail store when collected, including file name; or full folder path of text messages or chats when collected including file name; or Hard Copy folder/bindertitle/label where available. Prepend with Custodian Name (sample: Smith, James-Inbox\Active). | Multi-Entry | ✓ | ✓ | | ✓ | ✓ |
| FROM | Sender of the Email or Calendar item. | Note Text | | ✓ | | ✓ | |

2

**APPENDIX A: METADATA FIELDS FOR EDISCOVERY**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| TO | Primary recipients of the Email or Calendar Item. | Multi-Entry | | ✓ | | ✓ | |
| CC | Copyees of the Email or Calendar Item. | Multi-Entry | | ✓ | | ✓ | |
| BCC | Blind Copyees of the Email or Calendar Item, including in deduplicated documents. | Multi-Entry | | ✓ | | ✓ | |
| SUBJECT | Subject line of the Email, Calendar Item, or Notes item. | Note Text | | ✓ | | ✓ | |
| DATEHC | Date of hard copy documents, if coded. Format: MM/DD/YYYY. Leave time segment blank. | Date | ✓ | | | | |
| DATETIMESENT | Date and time the Email or Calendar Item was sent. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | ✓ | | ✓ | |
| DATETIMERECEIVED | Date and time the Email or Calendar Item was received. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | ✓ | | ✓ | |
| HEADER | The internet header information from each Email. | Note Text | | ✓ | | ✓ | |
| INTERNETMSGID | Internet message ID assigned by the outgoing mail server which typically includes messageid and a domain name. Example: 0E6648D558F338179524D555@m1p.innovy.net | Note Text | | ✓ | | ✓ | |
| EMAILMESSAGEID | Unique identifier of email messages in mail stores. EntryID for Microsoft Outlook, the UniqueID (UNID) for Lotus Notes, or equivalent value for other proprietary mail store formats where available. | Note Text | | ✓ | | ✓ | |
| INREPLYTOID | Internet message ID of the Email being replied to. | Note Text | | ✓ | | ✓ | |

3

APPENDIX A: METADATA FIELDS FOR EDISCOVERY

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/ Chat |
|---|---|---|---|---|---|---|---|
| CONVERSATIONIND EX | Conversation index value for Microsoft Exchange emails. | Note Text | | ✓ | | ✓ | |
| IMPORTANCE | Indicates priority level set for message. | Note Text | | ✓ | | ✓ | |
| DELIVERYRECEIPT | Delivery receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| READRECEIPT | Read Receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| SENSITIVITY | Sensitivity field from Email messages or calendar items. | Note Text | | ✓ | | ✓ | |
| REVISION | Revision number extracted from metadata of native file. | Note Text | | | ✓ | | |
| DATECREATED | Date and time the electronic file was created. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | | ✓ | | |
| DATELASTMODIFIE D | Date and time the electronic file was last modified. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | ✓ | | |
| EORGANIZATION | "Company" field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| EAUTHOR | Author field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| LASTAUTHOR | Last Saved By field value pulled from metadata of a native file. | Note Text | | | ✓ | | |
| ESUBJECT | Title or Subject field value pulled from metadata from electronic file. | Note Text | | | ✓ | | |

4

**APPENDIX A: METADATA FIELDS FOR EDISCOVERY**

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/Chat |
|---|---|---|---|---|---|---|---|
| FILENAME | Original file name of the native file, including file extension. | Note Text | | ✓ | ✓ | ✓ | ✓ |
| APPLICATION | Application used to create or transmit the original native files, document, message, appointment (e.g., WhatsApp, Excel, Slack, Outlook, Snapchat, Word, Twitter, Gmail, Tango). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| FILEEXTENSION | File extension of original native file; e.g. XLSX, PDF, DOCX | Max 5 char. | | ✓ | ✓ | ✓ | |
| FILEPATH | Full qualified original path to the native when collected, including original file name. Prepend with recognizable Custodian Name; e.g. Smith, James- C\My Documents\Sales Info\ACME\2017- Monthly-Sales.xlsx | Multi-Entry | | ✓ | ✓ | ✓ | |
| DOCLINK | File path location to the current native file location on the delivery medium. | Note Text | | | ✓ | | |
| DATESTART | Start date and time of calendar appointments or voice messages. For Text Message or Chat Conversation Days, populate with either the date and time of the first message in the Conversation Day, or the date and time that the 24-hour period began. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |

## APPENDIX A: METADATA FIELDS FOR EDISCOVERY

| Field Name | Field Description | Field Type | Hard Copy | Email | Other ESI | Calendar Items | IM/Text/ Chat |
|---|---|---|---|---|---|---|---|
| DATEEND | End date and time of calendar appointments or voice messages. For Text Message or Chat Conversation Days, populate with either the date and time of the last message in the Conversation Day, or the date and time that the 24-hour period ended. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| ACCOUNT | Unique account ID | Note Text | | | | | ✓ |
| DURATION | The elapsed time of the audio, video, voice message. Format HH:MM:SS | Note Text | | | ✓ | | |
| TXT-CHATROOMNAME | Name of chat room used in the communications. | Note Text | | | | | ✓ |
| TXT- PARTICIPANTS | List of participant names and/or telephone numbers. | Note Text | | | | | ✓ |
| TXT-THREAD-GROUP | Populate with the DOCID of the first Text Message or Chat Conversation Day in a conversation or chat. | Note Text | | | | | ✓ |
| HASHMD5 | Document MD5 hash value (used for deduplication or other processing). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| HASHSHA | Document SHA hash value (used for deduplication or other processing). | Note Text | | ✓ | ✓ | ✓ | ✓ |
| DOCUMENTURL | Populated with a delimited list of all URLs that uniquely point to a document produced from an Accessible CWE. | | | ✓ | ✓ | ✓ | ✓ |

Throughout, multiple entries should always be separated with a semi-colon followed by a space.

6