

**U.S. Department of Justice**

Antitrust Division

*Liberty Square Building*

*450 5th Street, N.W.*
*Washington, DC 20530*

September 10, 2025

**VIA ECF**
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Fed. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

   Re: *United States of America, et al. v. Apple Inc.*, No. 2:24-cv-04055 (JXN-LDW)
    Plaintiffs' Updated Status Letter

Dear Judge Wettre:

  The United States and Plaintiff States (collectively, "Plaintiffs") respectfully submit this letter to update the Court on matters addressed in the Parties' Joint Status Letter submitted August 18, 2025 (ECF No. 303), and the Parties' further work to date. Apple declined Plaintiffs' request to submit a joint update. Plaintiffs informed Apple of the topics below before submitting this letter, and Apple reserved its right to respond to this filing.

  I. **The Parties' Work to Date**

  *Investigation Materials.* Plaintiffs substantially completed their production of Investigation Materials in June 2025 and produced additional post-investigation materials sought by Apple on September 5, 2025. In all, Plaintiffs produced more than 115,000 documents.

  *Discovery on Non-Parties.* Apple has served 21 subpoenas on non-parties. Plaintiffs served follow-on subpoenas to 20 of these non-parties and 4 subpoenas on additional non-parties. The Parties are engaging with the relevant non-parties regarding these subpoenas and expect to serve additional subpoenas in the coming weeks.

  *Written Discovery and Document Production.* The Parties have met and conferred eleven times for thirteen hours over Plaintiffs' First Set of Requests for Production. Although Apple produced more than 10,000 documents in response to these Requests, most Requests remain

outstanding.[1] Disputed matters identified in the Joint Status Letter and below will require the Court's attention. Plaintiffs would appreciate the Court's instruction as to how these disputes should be efficiently presented for adjudication, so the timeframe for production does not result in delay to the overall discovery schedule.

## II. Discovery Issues Raised in Joint Status Letter

***Document Custodians.*** The Parties are at an impasse over Apple's refusal to produce six human resources ("HR") spreadsheets disclosing the roles and responsibilities of employees over a six-year period that would aid Plaintiffs in identifying custodians. These spreadsheets are a necessary precursor to meaningful negotiations over document custodians.[2] In other litigation, Apple successfully demanded production of organizational structure and personnel information from Samsung to conduct discovery and identify potential deponents and decisionmakers. *See In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714, 2020 WL 5993223, at *11 (N.D. Cal. Oct. 9, 2020). Apple has never explained or quantified the burden of producing the spreadsheets. Although Plaintiffs proposed ways to address Apple's concerns over burden or privacy (notwithstanding the Discovery Confidentiality Order, ECF No. 235), for example by excluding business units or employee information (e.g., compensation) with no relevance to this case, Apple has not proposed any compromise. Plaintiffs ask the Court to order Apple to produce the HR spreadsheets promptly, so the Parties can agree on document custodians and meet the Court's December 15 deadline for substantial completion of production of documents.

The Parties also are at an impasse over specific custodians. Apple initially proposed 22 custodians which is inadequate to cover the array of facts at issue. On August 13, 2025, Plaintiffs proposed 63 additional custodians based upon information gleaned during their investigation that does not capture changes to Apple personnel that occurred in the last several years. On September 4, 2025, Apple agreed to add 12 custodians but has not identified any objections to the other individuals that Plaintiffs proposed. Although Apple has now agreed to 34 custodians, that number is far fewer than in other recent antitrust enforcement cases such as the Google Search litigation (116 custodians) or the Google Ad Tech litigation (119 custodians). Plaintiffs ask the Court to set prompt deadlines by which the Parties either agree or submit disputes over custodians.

***The Scope of Plaintiffs' Requests for Production.*** The Parties are at an impasse over dozens of Requests for which Apple has indicated it will withhold responsive documents but refused to explain to Plaintiffs what documents it intends to withhold and their relation to each of

---

[1] Approximately two-thirds of the documents Apple produced are user guides for the iPhone and Apple Watch and legal documents from other litigations. The remaining documents include news articles, press releases, surveys, studies, reports, emails, and other materials.

[2] When Apple refused to produce the HR spreadsheets informally as part of negotiations over document custodians, Plaintiffs served their Second Request for Production of Documents to obtain this material in formal discovery. Apple's responses are due on September 11, 2025.

Apple's objections. This is especially challenging when Apple has rewritten the scope of Plaintiffs' Requests rather than merely propose to control its search methodology. Apple's refusal to identify what is being withheld and how that specifically relates to its objections impedes an informed discussion of each objection, prevents the Parties from resolving impasses, and violates Rule 34(b)(2)(C).[3] Plaintiffs require Court intervention to avoid needlessly prolonged negotiations.

*"Documents Sufficient to Show."* The Parties are at an impasse over Apple's position that it will restrict its production to documents "sufficient to show" in response to seventeen Requests where Plaintiffs sought "all documents."[4] Apple uses the term "sufficient to show" in multiple, inconsistent ways—(i) for "go-gets," (ii) for targeted searches of custodian files, and (iii) for producing "all" documents responsive to a Request that are within a collection of documents obtained by a reasonable search. "All documents" ordinarily means a request for all non-privileged documents responsive to a specified category that have been identified after a reasonable search. In contrast, "documents sufficient to show" calls for production of documents of the responding party's choosing that demonstrate information specified in the request. By conflating these meanings, Apple is creating unnecessary ambiguity over what it agrees to produce. In addition, for six Requests, Apple has indicated it will produce "any documents" located through a reasonable search that are responsive and not privileged, and for another nine Requests, Apple states it will simply produce "documents." Plaintiffs have asked Apple to clarify whether this language means Apple will produce "all documents" as stated in the Requests, but Apple has not provided a straightforward response. In the absence of clarity from Apple, Plaintiffs ask the Court to order Apple to produce all non-privileged, responsive documents in response to Request Nos. 3, 7-8, 17-19, 21, 23, 25, 27-30, 32, 36, 38-39, 41-47, 49-55, 58.[5]

---

[3] "An objection must state whether any responsive materials are being withheld on the basis of *that* objection." Fed. R. Civ. P. 34(b)(2)(C) (emphasis added). "Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information." Adv. Cmte. Notes to 2015 Amendment to Fed. R. Civ. P. 34(b)(2)(C).

[4] *Compare, e.g.,* Request No. 28 ("*All documents* related to the value of a user to Apple, including customer lifetime value, entry point analyses, revenue per user, subsequent hardware purchases, and any revenue or benefit that Apple has received or anticipates receiving from a customer or third party due to a customer's purchase or use of any Apple products, services, or subscriptions.") *with* Letter form T. Bryant dated Sept. 4, 2025 at 17 ("*RFP No. 28.* … Subject to and without waiving its objections, Apple is willing to conduct a reasonable search for and produce *studies, analyses, and reports sufficient to show* the value of an iPhone user to Apple, to the extent such documents exist and can be located by a reasonable search.") (emphasis added).

[5] Apple indicates it will produce documents "sufficient to show" in response to Request Nos. 3, 18-19, 27-30, 32, 36, 38, 47, 49, 51, 53-55, 58; "any documents" in response to Request Nos. 7, 39, 44, 45, 46, 50; and "documents" in response to Request Nos. 8, 17, 21, 23, 25, 41, 42, 43, 52.

***Disputes Over Request Nos. 5 and 6.***  The Parties are at an impasse over Apple's refusal to produce all relevant documents shared with Apple's board of directors (Request No. 5) and all documents related to relevant changes Apple made to its conduct due to legal or regulatory requirements (Request No. 6).  In Plaintiffs' experience, these documents are highly probative and easy to collect, as they are often maintained in a company's central files.  Despite indicating in the Joint Status Letter that it is willing to meet and confer over these Requests, Apple has not proposed any compromise.  Plaintiffs ask the Court to order Apple to produce all non-privileged, responsive documents in response to Request Nos. 5 and 6.

***Search Terms.***  As stated in the Joint Status Letter, Plaintiffs are concerned that negotiating search terms before resolving the scope of Apple's production in response to Plaintiffs' Requests and identifying appropriate custodians is inefficient.  Nonetheless, today Plaintiffs counter-proposed search terms and look forward to working with Apple to reach agreement on them.

### III.   Additional Disputes Over Apple's Discovery Responses

Additional disputes have emerged during the Parties' negotiations over Apple's responses to Plaintiffs' First Set of Requests for Production.  Plaintiffs would appreciate the Court's instruction as to how these disputes should be presented for adjudication:

***Objection based on vague and ambiguous terms.***  Apple claims not to understand commonplace terms such as "installed base of users," "customer lifetime value," or "usable life" in Plaintiffs' Requests.[6]  Most of the terms Apple claims not to understand are commonly used by Apple employees in ordinary course documents and at times appear in Apple counsel's own documents.  Plaintiffs asked Apple to construe these consistently with how they are reasonably used by employees of a large technology company including any Apple-specific usage.

***Exclusion of responsive documents.***  In response to Requests for "all documents" related to certain studies, analyses and reports, Apple proposes to restrict its production to the studies, analyses and reports, while omitting any internal or external communications regarding those reports, and/or drafts of those reports.  Those materials are relevant because they are likely to shed important light on the context surrounding the reports, such as who received them, any explanation provided in a cover email, and any views shared in response.[7]

***Exclusion of competitor Smartphones.***  In response to several Requests for documents related to all Smartphones—defined as including not only iPhones but also other competitors'

---

[6] These examples are drawn from Apple's Responses to Request Nos. 19, 27, and 28.  Similar vagueness objections appear in Apple's Response to Requests Nos. 8, 18, 19, 20, 25, 27, 31, 34, 36, 37, 38, 39, 41, 43, 45, 50, 52, 55, 56, 60, 61, 62, and 63.

[7] Request Nos. 18, 27, 30, 32 (with respect to drafts), 38.

products—Apple proposes to restrict its production only to information about iPhones.[8]  Plaintiffs contend that Apple's documents relating to competitors' Smartphones, and usage of apps and accessories with competitors' Smartphones, will reflect on the core competition issues in this antitrust enforcement action.

***Omission of periodic reports and data.***  Plaintiffs served Requests for periodic reports and data that Apple is likely to have created in the ordinary course of business.  These Requests seek to capture Apple's granular information about: (a) Apple's iPhone business and the primary products or services in the Complaint (cloud streamed games, messaging systems, digital wallets or payments apps, platform apps or mini programs, and smartwatches); (b) information on sales metrics and release version data; or (c) user and developer behavior metrics.  Apple has not committed to providing these reports or data, despite their relevance to the claims in this case.[9]

***Worldwide scope.***  Plaintiffs' Requests generally seek responsive documents relating to any geography worldwide, and certain Requests reiterate the need for documents with scope outside the United States.  Yet, as a general matter, Apple refuses to produce documents with this broader geographic scope.[10]  Documents across global geographies are relevant because Apple conducts business differently in countries where it lacks market power, for example by allowing Super Apps that it prohibits in the U.S., or where foreign regulators compel different behavior than the U.S.  Although Apple claims that ex-U.S. documents are not relevant to the Parties' claims and defenses, Apple's pleadings show that it intends to defend itself by arguing that the Smartphone market is global.  ECF No. 86-1 (Mot. to Dismiss) at 35 ("The Government's gerrymandered market focuses on the U.S. alone, masking the worldwide primacy of Android smartphones.").

### IV. Matters Under Further Negotiation

***Preliminary materials for source code review.***  Plaintiffs served Requests for Apple's technical documentation and other materials essential to allow Plaintiffs to conduct source code review relating to the conduct alleged in the Complaint pursuant to the Parties' stipulated source code protocol, ECF No. 236.[11]  Plaintiffs have asked Apple to produce these materials by September 19, 2025, and are awaiting Apple's response.

***Data requests.***  To facilitate the Parties' negotiations, Plaintiffs asked Apple for descriptions of each database or data set containing information responsive to over Plaintiffs' Requests for production of data, as well as data samples, data dictionaries, and other

---

[8] Request Nos. 17, 19 (improperly limited to "particular smartphone"), 27, 28, 31, 38.

[9] Request Nos. 18, 23, 26, 27, 28, 59, 62, 63.

[10] Objection 22 to Definitions and Instructions, Defendant Apple's Responses and Objections to Plaintiffs' First Set of Requests for Production; Request Nos. 6, 11, 24, 25, 31, 46, 61, 62.

[11] Request Nos. 44, 45, 46, 55, and 56.

documentation, training materials, user guides, or keys that decode or interpret the data.[12] Plaintiffs identified databases, organizations within Apple that are likely to use responsive data, and associated software tools to assist Apple in locating this information. Plaintiffs are awaiting Apple's response.

**Other Requests under consideration.** Apple is continuing to evaluate certain additional Requests, and Plaintiffs are waiting for Apple's position to resume negotiations.[13]

### V. Witness Lists and Depositions

The Parties' positions concerning witness lists and depositions have not changed since they submitted the Joint Status Letter.

Respectfully submitted,

/s/   Jonathan H. Lasken
Jonathan H. Lasken
Assistant Chief, Civil Conduct Task Force
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Telephone: (202) 598-6517
Email: jonathan.lasken@usdoj.gov

MATTHEW J. PLATKIN
Attorney General of New Jersey

/s/ David H. Reichenberg
David H. Reichenberg
Section Chief, Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-4686
Email: David.reichenberg@law.njoag.gov

*Attorney for Plaintiff State of New Jersey, Arizona, California, Washington D.C.,*

---

[12] Request Nos. 26, 61, 62, and 63. Also, if there are relevant, responsive databases or data sets, Request Nos. 2, 8, 17, 18, 22, 27, 28, 37, 52, or 55.

[13] Request Nos. 35 and 51.

September 10, 2025
Page 7

*Connecticut, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin*

BY: AARON M. SHEANIN
Trial Attorney
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102

*Attorney for Plaintiff United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA et al., <br><br> *Plaintiff*, <br><br> v. <br><br> APPLE INC. <br><br> *Defendants*. | Case No. 2:24-cv-04055-JXN-LDW |

## CERTIFICATE OF SERVICE

I hereby certify that the above letter and this Certificate of Service were served upon defendant's counsel, Liza M. Walsh, Esq., Craig S. Primis, Esq., Devora W. Allen, Esq., and K. Winn Allen, Esq., 1301 Pennsylvania Avenue, NW, Washington, D.C., 20004, by CM/ECF on September 10, 2025.

BY: *s/ Aaron M. Sheanin*
Aaron M. Sheanin
United States Department of Justice
Antitrust Division
*Attorney for Plaintiff United States*