**WALSH PIZZI O'REILLY FALANGA**

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

September 12, 2025

**VIA ECF**
Honorable Leda D. Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    *United States of America, et al. v Apple Inc.*
               Civil Action No.: 2:24-cv-04055 (JXN-LDW)

Dear Judge Wettre:

      Defendant Apple Inc. ("Apple") respectfully submits this letter responding to Plaintiffs' September 10 submission to the Court purporting to update the Parties' Joint Status Letter submitted on August 18, 2025 (ECF No. 303). Given that Your Honor's Pretrial Scheduling Order ("Order") contemplated only a single joint status letter, *see* ECF No. 270 ¶ 20, Apple informed Plaintiffs that their proposed additional submission was both unnecessary and inappropriate, particularly in light of the Court's instructions to only raise matters that "requir[e] the Court's attention" and "to reduce the burden of this action on the Court . . . as required by Fed. R. Civ. P. 1." Order ¶¶ 21–22. Nevertheless, Plaintiffs proceeded with a filing that paints an incomplete and inaccurate picture of the parties' ongoing discussions, raises unripe issues that are still subject to ongoing discussion, and does little to foster cooperation and agreement in the discovery process. Apple submits this letter to correct the record.

**I.    THE PARTIES' WORK TO DATE**

      ***Investigation Materials.*** Plaintiffs' production of Investigation Materials has lagged. On August 13, Plaintiffs informed Apple that they had not produced any Investigation Materials that post-date February 2025, despite the Court-ordered production deadline of June 13, 2025. Order ¶ 2. On September 2, Plaintiffs made a supplemental production of over 2,000 documents, including documents that pre-date February 2025. Shortly before submission of this letter, on September 12, Plaintiffs served another supplemental production, as well as an initial privilege log which Plaintiffs previously indicated would be provided by the end of August; Apple has not had a chance to review this material. The parties continue to meet and confer and will raise any issues with the Court if and when appropriate.

      ***Written Discovery and Document Production.*** Apple does not dispute Plaintiffs' general description of the number and hours of meet-and-confers conducted or the volume of Apple's

document productions to date, which now includes four productions—including two productions since the August 18 status report—of both custodial and non-custodial documents totaling approximately 13,000 documents. As explained more fully below, however, Apple disagrees that all of the issues raised by Plaintiffs' submission are ripe for the Court's review. Apple continues to work diligently to fulfill Plaintiffs' expansive document requests and has negotiated in good faith, outright agreeing to produce documents in some instances or proposing reasonable compromises in others wherever possible.

Plaintiffs' engagement with Apple during the meet-and-confer process has been *pro forma* at best. To date, Plaintiffs have refused to engage with almost any compromise offer or counterproposal, declaring an impasse unless Apple agrees to their requests exactly as originally written. "Merely exchanging letters stating and restating that the other party is wrong" while "making no effort at compromise does not comply" with the discovery rules, which require "at the very least" a good-faith effort to narrow differences before involving the Court. *Solomon v. East Penn Manuf. Co., Inc.*, 2018 WL 1740530, at *1 (E.D. Pa. April 11, 2018); *see also* Order ¶ 21 (requiring the parties to make "a thorough, good faith attempt to resolve [discovery disputes]."); L. Civ. R. 37.1(b)(1) (requiring pre-motion certification of "a good faith effort to resolve by agreement the issues raised . . . without the intervention of the Court"). Plaintiffs have also repeatedly imposed arbitrary deadlines for Apple to respond to certain demands, even informing Apple that the parties had reached impasse requiring Court intervention over topics and document requests that had not yet been discussed during the meet-and-confer process. Plaintiffs have elected instead to burden the Court with unripe discovery disputes without engaging in "a thorough, good faith attempt to resolve them." Order ¶ 21.

## II. DISCOVERY ISSUES RAISED IN JOINT STATUS LETTER

***Document Custodians.*** As discussed in the August 18 Joint Status Letter, Apple initially identified 22 custodians that it believes are most likely to have documents responsive to Plaintiffs' requests. ECF No. 303 at 4–5. Through the course of the parties' negotiations, Apple has added an additional 15 custodians, for a total of 37 custodians.[1] While Apple maintains that the original custodian list adequately covers Plaintiffs' requests, Apple's additions represent a compromise. Apple has repeatedly told Plaintiffs it remains willing to discuss additional potential custodians that may address any gaps in coverage Plaintiffs believe may exist. Apple has similarly offered to provide the following information for each of Apple's proposed custodians: (a) Positions during the custodian's tenure at Apple; (b) each custodian's current manager; and (c) each custodian's current direct reports. But Plaintiffs rejected out of hand Apple's proposal to provide additional information on the current custodians and their reporting chains, without explaining why Apple's proposal provides insufficient information to identify and negotiate potential additional custodians.

---

[1] Apple offered an additional three custodians after Plaintiffs filed their submission on September 10 and has stated repeatedly to Plaintiffs that it is open to discussing further additions, but Plaintiffs have refused to meaningfully engage in that discussion.

Instead, Plaintiffs have refused to engage in any negotiation of custodians until Apple produces at least six-years' worth of HR spreadsheets containing the roles and responsibilities of every single employee in the company over that time period. While Plaintiffs have suggested that Apple can propose excluding certain business units that are not relevant to the case, they have not suggested any way to do so that would meaningfully narrow the spreadsheets. Plaintiffs claim these spreadsheets are a "necessary precursor to meaningful negotiations over document custodians." ECF No. 320 at 2. That is incorrect. For one thing, Plaintiffs gained significant knowledge of Apple and its employees during the four-year investigation they conducted prior to this suit, during which Apple produced many documents and Plaintiffs interviewed and/or deposed numerous Apple employees. That alone provides Plaintiffs with far more information about potential custodians than a propounding party would have in a typical case. Worse still, Plaintiffs have not identified—and Apple is not aware of—any case law or local practice that requires turning over such invasive, expansive information. For support, Plaintiffs point to a case in which Apple obtained organizational structure and personnel information from Samsung. *Id.* (citing *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *11 (N.D. Cal. Oct. 9, 2020)). But Plaintiffs' comparison is a false equivalence: the organization charts produced in that case provided information regarding the reporting chain of relevant business units similar to the information Apple has offered to provide for its custodians here. The information in that case did not include the job responsibilities and other HR details for hundreds of thousands employees, like Plaintiffs request here.

***The Scope of Plaintiffs' Requests for Production.*** Contrary to Plaintiffs' assertion, Apple has explained precisely what documents it is willing to search for and produce and has outlined the parameters of its proposed search, including custodians, date ranges, and search terms. That is exactly what Rule 34 requires. *See* Fed. R. Civ. P. 34(b)(2)(C), Advisory Committee Notes, 2015 amendments ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'"); *Deakin v. Magellan Health, Inc.*, 340 F.R.D. 424, 436 (D.N.M. 2022) (explaining that a responding party fulfills its obligation under Rule 34 by describing the "parameters of the search to be made, including custodians, sources, date ranges and search terms, or search methodology"); *Rowan v. Sunflower Elec. Power Corp.*, 2016 WL 3743102, at *5 (D. Kan. July 13, 2016) ("Rule 34 does not require [the producing party] to provide a detailed description or log of the documents withheld."). Nevertheless, Apple has repeatedly offered to clarify any confusion Plaintiffs may have about any specific request and remains willing to do so. While Plaintiffs say that they "require Court intervention to avoid needlessly prolonged negotiations," ECF No. 320 at 3, they do not explain what it is they would like the Court to order Apple to do.

***"Documents Sufficient to Show."*** Plaintiffs' objection to Apple's use of the language "documents sufficient to show" is mystifying. Agreeing to produce documents "sufficient to show" a particular issue is commonplace in discovery. It means that a producing party will produce documents "sufficient" to explain a particular issue, utilizing whatever reasonable collection and production method it believes is most efficient, whether that be targeted file searches, searching for documents in non-custodian files, or other methods. Specifically, as for Request Nos. 17, 19, 21, 23 and 43, Apple is conducting a reasonable search, which will entail, at least in part, targeted non-custodial collections. As explained to Plaintiffs during the meet-and-

confer process, Apple is not withholding otherwise responsive documents located by use of search terms. To the extent Plaintiffs remain confused about any of the other requests, Apple is happy to provide additional clarification. That should not—and does not—require Court intervention.

Plaintiffs also appear to suggest that Apple is improperly withholding documents responsive to Request Nos. 7, 8, 25, 39, 41, 42, 52, 57, and 58 by stating that Apple will provide "documents" or "any documents" "to the extent such documents exist and can be located by a reasonable search." As Apple explained during the meet-and-confer process, Apple is not withholding documents responsive to these Requests. For avoidance of doubt, Apple again confirms that it will produce "all [non-privileged] documents responsive to a specified category that have been identified after a reasonable search," ECF No. 320 at 3, for Request Nos. 7, 8, 25, 39, 41, 42, 52, 57, and 58.

***Disputes Over Request Nos. 5 and 6.*** Apple disagrees that the parties are at an impasse regarding Request Nos. 5 and 6. Apple has not refused to produce documents responsive to these requests. Rather, as Apple has repeatedly explained, Apple is in the process of scoping these requests to determine feasibility and burden. For this reason, these disputes are not ripe for the Court's review.

***Search Terms.*** Plaintiffs refused to engage with Apple on search terms for almost two months after Apple first proposed terms to Plaintiffs on July 21. For months, Plaintiffs took the position that "negotiating search terms before resolving the scope of Apple's production in response to Plaintiffs' Requests and identifying appropriate custodians is inefficient." ECF No. 320 at 4. As explained in the August 18 Joint Status Report, ongoing negotiations surrounding custodians and the scope of specific requests is no basis for delaying engagement on these search terms. The terms are not custodian-specific and are a means to address scoping questions to the extent such questions are even implicated by search terms. Plaintiffs finally reversed course and on September 10, 2025, provided Apple with proposed search terms. Apple is reviewing those terms and will confer with Plaintiffs about them.

### III.  ADDITIONAL DISPUTES

The below-enumerated "[a]dditional disputes" that Plaintiffs claim "have emerged" are not ripe for adjudication. Plaintiffs seek to frame these issues as a request for instruction as to how they should be presented for adjudication, but in their rush to declare impasse they have not engaged with Apple's clarifications and proposals. Instead, Plaintiffs improperly seek the Court's involvement without first making a meaningful "effort to reduce the burden of this action on the Court and one another, as required by Fed. R. Civ. P. 1." Order ¶ 22. Apple responds to each issue below.

***Vague and Ambiguous Terms.*** Apple believes that the parties have resolved the dispute over vague and ambiguous terms. Apple has clarified that it will interpret undefined terms as they are reasonably understood and actually used at Apple by its employees and will not withhold documents based on this objection. While Plaintiffs ask Apple to construe terms "consistently with how they are reasonably used by employees of a large technology company," Apple cannot purport to know how such terms are understood by other companies. Instead, Apple will interpret

Honorable Leda D. Wettre, U.S.M.J.
September 12, 2025
Page 5

the terms as Apple—the party in this issue—understands them. In doing so, Apple will of course interpret the terms reasonably, in good faith, and will not withhold documents based on this objection.

**Exclusion of Responsive Documents.** There is no dispute ripe for review regarding Apple's proposed limitation of certain requests to studies, analyses, and reports. For example, for Request No. 18, Apple offered to produce "documents sufficient to show studies, analyses, or reports discussing factors affecting consumer demand for a Smartphone," explaining that Plaintiffs' request for "all documents discussing factors affecting consumer demand for a Smartphone" would encompass a vast number of irrelevant documents. Plaintiffs rejected Apple's proposal out of hand. Apple, however, cannot agree to Plaintiffs' Requests as written without scoping the feasibility and burden of production, which it is currently in the process of doing.

**Exclusion of Competitor Smartphones.** There is no dispute ripe for the Court's review regarding Apple's proposed limitation of certain requests to iPhone rather than all smartphones. Based on the parties' negotiations, Apple has agreed to produce, as Plaintiffs claim it should, "all documents responsive to a specified category that have been identified after a reasonable search," *id.*, for Request Nos. 17, 19, 31. However, Request No. 28, for example, seeks documents related to "the value of a user to Apple." Apple agreed to produce documents related to the "value of an *iPhone* user to Apple." Apple is willing to expand this to encompass other smartphones but does not believe the value of an iMac user or iPad user, for example, is relevant to any claim or defense in this case. As for other Requests cited by Plaintiffs in this category, Apple is in the process of scoping the feasibility and burden of production.

**Omission of Periodic Reports and Data.** There is no dispute ripe for the Court's review regarding the requested periodic reports or data. As Plaintiffs acknowledge, the parties continue to negotiate Request Nos. 26, 61, 62, and 63 (collectively, "Data Requests"). *Id.* at 6 n.12. Apple agreed to produce all enumerated reports listed in Request No. 23. As for other Requests cited by Plaintiffs in this category, Apple is in the process of scoping the feasibility and burden of production.

**Worldwide Scope.** Plaintiffs misunderstand Apple's objection related to the geographic scope of Plaintiffs' requests. Contrary to Plaintiffs' assertion, Apple does not argue that ex.-U.S. documents "are not relevant to the Parties' claims and defenses." *Id.* at 5. To the contrary, Apple's position is that the Smartphone market may be global rather than limited to the United States. Despite pleading a U.S. market, Plaintiffs' default geographic scope for all requests is global, but not all of Plaintiffs' requests concern issues related to market definition. Where requests relate to market definition, Apple has agreed to produce documents responsive to the Request. *See, e.g.*, Request Nos. 9, 10, 15. Accordingly, Apple maintains its objection to the default geographic scope being global and its individual objection regarding Request Nos. 6, 24, 25, 31, and 46. As for Request Nos. 11, 61 and 62, Apple is in the process of scoping the feasibility and burden of production.

Honorable Leda D. Wettre, U.S.M.J.
September 12, 2025
Page 6

### IV. MATTERS UNDER FURTHER NEGOTIATION

***Preliminary Materials for Source Code Review.*** Apple agrees with Plaintiffs' representations that Plaintiffs' requests seeking technical documentation and source code are not ripe for the Court's consideration because the parties are still negotiating. For Plaintiffs' requests regarding technical documentation, Apple has agreed to conduct a reasonable search for and produce such documents responsive to Request Nos. 44, 45, 46, and 55. Plaintiffs recently requested that Apple produce documents responsive to these requests by September 19. Apple has been collecting, reviewing, and producing, on a rolling basis, documents responsive to Plaintiffs' requests and will continue to do so, but the Court has already rejected Plaintiffs' attempt to mandate a timeline for productions at certain intervals. *See* Order at ¶ 5 (ordering documents to "be produced on a rolling basis"). Apple is also willing to meet and confer regarding Plaintiffs' broad request for source code.

***Data Requests.*** Apple likewise agrees that Plaintiffs' Data Requests—Request Nos. 26, 61, 62, and 63—are not ripe for the Court's consideration. Plaintiffs' demands pertaining to these requests have been unrealistic and overly burdensome. For data requests such as these, the Order requires the parties to meet and confer regarding the production of data or data compilations, including providing, upon request, data samples and dictionaries, where reasonably available. ECF No. 270. In addition, the Order requires the parties to meet and confer regarding the specific timeline for production. Apple is willing to take all of these steps. Plaintiffs, however, sent Apple a laundry-list of demands for Apple to provide *in advance* of a meet-and-confer and insisted Apple provide such information within four business days even though the Order does not require Apple to provide such expansive information. Further, Plaintiffs fail to acknowledge the abundant information they already have on Apple's databases from the four-year investigation preceding this suit. As Apple has told Plaintiffs, Apple is willing to meet and confer regarding the Data Requests and discuss a timeline for such productions pursuant to the Order.

### V. WITNESS LISTS AND DEPOSITIONS

Apple agrees that the parties' positions concerning witness lists and depositions have not changed since the Joint Status Letter.

Respectfully submitted,

*s/Liza M. Walsh*

Liza M. Walsh

cc:    All Counsel of Record (via ECF)