

U.S. Department of Justice

Antitrust Division

---

*Liberty Square Building*
*450 5th Street, N.W.*
*Washington, DC 20530*

December 12, 2025

**VIA ECF**
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

  Re: *United States of America, et al. v. Apple Inc.*
     No. 2:24-cv-04055 (JXN-LDW)
     **Joint Status Letter**

Dear Judge Wettre:

  The United States and the Plaintiff States (collectively, "Plaintiffs") and Defendant Apple Inc. respectfully submit this Joint Status Letter regarding the deadline for substantial completion of document production as requested in the parties' joint status letter dated November 21, 2025 (Dkt. No. 348), and ordered by the Court (Dkt. No. 350).

  Apple seeks an extension of the deadline for the substantial completion of document productions set forth in Paragraph 5 of the Pretrial Scheduling Order (Dkt. No. 270). As explained in the Joint Letter from the Parties Regarding the Impact of the Discovery Stay (Dkt. No. 348), the parties agree that a 42-day extension of the previously ordered December 15, 2025 deadline to January 26, 2026, is appropriate to account for the lapse in appropriations for the federal government. Apple now seeks an additional extension of this deadline until June 15, 2026 (which would result in a total six-month extension from the date previously ordered by the Court). Plaintiffs oppose this extension. Alternatively, Plaintiffs request that the Court order Plaintiffs' proposed compromise that Apple substantially complete its document productions by March 31, 2026, subject to rolling document-production deadlines by custodian and a deadline for the conclusion of negotiations. The parties' positions regarding Apple's requested extension are set forth below.

  Apple objects under Appendix R to the Local Rules to Plaintiffs' attachment of the discovery letters cited herein. As a result, Plaintiffs have not included the letters with this filing, although Plaintiffs believe the material may aid the Court. Plaintiffs are prepared to file any or all of the cited correspondence, if it is of use to the Court.

1. **Apple's Position**

Apple respectfully requests that the Court reset the deadline by which "[d]ocument productions shall be substantially completed" to June 15, 2026.[1]  Dkt. 270 ¶ 5.  Good cause exists for this extension as the scope and complexity of Plaintiffs' discovery requests are so extensive that additional time is needed to substantially comply with them, even as narrowed through ongoing discussions.  Fed. R. Civ. P. 16(b)(4); *see also, e.g.*, *Song v. Zhang*, 2025 WL 566193, at *3 (D.N.J. Feb. 20, 2025) (good cause to modify a scheduling order includes when "deadlines set forth in the scheduling order cannot reasonably be met despite the diligence of the party seeking the extension"); *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2023 WL 11986902, at *4 (D.N.J. Nov. 14, 2023) (same).

Plaintiffs have served extensive discovery requests.  Plaintiffs' two sets of Requests for Production ("RFPs") include 74 distinct requests, plus numerous subparts.  Plaintiffs demand that Apple search for, review, and produce documents from almost 75 custodians (plus any custodian added for the MDL) and apply at least 64 search strings that include thousands of component terms in looking for responsive documents.  Apple estimates that for the 40 agreed custodians, the extremely broad terms Plaintiffs propose would *still* require Apple to review over 11 million documents (their prior proposal reflected over 25 million documents).  Adding 34 further custodians would require review of millions more.

Despite the extraordinary breadth of the document discovery sought by Plaintiffs, Apple has worked to promptly and diligently produce documents.  Building on top of the millions of documents it produced in the investigation, Apple began producing documents on August 13, 2025, after discovery opened in June.  To date, Apple has produced more than 250,000 documents and 1.7 million pages across 11 productions and its document-review team has grown to include more than 350 contract attorneys.  Plaintiffs' claim that Apple has delayed progress is not true.  Apple has attempted to negotiate with Plaintiffs to narrow the scope of their requests, meeting-and-conferring with Plaintiffs more than 18 times, all while producing documents.  Apple has spent over 25 hours on calls in an effort to make discovery proportional to the needs of this case.  Those efforts were hampered by the 42-day shutdown of the federal government (during which Apple continued to produce documents) and by Plaintiffs' refusal to meaningfully narrow their requests.  The parties have made recent progress but Plaintiffs' discovery requests remain extremely broad.

Given that Plaintiffs are continuing to insist that Apple review over 11 million documents to comply with their 74 document requests, and add 34 further custodians, the reality is that even if Plaintiffs better-tailor their requests and search terms where the parties still have disagreements, an extension of the substantial-completion deadline is necessary.  Apple has invested and will continue to invest massive resources into producing responsive documents, including utilizing hundreds of review attorneys and making rolling, bi-weekly productions, to comply with Plaintiffs' requests.  But given the scope of documents at issue, the substantial-completion deadline should be extended to June 15, 2026.[2]

---

[1] For document requests served at least 60 days before this date.  Apple first raised this extension with Plaintiffs on November 17, in the parties' first discussion just five days after the federal shutdown ended.

[2] Apple is not obligated to use TAR, which in Apple's current estimation would not result in a more accurate and efficient review process here, and as the producing party Apple is best positioned to determine the search methodology.  Plaintiffs' estimation of Apple's average hourly review rate is oversimplified and incorrect.  But Plaintiffs get it right when they suggest Apple must be reviewing many irrelevant documents—as Apple has attempted to explain in search negotiations.  Plaintiffs also

***There is good cause to extend the substantial completion deadline given the remaining work needed to respond to Plaintiffs' broad RFPs.*** Plaintiffs' own choices have made document discovery so broad that additional time is necessary. While Plaintiffs now try to claim their requests are limited to a "handful of specific cross-platform product lines"—when they previously told the Court the case would "not involve that much discovery," Dkt. 80 at 24:25—the sheer breadth of their discovery requests shows otherwise. Plaintiffs seek nearly unbounded discovery into iPhone, iOS, the App Store, various of Apple's first-party apps and services (like Messages and Apple Wallet), Apple Watch, and more. And in addition to refusing to establish reasonable bounds for their discovery requests and search terms, Plaintiffs continue to create uncertainty about the universe of documents to be searched. Plaintiffs ask that Apple review documents from almost 75 custodians (plus any MDL custodian), ***and*** produce extraordinarily broad spreadsheets of data "annually for the years 2014 to the present" of "all Apple employees including, at minimum, each employee by name, start date, job function, title, business unit and area," Pls.' Req. For Production No. 73, so that they can consider requesting even more custodians on top of the almost 75 they already seek.[3]

Complying with requests of that breadth takes significant time. Even if discovery is limited to the 40 agreed custodians (and Apple does not add the 34 additional custodians Plaintiffs demand), Apple estimates that its contractors' review of the over 11 million documents that hit on Plaintiffs' proposed search terms would likely not be completed until at least May 2026 (assuming a continued approximate pace of 350 contractors reviewing 250,000 documents per week). Since the initial review would likely not be complete until May, an extension of the substantial completion deadline to June would be reasonable.

On top of this ongoing review, the parties are still negotiating the scope of Plaintiffs' document requests. Plaintiffs did not identify any concerns about Apple's responses to Plaintiffs' Second Set of RFPs until December 5, 2025—***85 days*** after Apple served its responses and objections on September 11 (weeks before the federal government shutdown). And the parties are still wrapping up negotiations over the First Set of RFPs, such that the written responses Plaintiffs attach do not reflect Apple's current positions, and anticipate bringing any remaining disputes on those requests to the Court on December 17. These negotiations will likely result in further collections, searches, and review.

Apple is in full compliance with the Case Management Order, which states that "delay in searching for and producing ESI due to prolonged discussion and disagreement about search terms, custodians, and the like will not be deemed to constitute good cause." Dkt. 270 ¶ 45. That is not the basis for Apple's request. While discussions about search terms and custodians are ongoing, that has not delayed Apple's progress. The extension is justified by the breadth of Plaintiffs' requests, Plaintiffs' refusal to narrow them, and the time it will take Apple to complete its productions.

***There is good cause to extend the substantial completion deadline to facilitate discovery coordination with the MDL.*** Apple's proposed extension also will allow for document discovery coordination with the MDL. The Court has directed the parties to "coordinate the cases as much as possible because that is the only thing that is going to

---

wrongly suggest Apple has not provided a unique hit count until today, but it has, consistent with the discovery protocol, for each search string.

[3] Plaintiffs' suggestion that they meaningfully narrowed their custodial demands is misleading; while they agreed to "defer for now" 21 previously proposed custodians, they added several more at the same time.

3

make sense." Dkt. 80 at 38:13–39:1; Dkt. 254-1 at 4 (the parties agreed to "make efforts to ensure discovery proceeds efficiently and without delay across both this case and the MDL proceeding" and "coordinate and avoid duplicative discovery"). The Court recently directed the MDL parties to "submit a proposed deadline for substantial completion of document productions on or before January 12, 2026," MDL Dkt. 142 at 5, and the extension Apple seeks would permit the parties to align production deadlines in both cases.

Good cause supports a modest extension to allow for MDL discovery to "catch up." MDL Plaintiffs served their first document requests on October 15, 2025, many of which are duplicative of Plaintiffs' requests here. Even prior to serving its responses and objections to MDL Plaintiffs' requests, Apple began making rolling re-productions to MDL Plaintiffs, and to date have made 24 productions totaling over one million documents. So, while the parties have been working diligently to negotiate the scope of the MDL, DOJ, and State Plaintiffs' requests and produce documents responsive to them, the complexity of multi-faceted negotiations between Apple, the various MDL Plaintiffs, DOJ, and the State Plaintiffs itself furnishes good cause for the extension Apple seeks. *See Wyatt v. City of Lackawanna*, 2024 WL 945956, at *1 (W.D.N.Y. Feb. 6, 2024) ("[T]he complexity of the case, the logistical challenges presented by coordinating discovery in multiple cases, and the reasonable desire to conduct discovery jointly constitute good cause for an extension of the discovery schedule.").[4]

***There is good cause to extend the substantial completion deadline given other ongoing discovery activities.*** In parallel with responding to Plaintiffs' RFPs, Apple is engaging in other significant ongoing discovery:

- Data Requests. The substantial completion date described above does not apply to data requests. Dkt. 270 ¶¶ 5–6 (segregating "Document Production" and "Data Requests"). Rather, the parties are to "meet and confer regarding the specific timeline for production based on the number of requests served and the burdens imposed by those requests." *Id*. ¶ 6. Plaintiffs have refused to narrow the scope of any of their data requests—which seek, on top of all the data Plaintiffs received in the investigation, more than 15 years of detailed financial and user data across huge swaths of Apple's business[5]—and continue to assert that they are entitled to information about all of Apple's data sources regardless of relevance. Apple has met-and-conferred in good faith to determine what Plaintiffs are seeking in an attempt to narrow the scope of the data requests to the data relevant to this case, including to clarify the terminology used in Plaintiffs' RFPs, and is concurrently investigating, negotiating, and scoping Plaintiffs' requests for structured data in an effort to resolve the parties' disagreements.

- Discovery of Plaintiffs. An extension of the substantial completion deadline would also facilitate discovery of Plaintiffs' relevant documents. Outside of the Investigation Material, Plaintiffs have only made one production from a single Plaintiff State to date.

---

[4] Plaintiffs' suggestion that the invocation of MDL coordination is a belated effort by Apple to delay discovery in this case is not true. It was Apple that proposed, last year, that the parties coordinate discovery between both matters. *See* Dkt. 254-1 at 4. Apple's position has remained consistent.

[5] For example, one sub-part of one of Plaintiffs' requests asks for "*[e]ach database or data set . . . relating to . . .* any Identified Product or Service [i.e., Cloud Streaming Games, Messaging Systems, Digital Wallets or Payment Apps, Platform Apps or Mini Programs, Smartwatches, Browsers, eSim technologies, and Collaborative Work Environments] containing information derived from users" in 13 different countries. Pls.' Req. For Production No. 61.

4

Moreover, given Plaintiffs' continued refusal to produce a single document outside the Antitrust Divisions of the U.S. DOJ and the 20 Plaintiff States' AG offices, Apple has been forced to pursue Rule 45 subpoenas on 14 federal agencies and 91 state agencies to obtain materials relevant to the parties' claims and defenses. Plaintiffs' unwillingness to consider any compromise on this issue has forced Apple to engage in fragmented and time-consuming negotiations with the various agencies in order to advance discovery, rather than coordinated party discovery as Rule 34 contemplates.

- Third-Party Discovery. Although the substantial completion deadline does not apply to third-party document productions, Pretrial Scheduling Order (Dkt. 270) ¶¶ 5, 16–19, Apple has also issued 33 third-party document subpoenas to date. Apple is currently negotiating with each third party regarding those subpoenas.

Plaintiffs try to downplay the substantial, concurrent discovery that the parties are conducting. But there is considerable overlap between the resources required to negotiate, collect, review, and produce Apple's documents and responsive data on the one hand, and the resources required to negotiate subpoenas and review documents produced by federal and state agencies and third parties on the other.

***Plaintiffs' various remaining arguments easily fail.*** Plaintiffs speculate, wrongly, that Apple's request for an extension is an effort to relitigate the Court's original schedule and attributable to Apple's lack of diligence. Not so. As detailed above, Apple's request stems from a good-faith effort to respond to Plaintiffs' extensive requests, coordinate with the MDL, and complete the many other discovery tasks that remain. Nor is Apple's request for an extension attributable to Apple's unwillingness to "marshal its resources" or to any lack of diligence. As explained above, Apple has marshaled considerable resources and has worked hard for the last six months to conduct document discovery. Plaintiffs' concern that an extension will prejudice Plaintiffs' ability to pursue their case, specifically by tightening their timeline to review documents and prepare for depositions, is also premature. Apple is willing to meet-and-confer with Plaintiffs regarding adjustments to the fact discovery deadline in the event the Court grants Apple's request.

***The Court should reject Plaintiffs' inefficient and unnecessary "compromise."*** Plaintiffs seek to impose a new deadline for resolving discovery disputes. Apple agrees that protracted, *unproductive* discovery negotiations should be (and have been) avoided. Plaintiffs' request to accelerate the parties' negotiations and impose an artificial deadline on the parties' detailed, productive negotiations is directly contrary to the Court's direction that the parties "do a thorough job of meeting and conferring" and that the parties not "rush . . . into more disputes for [the Court] to decide." Dkt. 324 at 34:22–24.

The Court should also again reject Plaintiffs' renewed request for interim discovery deadlines because they would convert an already complex document production process into a series of unnecessary administrative hurdles and procedural sideshows that would divert resources from completing document discovery. The proposed rolling deadlines would compel the parties—and the Court—to resolve piecemeal disputes about partial productions, privilege questions, and duplication issues that the parties can address more efficiently under the current schedule. The Court has already rejected Plaintiffs' request for a similar concept earlier in this litigation. Dkt. 254 at 3. Plaintiffs offer no new facts or authority that would warrant revisiting the prior ruling, and any marginal utility (of which Apple believes there is none) is outweighed by the administrative burden.

2. **Plaintiffs' Position**

The Court has already ruled that "prolonged discussion and disagreement . . . will not be deemed to constitute good cause under Rule 16 for extending the Court's deadline for substantial production." Dkt. No. 270, ¶ 5. Yet that is exactly what Apple now seeks from the Court in its six-month extension request. Apple's vague assertions of burdens do not explain why the remaining work was unforeseeable or cannot be completed in the seven weeks available under the current deadline or on a rolling basis over the three additional months Plaintiffs offered as a compromise. The Court should deny Apple's request.

Apple cannot establish good cause because it has not been diligent. "This good cause standard is not a low threshold." *Celularity Inc. v. Evolution Biologyx,*, 2025 WL 3140818, at *4 (D.N.J. Nov. 10, 2025). "[T]he party seeking the extension must show that the deadlines set forth in the scheduling order cannot reasonably be met despite the diligence of the party seeking the extension." *Zydus Worldwide DMCC v. Teva API Inc.*, 2025 WL 2057828, at *6 (D.N.J. July 22, 2025). Apple spent months blocking meaningful negotiation by standing on responses that did not comply with Rule 34,[6] only to reverse course in late November when facing the substantial completion deadline. Apple also refused to meet and confer on data for more than 100 days, despite Plaintiffs' six requests to do so.[7] When Apple finally meet and conferred, it lacked information for a meaningful discussion. Apple cannot meet the Court's deadline because of its own lack of diligence.[8]

Apple also fails to establish good cause because it has not set forth concrete, reliable information to justify a six-month extension. *O'Reilly Plumbing & Constr. v. Lionsgate Disaster Relief*, 2025 WL 1067542, at *5 (D.V.I. Apr. 9, 2025) (denying extension because court could not determine why "60 days, rather than, for example, 30 days, is required"). When Apple first asked for a six-month extension, Plaintiffs' proposed search terms produced a review set of 25 million documents. Between then and now, at various intervals, Plaintiffs removed 21 custodians, and based on Plaintiffs' proposed compromises, the review set decreased to 11 million documents (still a far greater number than Apple needs to review, as explained below). No matter whether the review volume was 25 million documents or 11 million—less than half—Apple has always claimed it will take six months. That is nonsensical.

Notably, an extension until June lines up with the production deadline Apple originally sought and the Court rejected. Dkt. No. 254-2 at 4. Apple's desire not to marshal its resources to comply with the Court's order is no basis to undo the order. *See Celularity*, 2025 WL 3140818, at *4 (noting "extensions of time without good cause would deprive

---

[6] *See* Status Conference Tr. at 29:7–17, 32:4–23 (Sept. 16, 2025), Dkt. No. 324 (discussing this issue).

[7] *See* Ltr. from M. Mandelberg (Dec. 4, 2025) ("We have repeatedly tried to schedule dedicated meet-and-confers on data since August 15." (citing Pls.' letters of Aug. 19, Aug. 29, Sept. 19, and Oct. 1 and emails of Oct. 3, Nov. 17, and Nov. 19)). Apple objects to Plaintiffs' data requests but has not supplied information needed to narrow them, despite the Court's Order requiring the parties to "produce data samples and data dictionaries." Dkt. No. 270 ¶ 6. Plaintiffs also sought this information by interrogatory, but Apple's response is incomplete. App. 1 at 14 (Apple's Resps. & Objs. to Pls.' First Set of Interrogs.).

[8] Apple's cases involve different facts and shorter extensions. *See Song v. Zhang*, 2025 WL 566193 (D.N.J. Feb. 20, 2025) (90-day extension to depose plaintiff who refused to travel for in-person deposition); *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2023 WL 11986902, at *4 (D.N.J. Nov. 14, 2023) (120-day extension for discovery on issue that "could not have been explored previously").

courts of the ability to effectively manage cases" and "severely impair the utility of Scheduling Orders"). And this attempted gambit is nothing new for Apple. *See Epic Games v. Apple*, No. 4:20-cv-5640 (N.D. Cal. Sept. 27, 2024), Dkt. No. 1017 at 2 ("[W]e have to worry about why this bad behavior happened. . . . If Apple really wanted to, with all the resources available to it, it could probably review that many documents in a weekend.").

In late November, Apple started to make the type of progress on discovery negotiations that it should have months ago. Apple tries to obscure the record by amalgamating time and progress across the period. But more than half of the time spent meeting and conferring in this case—and nearly all the progress—occurred between November 24 and December 10, after Apple first disclosed it would fail to meet the substantial completion deadline. In this two-week period, Apple increased its availability to meet and confer and stopped standing on non-compliant Rule 34 responses. That chain of events proves the wisdom of the Court's Pretrial Scheduling Order and demonstrates that tight reporting deadlines are necessary for progress. The likely impact of Apple's request will be to stall progress. Apple's arguments to the contrary lack merit.

***Apple's Prolonged Discussion, Disagreement, and Delay Belie Its Claim of Good Cause.*** Most RFPs have been pending for 133 days, or 175 days counting the 42-day stay, during which Apple continued to review documents.[9] As the Court's Order implies by requiring substantial completion of production within 60 days of a request, and as Apple's engagement in the face of the imminent deadline shows, the time to negotiate these RFPs should have been measured in weeks, not months. Had Apple done so, it would be far closer to complying with the Court's Order, and the Court would have no dispute to resolve.

Apple emphasizes the number and scope of Plaintiffs' RFPs, but the Court and the Parties understood the breadth of this case when the Scheduling Order was entered. The discovery here is far less than other recent technology monopolization cases. The number of custodians—40 agreed-upon and 34 that Apple claims are "still under consideration" *since Plaintiffs proposed them in August*—are far fewer than in *FTC v. Amazon*, *Google Ad Tech*, or *Google Search*, which involved 128, 160, and 116 custodians, respectively. Plaintiffs' 74 RFPs here are a fraction of the 393 RFPs served in *FTC v. Amazon*. Nor does the discovery touch on nearly every aspect of Apple's business as Apple claims; the discovery is limited—and has been from the start—to specific cross-platform product lines and the typical information about competition among smartphones that any monopolization defendant would produce.[10] Nonetheless, the parties resolved nearly all disputes over the RFPs in the two-week window after Apple disclosed it would miss the substantial completion deadline. Continued discussions cannot be a basis for delay.

Apple proves its own lack of diligence by arguing that "Plaintiffs did not identify any concerns about Apple's responses to Plaintiffs' Second Set of RFPs until December 5, 2025—**85 days** after Apple served its responses and objections on September 11 (weeks before the federal government shutdown)." On September 18, Plaintiffs tried to share their concerns with Apple, requesting a meet and confer on all RFPs, Ltr. from J. Lerner (Sept.

---

[9] During those 42 days, Plaintiff States requested that Apple provide a timeline for production of documents from agreed-upon custodians. Apple refused.

[10] *See* Apps. 2 at 18 & 4 at 6 (Pls.' First and Second RFPs) (defining terms to identify specific products).

18, 2025). Plaintiffs' request to meet and confer was pending for 78 of the 85 days of which Apple complains. Apple's custodian RFP arguments fare no better. Apple ignores Plaintiffs' numerous narrowing proposals and Apple's refusal to answer Interrogatory 2, which obviated the RFP entirely.

***Apple's Document Review Calculations Do Not Justify a Six-Month Extension.*** Plaintiffs asked Apple for calculations underlying its requested extension three weeks ago, but Apple withheld that information until yesterday, writing in this letter that "assuming a continued approximate pace of 350 contract attorneys reviewing 250,000 documents per week" and "11 million" documents, Apple would not complete its review until May. Apple's eleventh-hour justification undermines, not supports, its arguments for good cause.

*First*, Apple's review would shrink by millions if Apple used TAR to remove irrelevant material, as is common in complex antitrust cases. *FTC v. Amazon*, No. 2:23-cv-1495 (W.D. Wash.), Dkt. No. 286 ¶¶ 18-20; *U.S. v. Live Nation*, No. 1:24-cv-3973 (S.D.N.Y.), Dkt. No. 327 at 2–3. Apple's decision to manually review large volumes of easily removable material is not good cause for delay. *Second*, Apple's review rate of 17.9 documents per hour is puzzlingly slow—a fraction of the defendants' rates in similar matters. *Amazon*, Dkt. No. 286 ¶ 20 (35 per hour); *Live Nation*, Dkt. No. 327 at 2 (~30 per hour). Apple's review rate is even more surprising given that its reviewers are surely reviewing large amounts of facially irrelevant material which the reviewers in *Live Nation* and *Amazon* were not, given their use of TAR. *Third*, Apple will not be reviewing 11 million documents because Plaintiffs are still waiting for Apple's counterproposal.[11] *Fourth*, Apple's review rate of 250,000 documents per week is inconsistent with its production of only 250,000 documents thus far. Apple either has not been diligent in its review or is reviewing large volumes of irrelevant material. Regardless, Apple must have known long before November 17 that it would miss the substantial completion deadline by a wide margin. Yet Apple failed to disclose that information, placing Plaintiffs and Court in an untenable position. *Epic Games*, Dkt. No. 1017 at 1–2 ("Apple knew it wasn't on track to make the substantial completion deadline and kept it a secret.").

***MDL Coordination Is Neither a Necessary Nor Permissible Basis for Delay.*** Contrary to the Court's order requiring the parties "to endeavor to avoid duplicative discovery . . . without delaying the progress of this case," Dkt. No. 270 at 6, Apple asks to delay this case for coordination. Apple's attempt to relitigate the issue should be denied. It is inappropriate to slow a government enforcement action to the pace of private ones. *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999) (U.S. antitrust enforcement actions "are of special urgency and serve a different purpose than private damages suits because they seek to enjoin ongoing anticompetitive conduct"); *United States v. Agri Stats, Inc.*, 2024 WL 3061570, at *5 (D. Minn. May 17, 2024); *United States v. Google*, 661 F. Supp. 3d 480, 490 (E.D. Va. 2023). *Wyatt v. City of Lackawanna*, 2024 WL 945956, at *1 (W.D.N.Y. Feb. 6, 2024), which Apple cites, was not a government enforcement action, and both the plaintiff and some defendants agreed to extend discovery.

Apple has only shown an interest in coordination for delay. The record is clear. *First*, on August 30, 2024—15 months ago—Plaintiffs provided a proposal to Apple on

---

[11] Plaintiffs asked but Apple did not disclose the number of unique hits until the day of this filing.

how to coordinate this case with the MDL. Ltr. from A. Sheanin (Aug. 30, 2024). Apple still has not responded or made its own proposal. *Second*, on July 25, 2025, Plaintiffs provided the First Set of RFPs to MDL plaintiffs so they could avoid serving duplicative discovery. Apple responded by asserting that Plaintiffs had violated the protective order. *Third*, Plaintiffs learned last week that Apple still has not caught up the MDL plaintiffs by re-producing to them the documents in the government investigation and action. Apple's stated intention to coordinate cannot provide good cause to extend the discovery schedule when Apple is the impediment to coordination.

***Apple's Government-Agency and Third-Party Discovery Argument Is a Red Herring.*** Five months after discovery opened, Apple served Rule 45 subpoenas on 105 federal and state agencies—more than three times the number of third-party market participants subpoenaed and twice the number of custodians Apple deems appropriate for itself. These agencies are not percipient witnesses, do not compete to sell smartphones or adjacent products, and lack information critical to this case. Apple's pursuit of this discovery does not justify an extension.

Apple has not established that these subpoenas or the 31 subpoenas to actual market participants will hinder its ability to meet the production deadline. There is little overlap between the resources needed to review documents and negotiate third party subpoenas. Even if there were, Apple is capably represented by eight law firms that collectively employ nearly 10,000 lawyers. Apple has not established that it could not timely accomplish these tasks, through the exercise of diligence.

***Plaintiffs' Proposed Compromise Mitigates the Prejudice from Apple's Delay and Preserves the Overall Schedule.*** When Apple disclosed that it would not meet the Court's deadline, Plaintiffs attempted to work out a compromise premised on Apple's agreement to (1) set a date by which Apple would conclude negotiations in time to resolve outstanding issues and (2) make rolling productions of 25 custodians by the end of January, 20 by the end of February, and all others by the end of March, prioritizing the agreed-upon custodians. Apple has ample resources to accomplish this through linear review or TAR.

Apple incorrectly claims that Plaintiffs' custodian proposal seeks something the Court rejected without new facts. The Court ordered a fair schedule under which Apple would substantially complete its entire production with 228 days left in fact discovery for Plaintiffs to review and take depositions. Apple seeks an extension that would leave Plaintiffs with 46 days to review documents and take depositions. Apple's request is highly prejudicial to Plaintiffs' ability to prosecute this case. Producing by custodian mitigates that prejudice because depositions could then overlap with document productions.

If the Court is inclined to grant an extension, Plaintiffs respectfully submit that their compromise framework is the best solution. Requiring rolling productions by custodians allows Apple time to complete its production without significantly prejudicing Plaintiffs' ability to take depositions. Plaintiffs offered to discuss alternative dates within this framework and remain willing to do so if the Court denies Apple's motion.

Respectfully submitted,

*/s/  Jonathan H. Lasken*
Jonathan H. Lasken
Assistant Chief, Civil Conduct Task Force
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Telephone: (202) 598-6517
Email: jonathan.lasken@usdoj.gov

MATTHEW J. PLATKIN
Attorney General of New Jersey

*/s/ David H. Reichenberg*
David H. Reichenberg
Section Chief, Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-5271
Email: David.reichenberg@law.njoag.gov

*Attorney for Plaintiff State of New Jersey, Arizona, California, Washington D.C., Connecticut, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin*

*/s/  Liza M. Walsh*
Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Email: lwalsh@walsh.law
Email: darpert@walsh.law

*/s/  Craig S. Primis*
Craig S. Primis, P.C.
Winn Allen, P.C.
Tracie Bryant, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
Email: winn.allen@kirkland.com
Email: tracie.bryant@kirkland.com

*/s/  Devora W. Allon*
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Email: devora.allon@kirkland.com
Email: alexia.brancato@kirkland.com

*Attorneys for Defendant Apple Inc.*