# Appendix 2 (REDACTED)

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, et al., | **REDACTED VERSION** |
| *Plaintiffs,* | |
| v. | **Case No. 2-24-cv-4055** |
| APPLE INC. | **(JXN) (LDW)** |
| *Defendant.* | |

## PLAINTIFFS' FIRST SET OF REQUESTS
## FOR PRODUCTION TO DEFENDANT APPLE INC.

Pursuant to Federal Rules of Civil Procedure 26 and 34, the Pretrial Scheduling Order (ECF No. 270), the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents (ECF No. 264), and the Discovery Confidentiality Order (ECF No. 235), Plaintiffs United States of America, and the States of New Jersey, Arizona, California, Connecticut, District of Columbia, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin, hereby serve these Requests for Production on Defendant Apple Inc. ("Apple"). Apple shall respond to these Requests within the time prescribed by the Pretrial Scheduling Order. Please deliver the requested documents and materials in loadable, executable files to the offices of the U.S. Department of Justice, Antitrust Division, Civil Conduct Task Force, 450 Fifth Street, NW, Ste. 8600, Washington, DC 20530.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All communications between Apple (including its outside counsel) and any third party (including the third party's counsel) related to this Litigation or Investigation, including all documents produced to Apple by persons other than Plaintiffs in this Litigation.

### REQUEST NO. 2

All documents referenced in or relied upon in any pleading, discovery response, brief, or other filing by Apple in this Litigation, including all documents identified in Apple's Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures, and all documents, data, or information that Apple or any Apple expert intends to offer as evidence at trial or otherwise in this Litigation,

including any that Apple or its experts could use, will use, or has used to support any testimony or opinion.

**REQUEST NO. 3**

All pleadings, written discovery responses, document productions, declarations, presentations (including any white papers or other analysis or advocacy), and expert reports served, filed, or produced by Apple, all expert reports served on Apple, all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts, in any proceeding in which Apple is a party where the allegations relate to any Alleged Conduct in the Complaint, including *Epic Games v. Apple*, *In re Apple iPhone Antitrust Litigation*, *Cameron v. Apple*, *Alivecor v. Apple*, *Lopez v. Apple*, *Dr. Rachael Kent v. Apple*, *Dr. Sean Ennis v. Apple*, and European Commission investigations.

**REQUEST NO. 4**

All documents related to Apple's formal or informal policies, practices, training, or guidance for Apple personnel, including documents related to:

    a.    Enabling, disabling, or modifying settings regarding document retention systems;
    b.    Avoiding using certain words, terms, or phrases in internal or external communications and documents;
    c.    Communicating in person, by phone, or by videoconference rather than in writing;
    d.    Labeling documents "attorney-client privileged" or similar in business discussions; or
    e.    Including attorneys in communications or documents, or including inauthentic or pretextual requests for lawyers to advise.

**REQUEST NO. 5**

All documents shared with, or presented to, Apple's board of directors, or any committee or subcommittee thereof, related to Smartphones or any Identified Product or Service, including all minutes, recordings, summaries of reports or meetings, whether formal or informal, of any meetings of any Apple board of directors, or any committee or subcommittee thereof from January 1, 2007 onward.

**REQUEST NO. 6**

All documents related to any plans or changes Apple has made, considered making, or analyzed related to the iPhone or any Identified Product or Service in response to any actual or potential legal, judicial, or regulatory requirement, proceeding, or investigation in any jurisdiction worldwide, including the nature, costs, revenue impacts, and other actual or potential effects of those changes.

**REQUEST NO. 7**

All documents related to any consideration by Apple of developing, releasing, enabling, allowing, blocking, improving, or degrading a version of any Identified Product or Service that is interoperable with or usable with non-Apple smartphones. For avoidance of doubt, this includes ███████████████████████████████████████, Beeper Mini, and ██████.

**REQUEST NO. 8**

All documents related to actual or potential differences in functionality or ease of use with the iPhone—including any differences in developers' access to Entitlements, APIs, data, background processes, or differences due to App Review Guidelines—for:

a.   Apple's Messaging Systems versus non-Apple Messaging Systems;
b.   Apple Pay and Apple Wallet versus non-Apple Digital Wallets and Payment Apps;
c.   Roblox or similar apps versus any other potential or actual Platform Apps, Mini Programs, or Cloud Streamed Games;
d.   Native iOS apps that provide cloud-streamed services (such as Netflix) versus potential or actual Cloud Streamed Games;
e.   Apple Watch versus non-Apple Smartwatches, including the connection to the Smartphone, access to LTE-phone number pairing, or access to APIs, such as those related to app notifications or the ability to perform other functionality available to the Apple Watch; and
f.   Platform Apps available outside the U.S. and in the U.S., including the WeChat app available to iPhone users in the U.S. versus in China.

**REQUEST NO. 9**

All documents related to price, terms of sale (including rebates, fees, promotions, discounts, and financing), licensing terms or conditions, pricing plans, pricing strategies, costs, or profitability of Smartphones or any Identified Product or Service.

**REQUEST NO. 10**

All documents after January 1, 2010 related to competition affecting Smartphones or Identified Products or Services offered by Apple or any firm, including:

a.   Relative quality or features, including technology, performance, privacy, security, user experience, brand strength, customizability, ability to integrate with or interoperate with other hardware or software, network effects, and cost;
b.   Entry, expansion, exit, scale, and repositioning;
c.   Market segmentation by geography, type of consumer, Smartphone type, Smartphone features, sales channel, or Smartphone price or price band;
d.   Competitive positioning;
e.   Sales volumes, revenue, profitability, or market share; and
f.   Nascent threats, disintermediation, and commoditization.

**REQUEST NO. 11**

All documents related to any actual or potential barriers to entry, expansion, or repositioning related to Smartphones, mobile operating systems, or any Identified Product or Service, including all documents related to networks effects, economies of scale, and economies of scope.

**REQUEST NO. 12**

All documents after January 1, 2010 related to any person who previously provided or attempted to provide a Smartphone, mobile operating system, or an Identified Product or Service but ceased doing so.

**REQUEST NO. 13**

All documents related to single-homing, multi-homing, or usage of a "preferred" or "primary" product or service, by users, developers, or any other group, related to Smartphones or any Identified Product or Service.

**REQUEST NO. 14**

All documents related to Apple's plans, strategies, objectives, research, development, investments, roadmaps, marketing, and features for the iPhone, Apple's App Store, or any Identified Product or Service. For avoidance of doubt this includes all documents related to Apple's product development expenses, including expenses related to privacy and security, for the iPhone, Apple's App Store, and any Identified Products or Services.

**REQUEST NO. 15**

All documents related to any efforts to increase, protect, or preserve Apple's market share, sales, or profitability for Smartphones or any Identified Product or Service, including possible or actual responses from other market participants.

**REQUEST NO. 16**

All documents related to any actual or potential pricing power, market power, monopoly power, bargaining leverage, or negotiating leverage that Apple has or may have (including presently, in the past, or in the future) relating to Smartphones or any Identified Product or Service, including with respect to consumers, Enterprise customers, app developers, wireless carriers, iPhone retailers, hardware or accessory manufacturers, financial institutions, and automotive manufacturers.

**REQUEST NO. 17**

All documents related to how the features, functionality, availability, and interoperability of Smartphones or any Identified Product or Service may affect users' Smartphone purchasing decisions, including documents related to user satisfaction, Smartphone switching, consumer

perceptions and attitudes, preferences, usage, purchase intentions, and all other relevant metrics, key performance indicators, and measures.

**REQUEST NO. 18**

All documents related to any factors affecting consumer demand for a Smartphone, such as the Smartphone's price, features, or quality (including quantity, price, and quality of available apps, hardware accessories, or other complementary products and services); usage of any Identified Product or Service; and all documents related to metrics, key performance indicators, and measures related to consumer demand for a Smartphone.

**REQUEST NO. 19**

All documents related to any factors affecting the ability or incentive for developers or third parties to create apps or accessories compatible with a particular Smartphone, such as the size and characteristics of the installed base of users of a particular Smartphone or type of Smartphone, the costs, fees, or commissions charged by the Smartphone provider, features offered by the Smartphone, technological restrictions imposed by the Smartphone provider or operating system, and any other terms of dealing.

**REQUEST NO. 20**

Documents sufficient to show Apple's plans, strategies, and analysis relating to the sale of used or refurbished iPhone and non-Apple Smartphones, including acquisition strategies for any re-seller, Smartphone trade-in values, incentives or credits offered to the person trading in the device, and the countries where used or refurbished Smartphones are sourced and sold.

**REQUEST NO. 21**

All documents related to actual or potential purchases of iPhones outside of the United States for resale or use in the United States, including documents related to actions Apple takes or asks third parties to take to limit, prevent, or punish such purchases and resale.

**REQUEST NO. 22**

For each model of iPhone sold in the United States as compared to models sold outside of the United States, documents sufficient to show all differences in:

a.    technical specifications, hardware, software, and configuration;
b.    prioritization for release and shipments;
c.    sales channels and terms of sale;
d.    upgrade and switching rates;
e.    competitive positioning and market share;
f.    pricing (including discounts, promotions, etc.);
g.    costs; and
h.    profitability.

**REQUEST NO. 23**

All documents related to the following reports and all similar reports:

    a.      Products & Services Profitability;
    b.      Services Revenue Review;
    c.      P&L Dashboard;
    d.
    e.
    f.
    g.
    h.
    i.
    j.
    k.

**REQUEST NO. 24**

Documents sufficient to show the release of each version of the iPhone or iOS, including the date of release for each geography and all changes made.

**REQUEST NO. 25**

All documents since January 1, 2010 related to the actual or potential effects of ending or altering any aspect of the Alleged Conduct, including allowing alternative app stores or app downloads from websites on the iPhone, modifying App Review Guidelines, or giving third parties access to the APIs or features currently or previously reserved for Apple products or services.

**REQUEST NO. 26**

Documents and data sufficient to show, on a quarterly and annual basis since January 1, 2010, the revenue, expenses, costs, margins, and profitability of each Apple product or service. For avoidance of doubt, this includes documents sufficient to show Apple's methodologies for recognition of and allocation of revenue, costs, expenses, margins, and profitability, including any accounting policies and procedures manuals.

**REQUEST NO. 27**

All documents and data related to any Smartphone's usable life, the length of time over which consumers use it, the number and type of consumers that use it, its quality and value at any point in time, and all related metrics or key performance indicators.

**REQUEST NO. 28**

All documents related to the value of a user to Apple, including customer lifetime value, entry point analyses, revenue per user, subsequent hardware purchases, and any revenue or

benefit that Apple has received or anticipates receiving from a customer or third party due to a customer's purchase or use of any Apple products, services, or subscriptions. For avoidance of doubt, this includes documents related to Apple's assumptions or analyses about user behavior related to any such analysis, as well as all metrics, key performance indicators, and other measures related to any such analysis.

**REQUEST NO. 29**

From 2007 to the present, all contracts between Apple, U.S. wireless carriers, or any other retailers relating to the iPhone, and all communications from 2015 onwards related to the negotiations of those contracts or to carrier or retailer sales or promotions.

**REQUEST NO. 30**

All reports or analyses related to Smartphones or any Identified Product or Service authored by third parties including IDC, Strategy Analytics, Counterpoint, Gartner, IHS Markit, Canalys, Kantar Group, Comlink (Opensignal), App Annie (data.ai), any U.S. wireless carrier, Meta, or Google.

**REQUEST NO. 31**

All documents after January 1, 2010 related to Smartphone customer segments, groups, or sub-groups, including:

a.   Previous Smartphone ownership, including upgraders, switchers, and "boomerangs";
b.   Use of other Apple products or services;
c.   Wireless carriers;
d.   Country or geography;
e.   Demographic characteristics; and
f.   Social graphs.

**REQUEST NO. 32**

All documents related to the social dynamics, stigma, or peer pressures in choice of Smartphone or Identified Product or Service in any customer segment, including all documents related to Apple's efforts to increase usage by particular consumer segments, use of the iPhone or any Identified Product or Service by younger customers, family members, or peers, and any effect on future demand for Apple Smartphones or other Apple products and services.

**REQUEST NO. 33**

Documents sufficient to show the level of iPhone app development activity in the United States over time related to:

a.   User accounts;
b.   Developer accounts;

c.    Apps;
d.    Subscriptions;
e.    Engagement;
f.    Searches;
g.    Downloads;
h.    Updates;
i.    Paid transactions;
j.    Refunds;
k.    Complaints;
l.    Fraud;
m.    Submissions, approvals, rejections, and removals from the Apple App Store; and
n.    Documents discussing the appropriate metrics, key performance indicators, and measures for the above.

**REQUEST NO. 34**

All documents related to the use or potential use of apps or app stores directly downloaded from the internet or non-Apple app stores on the iPhone in any geography, including technical assessments, use by Enterprise customers, any comparisons to Android or other operating systems, and any actual or potential effect on:

a.    Apple's revenues and profitability;
b.    User and developer behavior, spending, revenue, and profitability;
c.    The number, quality, and features of apps available for use on the iPhone;
d.    Consumer demand, purchase intentions, and Smartphone switching;
e.    Privacy or security for users or developers, including threat assessments or Threat Models; and
f.    Potential alternatives to app stores, including web stores and progressive web apps.

**REQUEST NO. 35**

Documents sufficient to show differences between iPhone, Mac, iPad, Apple Watch, and Apple TV with respect to (1) app distribution, (2) web browsers or middleware, (3) privacy, or (4) security.

**REQUEST NO. 36**

All documents related to payment methods actually or potentially available for use on the iPhone, including related to payment processors, in-app payments, payments using virtual currencies, and payments made on web browsers or web apps. For avoidance of doubt, this includes any payment methods on the iPhone that Apple has disallowed in whole or in part, at any point in time.

**REQUEST NO. 37**

All documents related to the design, development, marketing, or sale of any Smartphone or Identified Product or Service, concerning:

    a.    user habits, user inertia, user-interface features, user-facing permission flows, user-facing defaults, user-facing choice screens, user-facing notifications and other messages presented to users by a Smartphone's operating system or mobile applications;

    b.    the number of steps required, load times, or other frictions for users to set up, use, or purchase a Smartphone, mobile application, or Identified Product or Service;

    c.    performance standards to which Apple has held its own apps, products, and services;

    d.    Apple's assessments of the user experience (e.g., usability, friction, latency, setup process, permission flows) for Apple and non-Apple apps, products, or services on iPhones or non-Apple smartphones; and

    e.    anonymized data regarding the actual performance of any Smartphones or Identified Products and Services.

**REQUEST NO. 38**

All documents related to consumer views about the privacy, security, user experience, or quality of Smartphones, including how consumers' views:

    a.    are affected by Smartphone manufacturers' product decisions and marketing strategies and campaigns;

    b.    are affected by the product decisions and marketing strategies and campaigns related to any Identified Product or Service;

    c.    compare to actual differences in Smartphone privacy, security, and quality; and

    d.    affect Smartphone demand, purchase intentions, switching, and consumer satisfaction.

**REQUEST NO. 39**

All documents related to user switching between Smartphones or any models thereof (i.e., switching between an iPhone and a non-Apple Smartphone, switching from one iPhone to another iPhone, or switching from one non-Apple Smartphone to another non-Apple Smartphone), including:

    a.    the ease or difficulty of switching,

    b.    the costs of switching,

    c.    the relationship between the cost or difficulty and likelihood of switching,

    d.    stickiness,

    e.    customer loyalty or churn,

    f.    tools and support services available for switching,

g.    the duration of time between switching (e.g., how long a user has used an iPhone before switching to a non-Apple Smartphone),

h.    consumer views about switching,

i.    the availability and performance of complementary products and services, including any changes thereto, and

j.    documents related to the Data Transfer Project or other products, services, initiatives, or partnerships that facilitate switching from iPhones to non-Apple smartphones.

## REQUEST NO. 40

All documents related to how consumers' ownership or use of one or more Apple products or services affects consumers' decisions regarding the purchase or use of additional products or services from Apple or other firms.

## REQUEST NO. 41

All documents after January 1, 2010 related to the inability of non-Apple Messaging Systems to access the iPhone's carrier messaging capabilities, including requests from third parties for this ability, consideration of whether to provide this ability to third-party Messaging Systems, and any potential effects of doing so.

## REQUEST NO. 42

All documents after January 1, 2010 related to aspects of Apple Messages that differentiate, or plans for aspects of Apple Messages that could differentiate, messaging among iPhone users from messaging with non-iPhone users, including green and blue chat bubbles.

## REQUEST NO. 43

All documents after January 1, 2012 related to the consideration, adoption, or development of cross-platform standards relating to an Identified Product or Service.  This includes all documents relating to the consideration, adoption, or development of SMS, MMS, RCS, or messaging alternatives, including documents related to whether or how to adopt RCS on the iPhone, whether or how third parties adopt RCS, and the use or potential use of SMS, MMS, or RCS by non-Apple Messaging Systems on the iPhone or non-Apple Smartphones. This also includes all documents related to the development or potential development of cross-platform standards, protocols, or capabilities relating to video calls.

## REQUEST NO. 44

All documents related to Apple's Actionable Notifications API, the Apple Notification Center Service (ANCS) API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a.    potential and actual development costs and challenges (past, current, or future);

b.    requirements, design, or features, including roadmaps;

c.    the availability of similar capabilities on Android or other Smartphone operating systems;

d.    potential design for non-Apple Smartwatches or barriers thereto; and

e.    potential or actual features available to non-Apple Smartwatches.

**REQUEST NO. 45**

All documents related to the development and implementation of new features for the Actionable Notifications API, the ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, including:

a.    the Company's assessment of whether to implement any new features;

b.    communications between the Company and any third parties concerning or requesting the implementation of new features;

c.    the date that development of any feature began, and the date that the feature was first implemented or provided; and

d.    total development costs incurred by the Company to date, and the total costs projected for any continuing development of the new feature.

**REQUEST NO. 46**

All documents related to the Company's assessment of whether to expand the functionality of or access to the Actionable Notifications API, ANCS API, or any software that enables a Smartwatch to access Smartphone notifications or functionality, so that non-Apple Smartwatches can respond to messages, app notifications, or utilize other APIs or functionalities available to the Apple Watch.

**REQUEST NO. 47**

All documents related to the ability of non-Apple devices to connect or interact with the iPhone, including but not limited to their ability to receive incoming message notifications, reply to incoming messages, compose new messages, access messages, and mark messages as read.

**REQUEST NO. 48**

All documents after January 1, 2017 related to whether to offer or allow cloud-streamed applications on the iPhone, including both Cloud Streamed Games and other cloud-based services.

**REQUEST NO. 49**

All Documents related to Apple's plans for the Games app announced at WWDC 2025, including Apple's strategic objectives, assessments of other gaming apps or services, integration with other Apple apps such as Apple's App Store, Apple Arcade, or Game Center, actual or potential effects on developers or consumers related to game discovery, distribution, usage, or monetization, and analyses related to alternative methods of distributing games, including Cloud Streamed Game apps.

**REQUEST NO. 50**

All documents related to Apple's App Store Review Guidelines affecting any Identified Product or Service, including:

   a.   Drafting, adoption, application, interpretation, or enforcement of Apple's App Store Review Guidelines;
   b.   Agreements between Apple and any developer related to changes or exceptions to the Apple App Store Review Guidelines, including any agreements that were later formalized into an App Store Review Guideline or exception thereto, including Apple's 2011 agreement with Meta related to the Facebook app;
   c.   Changes, considered changes, or reinterpretations of any Apple App Store Review Guideline; and
   d.   The actual or potential effect of any changes, considered changes, or reinterpretations of any Apple App Store Review Guideline on the iPhone or any Identified Product or Service.

**REQUEST NO. 51**

All documents after January 1, 2010 related to changes or considered changes to the Apple Developer Program License Agreement relating to iOS or WatchOS in the United States.

**REQUEST NO. 52**

All documents, analyses, or data after January 1, 2017 relating to TestFlight Beta tests for Cloud Streamed Games, including all data related to testers, installs, sessions, crash logs, crash reports, feedback, bugs, and battery and hardware performance differences.

**REQUEST NO. 53**

All documents after January 1, 2011 related to Platform Apps' or Mini Programs' potential or actual use; benefits, risks, revenue potential, and differences relative to native apps; and Apple's potential or actual treatment of Platform Apps or Mini Programs.

**REQUEST NO. 54**

All documents related to any mobile app's access to or use of any iPhone features or capabilities related to connections to other devices or servers, including near-field communication (NFC), host card emulation (HCE), ultra-wide band (UWB) technology, or any related APIs, for any purpose, including documents related to the number, nature, popularity, and usage of mobile apps that access or use NFC, HCE, or UWB.

**REQUEST NO. 55**

For each Identified Product or Service, all documents related to any potential or actual limitation or prohibition on the availability or functionality of any non-Apple product, feature, or service, including:

    a.    documents related to any authorizations, allowances, denials, or limitations on access to APIs, Entitlements, functionalities, features, and data sets related to any Identified Product or Service;

    b.    documents related to any authorizations, allowances, denials, or limitations on access to APIs, SDKs, Frameworks, Libraries, any other software artifacts related to any Identified Product or Service; and

    c.    documents related to mechanisms, technical or otherwise, to implement or enforce limitations or prohibitions on the availability or functionality of any product, feature, or service, including references to the Source Code that implements each such means or mechanism.

**REQUEST NO. 56**

For each Identified Product or Service, all documents related to:

    a.    any APIs, Entitlements, signatures (other than cryptographic keys), or other permissions, restrictions, or limitations on third party developers, including all Implementations, Technical Documentation, Source Code Repositories, Frameworks, Libraries, and SDKs provided or authorized by Apple;

    b.    any in-line documentation contained in any API or Source Code provided or authorized by Apple;

    c.    any free-form text related to any API or Source Code provided or authorized by Apple;

    d.    any Apple SDKs available to developers of any Identified Product or Service;

    e.    any text or other indicators (including any links, pointers, citations, or references) that refer to the Source Code relating to any Apple-provided API or Entitlement or related documentation; and

    f.    all Apple Source Code Repositories referenced in or otherwise related to any SDKs, Entitlements, APIs, Frameworks, Libraries, or any other software artifacts referenced in subpart (b), above.

**REQUEST NO. 57**

All documents related to (a) any purported procompetitive justification for the Alleged Conduct; (b) any purported innovation or benefit to Smartphone users, developers, carriers, or others from the Alleged Conduct, including any purported innovation or benefit related to privacy, security, fraudulent or deceptive activities, or user experience or human-computer interaction; (c) any alternative means of achieving any purported innovation or benefit other than the Alleged Conduct; and (d) any potential or actual business or technical reason for the Alleged Conduct.

**REQUEST NO. 58**

For the iPhone and each Apple or non-Apple Identified Product and Service, all documents related to Apple's adoption or implementation of privacy or security policies or practices for information stored, transmitted, or received by iOS, the iPhone, Apple, or third parties, including nutrition labels and privacy manifest files.

**REQUEST NO. 59**

All studies, analyses, investigations, and reports related to fraudulent, malicious, misleading, or deceptive activity, code, content, information, or patterns within or related to the iPhone, iOS, or any Identified Product or Service, including any threat assessment or Threat Model, in whatever form it may exist.

**REQUEST NO. 60**

All documents related to Apple's ability to access or use data or metadata from the iPhone or from any Identified Product or Service that is not as available or accessible to third-party developers, including the reasons for any such differences and any benefits to Apple therefrom.

**REQUEST NO. 61**

Each database or data set, as well as any associated Data Dictionaries and documentation, relating to Apple Smartphones or any Identified Product or Service after January 1, 2009, containing information derived from users in the United States, Australia, Canada, China, France, Germany, India, Japan, Mexico, Brazil, Russia, South Korea, and United Kingdom, excluding enterprise users, that contains information relating to user:

a.  characteristics;
b.  relationships between or among the Company's other users (including Family Sharing);
c.  specific devices used (e.g., iPhone model, year, and storage);
d.  ownership, activation, deactivation, or usage of the Company's devices;
e.  ownership, activation, deactivation, or usage of third-party devices;
f.  switching to, from, or among devices;
g.  purchase, activation, deactivation, or usage of the Company's apps, subscriptions, products, or services;
h.  purchase, activation, deactivation, or usage of third-party apps, subscriptions, products, or services; and
i.  unique identifiers sufficient to link the user across data sets produced in response to these Requests.

**REQUEST NO. 62**

Monthly iPhone and Apple Watch sales data worldwide, as well as any associated Data Dictionaries and documentation, for all models after January 1, 2010, including:

a.     The country and state where the iPhone or Apple Watch was purchased;

b.     The country and state where the iPhone or Apple Watch was activated, if different than the country and state of purchase;

c.     All fields necessary to identify the model and specifications, including serial number, IMEI, ICCID, MAC address, brand, model, and storage capacity;

d.     All fields necessary to identify the wholesale customer or retailer and sales channel, including the wireless carrier brand through which devices are sold to consumers; and

e.     All fields related to units sold, price, incentives, revenues, costs, discounts, rebates, returns, margins, and profitability maintained in the ordinary course of business.

**REQUEST NO. 63**

Each database or data set, as well as any associated Data Dictionaries and documentation, relating to studies, reports, and analyses of consumers, developers, or other groups related to Smartphones or any Identified Product or Service. These include surveys, polls, focus groups, market research, market segmentations, online anthropologies, A/B testing or other experiments, and choice modelling. They exclude databases and data related to purely cosmetic hardware changes.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these requests should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure.

1.     The term "**Alleged Conduct**" means the conduct set forth in Plaintiffs' Complaint.

2.     The terms "**Apple**" or "**the Company**" mean Apple Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control.

3.     The term "**Agreement**" means any understanding, formal or informal, written or unwritten.

4.     The terms "**and**" and "**or**" have both conjunctive and disjunctive meanings.

5.     The term "**any**" means each and every.

- 15 -

6.      The term "**app store**" means a distribution platform for mobile applications. Apple's App Store and the Google Play Store are examples of app stores.

7.      The term "**App Store Review Guidelines**" means all app store review guidelines developed and maintained by Apple, including any and all iterations of such guidelines, including those that are referred to as "App Review Guidelines," "App Store Review Guidelines," or by any other name or title.

8.      The term "**Application Programming Interface**" or "**API**" means the interface description, Implementation, and Technical Documentation for any and all mechanisms through which a software application (on a Smartphone or another hardware or accessory, such as a Smartwatch) can communicate or interact with an operating system or another software application, library, or service. For example, an Apple-provided API might facilitate communication or interaction between a mobile application and the operating system of an iPhone to enable the application to access and interact with the NFC or Bluetooth controller on the device and can communicate or interact with an operating system or another software application, library, or service.

9.      The term "**Cloud Streamed Game**" means any native or web-based mobile application that allows a Smartphone user to play video games that are run on a remote server, data center, or service and streamed to the user's Smartphone. Examples of Cloud Streamed Game services include Microsoft xCloud Gamepass, NVIDIA GeForce NOW, Amazon Luna, Google Stadia, and Roblox.

10.     The term "**Collaborative Work Environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include iCloud, Google Drive, Box, Microsoft OneDrive, Quip, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis, and blogs.

11.     The term "**Data Dictionary**" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Plaintiffs, including, for each table of information: (a) the name of the table; (b) a general description of the information contained; (c) the size in both number of records and megabytes; (d) a list of fields available for each record; (e) the format, including variable type and length, of each field; (f) a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values; (g) the fields that are primary keys for the purpose of identifying a unique observation; (h) the fields that are foreign keys for the purpose of joining tables; and (i) an indication of which fields are populated. A database schema is an example of a Data Dictionary.

12.    The term "**Digital Wallet**" means a mobile payment platform, payment app, or other
mobile application, or combination of mobile applications, that allows users to make
payments or use other credentials, such as to unlock doors, operate vehicles, access
public transit, enter event venues, or present proof of identity or other personal
credentials. Apple Wallet, Samsung Wallet, Google Wallet, PayPal, and Venmo are
examples of Digital Wallets.

13.    The term "**documents**" means all written, printed, or electronically stored information
("ESI") of any kind in the possession, custody, or control of the Company, including
information stored on social media accounts like X (formerly known as Twitter) or
Facebook, chats, instant messages, text messages, other Employee Messaging
Applications, and documents contained in Collaborative Work Environments and other
document databases. "**Documents**" includes metadata, formulas, and other embedded
information whether hidden or visible, including comments, protocomments, linked to
documents, and bibliographic or historical data (including any changelogs) describing or
related to any document. Unless otherwise specified, "**documents**" excludes bills of
lading, invoices in non-electronic form, purchase orders, customs declarations, and other
similar documents of a purely transactional nature; architectural plans and engineering
blueprints; and documents solely related to environmental, tax, OSHA, or ERISA issues.

14.    The term "**Employee Messaging Application**" refers to any electronic method used by
the Company and its employees to communicate with each other or entities outside the
Company for business purposes. "Employee Messaging Application" includes platforms,
whether for ephemeral or non-ephemeral messaging, for email, chats, instant messages,
text messages, and other methods of group and individual communication (e.g.,
Microsoft Teams, Slack). "Employee Messaging Application" may overlap with
"Collaborative Work Environment."

15.    The term "**Enterprise customer**" means business or corporate customers, including
government and public sector customers.

16.    The term "**Entitlement**" means any permissions or other grants of authority made by or
on behalf of Apple—including to itself—authorizing an app or service to use or invoke
an API, or otherwise access one or more functions, resources, or operations of iOS, or to
access or use one or more hardware components of the iPhone.

17.    The term "**Framework**" means a set of reusable functionalities and associated resources
for application development, including a hierarchical directory that encapsulates shared
resources, such as dynamic shared libraries, nib files, image files, localized strings,
header files, and reference documentation in a single package. Apple's UIKit and Core
Data are examples of Frameworks.

- 17 -

18.    The term "**Identified Product or Service**" means each product or service within one or more of the following categories:

    a. Cloud Streamed Games;
    b. Messaging Systems;
    c. Digital Wallets or Payment Apps;
    d. Platform Apps or Mini Programs; and
    e. Smartwatches.

19.    The term "**Implementation**" means any software code that implements any part of an API, library, application, operating system, or any other software artifact. Implementation includes all representations of the code, including Source Code, intermediary code, binary code, or any other form of code.

20.    The term "**including**" or "**includes**" means including, but not limited to.

21.    The term "**Investigation**" means Plaintiffs' pre-Complaint investigation into Apple's conduct in this case.

22.    The term "**Library**" means any collection of implementations for APIs or other functions.

23.    The term "**Litigation**" means this action *United States et al. v. Apple*, No. 2:24-cv-04055 in the United States District Court for the District of New Jersey.

24.    The term "**Messaging System**" means any application or service that can send and receive private digital messages (other than e-mail). Messaging Systems can use internet-based communications protocols (e.g., over-the-top (OTT) or internet protocol (IP)), telecommunications protocols (e.g., RCS, SMS, or MMS), or a combination of protocols. Apple Messages, iMessage, Google Messages, WhatsApp, Facebook Messenger, Signal, Telegram, and WeChat are examples of Messaging Systems. A Messaging System may also provide other functionality such as video-calling, audio-calling, or file sharing.

25.    The term "**mobile application**" (commonly referred to as an "**application**," "**app**," or "**mobile app**") means a software program designed for use on a Smartphone or other hardware or accessory, such as a Smartwatch. Examples of mobile applications include those in categories such as web browsing, productivity, games, social networking, or entertainment. A mobile application can be a native app or a web app.

26.    The term "**Mini Program**" means a program that is run within a platform app. Mini Programs may be developed in their own programming languages, often using web technologies such as HTML, CSS, and JavaScript.

27.    The term "**operating system**" means the software that coordinates and manages the hardware and software on a computer or mobile device, including connections to other

hardware or accessories, such as Smartwatches. iOS is an example of a mobile operating system.

28.     The term "**Payment App**" means a mobile application, mobile payment platform, or digital financial service that enables users to make payments to or otherwise engage in financial transactions with third parties, including in-person payments at merchants using point-of-sale equipment capable of communicating with a Smartphone or Smartwatch (e.g., tap-to-pay or QR codes). Apple Pay, Google Pay, PayPal, and Venmo are examples of Payment Apps.

29.     The term "**person**" means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust and includes the Company.

30.     The term "**Plaintiffs**" means, collectively, the named plaintiffs in this action, *United States et al. v. Apple Inc.*, No. 2:24-cv-04055 in the United States District Court for the District of New Jersey.

31.     The term "**plans**" includes proposals, recommendations, or considerations, whether finalized or adopted.

32.     The term "**Platform App**" means a mobile app that provides a platform for other apps and software, including Mini Programs. Platform Apps include, but are not limited to, super apps.

33.     The term "**Smartphone**" means any handheld mobile device with a touch screen that makes phone calls, transmits data, accesses the internet, contains an operating system, and can run third-party mobile applications. Apple's iPhone and the Samsung Galaxy S series are examples of Smartphones. E-readers, Smartwatches, laptops, and tablets are not Smartphones. The term "Smartphone" includes any operating system included with the device (e.g., iOS for the iPhone).

34.     The term "**Smartwatch**" means any mobile device that is intended to be wrist-worn, can interoperate with a Smartphone, and contains an operating system that can process mobile applications (e.g., watchOS for the Apple Watch). The Apple Watch is an example of a Smartwatch.

35.     The term "**Software Development Kit**" or "**SDK**" means a set of libraries, frameworks, implementations, APIs, documentation, and other resources for use in developing software or applications for a specific platform or operating system. Apple's iOS SDK is an example of an SDK.

36.     The term "**Source Code Repository**" means a collection of files or archives containing Source Code, as well as any associated Source Code history, metadata, version control information, documentation, configuration files, data files, multimedia sources, and scripts, wherever they are stored.

37.    The term "**Source Code**" is the human-readable computer code written by developers (or generated by AI or other helper tools) that adheres to the syntax and semantics of a programming language. Source Code implements the algorithms and functionality for all computer programs and any other binary or executable code, including Libraries, Frameworks, and operating system kernels.

38.    The term "**Technical Documentation**" means all documents (whether public or private) relating to the design, use, function, implementation, or operation of any API, Library, application, SDK, Framework, operating system, or any other software artifact. Technical Documentation includes, for example, all documents describing the appearance, functions, features, user interfaces, user experience, or interoperation with iOS of any API, Library, application, SDK, Framework, or other software artifact.

39.    The term "**third party**" or "**third parties**" means any person other than Apple.

40.    The term "**Threat Model**" means, with respect to the privacy and security of hardware, operating systems, software, data center, server, or service, any formal or informal assessments, analyses, reports, summaries, assumptions, studies, or other understandings about attacker characteristics, goals, capabilities, limitations, or assets. Threat Models also include documents and information reflecting assumptions (including the bases for such assumptions) and understandings about the security posture of a system, hardware, or software, including possible threats, vulnerabilities, potential mitigations, and tradeoffs.

41.    The singular includes the plural and vice versa.

42.    The definitions provided herein shall apply to the terms defined regardless of capitalization.

## INSTRUCTIONS

1.    All documents already produced in full by Apple in response to Civil Investigative Demands Nos. 30193, 30356, 31300, and not clawed back, need not be reproduced in response to these document requests. A document is produced in full only if the document and all family members were produced without redactions.

2.    Each request for production shall be answered in accordance with the Federal Rules of Civil Procedure and shall be continuing to the extent permitted under Rule 26(e). Apple must supplement or amend Apple's responses to these requests as appropriate pursuant to Rule 26(e).

3.    Unless otherwise specified, these requests seek all responsive Documents created, modified, sent, or received during the period from January 1, 2014 to the end of fact discovery.

4.  Unless otherwise specified, these requests seek responsive documents relating to any geography worldwide.

5.  Each request shall apply to Documents or materials in Apple's possession, custody, or control, regardless of whether such Documents or materials are possessed by Apple or Apple's present or former domestic or foreign parents, subsidiaries, divisions, subdivisions, affiliates; Apple's predecessor and successor entities; or by any of Apple's employees, agents, representatives, attorneys, officers, directors, consultants, lobbyists, or any other Person acting or purporting to act on Apple's behalf, including, unless privileged and such privilege has not been waived, your attorneys, and regardless of where such Documents are located.

6.  In producing Documents, Apple must produce a legible copy of each Document requested together with all non-identical copies and drafts of that Document. All metadata of electronic Documents must also be produced. Apple must retain all of the original Documents for inspection or copying throughout the pendency of this action, any appeal(s), and any related proceedings.

7.  Any responsive Document that has been altered, including by the addition of marginal notes, handwritten notes, underlining, highlighting, date stamps, received stamps, or endorsed or filed stamps, and any draft, revision, modification or other version of a responsive Document, is a responsive Document in its own right and must be produced.

8.  If any portion of any Document is responsive to any request, then the entire Document must be produced, including all attachments, linked Documents, and enclosures.

9.  Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Documents must be produced either (a) as they are kept in the usual course of business (in which case, they must be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural Person in whose possession they were found or the server or central file in which they were found); or (b) identified as responsive to a specific request enumerated in these requests, with such specific request identified.

10. Documents and electronically stored information must be produced in accordance with the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents (ECF No. 264).

11. All Documents must be produced in the file folder, envelope, or other container in which the Documents are kept or maintained. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

12. Documents attached to each other should not be separated.

13. If identical copies of a Document are in the possession, custody, or control of more than one natural Person or other Document custodian, a copy of that Document must be produced from each such natural Person or other Document custodian.

14. The fact that a Document is produced by another Person does not relieve Apple of the obligation to produce all of Apple's copies of the same Document, even if Apple's copies are identical to a Document produced or held by another Person.

15. If any Document is withheld based on an objection to any request, all Documents covered by that request but not subject to the objection must be produced.

16. To the extent Apple contends that responsive Documents in Apple's possession, custody, or control cannot be produced pursuant to the notice and consent requirements contained in a protective order or agreement, the written response to this request must identify the specific provisions of the protective order or agreement on which Apple is relying and the efforts that Apple has and will undertake to provide notice and obtain consents.

17. If Apple is unable to produce a Document that is responsive to a request, describe the Document, state why it cannot be produced, and, if applicable, state the whereabouts of such Document when last in Apple's possession.

18. Any Documents that Apple deems to be Confidential as defined in the Discovery Confidentiality Order (ECF No. 235) must be produced in accordance with the terms of that Order.

19. Other than redactions of information withheld under a claim of privilege or other legal protection, Documents must be produced in full. If any requested Document cannot be produced in full, or if Apple withholds production of any Document or portion of any Document responsive to the requests based upon any privilege or other legal protection, produce it to the extent possible and provide a description in accordance with the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents (ECF No. 264), the Pretrial Scheduling Order (ECF No. 270), and Discovery Confidentiality Order (ECF No. 235).

20. Any reference to a Person that is a business entity and is not otherwise defined includes: that Person's predecessors (including any pre-existing Person that at any time became part of that entity after merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors and franchisees; each other Person, directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

Dated: June 20, 2025

/s/  Jonathan H. Lasken
Jonathan H. Lasken
Assistant Chief, Civil Conduct Task Force
Andrew L. Kline
Trial Attorney
United States Department of Justice
450 Fifth Street, NW, Suite 8600
Washington, D.C. 20530
Telephone: (202) 598-6517
Jonathan.Lasken@usdoj.gov
Andrew.Kline@usdoj.gov

ALINA HABBA
United States Attorney

/s/  John F. Basiak Jr.
John F. Basiak Jr.
Assistant United States Attorney
Chief, Civil Division
Angela Juneau
Assistant United States Attorney
Peter W. Rodino, Jr. Federal Building
970 Broad Street, 7th Floor
Newark, NJ 07102
Tel: (973) 645-2700
John.Basiak@usdoj.gov
Angela.Juneau@usdoj.gov

*Attorneys for Plaintiff United States of America*

MATTHEW J. PLATKIN
NEW JERSEY ATTORNEY GENERAL

By:     s/ *David Reichenberg*
        David Reichenberg
        *Deputy Attorney General*
        *Antitrust Section Chief*
        Brian F. McDonough
        *Assistant Attorney General*
        Surinder K. Aggarwal
        Andrew Esoldi
        Samuel Kontos-Bleifer
        Yale A. Leber
        Giancarlo G. Piccinini
        Lauren E. Van Driesen
        *Deputy Attorneys General*

KRISTIN K. MAYES
ARIZONA ATTORNEY GENERAL

By:     s/ *Vinny Venkat*
        Vinny Venkat
        *Assistant Attorney General*

ROBERT A. BONTA
CALIFORNIA ATTORNEY GENERAL

By:     s/ *Cari Jeffries*
        Paula Blizzard
        *Senior Assistant Attorney General*
        Michael Jorgenson
        *Supervising Deputy Attorney*
        *General*
        Cari Jeffries
        Brian Wang
        *Deputy Attorneys General*

BRIAN SCHWALB
DISTRICT OF COLUMBIA ATTORNEY
GENERAL

By:     s/ *C. William Margrabe*
        C. William Margrabe
        Elizabeth G. Arthur
        *Assistant Attorneys General*

WILLIAM TONG
CONNECTICUT ATTORNEY GENERAL

By:     s/ *Nicole Demers*
        Nicole Demers
        *Deputy Associate Attorney General*

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL

By:     s/ *Scott L. Barnhart*
        Scott L. Barnhart
            *Director, Consumer Protection*
        Jennifer Linsey
        Jesse Moore
            *Deputy Attorneys General*

ANDREA JOY CAMPBELL
MASSACHUSETTS ATTORNEY
GENERAL

By:     s/ *David Mlaver*
        David Mlaver
        Katherine W. Krems
        *Assistant Attorneys General,*
        *Antitrust Division*

AARON M. FREY
MAINE ATTORNEY GENERAL

By:     s/ *Christina M. Moylan*
        Christina M. Moylan
        Michael Devine
        *Assistant Attorneys General*

DANA NESSEL
MICHIGAN ATTORNEY GENERAL

By:    s/ *Jonathan S. Comish*
       Jonathan S. Comish
       Jason R. Evans
       Scott A. Mertens
       LeAnn D. Scott
       *Assistant Attorneys General*

KEITH ELLISON
MINNESOTA ATTORNEY GENERAL

By:    s/ *Justin A. Moor*
       Justin A. Moor
       Erin E. Conti
       Elizabeth Odette
       *Assistant Attorneys General*

AARON D. FORD
NEVADA ATTORNEY GENERAL

By:    s/ *Raquel Fulghum*
       Raquel Fulghum
       Samantha Bilbao Feeley
       *Senior Deputy Attorneys General*

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY
GENERAL

By:    s/ *Alexandra C. Sosnowski*
       Alexandra C. Sosnowski
       *Senior Assistant Attorney General*

LETITIA JAMES
NEW YORK ATTORNEY GENERAL

By:    s/ *Elinor R. Hoffmann*
       Elinor R. Hoffmann
       *Bureau Chief, Antitrust Bureau*
       Amy McFarlane
       *Deputy Bureau Chief, Antitrust
       Bureau*
       Isabella R. Pitt
       Saaket Pradhan
       *Assistant Attorneys General*

DREW H. WRIGLEY
NORTH DAKOTA ATTORNEY
GENERAL

By:    s/ *Elin S. Alm*
       Elin S. Alm
       Christopher G. Lindblad
       *Assistant Attorneys General*

GENTNER DRUMMOND
OKLAHOMA ATTORNEY GENERAL

By:    s/ *Malisa McPherson*
       Malisa McPherson
       Cameron Capps
       *Deputy Attorneys General*

DANIEL RAYFIELD
OREGON ATTORNEY GENERAL

By:    s/ *Rachel Sowray*
       Rachel Sowray
       Timothy D. Smith
       *Senior Assistant Attorneys General*

JONATHAN SKRMETTI
TENNESSEE ATTORNEY GENERAL

By:    s/ *Austin C. Ostiguy*
       Austin C. Ostiguy
       *Assistant Attorney General*
       Scott Ethan Bowers
       *Senior Assistant Attorney General*
       Hamilton McClain Milwee
       *Assistant Attorney General*
       John David McDowell
       *Deputy Attorney General*

CHARITY R. CLARK
VERMONT ATTORNEY GENERAL

By:    s/ *Jill S. Abrams*
       Jill S. Abrams
       *Director, Consumer and Antitrust Unit*
       Alexandra Spring
       *Assistant Attorney General*

JOSHUA L. KAUL
WISCONSIN ATTORNEY GENERAL

By:    s/ *Caitlin M. Madden*
       Caitlin M. Madden
       Laura McFarlane
       *Assistant Attorneys General*

NICHOLAS W. BROWN
WASHINGTON ATTORNEY GENERAL

By:    s/ *Luminita Nodit*
       Luminita Nodit
       *Assistant Attorney General*