# Appendix 4

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>APPLE INC.<br><br>*Defendant.* | **Case No. 2-24-cv-4055**<br><br>**(JXN) (LDW)** |

### PLAINTIFFS' SECOND SET OF REQUESTS
### FOR PRODUCTION TO DEFENDANT APPLE INC.

Pursuant to Federal Rules of Civil Procedure 26 and 34, the Pretrial Scheduling Order (ECF No. 270), the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents (ECF No. 264), and the Discovery Confidentiality Order (ECF No. 235), Plaintiffs United States of America, and the States of New Jersey, Arizona, California, Connecticut, District of Columbia, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin, hereby serve these Requests for Production on Defendant Apple Inc. ("Apple"). Apple shall respond to these Requests within the time prescribed by the Pretrial Scheduling Order. Please deliver the requested documents and materials in loadable, executable files to the office of the U.S. Department of Justice, Antitrust Division, Anti-Monopoly and Collusion Enforcement Section, 450 Fifth Street, NW, Ste. 8600, Washington, DC 20530.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 64**

For Requests 5, 6, 10, 11, 14, 15, 16, 17, 30, 50, 55, 56, 58, and 60 in Plaintiffs' First Set of Requests for Production, please include all documents related to Browsers, eSIM technologies, and Collaborative Work Environments.

**REQUEST NO. 65**

All documents related to the development, implementation, and terms offered in connection with any proprietary eSIM technology, in any Smartphone, including any actual or potential effect on:

     a. Apple's revenues and profitability;
     b. Consumer demand, purchase intentions, and Smartphone switching;
     c. Portability of phone numbers between devices and operating systems;
     d. Any wireless carrier, including Apple's commercial relationship with same;
     e. GSMA adoption; and
     f. User Privacy and Security.

**REQUEST NO. 66**

All documents related to Apple's policies with respect to Apple's Webkit browser engine, including any actual or potential effect on:

     a. Apple's revenues and profitability;
     b. Consumer demand, purchase intentions, and Smartphone switching;
     c. Competing mobile browsers;
     d. Native iOS app development;
     e. Device interoperability; and
     f. User Privacy and Security.

For avoidance of doubt, this includes all documents related to Apple's rationale for limiting iOS browsers to using WebKit as the rendering engine, as well as Apple's decision to eliminate the Webkit requirement in Europe, and any documents pertaining to discussions of current or potential plans to modify the Webkit browser requirement in any other jurisdiction, including but not limited to the United States.

**REQUEST NO. 67**

All documents related to Apple's decision to permit third-party Browser apps on the iPhone and the Apple App Store.

**REQUEST NO. 68**

All documents related to any asserted procompetitive justifications for Apple's prohibition of non-WebKit mobile browser engines on iOS.

**REQUEST NO. 69**

All documents related to the development, implementation, and terms offered in connection with iCloud, including any actual or potential effect on:

     a. Apple's revenues and profitability;

b. Consumer demand, purchase intentions, and Smartphone switching;
c. Competing filesharing platforms;
d. Device interoperability; and
e. User Privacy and Security.

**REQUEST NO. 70**

All documents related to any consideration by Apple of developing or releasing a native iCloud app for any non-Apple platform or system including, but not limited to, Android or Windows.

**REQUEST NO. 71**

All documents related to any differences in performance, UI, and available features, including but not limited to User Privacy and Security, Keychain, Messages, and Health between the native iOS iCloud app and the browser-based iCloud platform.

**REQUEST NO. 72**

All pleadings, written discovery requests, document productions, declarations, presentations (including any white papers or other analysis or advocacy),expert reports served, filed, or produced by Apple; all expert reports served on Apple; all discovery requests served on Apple to the extent not included in Apple's responses, and transcripts of all depositions, hearings, and trials for Apple employees and experts in *Gamboa v. Apple*, No. 24-1270 (N.D. Cal.).

**REQUEST NO. 73**

Documents sufficient to show annually for the years 2014 to the present, all Apple employees including, at minimum, each employee by name, start date, job function, title, business unit and area, and each of the reporting organization-level managers above the employee, up to the CEO.

**REQUEST NO. 74**

All documents, communications, and data allegedly supporting Your purported Affirmative Defenses asserted in this Case, whether articulated in Your Answer filed on July 29, 2025 or any subsequent pleading or document articulating Apple's purported defenses.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these requests should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules of Civil Procedure.

1.    The term "**Alleged Conduct**" means the conduct set forth in Plaintiffs' Complaint.

2.    The terms "**Apple**" or "**the Company**" mean Apple Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25 percent or more) or total ownership or control.

3.    The term "**Agreement**" means any understanding, formal or informal, written or unwritten.

4.    The terms "**and**" and "**or**" have both conjunctive and disjunctive meanings.

5.    The term "**any**" means each and every.

6.    The term "**app store**" means a distribution platform for mobile applications. Apple's App Store and the Google Play Store are examples of app stores.

7.    The term "**App Store Review Guidelines**" means all app store review guidelines developed and maintained by Apple, including any and all iterations of such guidelines, including those that are referred to as "App Review Guidelines," "App Store Review Guidelines," or by any other name or title.

8.    The term "**Application Programming Interface**" or "**API**" means the interface description, Implementation, and Technical Documentation for any and all mechanisms through which a software application (on a Smartphone or another hardware or accessory, such as a Smartwatch) can communicate or interact with an operating system or another software application, library, or service. For example, an Apple-provided API might facilitate communication or interaction between a mobile application and the operating system of an iPhone to enable the application to access and interact with the NFC or Bluetooth controller on the device and can communicate or interact with an operating system or another software application, library, or service.

9.    The term "**Browser**" means any application that allows users to access and view web pages on the Internet. For avoidance of doubt, Apple Safari, Google Chrome, and Mozilla FireFox are examples of Browsers.

10.   The term "**Cloud Streamed Game**" means any native or web-based mobile application that allows a Smartphone user to play video games that are run on a remote server, data center, or service and streamed to the user's Smartphone. Examples of Cloud Streamed

Game services include Microsoft xCloud Gamepass, NVIDIA GeForce NOW, Amazon Luna, Google Stadia, and Roblox.

11. The term "**Collaborative Work Environment**" means a platform used to create, edit, review, approve, store, organize, share, and access documents and information by and among authorized users, potentially in diverse locations and with different devices. Even when based on a common technology platform, Collaborative Work Environments are often configured as separate and closed environments, each one of which is open to a select group of users with layered access control rules (reader vs. author vs. editor). Collaborative Work Environments include iCloud, Google Drive, Box, Microsoft OneDrive, Quip, eRooms, document management systems (e.g., iManage), intranets, web content management systems ("CMS") (e.g., Drupal), wikis, and blogs.

12. The term "**Data Dictionary**" means documentation of the organization and structure of the databases or data sets that is sufficient to allow their reasonable use by the Plaintiffs, including, for each table of information: (a) the name of the table; (b) a general description of the information contained; (c) the size in both number of records and megabytes; (d) a list of fields available for each record; (e) the format, including variable type and length, of each field; (f) a definition for each field as it is used by the Company, including the meanings of all codes that can appear as field values; (g) the fields that are primary keys for the purpose of identifying a unique observation; (h) the fields that are foreign keys for the purpose of joining tables; and (i) an indication of which fields are populated. A database schema is an example of a Data Dictionary.

13. The term "**Digital Wallet**" means a mobile payment platform, payment app, or other mobile application, or combination of mobile applications, that allows users to make payments or use other credentials, such as to unlock doors, operate vehicles, access public transit, enter event venues, or present proof of identity or other personal credentials. Apple Wallet, Samsung Wallet, Google Wallet, PayPal, and Venmo are examples of Digital Wallets.

14. The term "**documents**" means all written, printed, or electronically stored information ("ESI") of any kind in the possession, custody, or control of the Company, including information stored on social media accounts like X (formerly known as Twitter) or Facebook, chats, instant messages, text messages, other Employee Messaging Applications, and documents contained in Collaborative Work Environments and other document databases. "**Documents**" includes metadata, formulas, and other embedded information whether hidden or visible, including comments, protocomments, linked to documents, and bibliographic or historical data (including any changelogs) describing or related to any document. Unless otherwise specified, "**documents**" excludes bills of lading, invoices in non-electronic form, purchase orders, customs declarations, and other similar documents of a purely transactional nature; architectural plans and engineering blueprints; and documents solely related to environmental, tax, OSHA, or ERISA issues.

15. The term "**Employee Messaging Application**" refers to any electronic method used by the Company and its employees to communicate with each other or entities outside the

Company for business purposes. "Employee Messaging Application" includes platforms, whether for ephemeral or non-ephemeral messaging, for email, chats, instant messages, text messages, and other methods of group and individual communication (e.g., Microsoft Teams, Slack). "Employee Messaging Application" may overlap with "Collaborative Work Environment."

16. The term "**Enterprise customer**" means business or corporate customers, including government and public sector customers.

17. The term "**Entitlement**" means any permissions or other grants of authority made by or on behalf of Apple—including to itself—authorizing an app or service to use or invoke an API, or otherwise access one or more functions, resources, or operations of iOS, or to access or use one or more hardware components of the iPhone.

18. The term "**eSIM**" means a digital subscriber identity module that allows a Smartphone or other hardware or accessory to activate a cellular plan and access a cellular network without the use of a physical SIM card.

19. The term "**Executive Review Board**" means the organization within Apple that determines whether an app will continue to be available on the App Store, and which sets policy for Apple's Worldwide Developer Relations department.

20. The term "**Framework**" means a set of reusable functionalities and associated resources for application development, including a hierarchical directory that encapsulates shared resources, such as dynamic shared libraries, nib files, image files, localized strings, header files, and reference documentation in a single package. Apple's UIKit and Core Data are examples of Frameworks.

21. The term "**Identified Product or Service**" means each product or service within one or more of the following categories:

    a. Cloud Streamed Games;
    b. Messaging Systems;
    c. Digital Wallets or Payment Apps;
    d. Platform Apps or Mini Programs; and
    e. Smartwatches.

22. The term "**Implementation**" means any software code that implements any part of an API, library, application, operating system, or any other software artifact. Implementation includes all representations of the code, including Source Code, intermediary code, binary code, or any other form of code.

23. The term "**including**" or "**includes**" means including, but not limited to.

24. The term "**Investigation**" means Plaintiffs' pre-Complaint investigation into Apple's

conduct in this case.

25.    The term "**Library**" means any collection of implementations for APIs or other functions.

26.    The term "**Litigation**" means this action *United States et al. v. Apple*, No. 2:24-cv-04055 in the United States District Court for the District of New Jersey.

27.    The term "**Messaging System**" means any application or service that can send and receive private digital messages (other than e-mail). Messaging Systems can use internet-based communications protocols (e.g., over-the-top (OTT) or internet protocol (IP)), telecommunications protocols (e.g., RCS, SMS, or MMS), or a combination of protocols. Apple Messages, iMessage, Google Messages, WhatsApp, Facebook Messenger, Signal, Telegram, and WeChat are examples of Messaging Systems. A Messaging System may also provide other functionality such as video-calling, audio-calling, or file sharing.

28.    The term "**mobile application**" (commonly referred to as an "**application**," "**app**," or "**mobile app**") means a software program designed for use on a Smartphone or other hardware or accessory, such as a Smartwatch. Examples of mobile applications include those in categories such as web browsing, productivity, games, social networking, or entertainment. A mobile application can be a native app or a web app.

29.    The term "**Mini Program**" means a program that is run within a platform app. Mini Programs may be developed in their own programming languages, often using web technologies such as HTML, CSS, and JavaScript.

30.    The term "**operating system**" means the software that coordinates and manages the hardware and software on a computer or mobile device, including connections to other hardware or accessories, such as Smartwatches. iOS is an example of a mobile operating system.

31.    The term "**Payment App**" means a mobile application, mobile payment platform, or digital financial service that enables users to make payments to or otherwise engage in financial transactions with third parties, including in-person payments at merchants using point-of-sale equipment capable of communicating with a Smartphone or Smartwatch (e.g., tap-to-pay or QR codes). Apple Pay, Google Pay, PayPal, and Venmo are examples of Payment Apps.

32.    The term "**person**" means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust and includes the Company.

33.    The term "**Plaintiffs**" means, collectively, the named plaintiffs in this action, *United States et al. v. Apple Inc.*, No. 2:24-cv-04055 in the United States District Court for the District of New Jersey.

34. The term "**plans**" includes proposals, recommendations, or considerations, whether finalized or adopted.

35. The term "**Platform App**" means a mobile app that provides a platform for other apps and software, including Mini Programs. Platform Apps include, but are not limited to, super apps.

36. The term "**Smartphone**" means any handheld mobile device with a touch screen that makes phone calls, transmits data, accesses the internet, contains an operating system, and can run third-party mobile applications. Apple's iPhone and the Samsung Galaxy S series are examples of Smartphones. E-readers, Smartwatches, laptops, and tablets are not Smartphones. The term "Smartphone" includes any operating system included with the device (e.g., iOS for the iPhone).

37. The term "**Smartwatch**" means any mobile device that is intended to be wrist-worn, can interoperate with a Smartphone, and contains an operating system that can process mobile applications (e.g., watchOS for the Apple Watch). The Apple Watch is an example of a Smartwatch.

38. The term "**Software Development Kit**" or "**SDK**" means a set of libraries, frameworks, implementations, APIs, documentation, and other resources for use in developing software or applications for a specific platform or operating system. Apple's iOS SDK is an example of an SDK.

39. The term "**Source Code Repository**" means a collection of files or archives containing Source Code, as well as any associated Source Code history, metadata, version control information, documentation, configuration files, data files, multimedia sources, and scripts, wherever they are stored.

40. The term "**Source Code**" is the human-readable computer code written by developers (or generated by AI or other helper tools) that adheres to the syntax and semantics of a programming language. Source Code implements the algorithms and functionality for all computer programs and any other binary or executable code, including Libraries, Frameworks, and operating system kernels.

41. The term "**Technical Documentation**" means all documents (whether public or private) relating to the design, use, function, implementation, or operation of any API, Library, application, SDK, Framework, operating system, or any other software artifact. Technical Documentation includes, for example, all documents describing the appearance, functions, features, user interfaces, user experience, or interoperation with iOS of any API, Library, application, SDK, Framework, or other software artifact.

42. The term "**third party**" or "**third parties**" means any person other than Apple.

43. The term "**Threat Model**" means, with respect to the privacy and security of hardware, operating systems, software, data center, server, or service, any formal or informal

- 8 -

assessments, analyses, reports, summaries, assumptions, studies, or other understandings about attacker characteristics, goals, capabilities, limitations, or assets. Threat Models also include documents and information reflecting assumptions (including the bases for such assumptions) and understandings about the security posture of a system, hardware, or software, including possible threats, vulnerabilities, potential mitigations, and tradeoffs.

44.    The term "**User Privacy and Security**" means measures and technologies implemented to protect users' personal information and ensure that their data and device are safeguarded against unauthorized access, tracking, use, or disclosure.

45.    The singular includes the plural and vice versa.

46.    The definitions provided herein shall apply to the terms defined regardless of capitalization.

## INSTRUCTIONS

1.    All documents already produced in full by Apple in response to Civil Investigative Demands Nos. 30193, 30356, 31300, and not clawed back, need not be reproduced in response to these document requests. A document is produced in full only if the document and all family members were produced without redactions.

2.    Each request for production shall be answered in accordance with the Federal Rules of Civil Procedure and shall be continuing to the extent permitted under Rule 26(e). Apple must supplement or amend Apple's responses to these requests as appropriate pursuant to Rule 26(e).

3.    Unless otherwise specified, these requests seek all responsive Documents created, modified, sent, or received during the period from January 1, 2014 to the end of fact discovery.

4.    Unless otherwise specified, these requests seek responsive documents relating to any geography worldwide.

5.    Each request shall apply to Documents or materials in Apple's possession, custody, or control, regardless of whether such Documents or materials are possessed by Apple or Apple's present or former domestic or foreign parents, subsidiaries, divisions, subdivisions, affiliates; Apple's predecessor and successor entities; or by any of Apple's employees, agents, representatives, attorneys, officers, directors, consultants, lobbyists, or any other Person acting or purporting to act on Apple's behalf, including, unless privileged and such privilege has not been waived, your attorneys, and regardless of where such Documents are located.

6.    In producing Documents, Apple must produce a legible copy of each Document requested together with all non-identical copies and drafts of that Document. All

metadata of electronic Documents must also be produced. Apple must retain all of the original Documents for inspection or copying throughout the pendency of this action, any appeal(s), and any related proceedings.

7.      Any responsive Document that has been altered, including by the addition of marginal notes, handwritten notes, underlining, highlighting, date stamps, received stamps, or endorsed or filed stamps, and any draft, revision, modification or other version of a responsive Document, is a responsive Document in its own right and must be produced.

8.      If any portion of any Document is responsive to any request, then the entire Document must be produced, including all attachments, linked Documents, and enclosures.

9.      Pursuant to Federal Rule of Civil Procedure 34(b)(2)(E)(i), Documents must be produced either (a) as they are kept in the usual course of business (in which case, they must be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural Person in whose possession they were found or the server or central file in which they were found); or (b) identified as responsive to a specific request enumerated in these requests, with such specific request identified.

10.     Documents and electronically stored information must be produced in accordance with the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents (ECF No. 264).

11.     All Documents must be produced in the file folder, envelope, or other container in which the Documents are kept or maintained. If, for any reason, the container cannot be produced, produce copies of all labels or other identifying marks.

12.     Documents attached to each other should not be separated.

13.     If identical copies of a Document are in the possession, custody, or control of more than one natural Person or other Document custodian, a copy of that Document must be produced from each such natural Person or other Document custodian.

14.     The fact that a Document is produced by another Person does not relieve Apple of the obligation to produce all of Apple's copies of the same Document, even if Apple's copies are identical to a Document produced or held by another Person.

15.     If any Document is withheld based on an objection to any request, all Documents covered by that request but not subject to the objection must be produced.

16.     To the extent Apple contends that responsive Documents in Apple's possession, custody, or control cannot be produced pursuant to the notice and consent requirements contained in a protective order or agreement, the written response to this request must identify the specific provisions of the protective order or agreement on which Apple is relying and the efforts that Apple has and will undertake to provide notice and obtain consents.

17.    If Apple is unable to produce a Document that is responsive to a request, describe the Document, state why it cannot be produced, and, if applicable, state the whereabouts of such Document when last in Apple's possession.

18.    Any Documents that Apple deems to be Confidential as defined in the Discovery Confidentiality Order (ECF No. 235) must be produced in accordance with the terms of that Order.

19.    Other than redactions of information withheld under a claim of privilege or other legal protection, Documents must be produced in full. If any requested Document cannot be produced in full, or if Apple withholds production of any Document or portion of any Document responsive to the requests based upon any privilege or other legal protection, produce it to the extent possible and provide a description in accordance with the Stipulation and Order Governing Electronically Stored Information and Hard Copy Documents (ECF No. 264), the Pretrial Scheduling Order (ECF No. 270), and Discovery Confidentiality Order (ECF No. 235).

20.    Any reference to a Person that is a business entity and is not otherwise defined includes: that Person's predecessors (including any pre-existing Person that at any time became part of that entity after merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors and franchisees; each other Person, directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

Dated: August 12, 2025

/s/   Jonathan H. Lasken
Jonathan H. Lasken
Assistant Chief, Civil Conduct Task Force Andrew L. Kline
Trial Attorney
United States Department of Justice 450 Fifth Street, NW, Suite 8600
Washington, D.C. 20530
Telephone: (202) 598-6517
Jonathan.Lasken@usdoj.gov
Andrew.Kline@usdoj.gov

ALINA HABBA
United States Attorney

/s/   John F. Basiak Jr.
John F. Basiak Jr.

- 11 -

Assistant United States Attorney Chief,
Civil Division
Angela Juneau
Assistant United States Attorney Peter W.
Rodino, Jr. Federal Building 970 Broad
Street, 7th Floor
Newark, NJ 07102
Tel: (973) 645-2700
John.Basiak@usdoj.gov
Angela.Juneau@usdoj.gov

*Attorneys for Plaintiff United States of America*

MATTHEW J. PLATKIN
NEW JERSEY ATTORNEY GENERAL

By:s/ *David Reichenberg*
David Reichenberg
  *Deputy Attorney General*
   *Antitrust Section Chief*
Brian F. McDonough
*Assistant Attorney General*
Surinder K. Aggarwal
Andrew Esoldi
Samuel Kontos-Bleifer
Yale A. Leber
Giancarlo G. Piccinini
Lauren E. Van Driesen
*Deputy Attorneys General*

KRISTIN K. MAYES
ARIZONA ATTORNEY GENERAL

By:s/ *Vinny Venkat*
Vinny Venkat
*Assistant Attorney General*

ROBERT A. BONTA
CALIFORNIA ATTORNEY GENERAL

By:s/ *Cari Jeffries*
Paula Blizzard
*Senior Assistant Attorney General*
Michael Jorgenson
*Supervising Deputy Attorney
General*
Cari Jeffries
Brian Wang
*Deputy Attorneys General*

BRIAN SCHWALB
DISTRICT OF COLUMBIA ATTORNEY
GENERAL

By:s/ *C. William Margrabe*
C. William Margrabe
Elizabeth G. Arthur
*Assistant Attorneys General*

WILLIAM TONG
CONNECTICUT ATTORNEY GENERAL

By:s/ *Nicole Demers*
  Nicole Demers
  *Deputy Associate Attorney General*

THEODORE E. ROKITA
INDIANA ATTORNEY GENERAL

By:s/ *Scott L. Barnhart*
  Scott L. Barnhart
   *Director, Consumer Protection*
  Jennifer Linsey
  Jesse Moore
   *Deputy Attorneys General*

ANDREA JOY CAMPBELL
MASSACHUSETTS ATTORNEY
GENERAL

By:s/ *David Mlaver*
David Mlaver
  Katherine W. Krems
  *Assistant Attorneys General,
  Antitrust Division*

AARON M. FREY
MAINE ATTORNEY GENERAL

By:s/ *Christina M. Moylan*
  Christina M. Moylan
  Michael Devine
*Assistant Attorneys General*

- 13 -

DANA NESSEL
MICHIGAN ATTORNEY GENERAL

By:s/ *Jonathan S. Comish*
    Jonathan S. Comish
    Jason R. Evans
    Scott A. Mertens
    LeAnn D. Scott
    *Assistant Attorneys General*

KEITH ELLISON
MINNESOTA ATTORNEY GENERAL

By:s/ *Justin A. Moor*
    Justin A. Moor
    Erin E. Conti
    Elizabeth Odette
    *Assistant Attorneys General*

AARON D. FORD
NEVADA ATTORNEY GENERAL

By:s/ *Raquel Fulghum*
Raquel Fulghum
    Samantha Bilbao Feeley
    *Senior Deputy Attorneys General*

JOHN M. FORMELLA
NEW HAMPSHIRE ATTORNEY
GENERAL

By:s/ *Alexandra C. Sosnowski*
    Alexandra C. Sosnowski
    *Senior Assistant Attorney General*

LETITIA JAMES
NEW YORK ATTORNEY GENERAL

By:s/ *Elinor R. Hoffmann*
    Elinor R. Hoffmann
    *Bureau Chief, Antitrust Bureau*
    Amy McFarlane
    *Deputy Bureau Chief, Antitrust Bureau*
    Isabella R. Pitt
    Saaket Pradhan
    *Assistant Attorneys General*

DREW H. WRIGLEY
NORTH DAKOTA ATTORNEY GENERAL

By:s/ *Elin S. Alm*
Elin S. Alm
    Christopher G. Lindblad
    *Assistant Attorneys General*

GENTNER DRUMMOND
OKLAHOMA ATTORNEY GENERAL

By:s/ *Malisa McPherson*
Malisa McPherson
Cameron Capps
    *Deputy Attorneys General*

DANIEL RAYFIELD
OREGON ATTORNEY GENERAL

By:s/ *Rachel Sowray*
    Rachel Sowray
    Timothy D. Smith
    *Senior Assistant Attorneys General*

JONATHAN SKRMETTI
TENNESSEE ATTORNEY GENERAL

By:s/ *Austin C. Ostiguy*
     Austin C. Ostiguy
     *Assistant Attorney General*
     Scott Ethan Bowers
     *Senior Assistant Attorney General*
     Hamilton McClain Milwee
     *Assistant Attorney General*
     John David McDowell
*Deputy Attorney General*

CHARITY R. CLARK
VERMONT ATTORNEY GENERAL

By:s/ *Jill S. Abrams*
     Jill S. Abrams
     *Director, Consumer and Antitrust*
     *Unit*
Alexandra Spring
*Assistant Attorney General*

JOSHUA L. KAUL
WISCONSIN ATTORNEY GENERAL

By:s/ *Caitlin M. Madden*
     Caitlin M. Madden
     Laura McFarlane
*Assistant Attorneys General*

NICHOLAS W. BROWN
WASHINGTON ATTORNEY GENERAL

By:s/ *Luminita Nodit*
     Luminita Nodit
     *Assistant Attorney General*