

**U.S. Department of Justice**

Antitrust Division

---

*450 5th Street, N.W.*
*Washington, DC 20530*

March 3, 2026

**VIA ECF**
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

    Re:   *United States of America, et al. v. Apple Inc.,*
           No. 2:24-cv-04055 (JXN-LDW)
           **Joint Dispute Letter on Discovery and Case Schedule**

Dear Judge Wettre:

    The United States and the Plaintiff States (collectively, "Plaintiffs") and Defendant Apple Inc. ("Apple") respectfully submit this joint letter pursuant to the Court's Order and Amended Scheduling Order entered January 30, 2026, ECF 368, directing the parties to meet and confer regarding adjustments to the remaining discovery schedule in light of the extension of the deadline for substantial completion of document productions. This letter identifies the parties' respective case schedule proposals.

1

**The parties' respective proposed schedules:**

| Case Event | Plaintiffs' Proposal | Apple's Proposal |
|---|---|---|
| Substantial Completion of Data Production | June 10, 2026 | June 10, 2026 |
| Deadline to Start Serving Contention Interrogatories | August 12, 2026 | December 30, 2026 |
| Fact Discovery Deadline | September 9, 2026 | January 29, 2027 |
| Deadline to Respond to Contention Interrogatories | September 25, 2026 | February 12, 2027 |
| Affirmative Expert Reports Deadline | November 17, 2026 | March 5, 2027 |
| Responsive Expert Reports Deadline | December 29, 2026 | April 19, 2027 |
| Reply Expert Reports Deadline | January 26, 2027 | May 17, 2027 |
| Expert Discovery Deadline | February 26, 2027 | July 9, 2027 |
| Deadline to Respond to Contention Interrogatories (if Expert Opinion Required for Response) | March 15, 2027 | July 23, 2027 |
| *Daubert* Motions and Motions for Summary Judgment | March 12, 2027 | |
| Oppositions to *Daubert* Motions and Motions for Summary Judgment | April 16, 2027 | |
| Replies in Support of *Daubert* Motions and Motions for Summary Judgment | May 7, 2027 | |
| Trial Begins | September 8, 2027, or at the Court's convenience | |

a. **Plaintiffs' Position**

**Plaintiffs' Proposed Schedule Leaves Ample Time to Complete Remaining Discovery Tasks.** Under Plaintiffs' proposal, the parties have ample time to complete discovery in light of the previously ordered June 15, 2026 deadline for substantial completion of document productions. *See* ECF 368 at 2. By June 15, 2026, Apple will have produced all documents and data in this action and by the end of June, most depositions of Apple employees will be complete. The remaining work can be easily completed in the nearly three-month period Plaintiffs propose.

Apple has agreed to substantially complete its document production in order by prioritized custodians, finishing a first set by early April and a second by mid-May, with all remaining documents being produced by June 15, 2026. Plaintiffs intend to notice and take depositions roughly three weeks after a custodian's documents are produced. Using this schedule, most Apple employee depositions should be finished by late June. But even if they are not, Plaintiffs' proposed schedule leaves July and August to complete these depositions as well as any third-party discovery, which is not impacted by the Court's order extending Apple's substantial completion deadline. Indeed, Apple's substantial completion deadline has nothing to do with when third parties would complete discovery.

Apple and Plaintiffs began serving subpoenas on third parties in June and July 2025, respectively, and, as of March 2, 2026, Plaintiffs have served 45 subpoenas and Apple has served 43. Plaintiffs' proposed close of fact discovery leaves over six months from now—and 14 months from when third-party discovery began—to serve any remaining subpoenas, receive non-party data and document productions, and complete non-party depositions. Apple's position suggests it is taking an overly broad approach to such discovery despite Plaintiffs' voluntarily identifying the most likely relevant parties in Plaintiffs' initial disclosures. If Apple intends to subpoena 110 entities but has only subpoenaed 43 this far into discovery, then Apple is not making a good-faith effort to comply with the current case deadlines—and even the schedule Apple proposes will be inadequate at Apple's current pace. On the other hand, Apple should be able to complete reasonable discovery within the period Plaintiffs propose.

The parties agree that Apple will substantially complete its data productions by June 10, 2026—approximately one year after Plaintiffs served their requests for production of that data. This deadline will allow Plaintiffs to serve expert reports approximately five months thereafter, on November 17, 2026. Plaintiffs estimate that five months is the requisite period from the production of data to an opening expert report in this matter.

The rest of the dates in the schedule largely retain the Court's prior ordered sequencing.

**Plaintiffs Request Deadlines for Summary Judgment and Trial to Facilitate Planning, Avoid Unnecessary Delay, Conserve Judicial and Party Resources, and Incentivize Compliance with the Remaining Deadlines.** Plaintiffs respectfully urge the Court to set dates for summary judgment and trial now to facilitate planning, conserve judicial and party resources, incentivize compliance with remaining deadlines, and avoid otherwise unnecessarily delays. As Courts and Congress unanimously recognize, trying a government enforcement action in advance of follow-on private actions promotes judicial efficiency, saves party resources, and secures relief

3

for the public at a necessarily expeditious pace. As a different Court in this Circuit explained, "permitting federal suits to go forward" at a faster pace than follow-on private actions "promotes judicial efficiency by fostering settlement" because "a judgment in favor of the Government [is] available for use in a private suit." *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999).

Congress has already "deci[ded] that inefficiencies and inconvenience to antitrust defendants are trumped by an unwillingness to countenance delay in the prosecution of Government antitrust litigation." *Id.* at 146. And just last week, the court in *Agri Stats* ordered the government action to proceed to trial before the private action, because "common sense dictates that a government action to enforce an antitrust violation should not be required to be postponed until after the completion of a private action even if the private action was filed first," *United States v. Agri Stats, Inc.*, 2026 WL 512503, at *4. (D. Minn. Feb. 24, 2026), but here the government action was filed first.

Apple's proposed alignment of schedules demonstrates why setting this case and the MDL on the same schedule is likely to waste court and party resources. Because Apple's proposed schedule effectively consolidates this case with the MDL, the Court could be forced to resolve numerous *Daubert* and class certification motions as well as motions related to MDL-only third party subpoenas that may be obviated once a judgment in the government action is available to aid the parties in reaching settlement. Moreover, Apple's proposed alignment of fact discovery is impractical: While the class plaintiffs benefit from discovery in the government action, the government has no use for discovery in the MDL cases concerning class certification and damages. Apple's proposal effectively seeks to stay the government action while this class-related discovery occurs after fact discovery on the substantive violation is complete. Whatever benefits that may have for Apple, it harms the Court, Plaintiffs, and most importantly the public, and Congress has already decided that public and judicial interests trump those of the Defendant.

Setting deadlines for summary judgment and a trial date[1] will also facilitate planning and incentivize the parties to comply with the Court's pre-trial deadlines. The parties should have no problem complying with a trial date that is convenient for the Court around the time Plaintiffs propose. Moreover, the Court may find it beneficial to set aside time on its calendar early, as antitrust trials take several weeks. Even under Plaintiffs' proposal, this case will already be subject to the longest time period—3.5 years—from filing to trial of essentially any recent government antitrust case, some of which Apple has previously represented to the Court are analogous. *See, e.g., United States v. Google LLC,* 1:23-cv-00108, (E.D. Va.), *United States v. Live Nation Entertainment, Inc.,* 1:24-cv-03973, (S.D.N.Y.), and *United States v. Google LLC,* 1:20-cv-03010, (D.D.C.). The table below illustrates the point:

---

[1] Plaintiffs understand this request may need to be separately presented to Judge Neals and, if so, would seek the Court's guidance on the best way to present this issue.

| Case | Filing to Close of Fact Discovery (months) | Time to Trial (months) |
|---|---|---|
| *United States v. Live Nation* 24-cv-03973 (S.D.N.Y.), ECF 169 | 13 | 23.3 |
| *United States v. American Airlines Group Inc.* 1:21-cv-11558, (D. Mass.), ECF 76 | 8.5 | 24 |
| *United States v. Agri Stats* 23-cv-3009 (D. Minn.), ECF 124 & 171 | 18 | 31.3 |
| *United States v. Google LLC* 23-cv-108 (E.D. Va.), ECF 94, 440 & 547 | 7.2 | 32 |
| *United States v. Google LLC* 1:20-cv-03010, (D.D.C.), ECF 85 | 17 | 34.5 |
| **AVERAGE** | **12.7** | **29** |
| ***United States v. Apple Inc.*** **Plaintiffs' Proposal** | 29 | 41 |
| ***United States v. Apple Inc.*** **Apple's Proposal** | 34 | Unknown |

**Apple's Proposed Schedule Would Set This Case on a Path to the Longest Time to Trial of any Antitrust Enforcement Action in Recent Years and Would Force Congressionally Prohibited Consolidation, Far Exceeding Limited Coordination to Avoid Duplicative Discovery.** Apple's proposed schedule calls for a significantly longer timeline to the *close of fact discovery* than the *time to trial* in all but one recent government antitrust enforcement action, and a far longer time to trial than any such action. Apple wants to extend fact discovery for 1,044 days (34.3 months) from the filing of the complaint, while all government antitrust enforcement actions in recent history have reached *trial* within three years.[2]

Apple's schedule is unnecessarily lengthy, prejudicial to Plaintiffs and the public, and contrary to Congressional intent because it would effectively represent consolidation with private class actions. The Sherman Act directs district courts to expeditious resolution of antitrust cases brought by the United States to enforce the Act. *See United States v. Agri Stats, Inc.,* 2026 WL 512503, at *4. (D. Minn. Feb. 24, 2026) (recognizing that Section 4 of the Sherman Act dictates that "the court shall proceed, **as soon as may be**, to the hearing and determination of the case," which counseled in favor of expeditious resolution of a government antitrust enforcement action) (emphasis in original). In creating the MDL statute, Congress expressly exempted claims brought by the United States pursuant to the Sherman Act: "Nothing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws." 28 U.S.C.

---

[2] The only exception to this of which Plaintiffs are aware is *Federal Trade Commission v. Amazon.com Inc,* 2:23-cv-01495, (W.D. Wash.)*,* which is scheduled to reach trial in slightly over three years.

5

§ 1407(g). Yet that is what Apple's schedule proposes—consolidation without calling it as such. The Court should follow the applicable precedents and law and set the schedule Plaintiffs propose.

Apple's arguments about MDL "coordination" prove the need to adopt Plaintiffs' proposed schedule. This case is not consolidated with the MDL, *see* 28 U.S.C. 1407(g) (prohibiting consolidation of government antitrust enforcement actions with MDLs), so it should not run on the same timeline. Apple's argument that more time is needed to address third party subpoenas pending solely in the MDL proves that fact discovery in the MDL should conclude after this case. Likewise, discovery related to class certification and damages should also occur after fact discovery ends in this case. Thus, the MDL plaintiffs' agreement with Apple on a proposed January 2027 deadline in their case is of no moment here. If anything, it demonstrates that fact discovery must end in this case well before January 2027 to enable this case to be tried promptly and efficiently.

Moreover, Apple's support for its schedule confirms why courts do not allow extended discovery periods in government enforcement actions. To justify the delay it seeks, Apple has served overbroad, inappropriate discovery that will result in numerous motions before the Court. For example, Apple proposes to send a deposition subpoena to each government plaintiff—subpoenas that are equivalent to serving a deposition notice on trial counsel. *See SEC v. Rosenfeld*, 1997 WL 576021, at *2 (S.D.N.Y. Sept. 16, 1997) (granting motion for protective order after finding that "a Rule 30(b)(6) deposition of an SEC official with knowledge of the extent of that investigative effort, amounts to the equivalent of an attempt to depose the attorney for the other side."). Apple proposes serving not just one such subpoena, but 21, even though all Plaintiffs brought the same case. Plaintiffs are unaware of any precedent for this tactic. Even individual subpoenas are often quashed where the government has responded appropriately to written discovery. For example, in *Hackensack*, this Court quashed a similar subpoena because "legal theories and strategies are the main items that the [FTC] would bring to the table via discovery" given that the plaintiff was "not a party to who agreed to the challenged [conduct], who had any part in brokering, or who had any part in competing in the relevant market." *FTC v. Hackensack*, 2021 WL 4145062, ECF 122 at 45 (D.N.J. Mar. 11, 2021).

For the same reason, the hundreds of discovery requests served on the military, intelligence community, and law enforcement agencies, among others, were not sent to collect information that is actually relevant or important to this action. As one example, Apple has asked government agencies, including one within the intelligence community, to search for documents assessing Apple's market share; but even if such an agency had such a document, it would be poor evidence compared to any document from *any* market participant or *any* market analyst whose ordinary course role and business interest is to track competition in the relevant markets. Apple's desire to delay this case to seek such discovery will simply waste court and party resources, as it already has. It should not be allowed.

Plaintiffs are entitled to prosecute this action to an efficient and adequate resolution to end Apple's ongoing violation that harms hundreds of millions of American consumers and businesses that offer products and services through smartphones. Delaying that prosecution is contrary to congressional intent, applicable case law, antitrust enforcement action precedent, and general principles of litigation efficiency embodied in the Federal Rules and this Court's local rules. Only Apple benefits from a prolonged litigation schedule, as it will continue to reap monopoly profits

so long as the case is pending.  No other court has allowed an antitrust defendant to proceed this way in a government enforcement action.  Nor should this Court.

The Court should put an end to Apple's efforts to delay this case.  Plaintiffs remain committed to working with Apple to litigate this case in a timely manner.  That process will be greatly aided by the Court imposing the reasonable case schedule proposed by Plaintiffs.

### b. Apple's Position

Apple's proposed schedule is necessary given the scope and complexity of the party and non-party discovery that remains to be completed. While Apple's productions of documents will be substantially complete by June 15,[3] significant discovery will remain after that.  Among other things, the parties need to complete the following:

**Party Depositions**: Although the number of depositions that each party can take has not yet been set, it is clear that dozens of party depositions will occur in this case. Plaintiffs have asked the Court to allow each party to take up to 50 total depositions, and Apple has asked the Court to allow 20 party depositions per side (and up to 100+ third-party depositions, given Plaintiffs' refusal to narrow their initial disclosures).  Dkt. 254 at 4.  Assuming, *arguendo*, that Plaintiffs ultimately depose 30 Apple employees, and Apple deposes the 21 Plaintiffs in this case, there will be over 50 party depositions alone.  It will require several months to complete that number of depositions, which in the ordinary course would not start until after all of a witness's documents are produced and their privilege logs are provided.  Given the agreed-upon production deadlines and the 45-day period for the completion of privilege logs, that means that depositions likely will not start until June.  Apple estimates that it will take at least 6 months thereafter to compete potentially 50+ party depositions.

Plaintiffs' position that "most depositions of Apple employees will be complete" by June 15 or "finished by the end of June" is highly unrealistic.  Document productions will not even be completed until mid-May (for 23 custodians) or mid-June (for 30 custodians), and even then Apple will have 45 days to serve rolling privilege logs.  Depositions will also need to be coordinated across both the Government's case and the MDL, to ensure that Apple witnesses are deposed only once across both sets of cases, as the Court already ordered—an exercise that will require extensive coordination between the witnesses, Government counsel, MDL counsel, and Apple's counsel.  Party depositions will necessarily take months, not until the end of June as Plaintiffs propose.  Indeed, there are only 31 business days between May 15 and June 30, accounting for federal holidays, and yet Plaintiffs apparently contemplate taking about a deposition per day during that period.  That is impractical, unnecessary, and likely to bog the Court and parties down in needless disputes over deposition scheduling.  Apple's realistic proposal strikes the right balance between

---

[3] The parties also have agreed that Apple will substantially complete data productions, on a rolling basis, six weeks after the parties agree on the parameters for production of a database or data set (in most instances, based on discussions following production of a data sample from that database or data set).  The agreed substantial completion deadline for production of data samples is April 15.  Thus, while Apple anticipates that its full data productions will be substantially complete by June 10, it may still produce additional data after that date—particularly if the parties need longer than anticipated to agree on parameters for certain databases or data sets.

7

bringing this case to an efficient resolution, on the one hand, and allowing the parties the time they need to complete party depositions, on the other.

**Plaintiffs' (Including Their Agencies) Document Productions**: To date, the United States and half of the 20 Plaintiff States have yet to produce a single document outside their Investigative File. Moreover, in light of Plaintiffs' (incorrect) insistence that only the Antitrust Divisions of the United States Department of Justice and the States' Attorneys General Offices are "Plaintiffs" for purposes of discovery and that Apple must seek discovery from other agencies through Rule 45, Apple has served subpoenas on 90 state and 14 federal agencies. To date, no federal agency has produced any documents in response to Apple's subpoenas, and only half of the state agencies have done so. Negotiations with Plaintiffs and their individual subpoenaed agencies are ongoing.

**Third-Party Document Productions**: Apple's schedule also appropriately accounts for the time it will take to complete third-party discovery. The scope of third-party document discovery in this case has been and will continue to be significant due to the breadth of Plaintiff's initial disclosures, which list over 110 entities that may have relevant information. Even after Apple requested that Plaintiffs specify which entities are most important to Plaintiffs' case, Plaintiffs still identified nearly *half* of those 110 entities as "likely to have the most relevant information."

The number of subpoenas has accordingly been high. To date, the parties in this case and the MDL have subpoenaed 56 third parties for documents. Additionally, the parties have and will likely continue to identify new third parties who should be subpoenaed based on developments in party discovery in both actions. Indeed, since the end of January, MDL Plaintiffs have subpoenaed an additional 15 third parties, and Apple's subpoenas to those entities will follow shortly.

With respect to subpoenas that have already been issued, third parties have produced many documents, but negotiations and document productions remain ongoing. Apple has worked to "minimize[] the burden on non-parties to the extent possible," Dkt. 270 at 4, including granting reasonable requests for extension, exploring more efficient ways of providing the requested information, and making every effort to work through disagreements by meeting and conferring rather than unnecessarily burdening the Court with motions to compel. *See* Fed. R. Civ. P. 1. This process is moving along efficiently, but it will still take time. Apple expects that third-party document productions will continue well into the summer.

**Third-Party Depositions**: The parties also require time to complete the dozens of third-party depositions that will be required in this case. Here again, Apple takes seriously its obligation to minimize burden for third parties. Nevertheless, the scope of third-party depositions will be significant given the breadth of the case and the number of entities on whom DOJ intends to rely. These depositions will require extensive coordination with non-parties and their employees, as well as between the parties. Plaintiffs' proposal for the completion of fact discovery leaves virtually no time for such depositions, and their suggestion that third-party depositions can be completed in July and August is impractical, particularly given the need to complete these depositions on a schedule that is reasonably accommodating of the third parties.

In light of this extensive ongoing and upcoming discovery, including about 100 depositions total, Plaintiffs' position that fact discovery can be completed by September 9, 2026, less than three months after the substantial completion of document productions, is unrealistic and unworkable.

\* \* \*

Plaintiffs take issue with Apple's proposed schedule because the time from filing to trial would be longer than other government antitrust cases. But the deadlines in this case must be dictated by the specific circumstances of this case, such as the scope and complexity of the parties' claims, defenses, and necessary discovery, not what has happened elsewhere. By any metric, the ongoing and expected fact discovery in this case is immense, and necessitates a January 2027 deadline. Notably, the MDL Plaintiffs agree with Apple's proposed January 2027 fact discovery deadline.

Plaintiffs' arguments in favor of their schedule are unpersuasive. As an initial matter, Plaintiffs make too much of *United States v. Agri Stats, Inc.,* 2026 WL 512503, at \*4 (D. Minn. Feb. 24, 2026), which does not support their contention that courts must "expeditious[ly] resol[ve] . . .antitrust cases brought by the United States" without regard for the circumstances of the case. In *Agri Stats*, the court simply determined that, when considering the "ordering of trials," Section 4 "weighs strongly in favor of the Court using its discretion to permit the government Plaintiffs' claims to proceed to trial first," instead of second or third. 2026 WL 512503, at \*4. Here, the government Plaintiffs would still proceed to trial before the MDL Plaintiffs, as Apple seeks only alignment of the ***fact discovery*** schedule between the two actions.[4]

To that end, Plaintiffs' argument that the "government action should not be required to be postponed until the completion of a private action," and that the "government case would be effectively stayed while class plaintiffs conduct . . . discovery [on class certification and damages]" is a strawman. Apple's proposal seeks neither postponement nor a stay of this case. Rather, Apple's proposed discovery schedule is based on the needs of ***this*** case. Those needs include the parties' agreement that they will "endeavor to avoid duplicative discovery between this case and the [MDL]," Dkt. 254-2, and the Court's order that "fact witnesses will only sit for deposition once as between the above-captioned case and the MDL." Dkt. 270 at 3. The fact that the MDL Plaintiffs may, in some instances, choose to ask different questions of the same fact witnesses about largely similar subject matters provides no basis to burden those fact witnesses with duplicative depositions. Plaintiffs try to turn the tables by arguing that it is *their* schedule that "conserves judicial and party resources," because if they manage to win at trial, Apple might settle with the private parties in the MDL, which in turn means that the Court "may" not need to resolve *Daubert* and class certification motions, that may or may not be filed or pending. Stringing together speculative inferences provides no basis to set impractical discovery deadlines.

Setting aside the fact discovery deadline, the parties' proposed cadence for the remainder of discovery is largely similar. Specifically, with respect to expert reports, the parties largely agree on the number of days the parties should have to serve their reports. The biggest difference is that Apple's proposal allows for 53 days between reply expert reports and the close of expert discovery, while Plaintiffs' proposal only allows for 28 days. The additional time Apple proposes is necessary to prepare for and complete the depositions of the likely numerous experts in this case.

---

[4] As the parties to the MDL set forth in their proposed schedule, the MDL action would need to complete the class certification process before their case could move forward. *In re Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113 (JXN-LDW), Dkt. 169.

Finally, Plaintiffs ask the Court to set post-discovery deadlines for summary judgment, *Daubert* motions, and trial. But the Court directed the parties to submit proposals for "adjustments to the remaining *discovery* schedule," Dkt. 368 at 2 (emphasis added), and thus, Apple does not believe it appropriate to set those dates now. Apple suggests revisiting the post-discovery schedule when discovery is closer to complete. If, however, the Court is inclined to set these deadlines now, Apple would appreciate the opportunity to be heard on those deadlines.

Respectfully submitted,

/s/  Jonathan H. Lasken
Jonathan H. Lasken
Assistant Chief,
Anti-Monopoly and Collusion Enforcement
United States Department of Justice
450 Fifth Street, NW, Suite 4000
Washington, D.C. 20530
Telephone: (202) 598-6517
Email: jonathan.lasken@usdoj.gov

JENNIFER DAVENPORT
Attorney General of New Jersey
/s/ David H. Reichenberg
David H. Reichenberg
Section Chief, Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-4686
Email: David.reichenberg@law.njoag.gov

*Attorney for Plaintiff State of New Jersey, Arizona, California, Washington D.C., Connecticut, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin*

/s/   Liza M. Walsh
Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Email: lwalsh@walsh.law
Email: darpert@walsh.law

/s/ Craig S. Primis
Craig S. Primis, P.C.
K. Winn Allen, P.C.
Tracie Bryant, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
Email: winn.allen@kirkland.com
Email: tracie.bryant@kirkland.com

/s/   Devora W. Allon
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Email: devora.allon@kirkland.com
Email: alexia.brancato@kirkland.com

*Attorneys for Defendant Apple Inc.*

Aaron M. Sheanin
Trial Attorney
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102

*Attorney for Plaintiff United States of America*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA et al., <br><br> *Plaintiff*, <br><br> v. <br><br> APPLE INC. <br><br> *Defendants*. | Case No. 2:24-cv-04055-JXN-LDW |

### CERTIFICATE OF SERVICE

I hereby certify that the above letter and this Certificate of Service were served upon defendant's counsel, Liza M. Walsh, Esq., Craig S. Primis, Esq., Devora W. Allon, Esq., and K. Winn Allen, Esq., 1301 Pennsylvania Avenue, NW, Washington, D.C., 20004, by CM/ECF on March 3, 2026.

*/s/ Aaron M. Sheanin*
Aaron M. Sheanin
United States Department of Justice
Antitrust Division
*Attorney for Plaintiff United States*

11