

**U.S. Department of Justice**

Antitrust Division

---

*Liberty Square Building*
*450 5th Street, N.W.*
*Washington, DC 20530*

March 5, 2026

**VIA ECF**
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    *United States of America, et al. v. Apple Inc.*
               No. 2:24-cv-04055 (JXN-LDW)
               **Joint Discovery Dispute Letter re Rule 30(b)(6) Deposition of Apple**

Dear Judge Wettre:

      Pursuant to this Court's Order dated March 2, 2026, Dkt. No. 382, the United States and the Plaintiff States (collectively, "Plaintiffs") and Defendant Apple Inc. respectfully submit this joint letter pursuant to Local Rule 37.1 setting forth a discovery dispute concerning the scheduling of Plaintiffs' deposition of Apple pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs submitted the Notice of Deposition ("Notice") to the Court on February 26, 2026, Dkt. No. 378-1 (redacted), 379-1 (unredacted). The parties have met and conferred over this dispute by videoconference pursuant to Local Rule 37.1.

1

### Plaintiffs' Position

The Court should compel Apple to provide Rule 30(b)(6) testimony in the next two weeks about what data the company maintains. Apple's refusal to designate a witness or move for a protective order is "literally inexcusable" under the Federal Rules. *Bregman v. District of Columbia*, 182 F.R.D. 352, 355 (D.D.C. 1998). On January 27, Plaintiffs noticed Apple's deposition for February 18 and offered to negotiate a mutually convenient schedule on or before February 25. Apple did not seek a protective order or stay under L.R. 37.1. Nor did Apple seek to narrow the deposition topics during three data meet-and-confers. Instead, Apple declined to designate witnesses or comply with the notice. Dictating the terms under which Plaintiffs can prosecute this case, Apple states it will not testify until on or around April 30 on financial data and May 29 on other data—demanding more than 90 to 120 days' notice for a Rule 30(b)(6) deposition. Apple's position is contrary to the Federal Rules, risks more disputes and delays, and prejudices Plaintiffs' ability to focus and streamline negotiations over Apple's data samples and productions.

### A.  Plaintiffs Noticed Apple's Deposition to Streamline Data Negotiations

On January 27, Plaintiffs noticed Apple's deposition on the structure, information, and use of Apple's relevant data for its: (1) finances; (2) market research; and (3) customers and usage; as well as (4) documentation to interpret the data. Plaintiffs do not seek all of Apple's data or all data in particular systems. But per this Court's guidance—which Apple fails to acknowledge—Apple's testimony can help streamline and focus Apple's productions. Sep. 16, 2025 Hr'g Tr. at 42:17–21 ("[A] 30(b)(6) that is focused on streamlining discovery. When I balance th[at] interest versus an employee being bothered twice, I am going to go for focusing and streamlining discovery.").

Since last summer, Plaintiffs sought to identify Apple's data through document requests, an interrogatory, and meet-and-confers, only to face delays and incomplete responses from Apple.[1] Apple stresses its recently-produced sample data, but Apple still has not provided basic information about critical databases and has not produced samples from at least 4 systems with relevant data. Plaintiffs need not wait until after Apple produces data samples to depose Apple on topics that will assist in negotiating those samples and the parameters for data productions. The following examples show that Apple's testimony will fill important information gaps.

*First*, Apple has not provided basic information about several user and customer usage databases containing data on iPhone users, their engagement with Apple's ecosystem, and their propensity (or lack thereof) to switch to Android. Plaintiffs' expert can use this data at trial to help show how Apple locks consumers to the iPhone to maintain its monopoly. The limited information Apple has provided is insufficient for Plaintiffs to negotiate samples or data productions.

*Second*, Apple refuses to produce critical financial data used routinely by Apple's top executives to understand the smartphone market. Apple claims that other, unidentified data are more reliable. But the data Plaintiffs seek has been used by Apple's CEO and CFO to track iPhone activations and sales, which will inform Plaintiffs' analysis of market definition and market developments. Apple's testimony will facilitate Plaintiffs' ability to negotiate this production.

*Third*, Apple's data samples are limited. Apple selected the fields, making Plaintiffs guess at what other relevant data Apple tracks. Apple compounded this problem with an incomplete

---

[1] Relevant excerpts of Plaintiffs' discovery requests and Apple's responses are attached as Exhibits A-D.

response to Interrogatory No. 3, which asks for a list of fields and their definitions. For example, one database stores information on revenue, costs, and related metrics, but Apple's sample lacks R&D costs, other expenses, and net income—which are relevant for calculating margins and profitability. The sample from another financial database omits fields needed for Apple's revenue adjustments when assessing the profitability of the monopolized product, the iPhone, as compared to other products and services for which Apple may lack monopoly power. Apple's data on other products and services also are needed to analyze a key Apple metric—an iPhone user's customer lifetime value. Apple claims it "cannot simply push a button to pinpoint and produce responsive fields," but testimony can shed light on these issues and allow Plaintiffs to assess Apple's samples.

*Fourth*, Apple has not provided needed information about its market research data. While Apple will produce data underlying some surveys of its customers and developers conducted internally, it has not provided information about data from other non-survey studies (polls, focus groups, and the like), studies conducted for Apple by third parties, and studies of other groups such as mobile carriers and retailers. Plaintiffs require Apple's testimony to understand its market research data, so the parties can confer effectively to narrow the scope of Apple's data productions.

### B. Apple Should Produce 30(b)(6) Testimony in the next Two Weeks

The Court should compel Apple's deposition because Apple refuses to designate a witness and did not seek a protective order, despite reasonable notice. *Desert Aire Corp. v. AAON, Inc.*, 2006 WL 8456817, at *2 (D. Md. July 7, 2006); *Paine v. Inv. & Admin. Comm. of The Walt Disney Co. Sponsored Qualified Benefit Plans, et al.*, 2022 WL 1584495, at *5 (C.D. Cal. Mar. 30, 2022) (accepting defendant's unilateral refusal to appear "would make a mockery of the Federal Rules."); *Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007) ("affirmative duty" to designate 30(b)(6) witness). If Apple believes the deposition is objectionable, "it still must comply with the discovery, unless it has a pending Rule 26(c) motion for a protective order." *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 271 F.R.D. 487, 497 (N.D. Ind. 2010) (citing Fed. R. Civ. P. 37(d); quotation omitted). "Motions for protective orders may object to the timing and/or extent of the 30(b)(6) depositions.…But Rule 30(b)(6) means what it says. Corporations…must produce live witnesses…." *Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005). Apple fails to cite *any* case holding that a party may refuse to designate a witness without seeking a protective order or stay of deposition. Apple bizarrely claims that L.R. 37.1, which lays out a process to resolve "any discovery dispute," does not permit a protective order. Here, the parties already conferred. Apple simply chose not to present the dispute to the Court by phone or letter as L.R. 37.1 requires.

Failure to designate a witness or move for a protective order, as Apple has done here, is "literally inexcusable." *Bregman*, 182 F.R.D. at 355. Apple's failure to move for a protective order before the scheduled deposition date precludes later objection. *See id.; William Beaumont Hosp. v. Medtronic, Inc.*, 2010 WL 2534207, at *4 (E.D. Mich. June 18, 2010) (denying protective order filed after scheduled deposition date). Apple cites no contrary authority for either point. Plaintiffs may move to compel under Rule 37(a)(3)(B)(ii) because Apple failed to make a Rule 30(b)(6) designation. Apple had ample opportunity to seek relief before the deposition date. Its failure to do so is not excused. *Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 275–76 (C.D. Cal. 2008).

Apple does not contest that it had "reasonable written notice" under Rule 30(b)(1). Courts regularly find 14 days or fewer to be reasonable. *See Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 9481235, at *2 (D.N.J. Nov. 1, 2017) (14 days); *Paige*, 248 F.R.D.

at 275 (same); *Hallum v. Four Corners OB-GYN*, 2021 WL 2894244, at *2 (D. Colo. July 9, 2021) (same); *Kendall v. Doe*, 2023 WL 2482680, at *1 (D. Mass. Mar. 13, 2023) (10 days). Apple cites no contrary authority—and nothing requiring 90 or 120 days' notice. Plaintiffs set the deposition 22 days after serving notice and offered to extend that date to 29 days. That time was not arbitrary but consistent with the Court's guidance on setting appropriate deadlines for data discovery. Dkt. No. 368; Jan. 22, 2026 Hr'g Tr. at 27:21-28:25. Apple's insistence otherwise has no basis. Moreover, the deposition can hardly be premature, as "identification of, and early discovery from, individuals with special knowledge of a party's computer systems" are appropriate as early as a Rule 26(f) conference. *In re eBay Seller Antitrust Litig.*, 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007) (ordering 30(b)(6) on ESI systems); 2006 Adv. Comm. Notes to Fed. R. Civ. P. 26(f).[2]

This case will involve a large amount of data, but Apple's asserted "staggering" burden is unsupported, especially as Apple offered to sit two witnesses for deposition, albeit months from now. Data requests are often "not as overly burdensome" as claimed, where, as here, Plaintiffs primarily "seek to understand the columns or fields of data, numbering in the several dozens," not "the billion records or rows of data." *Abarca v. Werner Enters., Inc.*, 2024 WL 756288, at *2-3 (D. Neb. Feb. 23, 2024) (permitting deposition on meaning, content, scope, and significance of 20 data files). *See also Hendricks v. Aetna Life Ins. Co.*, 2024 WL 4720802, at *10-13 (C.D. Cal. Sept. 3, 2024) (permitting deposition with 145 lines of inquiry, each with "voluminous" reports and data). Apple also incorrectly seeks to limit the deposition as "discovery-on-discovery"—citing cases when a party seeks a redo as discovery winds down. *Alley v. MTD Prods, Inc.*, 2018 WL 4689112, at *1 (W.D. Pa. Sep. 28, 2018) (after court extended discovery three times); *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, 2014 WL 1494517, at *4 (D.N.J. Apr. 16, 2014) (late deposition would "put all ESI discovery already conducted in jeopardy"). But courts distinguish a "timely objection" to "mode[s] of collection"—what is proposed here—from long after-the-fact "speculation" "that documents must exist," which would "require [the producing party] to go back to square one." *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 427-28 (D.N.J. 2009).[3]

The deposition topics are straightforward. *E.g.*, *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 515 (D.S.D. 2015) (permitting discovery related to "what is stored, where it is stored, how to access that information, and who may access it"). Apple should have no trouble testifying about the structure, information, and use of its own databases, and the feasibility of producing datasets. Plaintiffs could not obtain this information informally or through Apple's deficient interrogatory response. Plaintiffs "should not have had to file a motion to compel in order to obtain meaningful information about defendant's sources of transactional data or the production of responsive transactional data in usable form." *In re Telescopes Antitrust Litig.*, 2023 WL 3957423, at *4 (N.D. Cal. June 12, 2023); *In re eBay Seller Antitrust Litig.*, 2009 WL 10694970, at *3 (N.D. Cal. July 13, 2009) (ordering Rule 30(b)(6) "pertaining to the manipulation or combination of data fields in eBay's data warehouse"). Compelling Apple's prompt testimony will streamline data discovery, avoid unnecessary disputes before this Court, and afford Apple ample time to prepare.

---

[2] MDL Plaintiffs' cross-notice is not a basis for Apple to fail to timely sit for deposition in this case.

[3] Moreover, *Alley*'s "bad faith and unlawful withholding" test has been rejected. *E.g.*, *In re Diisocyanates Antitrust Litig.*, 2023 WL 1938951, at *1, 3 (W.D. Pa. Nov. 7, 2023) ("nothing" in the Rules requires *Alley*'s "heightened and narrow standard"). *Alley*'s test wrongly relied on a purported *Edgewood* quote that appears nowhere in *Edgewood*.

**Apple's Position**

Apple urged Plaintiffs not to raise this needless dispute. As Plaintiffs concede (ECF No. 378), Apple has agreed to provide 30(b)(6) testimony—starting just two weeks after the April 15 substantial completion deadline for data samples. Until then, the parties should continue working together to answer Plaintiffs' reasonable questions about the data. To that end, Apple has already produced ten data samples—totaling more than 24 million data points across more than 900,000 rows. The parties have also held seven dedicated meet-and-confers since mid-January alone. Apple intends to continue this cadence. If Plaintiffs still need 30(b)(6) testimony after meeting-and-conferring on Apple's data samples, Apple's position is that its witnesses should testify (1) **no later than April 30 for financial data**, and (2) **no later than May 29 for other data**.

By contrast, Plaintiffs claim that Apple should have produced witnesses in February—midstream in the meet-and-confer process, and while Apple's likely witnesses were (and are) facilitating the timely production of data samples. It makes no sense to provide testimony while Apple is producing samples: with no anchoring data, the depositions would devolve into fishing expeditions. Nor have Plaintiffs addressed Apple's various scope objections.[4] Further complicating matters, Plaintiffs have apparently just begun coordinating with MDL plaintiffs: one set of MDL plaintiffs cross-noticed the 30(b)(6) deposition (adding many topics) on February 20—two days *after* Plaintiffs' original compliance deadline. Other MDL plaintiffs followed suit just yesterday (March 4). *See* Attachment E. Moreover, Plaintiffs have repeatedly offered to forgo or defer the 30(b)(6) deposition(s), including as recently as last week, if Apple only agreed to their more aggressive data discovery deadlines. Given the many live issues, Apple had no obligation to seek a protective order. Indeed, under Local Rule 37.1, it was not permitted to do so.

### A. Immediate 30(b)(6) Depositions Would Stymie, Not Streamline, Discovery.

Plaintiffs claim to need 30(b)(6) testimony "in the next two weeks" to "streamline and focus Apple's data productions." But the best tool to streamline discussion of a data source is a sample from that data source. The parties should not waste time preparing and questioning witnesses on what the data *may* show, or *can* show, or *will* show, when Plaintiffs will shortly see what the data *actually* shows across all relevant and proportional data sources. Apple's proposal allows reasonable time for Plaintiffs to review Apple's data samples and for the parties to meet-and-confer about those samples. This process will enable focused, early depositions—long before the close of discovery (indeed, before Apple will have completed its full data productions).

This iterative process is necessary because Plaintiffs' topics are overbroad. *First*, many topics seek discovery-on-discovery[5]—which courts have barred absent a "showing of bad faith or unlawful withholding of documents." *Alley v. MTD Prods, Inc.*, 2018 WL 4689112, at *2 (W.D. Pa. Sep. 28, 2018) (barring 30(b)(6) on "manner and location of storage of documents, the purpose for the creation of documents, how they are indexed, filed, and maintained"); *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, 2014 WL 1494517, at *4 (D.N.J. Apr. 16, 2014) (barring 30(b)(6) "IT deposition" where movant "failed to make the requisite showing that [opponent's] production has been materially deficient"). Plaintiffs cannot show bad faith, improper withholding, or material deficiency, since Apple is still producing data—focusing on the most reliable data across duplicative systems. *See* Fed. R. Civ. P. 26(b)(2)(C) (court should bar discovery that is

---

[4] Plaintiffs wrongly assert that Apple did not seek to narrow the topics. Apple objected on meet-and-confers and in a February 11 letter. The fact that discussions focused on Plaintiffs' improper timeline (and compromises on timing) does not mean Plaintiffs met their meet-and-confer obligations as to scope under L.R. 37.1.

[5] *See, e.g.*, ECF No. 378-1 at Topic 1(j) (software "used to query" data), 1(k) & (*l*) (processes for producing data samples and dictionaries), 1(p) (process for producing "query forms, query builders, or other query tools"), 1(q) ("feasibility" of "extract[ing] identified sets of fields into one or more data tables"), 1(s) (retention policies).

"unreasonably cumulative or duplicative" or "can be obtained" from a "more convenient" source).[6]

*Second*, the notice is overbroad to the extent it seeks testimony about data for "each Apple product or service" (Topic 1)—including products and services for which Plaintiffs have alleged no anticompetitive conduct. The parties have not met-and-conferred about this key objection.

*Third*, Plaintiffs' topics would impose a staggering burden on Apple—diverting massive resources from Apple's top data priority: producing samples. Three of the four topics have 19 subparts, meaning that Plaintiffs pose 58 discrete inquiries for each of the 13 named data sources (*i.e.*, 754 inquiries for the named sources alone). These sprawling topics present a practical problem, because no one person at Apple has knowledge of all relevant systems. Unless the topics are narrowed, Apple must either prepare (1) a small number of witnesses on high-level information about these many systems, or (2) potentially more than a dozen witnesses across all systems, which is not realistic under the current schedule. And for certain data sources—whose attributes vary across diverse (and mostly irrelevant) data—no amount of preparation could yield comprehensive answers.[7] These and other scope issues need to be resolved before any deposition can proceed.

### B. Plaintiffs Will Continue To Learn About Apple's Data In the Ordinary Course.

Nonetheless, Plaintiffs seek depositions in two weeks because, "[a]bsent information from an Apple witness," Plaintiffs purportedly cannot "assess the sufficiency" of Apple's data samples. But that is what meet-and-confers are for. In any event, Plaintiffs' four arguments are groundless:

*First*, Plaintiffs complain that Apple has not provided "basic information" about systems that contain data at the account and/or device level (what Plaintiffs call "user" data). But Apple *has* provided information about several of these systems, including identifying data fields and explaining the limitations of certain sources (*e.g.*, where data is subject to an opt-out trigger, sampled to 1% of the eligible data pool, and not mappable to data in any other source). And some of the data sought by Plaintiffs does not exist. That said, Apple has been clear that it will provide more information and produce more non-financial data on a rolling basis. Importantly, it has taken more time to investigate RFPs seeking non-financial data because, in many instances, Plaintiffs seek to use the data differently from how it is used in the ordinary course. Thus, after identifying knowledgeable personnel, Apple must pose questions they are not accustomed to answering. This process works, but it takes time. That is why, to allow the parties sufficient time to discuss these forthcoming samples, Apple has offered to provide testimony on non-financial data by May 29.

*Second*, Plaintiffs cite one financial system from which Apple has not produced a sample (contrasted with many other financial systems from which Apple *has* produced samples). Apple has explained that data in this system is duplicative of data in other sources that Apple deems more reliable in the ordinary course of business. Apple will produce the more reliable data, including samples in advance of April 15. Immediate deposition testimony about this unproduced and duplicative data would not "streamline" discovery—it would be a sideshow at a very busy time.

*Third*, Plaintiffs quibble that "Apple's data samples are limited." But *every* sample is limited. Identifying a potentially relevant data source is only the first step. Apple cannot simply

---

[6] Plaintiffs' out-of-circuit cases are distinguishable. *See, e.g.*, *In re Telescopes Antitrust Litig.*, 2023 WL 3957423, at *3 (N.D. Cal. June 12, 2023) (defendants were "careless" in representation about "sources of transactional data"); *In re Ebay Seller Antitrust Litig.*, 2009 WL 10694970, at *2 (N.D. Cal. July 13, 2009) (whether defendant properly interpreted plaintiff's notice); *In re Ebay Seller Antitrust Litig.*, 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007) (defendant agreed to testify on ESI); *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 515 (D.S.D. 2015) (burden not particularized; here, Apple explained that sources contain hundreds of thousands of tables).

[7] For example, one data source named by Plaintiffs is a data warehouse that contains hundreds of thousands of data tables and related data objects (most of them irrelevant), each of which has many columns and fields within it.

push a button to pinpoint and produce responsive fields. Despite Plaintiffs' claims, under Rule 34 Apple is not required to produce *all* data in a system just because that system may contain *some* data that is responsive to Plaintiffs' requests (in the same way that Apple need not produce *all* emails from a custodian just because that person sent *some* relevant communications). Apple's task is to produce data that is relevant and proportional. As Plaintiffs ask reasonable questions about the samples, the parties will continue to meet-and-confer. Apple has already informed Plaintiffs that it will confer promptly regarding the specific questions in Plaintiffs' letter.

*Finally*, Plaintiffs demand immediate testimony regarding Apple's "market research." But as part of their agreement on the data discovery schedule, the parties explicitly agreed that they are continuing to meet-and-confer about precisely these issues and established a timeline for doing so. In addition, Apple has already provided substantial information about "non-survey studies" and "studies conducted for Apple by third parties." That work allowed Plaintiffs to frame their document requests with specificity. Apple will continue to roll out productions of these materials. This process should be allowed to continue.

### C. This Dispute Is Not Ripe for a Protective Order.

Plaintiffs' insistence that Apple file a motion for a protective order is contrary to the Court's discovery process and explicit bar on motion practice without leave (*see* ECF No. 270 at ¶ 23). Plaintiffs cite just one in-circuit case in this paragraph of their letter, and it merely states that a party has an "affirmative duty" to designate 30(b)(6) witnesses—which Apple does not dispute and fully intends to do. *Harris v. N.J.*, 259 F.R.D. 89, 92 (D.N.J. 2007).

The controlling authority here is Local Rule 37.1, not Plaintiffs' out-of-circuit caselaw.[8] Local Rule 37.1 requires not only that disputes be presented informally rather than by formal motion, but it also requires that counsel confer in good faith to resolve any issues before burdening the Court. Plaintiffs' demand that Apple submit to an immediate deposition on hundreds of discrete topics, while offering as their only compromise the six business days between February 18-25, does not meet the Rule's requirements. The issues above confirm that the parties have more work to do. As late as February 25, the parties were still discussing a compromise that Plaintiffs conceded could moot, or at least narrow, the depositions here. In the meantime, Plaintiffs have not been prejudiced. For weeks, Plaintiffs have asserted that "[i]f the parties are unable to reach agreement by [February 25], Plaintiffs will raise the dispute over the scheduling of the deposition to the Court." That is exactly what happened—on Plaintiffs' own arbitrary schedule. Even if this dispute were ripe, Apple had no need to raise it after Plaintiffs repeatedly committed to do so.

In short, Apple does not object to providing data-related testimony on an appropriate timeline and in response to reasonable topics. But Apple requests that the Court allow the meet-and-confer process to run its course. If the Court prefers to order deadlines for these 30(b)(6) depositions, coordinated across the government and MDL actions, Apple requests the schedule above: (1) no later than April 30 for financial data, and (2) no later than May 29 for other data.

---

[8] Plaintiffs' out-of-circuit cases either support Apple's position or are distinguishable. *See, e.g.*, *Hallum v. Four Corners OB-GYN*, 2021 WL 2894244, at *2 (D. Colo. July 9, 2021) (requiring "good faith effort to schedule [deposition] in a convenient and cost effective manner"); *Bregman v. District of Columbia*, 182 F.R.D. 352, 354-5 (D.D.C. 1998) (seeking late-stage deposition on trial exhibits); *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 271 F.R.D. 487, 496 (N.D. Ind. 2010) (defendant first objected on last day of discovery); *Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005) (no ongoing meet-and-confers).

Respectfully submitted,

*/s/   Aaron M. Sheanin*
Aaron M Sheanin
Trial Attorney, San Francisco Office
United States Department of Justice
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102
Telephone: (202) 709-1490
Email: aaron.sheanin@usdoj.gov

JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ David H. Reichenberg*
David H. Reichenberg
Section Chief, Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-5271
Email: David.reichenberg@law.njoag.gov

*Attorney for Plaintiff State of New Jersey, Arizona, California, Washington D.C., Connecticut, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin*

*/s/   Liza M. Walsh*
Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Email: lwalsh@walsh.law
Email: darpert@walsh.law

*/s/  Craig S. Primis*
Craig S. Primis, P.C.
Winn Allen, P.C.
Tracie Bryant, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
Email: winn.allen@kirkland.com
Email: tracie.bryant@kirkland.com

*/s/   Devora W. Allon*
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Email: devora.allon@kirkland.com
Email: alexia.brancato@kirkland.com

*Attorneys for Defendant Apple Inc.*

Aaron M. Sheanin
Trial Attorney
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102

*Attorney for Plaintiff United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA et al., *Plaintiff*, v. APPLE INC. *Defendants*. | Case No. 2:24-cv-04055-JXN-LDW |

## CERTIFICATE OF SERVICE

I hereby certify that the above letter and this Certificate of Service were served upon defendant's counsel, Liza M. Walsh, Esq., Craig S. Primis, Esq., Devora W. Allon, Esq., and K. Winn Allen, Esq., 1301 Pennsylvania Avenue, NW, Washington, D.C., 20004, by CM/ECF on March 5, 2026.

*/s/ Aaron M. Sheanin*
Aaron M. Sheanin
United States Department of Justice
Antitrust Division
*Attorney for Plaintiff United States*