**WALSH**
PIZZI
O'REILLY
FALANGA

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

April 16, 2026

**VIA ECF**
Honorable Leda D. Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> **Re:** ***United States of America, et al. v Apple Inc.***
> **Civil Action No.: 2:24-cv-04055 (JXN-LDW)**
> **Joint Discovery Dispute Letter re Discovery from Federal Agencies**

Dear Judge Wettre:

The United States of America and Defendant Apple Inc. ("Apple") respectfully submit this joint letter pursuant to Local Rule 37.1 and the Court's Scheduling Order of March 9, 2026 on the issue of discovery involving 14 federal agencies. The parties have met and conferred over this dispute by videoconference pursuant to Local Rule 37.1.

**Apple's Position**

The United States is refusing to produce its own agency documents that are relevant to the parties' claims and defenses. These documents reflect the United States' own assessments of key issues, such as iPhone's market differentiators, privacy and security risks associated with various smartphones, and the potential dangers of exposing iPhone's secure ecosystem to less rigorous and less vetted third parties. Apple believes these materials will support its arguments that the practices Plaintiffs challenge make Apple's products different—and, in the eyes of Apple's customers, better—than alternatives and thus promote competition. Whether through Rule 34 party discovery or Rule 45 subpoenas, these agency documents are discoverable and should be produced.

Apple has tried to obtain these materials for many months, but the United States has refused to produce a single document from the relevant agencies, and in the meantime has forced Apple to run in circles. Apple first pursued this discovery directly from the Plaintiff, the United States of America, under Rule 34. DOJ objected, insisting Apple serve Rule 45 subpoenas on the individual agencies instead. Apple did so—even though it did not believe that was procedurally correct—in an effort to elevate substance over form. Rather than engage on a reasonable plan for producing responsive, non-privileged materials, the *same* DOJ attorneys appeared as counsel for the subpoenaed federal agencies and again refused production, this time citing *Touhy* regulations. Although *Touhy* does not apply when the United States is a party to the litigation, Apple voluntarily went through the *Touhy* process anyway to expedite production of the requested materials. Still, the agencies produced nothing, arguing that Apple's subpoenas were overbroad and sought irrelevant, classified, or privileged information. Apple made a final compromise proposal, narrowing its requests further and reiterating that it is not seeking classified or protected materials—but the DOJ attorneys rejected that too. When Apple notified the United States' counsel of its intent to finally raise this issue with the Court, the United States purported to offer a "compromise," but it was no compromise at all: the United States proposed that it will consider *whether* it can provide information from 7 of the 14 agencies *if* Apple "eliminates" its subpoenas to the remaining agencies.

That leaves the parties back where they started: after months of negotiations, meet-and-confers, and written exchanges, the United States will not produce a single document from any agency outside of DOJ's Antitrust Division. That is untenable. Discovery is not a one-way street. The United States chose to bring this lawsuit, and it cannot now hide behind inapplicable procedural barriers to shield relevant evidence. The United States' refusal to be reasonable leaves Apple no choice but to seek the Court's intervention.

Notably, the State Plaintiffs have taken a different approach. While they similarly opposed producing agency materials under Rule 34, some state agencies have begun producing materials in response to Apple's Rule 45 subpoenas. And these initial productions already confirm that government agencies have materials relevant to the claims and defenses in this case, including documents detailing the privacy and security benefits of iPhone as compared to Android. Meet-and-confers are ongoing, and while disputes might arise in the future, the important point is that relevant documents are being produced.

Apple asks the Court to order the United States to produce the materials listed in Appendix A. Production is warranted for four reasons. First, the materials are relevant to the claims and

2

defenses in this case. Second, Apple has narrowly tailored its requests to target only the most important materials from a small subset of federal agencies, minimizing any burden on the United States. Third, the United States' privilege objections do not justify its blanket refusal to search for or produce documents. Fourth, the United States' procedural objections (whether made under Rule 34 or Rule 45) are unfounded and do not warrant withholding production.

## I.    The Requested Materials Are Relevant to the Parties' Claims and Defenses.

Apple seeks materials that are relevant to the claims and defenses in this case. The requested documents are limited to four specific topics.

***First***, Apple seeks documents related to how federal agencies find, evaluate, and purchase smartphones and wearables, as well as agency evaluations and guidance related to the selection and use of smartphones and the specific products and services at issue. *See* App'x A (Apple's Feb. 10, 2026 Final Compromise Proposal for Federal Agency Discovery) at Nos. 1–4, 6, 8, 11–13.

These materials are relevant. For instance, Requests 1–4 and 6 seek documents related to the agencies' procurement of smartphones and wearables, including the reasons for those purchasing decisions; and Requests 8 and 11–13 seek agency guidance and evaluations on specific iPhone features and related products and services—such as messaging apps, super apps, digital wallets, web browsers, and cloud storage solutions—that are directly relevant to the parties' claims and defenses. Plaintiffs allege that Apple's rules regarding third-party access to these features are aimed at "locking in" consumers rather than genuinely improving the product. Apple has argued that these design decisions were made for valid business reasons and that customers choose iPhone because it is superior to, or at least different from, other smartphones across factors such as ease of use, privacy, security, and performance. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 987 (9th Cir. 2023) ("[T]hroughout the record, Apple makes clear that by improving security and privacy features, it is tapping into consumer demand and differentiating its products from those of its competitors—goals that are plainly procompetitive rationales."). Discovery into the validity of these procompetitive justifications is crucial to Apple's defenses. *See, e.g.*, *Mylan Pharm. Inc. v. Warner Chilcott Public Ltd.*, 838 F.3d 421 (3d Cir. 2016); *see also* Mot. to Dismiss Op., Dkt. 283, at 11, 24 (distinguishing "growth or development as a consequence of a superior product" from unlawful monopolization and discussing procompetitive justifications under Section 2 burden-shifting framework).

Federal agencies' own evaluations of these issues are particularly probative. If agencies choose to purchase iPhone because of its superior or differentiated privacy, security, or user experience—or acknowledge that competing smartphones raise privacy, security, or performance concerns—that would undermine Plaintiffs' claim that Apple's procompetitive justifications are pretextual. Federal agencies are sophisticated and security-conscious evaluators of smartphone platforms, and their assessments would reveal what the federal government itself truly believes about the products and conduct at issue. The relevance of these assessments does not turn on whether federal agencies purchase smartphones the same way ordinary consumers do—Apple seeks these materials because the agencies' independent technical evaluations of smartphone security, privacy, and functionality bear directly on whether the challenged conduct has procompetitive justifications. The agencies' heightened security requirements make those assessments more, not less, relevant.

Publicly available agency guidance confirms that these types of documents exist. For example, DHS's Cybersecurity and Infrastructure Security Agency recently advised Americans *not* to send unencrypted messages via SMS but instead to use encrypted messaging services such as iMessage. *See Mobile Communications Best Practice Guidance*, CYBERSECURITY & INFRASTRUCTURE SEC. AGENCY (Dec. 18, 2024), https://www.cisa.gov/sites/default/files/2024-12/guidance-mobile-communications-best-practices.pdf. This directly undermines Plaintiffs' allegation that Apple acted anticompetitively by limiting third-party access to SMS protocols. Internal procurement records, evaluation memoranda, and security assessments are likely to contain even more detailed and candid analyses of the merits and vulnerabilities of Apple's products and services and those of its competitors.

***Second***, Requests 9 and 10 seek documents related to agencies' concerns regarding non-Apple operating systems and app marketplaces and the risks associated with mandating third-party access to Apple's platforms. *See* App'x A at Nos. 9–10. Plaintiffs allege that Apple's restrictions on third-party access to iOS (Apple's proprietary operating system for iPhone) and the App Store are anticompetitive. Documents in which federal agencies assess the risks posed by non-Apple operating systems, alternative app marketplaces, or mandated third-party access to Apple's platform are relevant to Apple's defense that these policies protect consumers.

***Third***, Requests 5 and 7 seek documents related to smartphone pricing and market share. *See id.* at Nos. 5, 7. The United States' own smartphone pricing and market share data are particularly relevant to evaluating Plaintiffs' allegations of consumer harm and monopoly power. For instance, the Bureau of Labor Statistics—which maintains the Consumer Price Index—develops granular, non-public data on smartphone pricing that include quality adjustments to account for "the rapid rate of technological advancements and improved quality to consumers" of smartphones. *See Measuring Price Change in the CPI: Telephone hardware, calculators, and other consumer information items*, BUREAU OF LAB. STAT. (Feb. 13, 2026), https://www.bls.gov/cpi/factsheets/telephone-hardware.htm. These data—which are not available publicly—feed a specific CPI sub-index showing that the real, quality-adjusted price of smartphones has fallen over time, directly undercutting Plaintiffs' theory of consumer harm. *See Consumer Price Index for All Urban Consumers (CPI-U): Smartphones in U.S. city average, all urban consumers, not seasonally adjusted*, BUREAU OF LAB. STAT., https://data.bls.gov/timeseries/CUUR0000SSEE041. Apple's requests specifically seek pricing data and smartphone unit data that are relevant to market share—non-public inputs that underpin the publicly available indices that are uniquely held by BLS.

***Fourth***, Request 14 seeks documents related to several agencies' own involvement in Apple's developer program for creating internal-use apps. *See* App'x A at No. 14. Plaintiffs allege that Apple has harmed consumers by restricting developers' ability to innovate on iPhone. Documents showing that Apple provides tools, technologies, and services to enable developers to create useful apps would undermine Plaintiffs' theory that Apple stifles innovation. This request is limited to the handful of agencies that maintain Apple Developer Enterprise Program accounts and are therefore likely to possess relevant documents.

*    *    *

These agency materials are uniquely probative and cannot be obtained from other sources. The United States cites *In re Apple iPhone Antitrust Litigation* and *In re eBay Seller Antitrust*

4

*Litigation*, but both are inapposite.  Each involved subpoenas to third-party corporations—not discovery from instrumentalities of the plaintiff that brought the lawsuit—and each court quashed subpoenas only because the requesting party could obtain the same information through its own market research.  *See* 2020 WL 5993223, at *1, *5 (N.D. Cal. Oct. 9, 2020) (subpoena to non-party Samsung for certain competition data the court held could be obtained through independent research); 2009 WL 5205961, at *1, *3 (W.D. Wash. Dec. 23, 2009) (subpoena to non-party Amazon for market analyses that eBay could conduct on its own).  Apple's requests here are fundamentally different: agencies' internal procurement decisions, security evaluations, and purchasing rationales are uniquely held within the agencies and cannot be replicated through Apple's own research.  And unlike Apple's own threat assessments and security analyses, which Plaintiffs will characterize as self-serving, agency evaluations provide independent corroboration from the Plaintiff's own agencies that Apple's challenged features deliver genuine security and privacy benefits.

The relevance of these materials is further confirmed by the United States' own discovery requests, which seek the *same* categories of information from Apple and third parties.  *See, e.g.*, Pls.' First Set of RFPs to Apple at RFP 16 & Definition 15 (seeking "[a]ll documents related to any actual or potential pricing power" of Apple, including with respect to "government and public sector customers"), RFP 9 (requesting "[a]ll documents related to price … of Smartphones" without any limitation as to the type of consumer), RFP 38 (requesting "[a]ll documents related to consumer views about the privacy, security, user experience, or quality of Smartphones" without any limitation as to the type of consumer); United States' Document Subpoena to AT&T, at Specification 4 & Definition 11 (requesting documents and data related to smartphone sales quantities and revenue, including with respect to "government customers").

## II.    Apple Has Narrowly Tailored Its Requests to Minimize Burden.

Apple has narrowly tailored its requests to minimize burden, and generalized claims of burden are not a valid basis to refuse production.  *See Johnson & Johnson Healthcare Servs. v. SaveOnSp, LLC*, 2024 WL 2803284, at *3 (D.N.J. May 31, 2024) ("[U]nsubstantiated claims of burden and expense are insufficient to withhold otherwise relevant discovery.").  Apple is not seeking discovery from all federal agencies or their employees.  Indeed, out of 444 federal agencies, Apple has carefully selected just 14 that are most likely to possess relevant materials.  Apple has also substantially narrowed its requests over the past year in an attempt to reach a reasonable compromise: Apple started with 39 RFPs to the United States (including its agencies), narrowed that set down to less than 20 RFPs in the subpoenas it issued to the agencies, and then narrowed that list down again to just 6-9 RFPs per agency in its final compromise proposal.  As in *Johnson & Johnson*, Apple's requests for limited information from a small group of agencies do not implicate "a prohibitive number of documents."  *Id.*

These 14 agencies were selected because each has specific, relevant expertise.  They comprise: (a) agencies that set government-wide smartphone procurement and use policies, which are relevant to Plaintiffs' alleged market definition and the factors that influence the United States' own

smartphone purchasing decisions;[1] (b) agencies that assess smartphone privacy and security risks, which bear on Apple's procompetitive justifications for the alleged conduct;[2] (c) regulatory and consumer protection agencies that monitor smartphone security and competition, again relevant to Plaintiffs' market allegations and Apple's defenses;[3] and (d) the Department of Labor, including its Bureau of Labor Statistics, which maintains the Consumer Price Index and data related to smartphone pricing—which is relevant to Plaintiffs' allegation that Apple charges supracompetitive prices.

The scope of Apple's requests is also narrow. Apple is seeking only a few categories of documents, as discussed above—just 6 to 9 requests per agency. *See* App'x A. And all but two of those requests seek only "documents sufficient to show" rather than "all documents," *see id.*, permitting the agencies to produce representative documents rather than conducting expansive searches. "Documents sufficient to show" is a widely accepted discovery-narrowing device that permits the responding party to select a reasonable set of responsive documents rather than producing every document on a topic. To the extent that the United States claims that searching for responsive materials would be burdensome, such generalized assertions of burden do not justify a complete refusal to search. *Johnson & Johnson Healthcare Servs.*, 2024 WL 2803284, at *3.

The requested materials are not cumulative of any prior production. The United States has not produced a single document from any agency outside the Antitrust Division—information cannot be cumulative of materials that have not been produced.

## III.    The United States' Privilege Objections Do Not Justify a Blanket Refusal to Produce.

No privilege justifies a categorical refusal to search for responsive materials. The United States invokes deliberative process, state secrets, and law enforcement privileges as well as various statutory protections, but none supports its blanket position. Even if some individual documents were protected, that would be a basis for withholding those specific documents and including them on a privilege log—not for refusing to search at all.

Apple's targeted requests are not an attempt to "probe the internal . . . workings of the national security apparatus." *Cf. Schuchardt v. President of the United States*, 839 F.3d 336, 353–54 (3d Cir. 2016). Apple's requests are not a "fishing expedition"—they target specific categories of documents tied to specific issues in this case from a carefully–selected subset of agencies with relevant expertise.

The United States' privilege objections fail for additional reasons specific to each.

***Deliberative Process***. Apple's requests target factual records and finalized agency actions that fall

---

[1] Office of Personnel Management, Office of Management and Budget, General Services Administration, and National Aeronautics and Space Administration. NASA is included solely because Apple understands that NASA may procure smartphones on behalf of other agencies.

[2] Department of State, Department of Defense, Department of Homeland Security, Federal Bureau of Investigation, Central Intelligence Agency, National Security Agency, and Office of the Director of National Intelligence.

[3] Federal Trade Commission and Department of Commerce.

6

outside the deliberative process privilege.  That privilege does not protect "documents reflecting a final agency decision and the reasons supporting it," *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021), nor does it protect "factual information," *Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995).  Apple's requests seek precisely these categories: factual information regarding agencies' procurement of smartphones and wearables and final policies, guidance, or evaluations regarding smartphones and related technologies.  These are not the types of documents that reflect an agency's "deliberative process."

The cases cited by the United States confirm the point.  The court in *Hamrick v. Department of Navy* protected "personal opinions and ideas" about procurement of certain equipment, 1992 WL 739887, at *2 (D.D.C. Aug. 28, 1992), and *Professional Review Organization of Florida, Inc. v. U.S. Department of Health & Human Services* refused to protect documents showing the factors considered in an agency's "evaluation of the contract proposals" under the deliberative-process privilege, 607 F. Supp. 423, 427 (D.D.C. 1985).  Apple's requests, by contrast, seek issued guidance (including internal agency guidance), finalized evaluations, and factual procurement records—not predecisional deliberations.  *See* App'x A, No. 3, 8, 9; *U.S. Fish & Wildlife Serv.* 592 U.S. at 268 ("[D]ocuments reflecting a final agency decision and the reasons supporting it … are not [exempt from disclosure].").

Even if the privilege applied to some materials, it "is not absolute." *Redland Soccer Club*, 55 F.3d at 854.  Courts may overcome it after balancing the relevance of the evidence, the seriousness of the litigation, and the government's role.  *Id.*  Here, the United States has asserted the privilege only in the abstract, without any document-specific showing, and the equities favor Apple: the United States brought a wide-ranging antitrust complaint implicating large swaths of the American economy, and its role as a party "weighs in favor of disclosure." *United States v. Booz Allen Hamilton, Inc.*, 2022 WL 3921019, at *2–3 (D. Md. Aug. 31, 2022) (piercing the deliberative-process privilege because "information about the *landscape* of this industry is highly probative").

***Law Enforcement.***  The law-enforcement privilege must be asserted with a showing that disclosure would compromise law enforcement techniques, sources, or ongoing investigations. *Castellani v. City of Atlantic City*, 102 F. Supp. 3d 657, 670 (D.N.J. 2015).  The United States has made no such showing and fails to explain how smartphone procurement and evaluation documents implicate any law enforcement activity.  Indeed, the United States' own position that the subpoenaed agencies were not involved in the investigation of Apple undercuts any such claim.

***State Secrets.***  Apple seeks only unclassified materials, and the state-secrets privilege does not shield the United States' entire response.  Apple has repeatedly told the United States that it is not seeking any classified materials or any materials the production of which would pose risks to national security.  Nor is Apple asking the United States to disclose classified information to justify a valid withholding of classified materials.  But the United States cannot credibly claim that *all* responsive materials from each subpoenaed agency are classified.  For example, several of the selected agencies have published public smartphone-related guidance that is responsive to Apple's requests.[4]  At a minimum, Apple expects there would be discoverable documents underpinning

---

[4] *See, e.g.*, *Mobile Devices and Mobile Applications Policy Guide*, FED. BUREAU OF INVESTIGATION (Nov. 20, 2020), https://vault.fbi.gov/mobile-devices-and-mobile-applications-policy-guide-1119pg; *Mobile Device Best Practices*, NAT'L SEC. AGENCY (Oct. 2020), https://media.defense.gov/2021/Sep/16/2002855921/-1/-1/0/MOBILE_DEVICE_BEST_PRACTICES_FINAL_V3%20-%20COPY.PDF; *Mobile Communications Best*

that public guidance.  Moreover, this Court's protective order already provides robust protections for sensitive materials produced in this litigation.  *See* Discovery Confidentiality Order, Dkt. 235. Apple has produced and continues to produce highly sensitive materials in this case, and the same protections would apply to any agency materials produced here.

The only case the United States cites, *FBI v. Fazaga*, 595 U.S. 344, 359 (2022), addressed only whether FISA abrogated the state-secrets privilege—it did not hold the government could withhold responsive documents based on blanket assertions of national security.  *See infra* at 22.

***Statutory Restrictions.***   The statutes the United States cites do not prohibit disclosure of the information Apple seeks.  The Confidential Information Protection and Statistical Efficiency Act merely bars disclosure of data obtained "in identifiable form" (i.e., that would permit "the identity of the respondent to whom the information applies to be reasonably inferred by either direct or indirect means").  44 U.S.C. §§ 3561(7), 3572(c)(1) (2024).  As to the other cited statutes, the United States fails to identify any provisions that actually prohibit the disclosure of information Apple has requested.  Indeed, 50 U.S.C. Section 4565, which authorizes CFIUS to review foreign mergers and acquisitions, explicitly permits disclosure of confidential information "relevant to any administrative or judicial action or proceeding."  50 U.S.C. § 4565(c)(2)(A) (2024).  And Section 889 of the National Defense Authorization Act restricts the *acquisition* of certain hardware, not production of the smartphone-related documents Apple seeks.  *See, e.g.*, *Huawei Techs. USA, Inc. v. United States*, 440 F. Supp. 3d 607 (E.D. Tex. 2020).

In all events, statute-specific restrictions—even if applicable to particular documents—do not justify a blanket refusal to search for and produce non-protected responsive materials across all requests for all 14 agencies.  To the extent any document is protected by a specific statute, the United States can and should log it on a document-by-document basis, as the United States has done with respect to its investigative file.

The United States remains obligated to produce non-classified, non-privileged documents regardless of whether some other materials are subject to privilege.  *See* Fed. R. Civ. P. 26(b)(5); *Moore v. Hartman*, 241 F.R.D. 59, 64 (D.D.C. 2007) ("The fact that some of the information may be privileged … does not excuse the defendant from providing the plaintiff with the discovery that is not privileged.").  Executive privileges "should be narrowly construed," *Redland Soccer Club*, 55 F.3d at 856, and must be raised on a document-by-document basis—not "in the abstract," *NetJets Large Aircraft, Inc. v. United States*, 2014 WL 1672588, at *11–12 (S.D. Ohio Apr. 28, 2014).  "[W]henever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter."  *Chisler v. Johnston*, 796 F. Supp. 2d 632, 639 (W.D. Pa. 2011) (holding that the state-secrets privilege invoked to protect government documents from disclosure "may not be used to shield any material not *strictly necessary to prevent injury to national security*"); *see also Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 25 (S.D.N.Y. 1984) (holding that the state-secrets privilege

---

*Practice Guidance*, Dep't of Homeland Sec. (Nov. 24, 2025), https://www.cisa.gov/sites/default/files/2025-12/guidance-mobile-communications-best-practices_508c.pdf; *Study on Mobile Device Security*, Dep't of Homeland Sec. & Dep't. of Com. (Apr. 2017), https://www.dhs.gov/sites/default/files/publications/DHS%20Study%20on%20Mobile%20Device%20Security%20-%20April%202017-FINAL.pdf.

"should be narrowly construed to permit 'the broadest possible discovery consistent with the purposes of the privilege'"). The burden of conducting privilege review does not excuse the United States from searching for responsive materials. Unlike in *In re Blue Cross Blue Shield Antitrust Litigation*, where "most of the responsive documents" were "subject to some privilege or work-product protection," 2017 WL 2889679, at *2 (N.D. Ala. July 6, 2017), Apple's requests primarily target factual procurement records, issued guidance, and finalized evaluations—categories that do not implicate privilege. The categorical privilege assertions provide no basis for the United States' wholesale refusal to even search for the narrow categories of documents from a small set of its own agencies.

## IV.    The United States Must Produce These Materials Under the Federal Rules and Has No Valid Basis for Refusal.

Under the Federal Rules, Apple is entitled to the requested discovery. Those Rules contain no exception for enforcement actions and no special immunity for the government as a party. The United States assumed the obligations of a civil litigant when it filed this lawsuit, including the obligation to produce relevant documents in its possession, custody, or control. Whether characterized as party discovery under Rule 34 (as would be proper) or as third-party discovery under Rule 45 (as the United States believes is correct), there is no legitimate basis for the United States to withhold the requested documents.

The United States should produce these materials as a party under Rule 34. This action was brought by the United States—not merely the Antitrust Division—and its discovery obligations extend to documents within its possession, custody, or control, including those held by the agencies from whom Apple seeks discovery. "[T]he United States, having filed the action, cannot claim to be merely the Department of Justice" for purposes of discovery. *United States v. Am. Tel. & Tel. Co.*, 461 F. Supp. 1314, 1334 (D.D.C. 1978); *see also North Dakota v. United States*, 2021 WL 6278456, at *4 (D.N.D. Mar. 24, 2021) ("[T]he United States' obligation to respond to discovery requests is not limited to an agency named in the action."); *United States v. Atrium Vill. Assocs.*, 1988 WL 2778, at *1 (N.D. Ill. Jan. 12, 1988) (holding that "defendants' discovery [requests to the United States] should be responded to by the Department of Education and the Veterans Administration, as well as HUD and the Department of Justice.").

In *United States v. AT&T*—the seminal case on agency discovery in federal antitrust enforcement actions like this one—the court rejected the United States' attempt to limit the definition of "plaintiff" for purposes of party discovery to the Department of Justice. 461 F. Supp. at 1332–34. Recognizing that "[t]he theory of the government's case and the relief requested are national in scope and they are likely to involve the documents and the activities of a great number of government departments," the court found that "it simply makes no sense to hold that the Department of Justice, which essentially is a law office, alone comprises the United States," and ordered production from other federal agencies. *Id.* at 1333–34. The United States characterizes *AT&T* as "relatively unique" and limited to its "peculiar facts," but the "peculiar facts" at issue were the United States's "massive and wide-ranging allegations, … which involve[d] many departments and their evidence." *Id.* at 1334. The same is true here. The *AT&T* court did not cabin its ruling to agencies that participated in the government's investigation. *Id.*

Since *AT&T*, other courts have similarly held in DOJ enforcement actions and elsewhere that the

9

United States' discovery obligations as a party cannot be cabined to the Department of Justice. In *Atrium Village*, the court ordered the Department of Education and the Veterans Administration to produce documents under Rule 34 in a housing discrimination case, reasoning that "it is unrealistic to view the Department of Justice as the sole plaintiff when the United States brings a federal law enforcement action." 1988 WL 2778, at *1. Notably, neither agency participated in the investigation or had information about the defendant's specific housing practices. *Id.* And in *North Dakota v. United States*, the court ordered various federal agencies to produce documents in an FTCA case, holding that "the United States' obligation to respond to discovery requests is not limited to an agency named in the action." 2021 WL 6278456, at *4–6.

Courts applying even the narrowest reading of *AT&T* have required discovery beyond the Department of Justice. In *United States v. UBS Securities LLC*, the court held that the "United States" for purposes of party discovery included DOJ, HUD, and the Department of Treasury. 2020 WL 7062789, at *4 (E.D.N.Y. Nov. 30, 2020). In reaching that holding, the court specifically rejected arguments that sought to limit discovery because "[n]either HUD nor Treasury had any role in investigating th[e] case[,] … provided any documents in connection with th[e] investigation[,] … [nor] was involved in fact-gathering or charging decisions in any way." *Id.* at *5. Instead, the court recognized that "the definition of 'United States' also includes agencies that inform the policies, rules, and regulations that the executive branch sets." *See id.* (expanding upon the scope of party discovery defined in *Deane v. Dynasplint Sys., Inc.*, 2015 WL 1638022 (E.D. La. Apr. 13, 2015)). The connection between Apple's targeted agencies and the issues in this case is direct: just as HUD and Treasury in *UBS* had "special knowledge and expertise" bearing on the financial regulatory system at issue, the agencies Apple has targeted, such as DHS, NSA, FBI, and CISA, have special knowledge and expertise regarding smartphone security, privacy, and procurement—issues central to this litigation. The *UBS* court did not require that agencies be involved in the investigation; it required relevant expertise. Apple's targeted agencies satisfy that standard.[5]

Notably, for all its objections to applying the well-established *AT&T* principle here, the United States does not dispute that *AT&T* is the only monopolization case that addresses the scope of party discovery. And the only non-monopolization civil enforcement actions the United States cites are inapposite: *Deane*, 2015 WL 1638022, at *4, is a False Claims Act case that derived its "closely aligned" standard entirely from criminal cases; and *United States v. Xlear, Inc.*, 2022 WL 5246717, at *2 (D. Utah Oct. 6, 2022) relied on *Deane*'s defective analogy to criminal cases.

Civil discovery standards—not criminal prosecution limits—govern the United States' obligations in this case. *See UBS*, 2020 WL 7062789, at *5 n.3 ("The Court rejects Plaintiff's attempt to conflate civil discovery and criminal discovery [for purposes of defining the 'United States' for

---

[5] Even under the United States' constrained view of the proper scope of party discovery, it is clear that at least the FBI and FTC should be required to produce documents under Rule 34, as both agencies contributed to DOJ's investigation of Apple. *See, e.g.*, United States' Privilege Log at DOJ_PRIV_006–08 (logging communications with FTC and FBI as reflecting "confidential opinions, deliberations, and recommendations … in formulating decisions by DOJ as to the scope its investigation of Apple and whether to bring litigation challenging Apple's conduct"); USDOJ-002-00000009 (redacted email between DOJ and FBI regarding the investigation and request to discuss the FBI's use of mobile devices). The United States' attempt to minimize these contacts ignores that its own privilege log characterizes them as substantive exchanges regarding the scope of the investigation and the decision to bring this litigation.

purposes of discovery]."); *see also United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994) (noting that criminal pretrial discovery is "vastly different" from the "wide-ranging discovery permitted in civil cases"). The standards applicable to civil cases demand that party discovery not be limited merely to the "prosecution team" and apply to any agency likely to have relevant documents. *See AT&T*, 461 F. Supp. at 1334 ("[I]t is apparent that defendants will need access to the records of many government agencies, and that fairness to them requires that such access be as unencumbered as the Federal Rules will allow.").

Requiring the United States to produce relevant materials from agencies beyond the Antitrust Division is also consistent with the structure of the executive branch. Executive power is not vested in the Department of Justice but extends from the President over all federal agencies. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020). All executive agencies and their officers are organized under and "remain accountable to the President, whose authority they wield." *Id.*; *see also United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021). The United States therefore has possession, custody, or control over executive agencies' documents, and should produce them as part of party discovery. That all 14 subpoenaed agencies are represented by the same DOJ attorneys who represent the United States in this litigation only reinforces that these agencies are not independent third parties but instrumentalities of the Plaintiff.

Even if the United States were not required to produce these materials under Rule 34, Apple would still be entitled to them pursuant to its Rule 45 subpoenas. At the United States' insistence, Apple subpoenaed the relevant agencies in an effort to move past procedural objections and obtain the documents. But rather than comply with the subpoenas served at the United States' own suggestion, the agencies—through the same DOJ attorneys representing the United States—invoked *Touhy* regulations to block production. *Touhy* merely regulates *how* agency materials can be disclosed; it does not bar or alter agencies' discovery obligations under the Federal Rules. *See S.E.C. v. Selden*, 484 F. Supp. 2d 105, 107 (D.D.C. 2007) ("*Touhy* in no way stands for the proposition that agency regulations alter the procedures set forth in the Federal Rules of Civil Procedure or that agency regulations can preclude the production of documents 'that are relevant to a judicial proceeding.'" (quoting *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 472 (1951) (Frankfurter, J., concurring))). "To the contrary, 'the Supreme Court in *Touhy* assumed a federal agency could be subject to a third-party subpoena … for otherwise the agency would not need to promulgate regulations for centralizing its response to such a subpoena.'" *Id.*[6]

The United States' reliance on *Touhy* is meritless. The policy behind *Touhy* regulations is to "conserve governmental resources where the United States is *not* a party to a suit." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (emphasis added). That concern is not present here. Having voluntarily filed this lawsuit against Apple in federal court, the United States, including its agencies and instrumentalities, is subject to the Federal Rules of Civil Procedure and is "to be

---

[6] For the same reasons, cases recognizing agencies' discretionary authority to decline to respond to a properly served subpoena are inapposite. *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 276 (4th Cir. 1999); *Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007). The United States brought this litigation on behalf of the entire federal government, and its agencies cannot decline to submit to the jurisdiction of the Court based on a unilateral decision about conservation of resources. Apple "seeks information to mount a defense against a government-initiated action," and "judicial control over the evidence … cannot be abdicated to the caprice of executive officers." *Selden*, 484 F. Supp. 2d at 109.

treated in exactly the same way as any other litigant." *Alexander v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998) (quoting *EEOC v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373, 1375 (D.N.M. 1974)) (noting that "[w]hen the United States is a party to litigation, 'judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers'" because doing so "would create a significant separation of powers problem" (quoting *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953))). As numerous courts have held, "when the United States is a party to the litigation, the reach of disclosure-limiting *Touhy* regulations ends at the courthouse doors." *Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 380 (2010); *accord Alexander*, 186 F.R.D. at 71 ("In cases originating in federal court in which the federal government is a party to the underlying litigation, the *Touhy* problem simply does not arise."); *Hous. Bus. J., Inc. v. Off. of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996). The United States now points to the text of certain individual agency *Touhy* regulations to argue that they apply even when the United States is a party, *see infra* at 14–15, but agency regulations cannot override the Federal Rules of Civil Procedure, *Selden*, 484 F. Supp. 2d at 107. And the United States' reliance on *United States v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir. 2007), is unavailing—that case involved a criminal defendant seeking agency records in a criminal prosecution. Such a case has no bearing on the United States' obligations as a civil litigant. *See UBS*, 2020 WL 7062789, at *5 n.3. Again, criminal discovery is substantially narrower than the "wide-ranging discovery permitted in civil cases." *Ramos*, 27 F.3d at 68.

Even if *Touhy* applied, it would not bar production of the requested materials. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994) (holding that the federal housekeeping statute authorizing issuance of *Touhy* regulations "does not create an independent privilege to withhold government information or shield federal employees from valid subpoenas"). Under *Touhy*'s deferential arbitrary-and-capricious standard, the United States' categorical refusal to produce any documents—without conducting any search or document-by-document review— is arbitrary on its face. *See Franchitti ex rel United States v. Cognizant Tech. Sols. Corp.*, 2023 WL 2759075, at *5–7 (D.N.J. Apr. 3, 2023) (finding DOJ's objections to Rule 45 subpoena in *qui tam* action on basis of relevance, undue burden, overbreadth, and "broad, blanket assertion of [law enforcement] privilege" to be arbitrary and capricious). This is especially true here, where Apple has already voluntarily complied with the agencies' *Touhy* processes—providing detailed explanations of the relevance and importance of the materials sought—despite *Touhy*'s inapplicability. The United States has no valid basis to refuse compliance with subpoenas that were served at its own insistence.

Finally, the United States' refusal to produce the requested materials cannot be squared with its own discovery requests, which seek the same categories of information from Apple and third parties. *See supra* Section I. The United States, too, must produce these materials—as either a party or as "third-party" subpoena recipients.

*    *    *

The United States, having brought this action, cannot avoid its discovery obligations by putting Apple through an endless procedural runaround. The parties have discussed these issues repeatedly over the past year, but those efforts have not resulted in a resolution. Apple is entitled to obtain relevant, narrowly targeted materials from a small subset of the United States' own agencies, and Apple therefore respectfully requests that the Court order the United States to produce the materials requested in Apple's final compromise proposal, attached as Appendix A.

12

**The Position of the United States**

Apple has issued subpoenas to 14 federal government agencies—including several in the Intelligence Community—none of which regulate smartphones, participated in the investigation, or are otherwise part of this litigation.[7] Not surprisingly, Apple's requests on their face reflect that any documents these agencies may have that would be responsive are at best tangentially relevant to the factual disputes presented by this case. Collecting, reviewing, and producing responsive documents, including from classified document systems, would require extraordinary effort and cause exceptional burden on these agencies, in part because many documents Apple requests are highly likely to be privileged or classified. The information sought lacks relevance because these agencies do not regulate the products or markets at issue, and they do not purchase or use smartphones in the same ways as ordinary consumers. The requests are overbroad, and Apple has neither offered nor accepted any workable narrowing to reduce the burden on these agencies and limit the expense to taxpayers.

For these reasons, the Court should find that the discovery sought imposes an undue burden and expense on these agencies that is disproportionate to the information's tangential relevance under Federal Rule of Civil Procedure 45. The same is true even if analyzed under Rule 34. And despite numerous efforts by these agencies to negotiate a reasonable compromise, Apple has refused to engage meaningfully. Accordingly, the United States respectfully requests that this Court quash the subpoenas and deny Apple's requests for production.

## BACKGROUND

Plaintiffs allege that Apple "reduces competition in the markets for performance smartphones and smartphones generally . . . by delaying, degrading, or outright blocking technologies that would increase competition in the smartphone markets by decreasing barriers to switching to another smartphone." Dkt. No. 51 ¶ 8. Focusing on functionality for *consumer* devices, the Complaint highlights five ways Apple does this: (i) suppressing "super apps"; (ii) blocking cloud-streamed gaming apps; (iii) denying important functionality such as the SMS and RCS APIs to competing messaging apps; (iv) denying iPhone users the ability to use third-party smartwatches with the same capabilities as the Apple watch; and (v) blocking consumer access to digital wallets that offer advanced and innovative features. Dkt. No. 51 ¶ 10. This conduct reduces competition on the merits among these types of consumer-facing apps and accessories and, as a result, among smartphones used by consumers. *See* Opinion Denying Apple's Motion to Dismiss, Dkt. No. 283, at 24-27.

Despite the Complaint's focus on apps, accessories, and devices used by consumers, Apple seeks discovery from 14 large federal government agencies. These agencies did not participate in the

---

[7] Central Intelligence Agency ("CIA"), Department of Commerce ("DOC"), Department of Homeland Security ("DHS"), Department of Labor ("DOL"), Department of State ("State"), Department of War ("War"), Federal Bureau of Investigation ("FBI"), Federal Trade Commission ("FTC"), General Services Administration ("GSA"), National Aeronautics and Space Administration ("NASA"), National Security Agency ("NSA"), Office of the Director of National Intelligence ("ODNI"), Office of Management and Budget ("OMB"), and Office of Personnel Management ("OPM"). On or about November 19, 2025, Apple began serving subpoenas on these agencies. The 14 subpoenas are collectively attached as Appendix B (the pleadings and prior orders that were attached as exhibits to the subpoena schedules have been omitted).

Department of Justice's investigation, are not consumers in the relevant market, do not regulate smartphones, and are not otherwise part of this litigation. These agencies employ roughly half of the United States government workforce and include four cabinet departments and three components of the Intelligence Community. Each agency has a different set of document collection protocols and would need to undertake classification and privilege reviews, even when ostensibly searching only for non-classified documents.

Federal agencies are not ordinary consumers, and their experience with smartphones is remote from the technologies and competitive dynamics that are core to this case. Federal agencies often purchase smartphones for their employees in bulk through specialized procurement agreements such as "indefinite delivery indefinite quantity" contracts. *See* 48 C.F.R. Subpart 16.5. Federal agencies often use dozens, or perhaps hundreds, of intermediary contractors that predominantly bundle wireless communications services with smartphones and other hardware into one price rather than selling the devices on a stand-alone basis. Federal agencies typically restrict the apps— and often the app stores—that may operate on government smartphones, meaning that super apps, cloud streaming apps, and digital wallets, among other apps at issue in this case, are often not used or are prohibited on these devices. And, as the Complaint alleges, Apple offers different privacy and security features in smartphones sold to the federal government. *See* Dkt. No. 51 ¶ 16. Apple even acknowledges here that it offers federal agencies *internal*-use apps for their own employees that are not available to ordinary public consumers. *See supra* at 4.

The agencies upon which Apple served subpoenas have, through counsel at the Department of Justice, nevertheless engaged earnestly and exhaustively to offer Apple reasonable productions. This included extensive meet-and-confers with Apple, numerous meetings with the 14 agencies, and significant internal agency research to scope potentially responsive documents. Apple primarily demands "internal procurement records, evaluation memoranda, and security assessments . . . likely to contain even more detailed and candid analyses of the merits and vulnerabilities of Apple's products and services and those of its competitors." *See supra* at 4. While Apple denies trying to probe the internal workings of the national security apparatus, *see supra* at 7, Apple targeted these agencies to discover their purported "special knowledge and expertise" about smartphone privacy and security issues. *See supra* at 10. Apple's requests are designed to probe the internal workings of these agencies, and they have the practical effect of doing so. *See* App'x A, Requests 8 & 9 (requesting from national intelligence agencies "guidance," "memoranda," and "written analyses" regarding app usage and "concerns, evaluations, recommendations" and risk assessments or guidance related to operating systems or app marketplaces).

Apple now demands that the Court grant the discovery requested in Appendix A. This self-stylized "compromise" in fact merely crystallizes more than 100 requests issued across 14 agencies without substantive change. This is in addition to the 115,240 documents, totaling 648,610 pages already produced by the Antitrust Division.

## ARGUMENT

### I.    The Agencies Denied Apple's Requests Under *Touhy* for Lack of Relevance, Undue Burden, Privilege, and Other Reasons

Each of the 14 federal agencies has *Touhy* regulations that govern responses to subpoenas, including cases in which the United States is a party. *See, e.g.*, Department of Commerce *Touhy* regulations, 15 C.F.R. § 15.12(d) (applying to subpoenas for documents for use in "any legal proceeding, regardless of whether the United States is a party to the proceeding."); Department of Labor *Touhy* regulations, 29 C.F.R. § 2.20(a) (applying to subpoenas "in connection with a proceeding to which the U.S. Department of Labor is not a party"); Department of Homeland Security *Touhy* regulations, 6 C.F.R. § 5.41 (applying to subpoenas issued under the Federal Rules of Civil Procedure in any litigation); *see also United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) ("The defendant claims at the outset that *Touhy* regulations do not apply to cases in which the United States is a party, but neither the authorizing statute, 5 U.S.C. § 301, nor the DHS regulations, 6 C.F.R. § 5.41, impose any such limitation.").

Each agency issued responses and objections to Apple's subpoenas pursuant to Rule 45 and, as appropriate, in accordance with the procedures set forth in the agency's *Touhy* regulations. *Touhy* regulations require the agencies to consider, among other factors, whether disclosure in response to the subpoena is appropriate under the Federal Rules of Civil Procedure and the substantive law concerning privilege. Here, each agency determined that Apple's requests seek privileged and otherwise protected information that cannot be disclosed, seek information that is not relevant to the claims or defenses in this case, and impose an undue burden. The agencies therefore denied Apple's requests pursuant to Rules 26(b)(1) and 45(d), and their *Touhy* regulations.[8] While the *Touhy* regulations themselves do not provide an independent privilege to withhold production, the agencies' consensus assessment may aid the Court's conclusion that Apple's subpoenas seek irrelevant and privileged information, impose undue burdens on the agencies, and should be quashed.

In this District, the United States and its federal agencies have consistently maintained that the deferential "arbitrary and capricious" standard is applicable for reviewing agencies' *Touhy* determinations, and some courts have adopted that standard when directly confronted with the issue.[9] The Third Circuit has not weighed in, leading some district courts in this circuit to avoid the issue and deny motions to compel government agency discovery under the less deferential Federal Rules analysis, which is discussed below. *See, e.g.*, *Harris v. McDonald*, 2022 WL 3599394, at *2 (M.D. Pa. Aug. 23, 2022). Either way, this Court may consider the agencies' consensus assessment that Apple's requests are not proportional to the needs of the case.

---

[8] Apple's argument that Department of Justice lawyers in the Antitrust Division represent the agencies is a red herring. The Department of Justice's representation of the agencies does not minimize that the agencies made their own decisions on whether to disclose documents in response to Apple's requests.

[9] *See, e.g.*, *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (applying APA standard to federal agency's refusal to comply with Rule 45 subpoena)*; Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (affirming HHS decision not to produce employees for testimony because the decision was neither arbitrary nor capricious).

## II.    Apple's Discovery Requests Should be Denied Under the Federal Rules

### A.    *FRCP 45 Applies as Apple's Argument that the Entire United States Government is the Party for Discovery Purposes is Both Wrong and Inconsequential to the Current Dispute*

Apple casts this dispute as a question between proceeding under Rule 34, governing party discovery, or Rule 45, addressing subpoenas to non-parties. The Court need not resolve this issue because Apple's overbroad subpoenas impose an undue burden measured under either Rule. Nonetheless, as described below, these agencies are properly considered third parties to this law enforcement action for the purpose of discovery, so the Court should apply the heightened deference of avoiding burdens to third parties that is accorded under Rule 45.

This Court should apply the legal standard for law enforcement cases as described in a case on which Apple relies, *United States v. UBS Securities, LLC,* in which the court explained: "[f]or purposes of party discovery, the 'United States' includes agencies that engage in joint investigation." 2020 WL 7062789, *6 (E.D.N.Y. 2020); *see also Deane v. Dynasplint Sys., Inc.*, 2015 WL 1638022, at *4 (E.D. La. Apr. 13, 2015) (collecting cases). The *UBS* Court limited the definition of the United States to two agencies that formed "a close working relationship" with the law enforcer in investigating and bringing the case, as these two agencies helped to "address[] the financial fraud at issue in this case." *UBS*, 2020 WL 7062789, at *6; *see also USA v. Xlear Inc.*, 2022 WL 5246717, at *2 (D. Utah Oct. 6, 2022) ("The United States acting as plaintiff prosecutor does not open up the entire federal government to party discovery."). Apple offers no serious argument that a different legal standard should govern in this case. Here, because none of the agencies worked with the Department of Justice in its investigation or otherwise investigated Apple's conduct at issue, they are not part of the prosecution team and should not be subject to the burdens of Rule 34 discovery.[10]

This rule makes good sense. The Department of Justice enforces the law on behalf of the sovereign, the United States. But the sovereign is not an ordinary litigant, and the limitations on "party" discovery against the United States help ensure that discovery rules for ordinary private cases cannot be abused against the federal government. These rules promote the public's interest in vigorous law enforcement and safeguarding taxpayer resources. Apple's argument based on the "structure of the executive branch" misses the point: the issue is not whether these agencies are answerable to the President, but rather whether these agencies become open to party discovery whenever the Department of Justice files a civil lawsuit. Accepting Apple's position would break significant new legal ground without good reason, because existing standards adequately protect the defendant's right to seek discovery.

---

[10]    Apple points to ten emails with the FBI and one email with the FTC cited on the United States' privilege log to argue that the FBI and FTC were involved in investigating this case. However, these limited communications do not amount to these agencies substantively participating in the investigation or the lawsuit so much that the case would not have been brought without their consultation. *See e.g., USA v. Xlear Inc.,* 2022 WL 5246717, at *2 n. 3 (D. Utah Oct. 6, 2022) (finding that FDA was not a party with FTC in bringing an action because FDA had not "substantively participated in the investigation" despite "limited communications" between FDA and FTC). Apple has no articulable basis to claim that any of the other 12 departments and agencies are or ever were part of the prosecution or investigation of this case.

16

In arguing for discovery on the entire United States government as if it were a single commercial entity, Apple relies heavily on *United States v. Am. Tel. & Tel. Co.*, a nearly 50-year-old case that was decided against a backdrop of a "paucity of authority" on this issue. 461 F. Supp. 1314, 1333 (D.D.C. 1978). The government's theory of that case implicated "the activities of a great number of government departments," and the defendants asserted in response that "many of its practices [were] the result of the Government's own policies." *Id.* at 1334. These facts made the discovery posture "relatively unique," and the court therefore expressly limited its holding to "these peculiar facts." 461 F. Supp. 1314, 1334 (D.D.C. 1978). The 14 agencies at issue here are not implicated in the same way and so are not covered by the AT&T court's reasoning. Moreover, *AT&T* did not announce a general rule and lends no support to Apple's proposed rule that Rule 34 applies across the entire executive branch whenever the United States brings a monopolization case. Most importantly, Apple is unable to cite a single case treating the *entire* United States government as a party, as Apple demands here. *See supra* at 9, Section IV.

However, this Court need not decide whether Rule 34 or 45 applies because Apple's requests exceed the bounds of discovery permitted to either parties or non-parties. *See Columbus Life Ins. Co. v. Wilmington Trust, N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023) (explaining that Rule 26 prescribes the scope of discovery for parties and non-parties).

### B. *Under the Federal Rules, the Legal Standard for the Scope of Discovery Turns on Relevance, Burden, and Privilege*

Rule 26 prescribes three applicable considerations for permissible discovery: (1) whether the information is relevant, (2) whether, in light of the needs of the case, the information sought is proportional to the burden and expense of production, and (3) whether the requests seek nonprivileged matter. *See* Fed. R. Civ. P. 26(b)(1). As the party seeking discovery, Apple bears the burden of showing that the information sought is relevant. *See Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). While relevance may be broad in discovery, "it is not boundless." *Takacs v. Union Cnty.*, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009). A district court maintains authority to deny a discovery request when "there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Id.* (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d. Cir. 1999), and Fed. R. Civ. P. 26(b)(2)(C)(iii)). The United States, meanwhile, bears the burden of showing that responding to a discovery request would be unduly burdensome. *See Hetzel v. Adaptive Health, LLC*, 2020 WL 7061634, at *1 (W.D. Pa. Apr. 9, 2020). In assessing proportionality, a court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Lawson v. Praxair, Inc.*, 2023 WL 7170273, at *3 (D.N.J. Apr. 28, 2023) (quoting Fed. R. Civ. P. 26(b)(1)).

Additionally, when discovery is requested from a non-party via a Rule 45 subpoena, a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). *See infra* Section D. Courts in this district and elsewhere have recognized that "the Rules afford non-parties special protections against the time and expense of complying with subpoenas." *Halpin v. Barnegat Bay Dredging Co.*, 2011 WL 2559678, at *12 (D.N.J. June 27, 2011) (quotation omitted); *see also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for

17

unwanted burden thrust upon non-parties is a factor entitled to special weight" because non-parties do not have the same expectations in civil litigation as parties).

### C. *Apple Seeks Documents of Minimal Relevance, if Any, to a Party's Claims or Defenses*

Apple's subpoenas seek information that has minimal, if any, relevance to the claims and defenses in this case. The federal agencies are not at all representative of Apple's ordinary consumers. Instead, they have idiosyncratic needs, purchasing pathways, usage restrictions, and special programs that are far afield from how Apple's conduct impacts the overall market.

- Federal agencies do not experience Apple's monopoly power as ordinary consumers do because they do not buy or procure smartphones, apps, and accessories in the same way ordinary consumers do. Federal agencies often purchase smartphones through "indefinite delivery indefinite quantity" procurement contracts with dozens, or perhaps hundreds, of intermediary contractors that predominantly bundle communications carrier services with smartphones and other device hardware in one price rather than selling the devices on a stand-alone basis. No ordinary consumer purchases smartphones that way, and Apple has not explained how evidence from this type of purchasing might relate to issues of monopoly power in this case.

- Federal agencies typically restrict their employees' smartphone usage. Many apps and app stores available to ordinary consumers are not even accessible on most federal agencies' smartphones. Other apps—including super apps, cloud streaming gaming apps, and digital wallets—are used infrequently or blocked entirely. Federal agencies' smartphones are *work* devices used for *work* purposes. The agencies have no unique insight into issues such as network effects in consumer message apps or which types of apps lead consumers to be "locked in" to a particular smartphone.

- Some federal agencies participate in developer programs for creating *internal*-use apps for *their own* employees. *See supra* at 4 (emphasis added). There is no reason to think that the internal use of these tools by a few agencies has any bearing on Apple's restrictions on app development for the ordinary consumer.

Apple fails to explain how its subpoenas will yield evidence of market-wide consumer preferences. Ordinary consumers who buy smartphones do so by visiting a store or a website. They use the apps and accessories that are the focus of this case but are generally not available to federal employees. Federal agencies, by contrast, generally procure devices through large contracts, they scrutinize technical specifications and national security implications in evaluating responses to requests for proposals, and they then negotiate a volume rate for the hardware and the carrier service together. Federal agencies are not representative of ordinary consumers, and their information, therefore, lacks relevance to how Apple's anticompetitive conduct affects the market alleged here.

A review of each request in Apple's proposal (App'x A) confirms the deficiency of Apple's relevance contentions:

Requests 1–4: Apple's first four requests seek information about the agencies' purchasing practices for smartphones and wearables from the past decade, including: (1) the make, model, quantity, and price of devices purchased; (2) the agencies' requests for proposals and the OEMs'

responses thereto; (3) the agencies' evaluations of the devices; and (4) the agencies' recommendations and policies regarding acquisition or usage of the devices. But because the agencies are not ordinary consumers, their purchasing practices are driven by specialized preferences that have minimal, if any, bearing on broader market conditions. While the first request might be relevant if the agencies were plaintiffs seeking damages, they are not. No damages model or evidence of overcharges is necessary here, so Requests 1–4 have little, if any, relevance.

<u>Requests 5 & 7:</u> Apple seeks pricing and market share data for the overall market from the Bureau of Labor Statistics ("BLS"). Apple claims that its requests seek "pricing data and smartphone unit data that are relevant to market share—non-public inputs that underpin the publicly available indices"—but there can be little doubt that, through its own research and that of third-party industry analysts, Apple has data far superior to any that BLS could provide.

<u>Request 6:</u> Apple seeks details about legal restrictions on agency procurement of smartphones made in China and other countries, specifically identifying Chinese manufacturers Huawei and Xiaomi. The information requested is irrelevant to whether Apple leverages its dominant market position in the United States to suppress competition through app review and API restrictions. Procurement restrictions imposed by the government are motivated by national security concerns for safeguarding classified and sensitive data that do not apply to ordinary consumers. To illustrate: federal agencies typically do not impose such restrictions on employees' personal devices. To the extent there is any relevance to Apple's request, Apple has access to publicly available materials establishing the substance of various restrictions on government technology procurement. *See* National Defense Authorization Act for Fiscal Year 2019 (P.L. 115-232), § 889.

<u>Requests 8, 9, 11–13:</u> Apple seeks guidance, memoranda, analyses, and other documents illustrating concerns, recommendations, and assessments regarding privacy and security in apps, app stores, and browsers. These requests highlight the differences between government users and ordinary consumers, who typically do not face the same security risks as the government. Put differently, this request probes national security risks that are inapplicable to ordinary consumers, and thus, competition in the broader market. Furthermore, to be relevant, any pro-competitive justifications must be specific to the alleged anticompetitive conduct, not generalized to whether iPhone or Android phones are more or less secure overall.

<u>Request 10:</u> Apple seeks information from three intelligence agencies about their internal views on proposed legislation. The requests are exceedingly likely to be protected by deliberative process privilege, as explained below. Even still, the intelligence agencies' views on pending legislation are unlikely to be probative of whether Apple has monopoly power or whether Apple's conduct in this case increases or decreases competition. Even if an intelligence agency did have an opinion on this topic, its views would not have special significance because no intelligence agency regulates the smartphone market.

<u>Request 14:</u> Apple seeks information showing why six agencies use the Apple Developer Enterprise Program to develop agency-specific iPhone apps. This issue is not specific to the six agencies. Large enterprises commonly employ this program so the iPhone can be useful for their specific needs. As explained above, and as Apple admits, this request bears no relevance to the app review dynamics in this case or to ordinary consumers in the relevant market.

Universally, Apple's subpoenas to the federal agencies seek information with little, if any, relevance. Taxpayer resources should not be usurped to collect, review, and produce information that does not bear on this case.

### D.  *Apple's Discovery Requests Impose an Extraordinary and Disproportionate Burden*

The burden of searching for, locating, collecting, reviewing, and producing documents, and then logging others that are protected under the many applicable privileges is immense and disproportionate to whatever minimal relevance these documents might provide. Apple's subpoenas would divert these agencies' limited manpower and resources away from the critical work they do on behalf of the American people. In no fewer than five ways, Apple's requests are not proportional to the needs of this case in view of their significant burden.

***First***, Apple's requests are overbroad. Apple touts that it has narrowed some of its requests to "documents sufficient to show." *See supra* at 6. But this is not a meaningful limitation when Apple nevertheless demands "any" documents of various types in eight of 14 requests. *See* App'x A at Requests 4, 6, 8, 9, 11, 12, 13, and 14. For example, Apple seeks "Documents sufficient to show *any* concerns, evaluations, recommendations, or other assessments or guidance related to" risks from operating systems and sideloading. Request 9 (emphasis added). This request would require expansive searches, subsuming whatever limitation Apple insists it has offered. Likewise, in Request 8, Apple seeks not only documents sufficient to show "issued guidance" about any app—regardless of whether the app bears on the conduct at issue in this Complaint—but also "any memoranda and written analyses related to any such formal guidance[.]" Apple's contentions about reasonable limitation are unavailing.

***Second***, the requests are particularly burdensome in the context of large, complex governmental entities that cover more than half of the federal civilian workforce. Federal agencies do not generally centralize procurement, and records are not generally maintained in a hub of files. Information about guidance, policies, concerns, assessments, and usages of technology, to the extent it exists, is generally scattered across many offices in these large agencies. Searching for or collecting the information Apple requests entails significant, undue burden. Even the work required to provide detailed figures about the burden of Apple's requests—such as searching for or gathering documents from diverse sources to calculate search results—is itself a significant burden.

***Third***, while Apple claims it is not seeking "classified or protected materials," the primary focus of Apple's requests is the confidential cybersecurity-related reasons that the federal agencies make decisions about the operating systems, browsers, and apps they will allow personnel to use in performance of their duties. *See* App'x A at Requests 11-13. The Third Circuit recognizes that caution should be exercised in allowing broad discovery "particularly" in matters that "involve[] potential issues of national security." *See Schuchardt v. President of the United States*, 839 F.3d 336, 353–54 (3d Cir. 2016) (directing district courts to take care to circumscribe the scope of discovery where the private party seeks to probe the internal workings of the national security apparatus). Discovery implicating national security should be off the table here. It makes little sense to allow Apple to bring national security into a consumer case that does not implicate it.

Moreover, Apple's "concession" still requires the agencies to search for and sift through swaths of protected materials to spot at best marginally relevant documents, imposing an undue burden that outweighs any potential benefit. Fed. R. Civ. P. 26(b)(1); *see also United States ex rel.*

*Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 258-59 (3d Cir. 2016) (emphasizing importance of proportionality in determining scope of discovery). As one court has recognized in the context of privilege, producing only non-protected documents "does not reduce the burden and expense" because the producing entity—here, the agencies—"would still be required to gather, review, and separate" documents that could be produced from those that must be withheld. *See In re Blue Cross Blue Shield Antitrust Litig.,* 2017 WL 2889679, at *2 n.3 (N.D. Ala. July 6, 2017). "This still requires a review of almost every document, even though only a relative few would be produced." *Id.*

In addition, Apple has indicated that it will not accept representations, but wants to probe whether withheld information is, in fact, national security related or classified, which requires the United States to disclose the exact information that it cannot. Apple's argument that privilege does not bar discovery also misses the point. The issue here is that most of what Apple seeks is likely subject to particularly sensitive governmental privileges, meaning that its collection and review would create exceptional burden in this instance.

Responding to Apple's requests would require burdensome searches of agencies' classified computer systems. For example, searches of ODNI's or NSA's classified systems, which may contain both classified and unclassified information, cannot be conducted through a global search function. Multiple targeted searches would be required, resulting in records that would then need to be reviewed by classification experts. Although Apple has explicitly stated it is not seeking classified documents or other documents that implicate national security in this case, documents related to ODNI, NSA, or the larger community of intelligence agencies, must nonetheless undergo a line-by-line review by classification experts and, where necessary, be redacted to the unclassified level prior to release outside of the United States government. Given the significant harm to national security that could result from inadvertent disclosure of classified material, this review must be performed meticulously on a document-by-document basis. Such a significant burden is wildly disproportionate to the needs of the case, given that the information requested is of marginal, if any, relevance.

**Fourth**, Apple's requests are unduly burdensome because they seek documents that are cumulative, duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26 (b)(2)(C)(i). *See Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007) (discovery "must properly accommodate the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations") (quotation marks omitted). Some of the information requested should be in Apple's possession, custody, or control. Information bearing on Apple's purported privacy and security defenses would be in Apple's own threat assessments and documentation. *Cf. In Re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *5 (N.D. Cal. Oct. 9, 2020) ("Apple is equally able to expend its own resources to obtain information [regarding consumer preferences], and probably already has."); *In re eBay Seller Antitrust Litig.*, 2009 WL 5205961, at *3 (W.D. Wash. Dec. 23, 2009) ("EBay does not have a substantial need to force Amazon to turn over market analyses that eBay could conduct on its own.").

Requests 5 and 7 ask the BLS to provide the price of smartphones and market shares of smartphones. This is information that is readily obtained from market participants, which Apple itself and its partner distributors collect in the ordinary course of business. Indeed, these market

participants are the *best* source of this information because they are the primary sources for the data. These requests, moreover, are untethered to smartphone usage by or pricing for the federal government. Consequently, as Apple would have it, any antitrust litigant should be permitted to drag the BLS into producing, at taxpayer expense, commercial market share and pricing information that is available through numerous other means. Courts reject this. *See Watts*, 482 F.3d at 509.

**Fifth,** Apple acknowledges that it has access to public documents detailing federal agencies' considerations regarding privacy, security, and performance, but insists that it needs "more detailed," "candid," and "unvarnished" information without offering any reason to believe the public information is actually undetailed, uncandid, or varnished. Apple insists that it requires the internal deliberations of the agencies, especially those in the Intelligence Community. *See supra* at 3-4. This burdensome, taxpayer-funded fishing expedition into information that is highly likely to be privileged would not be proportional to the needs of the case.

###### E. *Apple Seeks Privileged or Otherwise Protected Materials*

Much of the information Apple seeks is protected from disclosure pursuant to statute, regulation, or applicable privileges, and therefore is not discoverable. Fed. R. Civ. P. 26(b)(1) (limiting obtainable discovery to "any nonprivileged matter"). Apple seeks the agencies' reasons for acquiring or using particular smartphones (Request 3); recommendations about policies for acquiring or using smartphones (Request 4); and internal memoranda and written analyses of smartphone apps (Request 8), operating systems (Request 9), or browsers (Request 11). Apple also seeks documents showing agencies' internal "concerns" related to various legislation (Request 10). These materials would largely be protected from discovery by the deliberative process privilege, the law enforcement privilege, or the state secrets privilege.

The deliberative process privilege is an executive privilege that "shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.,* 592 U.S. 261, 267 (2021) (internal quotation marks omitted). Importantly, this privilege extends to procurement strategy. *See Hamrick v. Dep't of Navy*, 1992 WL 739887, at *2 (D.D.C. Aug. 28, 1992) ("the Navy has properly withheld information . . . includ[ing] personal opinions and ideas concerning procurement strategy"); *Prof. Rev. Org. of Fla., Inc. v. U.S. Dep't of Health & Human Servs.*, 607 F. Supp. 423, 427 (D.D.C. 1985) ("evaluations, opinions, and recommendations" of bids in a competitive procurement properly withheld under deliberate process privilege). The law enforcement privilege is a qualified privilege "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999) (listing factors for courts to consider in determining whether the law enforcement privilege applies). The state secrets privilege protects information, both classified and unclassified, that would harm national-security interests. *See, e.g.*, *FBI v. Fazaga,* 595 U.S. 344, 355, 358-59 (2022) ("examination of the evidence at issue, 'even by the judge alone, in chambers,' should not be required if the Government shows 'a reasonable danger that compulsion of the evidence' will expose information that 'should not be divulged' in 'the interest of national security.'") (citations omitted).

Apple's requests implicate each of these privileges. Apple has subpoenaed a number of agencies involved with national security and law enforcement, and it has asked for confidential information regarding these agencies' security considerations and procurement decisions regarding the devices used to carry out their law enforcement and national security functions. While Apple claims it is not seeking "classified or protected materials," the primary focus of Apple's requests is on the agencies' confidential deliberations and reasons for deciding which operating systems, browsers, and apps they will allow personnel to use in the course of employment. Such information is privileged and bound up in national security and law enforcement concerns.

Apple's requests implicate many other statutes that prohibit the agencies from disclosing certain confidential information. For example, the Confidential Information Protection and Statistical Efficiency Act of 2002 ("CIPSEA"), 44 U.S.C. § 3572, prevents an agency from disclosing data or information the agency acquired under a pledge of confidentiality for exclusively statistical purposes, absent informed consent of the entity providing the data. Apple specifically seeks disclosure of this protected information from the BLS (Requests 5 and 7). Likewise, Request 6 requests highly sensitive information regarding possible limitations on the United States' procurement of Chinese and other foreign manufacturers' telecommunications technology, which implicates the National Defense Authorization Act of 2019 (P.L. 115-232), §§ 889(a)(1)(A) and (f)(3), and requires analysis and determinations by a joint committee of DHS, War, OMB and State pursuant to the Foreign Investment and National Security Act of 2007 ("FINSA") (Pub. L. 110-49, 121 Stat. 246), the Foreign Investment Risk Review Modernization Act of 2018 ("FIRRMA"), 50 U.S.C. § 4565, and other statutes and regulations.

This thicket of privileges ultimately permits withholding of information. Where, as here, responsive documents could only be produced after the agencies navigate these privileges, burden and expense are enhanced. But Apple would still require the agencies to sift through swaths of protected materials to spot at best marginally relevant documents, imposing a burden that "outweighs the potential benefit." *In re Blue Cross Blue Shield Antitrust Litig.,* 2017 WL 2889679, at \*2 (N.D. Ala. July 6, 2017). "Requiring [a nonparty] to produce only non-privileged documents does not reduce the burden and expense. In order to identify responsive non-privileged documents, [an Agency] would still be required to gather, review, and separate non-privileged from privileged documents. This still requires a review of almost every document, even though only a relative few would be produced." *Id.* at \*2 n.3. Put differently, Apple demands extensive labor by these federal government agencies in order to compile what will likely result in very little (and irrelevant) production.

* * *

For the foregoing reasons, Apple's requests for production by 14 agencies that are otherwise uninvolved in this action should be denied, and the subpoenas quashed.


Respectfully submitted,

/s/   Jonathan H. Lasken              /s/   Liza M. Walsh
Jonathan H. Lasken                    Liza M. Walsh
Assistant Section Chief,              Douglas E. Arpert
                                      WALSH PIZZI O'REILLY FALANGA LLP

Anti-Monopoly and Collusion Enforcement
Section
United States Department of Justice,
Antitrust Division
450 Fifth Street, N.W.
Washington, DC 20530
Telephone: (202) 598-6517
Email: jonathan.lasken@usdoj.gov

JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ David H. Reichenberg*
David H. Reichenberg
Section Chief, Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-5271
Email: David.reichenberg@law.njoag.gov

*Attorney for Plaintiff State of New Jersey,*
*Arizona, California, Washington D.C.,*
*Connecticut, Indiana, Maine,*
*Massachusetts, Michigan, Minnesota,*
*Nevada, New Hampshire, New York, North*
*Dakota, Oklahoma, Oregon, Tennessee,*
*Vermont, Washington, and Wisconsin*

Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Email: lwalsh@walsh.law
Email: darpert@walsh.law

*/s/ Craig S. Primis*
Craig S. Primis, P.C.
Winn Allen, P.C.
Tracie Bryant, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
Email: winn.allen@kirkland.com
Email: tracie.bryant@kirkland.com

*/s/ Devora W. Allon*
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Email: devora.allon@kirkland.com
Email: alexia.brancato@kirkland.com

*Attorneys for Defendant Apple Inc.*

24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 16, 2026, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*/s/ Liza M. Walsh*
Liza M. Walsh