

**U.S. Department of Justice**

Antitrust Division

*Liberty Square Building*
*450 5th Street, N.W.*
*Washington, DC 20530*

May 13, 2026

<u>VIA ECF</u>
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

> Re:  *United States of America, et al. v. Apple Inc.,* **No. 2:24-cv-04055 (JXN-LDW)**
> **Joint Status Letter**

Dear Judge Wettre:

The United States and the Plaintiff States (collectively, "Plaintiffs") and Defendant Apple Inc. ("Apple" and collectively, "Parties") respectfully submit this Joint Status Letter, as directed by the Court's Amended Scheduling Order, ECF No. 408.

## I.     STATUS UPDATE SINCE MARCH 18 CASE MANAGEMENT CONFERENCE

Since the last Case Management Conference on March 18, 2026, the Parties have continued to work towards the discovery deadlines set in the Court's Order and Amended Scheduling Order dated January 30, 2026, ECF No. 368, and Amended Scheduling Order dated April 6, 2026, ECF No. 408.

**Plaintiffs' Document Production:** The United States completed its investigative file production on January 23, 2026, and produced an accompanying privilege log on March 9, 2026. Plaintiff States substantially completed their investigative file productions on June 13, 2025, and produced an accompanying privilege log on November 3, 2025 (with amendments thereafter). Plaintiffs' rolling productions have totaled over 116,000 documents. The Parties are continuing to meet and confer regarding outstanding questions regarding Plaintiffs' investigative file productions and privilege logs.

Plaintiff States have produced documents from the Antitrust Divisions of their respective State Attorney General Offices in response to Apple's First Set of Requests for Production, which was served on June 20, 2025, and productions are ongoing. Apple is continuing to meet and confer with the Plaintiff States regarding the scope of their document productions. The United States'

position is that it has completed its production for Apple's Request Nos. 1-10, 12-25, 33, and 35-36, though some document productions beyond the investigative file continue to require rolling productions as the United States receives new responsive materials (*e.g.,* new consumer complaints, foreign investigation materials, or nonparty communications).  Apple continues to demand production beyond the investigative file.  In the view of the United States, these Requests are beyond the scope of permissible discovery.  The United States will continue to discuss with Apple whether some limited additional production will satisfy Apple's demands.

In November and December 2025, Apple served subpoenas on 14 federal agencies and 91 state agencies, after Plaintiffs took the position that those agencies were not properly within the scope of "party" discovery in this matter.[1]  To date, approximately 50 state agencies have begun producing documents in response to Apple's subpoenas.  Apple continues to meet and confer with the subpoenaed state agencies regarding their subpoena responses and productions.  To date, none of the subpoenaed federal agencies has produced any documents.  The Parties have a dispute over whether the agencies are properly viewed as parties or nonparties for the purpose of discovery in this case and whether Apple has shown an appropriate basis to obtain discovery from them.  That dispute is presently before the Court and is ripe for decision.  *See* 4/16/2026 Joint Discovery Dispute Letter re Discovery from Federal Agencies.  ECF No. 422.

**Apple's Document Production:**  Apple has produced over 1,200,000 documents to date in this litigation, and is continuing its document production.  Apple substantially completed its production for 8 priority custodians on April 3, 2026.  Apple anticipates substantially completing its production for 15 additional custodians on May 15, 2026, and substantially completing its production of documents by June 15, 2026, for document requests served at least 60 days before that deadline for custodians designated prior to May 1, 2026, consistent with the Court's April 6 Order, ECF No. 408.

**Plaintiffs' Interrogatory Responses:**  On June 20, 2025, Apple served its First Set of Interrogatories on Plaintiffs.  Plaintiffs served their Objections and Responses on July 21, 2025.  Among other interrogatories, Interrogatory No. 3 requests that Plaintiffs "[i]dentify and describe in detail, by manufacturer and model, each and every device that has existed within the Alleged Markets during the relevant time period, as described in Paragraphs 165 through 175 of the Complaint, including the market share of each device in each Alleged Market."  Plaintiffs objected to Interrogatory No. 3 on the ground, among others, that it seeks premature disclosure of expert testimony and information protected by the work product doctrine.  Apple's position is that Interrogatory No. 3 seeks factual information regarding the devices and market shares identified in Plaintiffs' market-definition allegations in the Complaint.  The Parties have met and conferred regarding Interrogatory No. 3 but have not reached agreement on the scope of Plaintiffs' response.  The Parties are continuing to evaluate this issue.  Apple reserves its right to raise this or any other

---

[1] Apple served these subpoenas without prejudice to its position that all of these agencies are in fact properly subject to party discovery in this case, given that they are all instrumentalities of the United States or the Plaintiff States.  While reserving all rights, Apple served the subpoenas to facilitate timely productions.

issue with respect to Plaintiffs' interrogatory responses with the Court if needed at the appropriate time.

**Apple's Interrogatory Responses:**  On September 19, 2025, Plaintiffs served their First Set of Interrogatories on Apple.  Apple served its initial Responses and Objections on December 1, 2025, after the stay order in this case was lifted following the government shutdown.  Following the Parties' meet-and-confer efforts, Apple has since served five rounds of amended responses on January 26, 2026, February 17, 2026, February 27, 2026, March 10, 2026, and March 31, 2026— supplementing responses to five of Plaintiffs' interrogatories. Plaintiffs contend that Apple's response to Interrogatory No. 6, concerning its second affirmative defense, remains deficient despite two amendments.  Apple disagrees, maintaining that its response already provides more than what is required under the applicable rules; no further amendment is warranted.  On March 31, 2026, the Parties submitted a joint letter regarding this dispute, which remains pending.  ECF No. 399.  No other interrogatory responses are in dispute.  Apple's interrogatory responses continue to be subject to its objections, and it reserves the right to supplement them as discovery proceeds.

**Data Discovery:**  On March 3, 2026, the Parties informed the Court that they had reached agreement on a data discovery schedule under which:  (1) Apple would make rolling productions of data samples and available data dictionaries for Request for Production Nos. 26, 61, and 62 and would substantially complete that production by April 15, 2026; (2) Apple would provide a supplemental response to Interrogatory No. 3, which concerns Apple's databases and data sets, by March 31, 2026; (3) Apple would substantially complete its full data productions, on a rolling basis, six weeks after the Parties agree on the parameters for production of a database or data set; (4) the Parties anticipated reaching agreement on parameters for full productions by April 29, 2026, to facilitate substantial completion of all data productions by June 10, 2026; and (5) Apple would produce agreed upon raw data for agreed upon studies, reports, and analyses responsive to Request for Production No. 63 on a rolling basis with certain data being produced by April 15, 2026 and other data by June 10, 2026.  ECF No. 383.

Since January, Apple has provided Plaintiffs with 47 data samples from 23 data sources totaling more than 60 million data points.  Apple substantially completed its production of data samples on April 15, 2026, but it continued producing additional, responsive data samples through May 6, 2026.  Apple served its supplemental response to Interrogatory No. 3 on March 31, 2026. Apple made its first Apple Rule 30(b)(6) witness available on April 29–30, 2026, for a two-day deposition regarding several data sources for 11 total hours (with 7 hours of testimony taken by Government Plaintiffs and another 4 hours taken by MDL Plaintiffs).[2]  A second Apple 30(b)(6) witness will have sat for a second deposition (likely of similar length) on May 14–15, 2026, regarding other data sources.

---

[2] Apple's witness directed Plaintiffs to Apple's business personnel in corporate finance and other business groups about the data maintained in many database fields.  Plaintiffs anticipate that they may have additional questions about the data Apple produces and understand that Apple will cooperate in responding to reasonable inquiries.

While the Parties had anticipated reaching agreement by now, the Parties are discussing and negotiating parameters for full productions from each identified data source based on the data samples, the supplemental response, and the deposition completed to date. The Parties have made progress on final production parameters for some data sources and anticipate future progress regarding others. Consistent with their prior agreement on the timing for Apple's rolling data productions, the Parties jointly request permission to update the substantial completion deadline for data discovery productions, currently set for June 10, 2026, to be six weeks after the Parties agree on production parameters for each database or data set. Apple will make rolling productions as the Parties reach agreement on additional data sources. The Parties anticipate reaching agreement on parameters for full productions by June 5, 2026, to facilitate substantial completion of all data productions by July 17, 2026.

**Depositions of Apple Witnesses:** Plaintiffs noticed eight Rule 30(b)(1) depositions of Apple witnesses, and the Parties have scheduled three of these eight depositions, which will take place on May 29, June 16, and June 25. Apple has offered dates for the remaining five witnesses in July 2026. Disputes concerning the scheduling of Apple witness depositions are discussed below.

**Nonparty Discovery:** Plaintiffs and Apple have collectively served subpoenas on 60 private nonparties in this action, one of which the Parties have mutually withdrawn.[3] Plaintiffs were the first to serve 8 of those nonparties.[4] Apple was the first to serve 52 of those nonparties in this action, though 17 of those nonparties were previously served by the MDL Plaintiffs in the MDL.[5] The Parties have received document productions from 32 nonparties and expect to receive document productions from the remaining nonparties in the coming months. The Parties expect to seek the Court's assistance in resolving disputes with one or more nonparties, though negotiations are still ongoing. Plaintiffs expect to serve few, if any, additional subpoenas. Apple expects to issue additional subpoenas, though the number will depend on additional developments in discovery.

## II.    NEW DISCOVERY ISSUES

The Parties seek the Court's guidance on the following issues.

---

[3] This number includes follow-on subpoenas that Apple recently served on seven nonparties after MDL Plaintiffs subpoenaed those nonparties. Plaintiffs expect to serve follow-on subpoenas on those seven nonparties as well.

[4] This number does not include the Civil Investigative Demands that Plaintiffs served on numerous of these third parties in the investigation culminating in this litigation.

[5] In addition, MDL Plaintiffs have served subpoenas on nonparties that neither Apple nor Plaintiffs have subpoenaed.

A.        ***Limits on Number of Fact Witness Depositions***

During the Deposition Protocol Dispute Conference on April 27, 2026 in *In re Apple Inc. Smartphone Antitrust Litigation*, 2:24-md-03113-JXN-LDW, ("MDL"), the Court indicated that the number of depositions should be capped in both this action and the MDL, and that there should be "parity between plaintiffs' side and defense side so that it's fair to everyone." *See* Tr. of Apr. 27, 2026 Hearing at 32:7–33:15. The Court directed the Parties to negotiate deposition limits.[6]

Plaintiffs' Position

The Parties have fundamentally different views about how deposition limits should be imposed. Plaintiffs propose a single cap of 65 fact witness depositions per side with no restrictions on allocation between party and nonparty depositions. Apple proposes not only a much larger number of fact witness depositions than are necessary for this case—100 per side—but also to strictly divide those numbers between 30-party and 70-nonparty depositions. Plaintiffs submit that a reasonable overall deposition cap of 65 depositions per side makes the most sense in this case, and that each Party should determine how to allocate these depositions among the various party and nonparty witnesses. Plaintiffs' new proposal took into account Apple's concerns, and is a reasonable compromise from Plaintiffs' prior position of 50 depositions per side, *see* ECF No. 254-2 at 14, proportional to the needs of the case, and consistent with other case management orders.

Plaintiffs' proposal will preserve the ability of both sides to make deposition decisions based on their specific needs and allow the Parties to maintain flexibility in allocating these depositions as fact discovery develops. A deposition cap of 65 per side would require the parties to be judicious in noticing both party and nonparty depositions and thus reduce the burden on nonparties and the Court. At this time, Plaintiffs anticipate taking approximately 30 depositions of Apple witnesses, though that number may change if fact discovery reveals the existence of other key Apple witnesses including in upcoming document productions by Apple. A 65-deposition limit would not over-burden Apple with party depositions, as Plaintiffs would be required to use discretion in dividing their depositions between party and nonparty witnesses. Apple's concerns that Plaintiffs may direct the entirety of Plaintiffs' deposition allotment at Apple are implausible— Plaintiffs will still need to examine competitors, customers, and other nonparties to prepare for trial. In contrast, Apple's proposal prejudices Plaintiffs, because it would restrict Plaintiffs from having the flexibility to determine how best to develop their case. It is even more restrictive here, where different witnesses likely will have unique and valuable testimony regarding market

---

[6] The Parties agree that "[t]he following depositions do not count against any deposition caps imposed in this case: (a) depositions taken pursuant to Rule 30(b)(6), regardless of the number of witnesses produced to testify on matters for examination in those depositions; (b) depositions of the parties' designated expert witnesses; (c) depositions taken in response to Civil Investigative Demands; and (d) depositions taken for the sole purpose of establishing the location, authenticity, or admissibility of documents produced by any Party or depositions of nonparty, provided that such depositions must be designated at the time that they are noticed as being taken for the sole purpose of establishing the location, authenticity, or admissibility of documents." ECF No. 254-2 at 12.

definition, the distinct business areas at issue in the case, and Apple's asserted pro-competitive justifications. Additionally, Apple executives have departed the company or moved to new roles during the investigation and since this case was filed. Apple's proposed deposition limits are disproportionate, allowing depositions on as many as 140 nonparties while capping Apple witnesses to only 30. This would pose a significant burden not only on those nonparty witnesses but also on the Court in managing discovery motions, stipulations, and confidentiality concerns.

Plaintiffs' proposed compromise of 65 depositions per side will require both parties to narrow their number of proposed deponents from the total entities listed on Plaintiffs' initial disclosures. As Plaintiffs have explained previously, to meet their Rule 26(a) obligations and consistent with their general practice, Plaintiffs' initial disclosures appropriately identified 111 companies relevant to their prefiling investigation. *See* ECF No. 254 at 5. Because only a fraction of these companies will be trial witnesses, Plaintiffs amended their initial disclosures to identify 47 of these entities (excluding Apple) which are likely to "have the most relevant information," making it easier for Apple to focus its discovery and prepare its defense. Apple's claim that Plaintiffs listed nonparties on their initial disclosures whom Plaintiffs do not intend to call at trial misapprehends the purpose of Rule 26(a). Initial disclosures require only that Plaintiffs identify individuals and entities "likely to have discoverable information," Fed. R. Civ. P. 26(a); they are not a pretrial witness list. Nonetheless, courts routinely limit the number of depositions in a case to fewer than the number of individuals who are likely to have discoverable information.

Plaintiffs' 65-deposition proposal is more than sufficient for Apple to depose not only all of these 47 nonparty entities, but also an additional 18 parties or nonparties. Although Apple is correct that some of Plaintiffs' identified entities list multiple affiliated individuals, Apple will have the option of taking a corporate deposition of each entity and negotiating which individuals are the most appropriate deponent. Apple currently has 59 pending subpoenas to nonparty entities in this action (not including state or federal agencies). Plaintiffs will have the same number when they serve the seven nonparties recently served by Apple. Plaintiffs expect to take approximately 30 Party depositions. Neither Party will be able to depose all the entities on Plaintiffs' initial disclosure list, but that is not an unreasonable constraint. Both Parties should be expected to reduce their number of depositions to promote efficiency and reduce nonparty burden. Plaintiffs' proposed limits best achieve this end.

Deposition limits like the ones Plaintiffs propose—capping the total number of depositions per side while allowing the parties to determine how to allocate them—are routine in antitrust cases. *See, e.g.*, *United States v. AON plc*, No. 1:21-cv-01633 (D.D.C. July 20, 2021), Dkt. No. 52 at ¶ 15 (allowing 30 depositions collectively for each side); *United States v. Sabre Corp.*, No. 1:19-cv-01548 (D. Del. Sept. 26, 2019), Dkt. No. 31 ¶ 13 ("The United States is limited to 40 depositions of fact witnesses, and the Defendants collectively are limited to 40 depositions of fact witnesses."); Scheduling and Case Management Order at ¶ 14(H), *United States v. Aetna Inc.*, No. 1:16-1494 (D.D.C. Aug. 12, 2016) (providing that "Plaintiffs may take 25 depositions of fact witnesses and the Defendants may take 25 depositions of fact witnesses, plus each side may take depositions of any persons identified on the preliminary or final trial witness lists").

Like this case, the courts in *Agri Stats* and *Google Search* imposed a single deposition cap in enforcement actions against one defendant alleged to have engaged in anticompetitive conduct. The *Agri Stats* court limited depositions to 50 per side. *See United States v. Agri Stats*, No. 23-cv-

6

3009 (D. Minn. Sept. 28, 2023), Dkt. No. 124. Although Agri Stats was a much smaller company, with approximately 70 employees, it was still capable of handling nearly 20 party depositions. The *Google Search* court allowed 80 fact depositions per side, even though that case involved 116 Google custodians and approximately 130 nonparty subpoenas. *See United States v. Google*, No. 1:20-cv-03010 (D.D.C. Dec. 21, 2020), Dkt. No. 108 at 2, Dkt. No. 120 at 3, Dkt. No. 352 at 4. By comparison, 65 fact depositions per side are proportional to the needs of the case and more than adequate here, where the Parties have agreed on only 53 Apple custodians and served only 60 subpoenas on non-government nonparties. A single deposition cap is also consistent with the approach taken by Rule 30 of the Federal Rules of Civil Procedure, which does not delineate between party and nonparty depositions. Thus, a 65-deposition limit per side is more than reasonable under the circumstances of this case and consistent with the federal rules as well as limits in similar complex antitrust cases.

The Court should reject Apple's arguments. First, Apple's effort to limit depositions of Apple witnesses on the ground that Plaintiffs took 15 Apple witness depositions during the investigation in 2021 and 2022, has no merit. Litigation depositions serve a different function: they allow a government agency investigating potential unlawful conduct to understand issues under investigation and identify law violations and therefore also cover areas that ultimately are not part of the case brought. Litigation depositions, in contrast, relate only to the case that is ultimately brought and seek to crystalize and preserve testimony for trial. During a pre-complaint investigation, the objective is not to prove a case, but to make informed decisions about whether to bring a case. *See United States v. GAF Corp.*, 596 F.2d 10, 14 (2d Cir. 1979). Apple has already stipulated that CID depositions do not count against any total deposition limits, ECF No. 254-2 at 12, and should Apple not be able to use such depositions to constrain Plaintiffs' discovery. *See SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("Here, even though the [agency] had already conducted a pre-filing investigation, . . . there is no authority which suggests that it is appropriate to limit the [agency]'s right to take discovery based upon the extent of its previous investigation into the facts underlying its case."). And while Plaintiffs have no intention of directing all of their depositions only at Apple, it is unpersuasive that a party with the size and vast financial resources as Apple cannot handle a few more depositions if Plaintiffs deem it necessary to bring the discovery record current and prove their case.

Second, Apple's arguments reveal its real reason for seeking two separate caps. Since Apple has no need for any "party" depositions of its own employees, Apple wants to use a separate 30 deposition cap on Parties to seek broad discovery across the federal government. The Court should reject Apple's attempt to relitigate agency discovery issues in the context of a deposition protocol. As explained in prior briefing, government agencies that did not regulate smartphones, did not participate in the investigation, and did not prosecute this litigation are not properly considered "parties" for purposes of discovery. *See* ECF No. 422. Nor does Apple have any basis to say that this broad group of agencies will carry out Plaintiffs' enforcement objectives or offer testimony relevant to Plaintiffs' conduct. Apple's position also assumes that the law enforcement agencies that brought suit—the Antitrust Division of the U.S. Department of Justice and State antitrust enforcers—are fact witnesses to Apple's alleged monopolization. They are not. Prosecuting agencies and their employees are not percipient witnesses and generally are not proper for examination by deposition. *See SEC v. Princeton Alternative Funding, LLC*, 2025 WL 50377, at *6-7 & n.8 (D.N.J. Jan. 8, 2025) (prohibiting deposition of SEC attorneys and citing a "wealth

7

of case law" refusing to permit such depositions); *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) ("[T]he Court finds that the proposed Rule 30(b)(6) deposition constitutes an impermissible attempt by the defendant to inquire into the mental processes and strategies of the SEC."). The enforcement agencies' only role is to collect relevant evidence and prepare the enforcement action for trial under work product and other privileges. *See SEC v. Gandy*, 2023 WL 211005, at *3 (S.D. Tex. Jan. 17, 2023).

Third, Apple improperly seeks to benefit itself and unnecessarily burden nonparties and Plaintiffs by imposing additional conditions that would increase the number of depositions far beyond its already excessive, proposed cap of 100 depositions per side. In briefing on the case management order over a year ago, Plaintiffs had proposed that "each side will have the right to depose any witness on the opposing side's preliminary or final witness list, if that witness has not already been deposed in this litigation, even if the limitation on depositions is exceeded or if fact discovery has closed." ECF No. 254-2. The Court did not address that issue at the time.[7] Apple now wants to condition its deposition cap on Plaintiffs' agreement not to call at trial any nonparties who did not appear in Plaintiffs' initial disclosures. Apple's one-sided position is improper. Should the Court adopt Apple's proposal, it should apply to both sides, allowing Plaintiffs to take the deposition of any Apple witness or nonparty who Apple seeks to call at trial but was not on Apple's initial disclosures. This is particularly important because Apple did not identify *any* nonparties that may support Apple's defenses in its Amended Initial Disclosures, served April 4, 2025 (which identified only 13 Apple employees and the Plaintiffs).

Apple's Position:

Apple proposes that, subject to certain narrow conditions outlined below, the Court (1) cap party depositions at 30; and (2) cap third-party depositions at 70.

**Distinct Caps for Party and Third-Party Depositions Are Necessary.**

Distinct caps for party and third-party depositions are essential in this case to enable each party to fairly develop its factual record without unduly burdening either side. The volume of depositions in this case is driven primarily by the large number of third parties Plaintiffs have identified as relevant—not by the needs of party discovery. A single combined cap would impose an unreasonable burden on Apple: under Plaintiffs' requested cap of 65 total depositions, Plaintiffs could choose to take 65 depositions of Apple witnesses. And if Apple wanted to depose even half of the third parties on Plaintiffs' initial disclosures, it would be left with no ability to take *any* Plaintiff depositions at all. That is inequitable and makes no sense. Nor does increasing the overall number of depositions solve the problem, as it would simply allow Plaintiffs to subject Apple to an unreasonably burdensome number of depositions not justified by the needs of party discovery.

Notably, none of the cases Plaintiffs cite supports their position here. Each involved distinct factual circumstances and allegations, and each employed a single deposition cap that was considerably lower than what Plaintiffs seek in this case. *See, e.g.*, Scheduling & Case Mgmt. Order ¶ 14(H), *United States v. Aetna Inc.*, No. 16-1494 (D.D.C. Aug. 12, 2016), ECF No. 55

---

[7] Plaintiffs stand by this proposal and encourage the Court to set a schedule for the exchange of preliminary and final witness lists at an early practicable time.

(25 depositions per side); Scheduling & Case Mgmt. Order ¶ 15, *United States v. AON plc*, No. 21-01633 (D.D.C. July 20, 2021), ECF No. 52 (30 depositions per side); Scheduling Order ¶ 13, *United States v. Sabre Corp.*, No. 19-01548 (D. Del. Sept. 26, 2019), ECF No. 31 (40 depositions per side); Pretrial Scheduling Order at 1, *United States v. Agri Stats*, No. 23-3009 (D. Minn. Sept. 28, 2023), ECF No. 124 (50 depositions per side). Moreover, nearly all of the cases Plaintiffs cite involved multiple defendants who shared the burden of party depositions among themselves. *See, e.g.*, *Aetna*, No. 16-1494 (2 defendants); *AON*, No. 21-01633 (2 defendants); *Sabre,* No. 19-01548 (4 defendants).

Separate caps are particularly critical here, where Apple is the sole defendant and Plaintiffs have identified over 100 third parties as relevant to their claims. Without separate caps, nothing would prevent Plaintiffs from directing the entirety of their deposition allotment at Apple, leaving Apple unable to predict or manage the burden of party discovery. Separate caps provide the necessary guardrails: they ensure Apple can plan for a defined number of depositions of its own witnesses rather than leave the scope of that burden entirely to Plaintiffs' discretion, while simultaneously protecting Apple's right to take the party and third-party depositions it is entitled to. Indeed, at the recent Case Management Conference, the Court asked Plaintiffs' counsel to address "how many depositions in total are likely" from Plaintiffs' perspective and to "break[] that down into party witnesses and third parties by subpoena." 3/18/2026 CMC Tr. at 10:10–15.

**Apple's Proposed Cap of 30 Party Depositions Is More Than Reasonable.**

Plaintiffs need no more than 30 party depositions in this case, as Plaintiffs acknowledge above and represented to the Court at the last status conference. The United States already took 15 depositions of Apple witnesses—including depositions of corporate representatives—during its pre-suit investigation. *See* ECF No. 254-2 at 9. Apple's proposal would allow Plaintiffs to take 30 additional depositions, which would cover all 23 of the witnesses whom Plaintiffs have identified as being "priority custodians," plus 7 more witnesses. Indeed, Plaintiffs themselves have already told the Court that 30 depositions would be enough. At the March 2026 status conference, Plaintiffs' counsel confirmed that Plaintiffs would need "no more than 30 depositions of Apple [employees]." 3/18/2026 CMC Tr. at 11:11–24. Plaintiffs have not cited any changed circumstances or otherwise explained why more than 30 party depositions is necessary. Indeed, even in their current position, Plaintiffs acknowledge they "anticipate taking approximately 30 depositions of Apple witnesses"—precisely the cap Apple proposes. Their suggestion that discovery may reveal the existence of other key Apple witnesses is both speculative and unlikely, given that Plaintiffs have been investigating or litigating this case for over six years and have already obtained more than three million Apple documents. Plaintiffs' argument that Apple's "size and vast financial resources" mean it should be able to absorb additional depositions is not a proper basis for expanding discovery beyond what is proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

The 30-deposition cap also reflects a compromise on Apple's part. Apple previously proposed a limit of 20 party depositions in the litigation—already double the Federal Rules' default of 10 per side. *See* Fed. R. Civ. P. 30(a)(2)(A)(i). Apple has now agreed to move to 30 in a good-faith effort to reach agreement and avoid burdening the Court with a further dispute.

In light of the Parties' pending dispute over the scope of agency discovery (and in particular, whether federal and state agencies constitute parties or non-parties to this action), Apple does need to be clear about one issue: Apple believes that any depositions of Plaintiffs—including depositions of any federal or state agencies, persons employed by Plaintiffs, or any person acting on Plaintiffs' behalf—count toward the 30 party-deposition cap, rather than the third-party deposition cap discussed below. Plaintiffs' agencies, representatives, and employees act at Plaintiffs' direction, carry out Plaintiffs' enforcement objectives, and will testify about Plaintiffs' own conduct and decisions. They are, in every meaningful sense, witnesses on behalf of parties— and counting their depositions against the third-party cap would consume slots intended for genuinely unaffiliated non-parties. Even setting aside the Parties' broader dispute over whether Plaintiffs' agencies are parties or third parties for discovery purposes, Apple's proposed caps of 30 party and 70 non-party depositions are expressly premised on such depositions counting toward the 30, not the 70. This proposal is more than fair: Plaintiffs will take 30 depositions of a single party—Apple—whereas Apple will have only 30 depositions to cover all 21 Plaintiffs and their agencies and employees combined.

Apple has a clear right to depose the Plaintiffs who chose to bring this action, and none of Plaintiffs' cited authority suggests otherwise. The cases on which Plaintiffs rely are inapposite: each involved attempts to depose SEC attorneys about their litigation strategy and mental processes in actions brought by a single agency. *See SEC v. Princeton Alternative Funding, LLC*, 2025 WL 50377 (D.N.J. Jan. 8, 2025); *SEC v. Morelli*, 143 F.R.D. 42 (S.D.N.Y. 1992); *SEC v. Gandy*, 2023 WL 211005 (S.D. Tex. Jan. 17, 2023). Having brought this case, Plaintiffs are subject to discovery obligations like any other party—they cannot skirt those obligations by claiming that they are law enforcement agencies. Plaintiffs brought this action on behalf of the United States and 20 states, and Apple is entitled to depose Plaintiffs on, among other things: their own evaluation and analysis of competition in the alleged markets; their conduct as purchasers and consumers in the alleged markets; and their assessments of the privacy, safety, and security of smartphones, smartphone apps, and app marketplaces. These are factual topics squarely relevant to Apple's defenses, not inquiries into prosecutorial strategy.

Accordingly, Apple respectfully requests that the Court adopt a cap of 30 party depositions, with depositions of Plaintiffs and their agencies counted toward the party-deposition cap.

**Apple's Proposed Cap of 70 Third-Party Depositions Is Similarly Reasonable Given Plaintiffs' Initial Disclosures.**

Apple requests that the Court order a cap of 70 third-party depositions in order to cover the most likely trial witnesses Plaintiffs identified, along with a small number of additional relevant third parties. Plaintiffs' initial disclosures identified 111 third parties and asterisked 48 as those "likely to have the most relevant information." Pls.' 2d Suppl. Initial Disclosures at A-1. In certain cases, Plaintiffs identified multiple individuals affiliated with such entities as having relevant information, such that the total number of "most relevant" entities and individuals is 64. Apple's 70-deposition cap encompasses each of those 64 entities and individuals while providing room to reach third parties Apple has independently identified as relevant. Plaintiffs' characterization of Apple's proposal as "disproportionate" because it would permit a combined 140 third-party depositions is incorrect: the 70 third-party deposition cap would apply equally to each side, and it is Plaintiffs, not Apple, who drove that number by identifying more than 100 third parties as

10

relevant—including the 64 entities and individuals Plaintiffs flagged as likely having the most relevant information.

The 70-deposition cap is also a substantial good-faith reduction from Apple's prior proposal of 111 third-party depositions and is well within the range Plaintiffs' counsel told the Court would be reasonable. *See* 3/18/2026 CMC Tr. at 13:9–13.

This third-party deposition cap is conditioned on Plaintiffs' agreement not to call at trial (or depose or otherwise seek testimony from) any third parties not currently identified in Plaintiffs' initial disclosures as likely to have the most relevant information. If Plaintiffs will not agree to this condition, Apple must maintain its prior proposal of 111 third-party depositions to preserve its right to depose any witnesses Plaintiffs may call at trial. Apple also reserves the right to seek additional depositions if Plaintiffs expand their initial disclosures or subpoena parties not currently subject to subpoena in either this action or the coordinated MDL. Further, as discussed above, Apple's proposed caps are expressly premised on depositions of Plaintiffs and their agencies and employees counting toward the 30 party-deposition cap, and not the 70 third-party cap. If the Court were to classify those depositions as third-party depositions, Apple's proposed third-party cap would need to be adjusted accordingly.

Contrary to Plaintiffs' suggestion, it is their failure to reasonably narrow their initial disclosures that threatens to unnecessarily burden third parties, and the conditions Apple has outlined are meant to reduce that burden and prevent unnecessary depositions. Moreover, Plaintiffs' claim regarding the briefing on the case management order is wrong. Apple objected only to prematurely exchanging witness lists. Apple did not object—in fact it specifically requested—that "[i]f any party includes on their pretrial witness list a third party from whom discovery has not previously been taken, then the opposing party shall be permitted to serve document and deposition subpoenas on that third party and obtain that discovery prior to trial." ECF No. 254-2 at 8.

Apple's position is not one-sided, nor is it unfair to Plaintiffs in any way. Apple simply requests a deposition cap and procedure that ensures that both parties have an adequate opportunity to depose likely trial witnesses and those with important information, while providing certainty and preventing gamesmanship. Plaintiffs should not be permitted to inflate the number of depositions in this case by listing third parties on their initial disclosures if they do not intend to actually call those witnesses at trial but instead intend to use those limits just to subject more Apple employees to deposition. Separate caps for party and third-party discovery are therefore essential in this case.

Subject to these conditions, Apple respectfully requests that the Court adopt a cap of 70 third-party depositions.

**B.    *Process for Scheduling Depositions of Apple Witnesses***

Plaintiffs' Position:

The current deposition scheduling process, which has led Apple to delay depositions until nearly four months after Plaintiffs' notice of intent to depose, creates needless delays and undermines the Court's discovery schedule. To satisfy the discovery schedule, Plaintiffs advised

the Court that they intended to take depositions of priority custodians beginning one month after Apple completed their productions in early April. *See* Tr. of Mar. 18, 2026 Hearing at 10:17-25 ("Apple will complete production or substantially complete production for eight custodians by April 1st….We're happy to [give] 30 days' notice of any deposition after those productions are complete….We're going to take rolling depositions."), 14:8-9 ("We anticipate noticing the depositions of people as they're completed[.]").  But Apple delayed even providing deposition dates for weeks and is unwilling to make many priority custodians available until mid-to-late July. With such delays, the Parties will be hamstrung in timely completing fact discovery, considering that Apple proposes 100 depositions per side at a rate of two depositions per week—extending depositions several months beyond discovery cutoff. *See id.* at 25:18-19 (Ms. Allon: "Our proposal gives us time.  By my count, i[t] would still put us at about two depositions a week.").

Plaintiffs thus seek the Court's assistance in requiring Apple to (1) provide a range of their witnesses' availability within 10 days of receiving a notice of intent to depose a party witness, and (2) barring exceptional circumstances, propose deposition dates within a reasonable window, approximately 30 days from receiving Plaintiffs' notice of intent to depose.  Plaintiffs' request is consistent with the "reasonable notice" requirement of Rule 30(b)(1) of the Federal Rules of Civil Procedure. *See, e.g., Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18 (D.D.C. 2005) (29 days was reasonable time to comply with subpoena); *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 9481235, at *2 (D.N.J. Nov. 1, 2017) (14 days' notice reasonable); *Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 275 (C.D. Cal. 2008) (same); *Hallum v. Four Corners OB-GYN*, 2021 WL 2894244, at *2 (D. Colo. July 9, 2021) (same); *Kendall v. Doe*, 2023 WL 2482680, at *1 (D. Mass. Mar. 13, 2023) (10 days' notice reasonable).

As required by the Case Management Order, Plaintiffs sent a letter to Apple stating Plaintiffs' intent to take the depositions of eight witnesses on April 7, 2026.[8] *See* ECF No. 270 at 3 (adopting agreed-upon protocols including ECF No. 254-2 at 13).  That letter asked Apple to make these witnesses available for depositions within a 30-day window, between May 11 and June 12, 2026, and to provide Plaintiffs with each witness's availability within 10 days.  Nine days later, on April 16, 2026, Apple's counsel responded that they were "working on availability and will circle back."  Plaintiffs did not move forward with deposition notices at that time, extending Apple the courtesy of a few additional days in anticipation that Apple would promptly provide deposition dates within the requested timeframe.  Having not heard back, however, Plaintiffs informed the Court at the MDL discovery conference on April 27, 2026, that they "are prepared to move forward with actual notices for these depositions."  Tr. of Apr. 27, 2026 Hearing at 12:18-20.  Because Apple did not object, provide dates, or offer to meet and confer, Plaintiffs served deposition notices later that day.  Two days later, on April 29, 2026, Apple provided dates for only seven of eight witnesses, and only one was within the requested 30-day window.  The remainder of Apple's proposed dates were outside the requested 30-day window, and some extended to the end of July, nearly *four months* after Plaintiffs' April 7, 2026 letter.  Apple also responded with only one proposed deposition date for each deponent, instead of a range of dates as Plaintiffs requested. Apple did not identify any conflict for a particular witness, including the Worldwide Developer Conference which Apple cites for the first time in this joint letter, as a basis for requesting a later deposition date.

---

[8] Plaintiffs initially identified ten deponents (including these eight) to Apple on January 21, 2026.

Apple should not be permitted to ignore Plaintiffs' request for deposition dates for more than three weeks, let alone propose to schedule depositions on such an extended time frame. Apple has yet to explain any reason why it could not identify dates for these depositions within 10 days of Plaintiffs' notice of intent to depose. Apple claims that Plaintiffs' request for an orderly process would somehow displace the meet-and-confer standards for scheduling depositions. To the contrary, Plaintiffs' proposal would aid in efficient and cooperative deposition scheduling. Courts commonly adopt similar proposals. *See, e.g., United States v. UnitedHealth Grp. Inc.*, 1:22-cv-0481 (CJN) (D.D.C.), ECF 42, at 9 ("Parties will make a good faith effort to make witnesses available for depositions upon 10 days' notice."); *United States v. Booz Allen Hamilton Holding Corp.*, 1:22-cv-01603 (CCB), ECF 99 ("Parties will make reasonable efforts to make Party witnesses available for deposition upon 5 business days' notice.").

To be clear, while what constitutes "reasonable notice" is case-specific, Apple fails to cite *any* case where a court considered a delay of nearly 4 months due to a witness's work commitments or challenges in coordinating calendars to be reasonable. While Plaintiffs are willing to discuss exceptional circumstances that may require delay for an individual witness (for example, unavailability due to extended medical leave), Apple's efforts to delay depositions of seven witnesses without any explanation as to why those depositions cannot be taken within the requested thirty-day window are unreasonable. Moreover, Apple seeks to flip its burden by requiring Plaintiffs to demonstrate prejudice before scheduling a deposition. But that is not how the Federal Rules work. Rule 30(a)(1) only requires a party to give "reasonable notice"—not demonstrate prejudice—before scheduling a deposition, and Apple has not cited any case suggesting otherwise.

In an effort at compromise, Plaintiffs accepted the deposition dates for three of these witnesses—one within the requested window (May 29) and two within a few weeks after the window (June 16 and June 25). Plaintiffs rejected Apple's proposals for later depositions (July 9, two on July 22, and July 28), and on May 7, 2026, Apple belatedly proposed another delayed date (July 15) for the eighth witness. Plaintiffs are willing to consider alternative dates within June, if Apple proposes them. However, in the absence of such a proposal or a request to the Court for relief, the deposition notices—which Plaintiffs served after Apple failed to timely respond to their letter of intent to take these depositions—remain operative on the dates of June 4, 10, 11, and 15.[9] For future depositions, Plaintiffs request that the Court order Apple to adhere to a deposition scheduling process whereby Apple provides, within 10 days of receiving a notice of intent to depose, a range of dates when each witness is available to testify within a reasonable window of approximately 30 days from receiving Plaintiffs' notice, absent exceptional circumstances.

---

[9] As Plaintiffs originally noticed the eighth Apple witness for a date now taken by another Apple witness, Plaintiffs will accept an alternative June date for the eighth witness.

Apple's Position:

The Court should reject Plaintiffs' request for an order imposing rigid deadlines on deposition scheduling and should instead direct the Parties to continue working cooperatively to schedule depositions at times that accommodate witness availability.

Apple has acted diligently and in good faith throughout this process. Plaintiffs' claim that Apple delayed depositions for "four months" is misleading. Upon receiving Plaintiffs' April 7, 2026 letter identifying eight witnesses that Plaintiffs wished to depose, Apple immediately began coordinating witness availability, and so informed Plaintiffs just the following week. While that process was underway—and before Apple had an opportunity to follow up with witnesses' availability—Plaintiffs unilaterally noticed all eight witnesses for the first two weeks of June without consulting Apple or the witnesses regarding their availability. Apple nonetheless promptly provided alternative dates in May, June, and July 2026 when all eight witnesses were available to be deposed. Plaintiffs accepted Apple's proposed dates for three of those witnesses. For the remaining five, Apple's proposed dates take into account the availability of the witnesses and their longstanding professional and personal commitments—including Apple's annual Worldwide Developer Conference in the second week of June, a major annual public event that involves several of the identified witnesses and cannot be rescheduled. Each of Apple's offered dates falls well within the discovery period, which does not close until January 2027.

Plaintiffs have demonstrated no prejudice from Apple's proposed schedule. They have never indicated that any of Apple's proposed dates do not work for Plaintiffs' counsel. They do not contend that Apple's offered dates conflict with any commitment on their calendars or that they are otherwise unavailable on those dates. Nor do they identify any prejudice from a schedule that places these depositions more than six months before the discovery cutoff. Plaintiffs' sole objection is that they want the depositions sooner—but one side's preference for an earlier schedule is not a basis to override witness availability or to unilaterally dictate the timetable. Plaintiffs contend that Apple "flip[s] [the] burden by requiring Plaintiffs to demonstrate prejudice before scheduling a deposition" and that Rule 30(b)(1) requires only "reasonable notice." Apple agrees that reasonable notice is the governing standard—and that is precisely the point. Reasonableness is inherently flexible: it must account for witness availability and the practical realities of coordinating schedules among multiple witnesses, including senior executives, and several groups of counsel across two parallel litigation matters. It does not mandate that depositions occur within any fixed window of the noticing party's choosing. The "reasonable notice" cases Plaintiffs cite confirm this principle—each involved a fact intensive analysis, focused on the individual circumstances of the case—not a blanket scheduling regime. *See, e.g.*, *Engage Healthcare Comm'ns,* 2017 WL 9481235, at *2 ("what constitutes reasonable notice often turns on the particular circumstances of the case"); *Kendall*, 2023 WL 2482680, at *1 ("determination of the reasonableness of notice for a deposition is case-specific and fact-intensive"). Absent any showing of prejudice, the convenience and availability of the witness should govern scheduling, as courts routinely recognize.

Plaintiffs' own authorities confirm that flexibility—not rigidity—is the appropriate standard for deposition scheduling. The cases Plaintiffs cite do not support imposing the rigid 10-day-response and 30-day-scheduling rule they now ask this Court to impose. Rather, they expressly call for a "good faith effort" or "reasonable efforts"—language that presupposes

14

flexibility and coordination, not mechanical deadlines. *See, e.g.*, *UnitedHealth Grp.*, 1:22-cv-0481, ECF 42, at 9 ("Parties will make **a good faith effort** to make witnesses available for depositions upon 10 days' notice." (emphasis added)); *Booz Allen Hamilton Holding Corp.*, 1:22-cv-01603, ECF 99 ("Parties will make **reasonable efforts** to make Party witnesses available for deposition upon 5 business days' notice." (emphasis added)). And for good reason: a rigid rule like that proposed by Plaintiffs would displace the cooperative meet-and-confer standard that governs deposition scheduling in complex litigations, including in cases Plaintiffs often rely on as analogous. *See, e.g.*, Case Mgmt. Order at 8, *United States v. Live Nation Ent., Inc.*, No. 24-03973 (S.D.N.Y. Oct. 15, 2024), ECF No. 303 (parties "shall meet and confer in good faith concerning the date, location, and manner of the Deposition"); Case Mgmt. Order at 11, *United States v. Google LLC*, No. 20-03010 (D.D.C. Feb. 3, 2021), ECF No. 108-1 (parties will "use their best efforts to make witnesses available for depositions at a mutually agreeable time").

The proposed regime is also unworkable as a practical matter, particularly in a case of this magnitude. A blanket 10-day deadline to provide availability, paired with a 30-day outer limit for the depositions themselves, ignores the realities of simultaneously coordinating calendars among large groups of witnesses (including senior executives) and counsel across two complex litigation matters. There has been no breakdown in the meet-and-confer process that would justify imposing such deadlines. To the contrary, all eight depositions now have confirmed or proposed dates— demonstrating that the existing process is working as intended.

For these reasons, Apple respectfully requests that the Court deny Plaintiffs' request and direct the Parties to continue cooperatively scheduling depositions on dates that accommodate witness availability. Apple will continue to provide witness availability and offer dates as soon as reasonably practicable within the fact discovery period.

### C.  *Rule 30(b)(6) Deposition as to Apple's* ▮▮▮▮▮▮▮ ▮▮▮▮▮

Plaintiffs' Position:

Plaintiffs ask the Court's assistance in compelling Apple to designate an additional witness to testify about Apple's use of ▮▮▮▮ in response to Topic No. 3 of Plaintiffs' Rule 30(b)(6) notice. Topic No. 3 requires testimony by Apple on:

> The structure of, information recorded in, and **use of Your databases and data sets** relating to Apple Smartphones or any Identified Product or Service that contains information relating to user characteristics, relationships with other users, devices, device switching, apps, subscriptions, and unique identifiers, including but not limited to the … ▮▮▮▮▮▮▮▮▮▮▮ ….For each such database or data set … **(b) The primary purposes for which the database or data set is used by the Company[.]**

Plaintiffs' Amended Notice of Deposition, ECF No. 378-1 at 5-6 (emphasis added). Apple committed that "Apple will produce a witness to testify on Topic 3 at a level of detail that complies with Rule 30(b)(6)." Defendant Apple Inc.'s Responses and Objections to Plaintiffs' January 27,

15

2026 Notice of 30(b)(6) Deposition at 18.  Under questioning at deposition on April 29, 2026, Apple's designee lacked sufficient knowledge to testify to Apple's use of ███████████████.

Materials Apple prepared for the Rule 30(b)(6) deposition, but did not provide to Plaintiffs until minutes before testimony began, describe the primary purposes of ██ █████████ ██ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Dep. Ex. 16 at 12. Consistent with these purposes, ordinary course documents, which Plaintiffs identified to Apple as recently as April 1, 2026, indicate that Apple uses ███████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████.[10]  Because these issues are relevant to Plaintiffs' claims, Plaintiffs seek testimony on Apple's use of ██████████████████, so they can determine which data are responsive to their requests and negotiate their production.

On April 29, 2026, Apple's witness testified that he lacked knowledge about Apple's use of ██████████.  Among other things, he testified that he did not know whether Apple uses █████████ ████████████████████████████████████ (264:16-25 & Ex. 16 at 12, 307:13-308:17).  Similarly, Apple's witness testified that he did not know whether Apple uses ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Apple's witness also testified that in preparation for deposition he had not educated himself on the uses of ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████

Rule 30(b)(6) requires a corporate party to designate persons to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "Although the individuals selected to testify need not have personal knowledge, Rule 30(b)(6) imposes an obligation on the entity to prepare the witnesses so that they can answer all noticed topics fully, accurately, and non-evasively." *Priv. Sols. Inc. v. SCMC, LLC*, 2016 WL 8732078, at *4 (D.N.J. May 20, 2016). "[W]hen a witness is designated by a corporate party to speak on its behalf

---

[10] Letter from A. Sheanin to K. Jonke & K. Gunderson dated April 1, 2026 (citing APLDOJLIT04494958, APLDOJLIT00542802, APLDOJLIT00342728, APLAPPDOJ2-06420262).

[11] References are to Volume I of Apple's Rule 30(b)(6) deposition dated Apr. 29, 2026.  Plaintiffs can produce select pages of Apple's witness's testimony if it would be useful for the Court.

pursuant to Rule 30(b)(6), [p]roducing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000) (cleaned up). While Apple's witness testified about ▆ financial databases during his single day of testimony in the Government Plaintiffs' case, his testimony concerning the one non-financial database for which he was designated—▆▆▆▆—makes clear that Apple failed to prepare him on the company's use of ▆▆▆▆▆▆▆ to answer questions in a full, accurate, and non-evasive manner.[12]  Plaintiffs are entitled to Apple's testimony.

Apple's argument that Plaintiffs are not entitled to testimony about ▆▆▆ from a prepared corporate witness rests on incorrect premises. Apple claims that it mooted this issue by providing written responses to 15 of Plaintiffs' questions about ▆▆▆ last night at 9:49 p.m. (ET)—two weeks after the deposition. Rather than mooting the issue, Apple's letter is a tacit admission that Apple's witness was not prepared to answer questions about the company's use of ▆▆▆ These responses from counsel are not a substitute for testimony under oath from Apple's designated witness under examination with documents and the opportunity for follow-up questions. Apple's position defies the point of a Rule 30(b)(6) deposition.

Moreover, Plaintiffs were entitled to inquire into how Apple uses ▆▆▆ and then ask whether Apple maintains data to support those uses. Apple incorrectly complains that Plaintiffs' questions involved too many "in-the-weeds details" that its witness could not have been expected to answer. What Apple does not acknowledge is that it failed to educate its witness about Apple's use of ▆▆▆ including its primary purposes as requested in Topic No. 3.[13]  The questions that Plaintiffs asked came from their review of ordinary course documents. Plaintiffs notified Apple about those documents on April 1—four weeks in advance of the deposition—even though they were under no obligation to identify exhibits or submit questions ahead of time. Apple did not object to designating a witness who would testify on Topic No. 3 including on the use of ▆▆▆▆▆▆.[14]  Apple must produce a prepared witness.

Plaintiffs ask the Court to order Apple to designate another witness who can testify promptly on the company's use of ▆▆▆▆▆▆ To facilitate an efficient process, Plaintiffs are prepared to proceed with a 90-minute deposition taken remotely by video.

---

[12] This is not the first time Apple failed to timely designate a witness to testify about its data. *See* ECF No. 387.

[13] Apple argues that its witness was adequately prepared even if he could not answer all deposition questions, but in the case that Apple cites, *Costa v. Cnty. of Burlington*, 254 F.R.D. 187 (D.N.J. 2008), the defendant made a good faith effort to prepare its Rule 30(b)(6) witness and allowed the plaintiffs to continue deposing the witness after completing its investigation, *id.* at 189-90—the exact relief Plaintiffs seek here.

[14] Unlike *Michilin Prosperity Co. v. Fellowes Mfg. Co.*, 2006 WL 1441575, at *2 (D.D.C. May 23, 2006), which Apple cites, Plaintiffs' notice of deposition identified the topics of examination with sufficient particularity.

Apple's Position:

Apple has agreed to provide ***four days*** of 30(b)(6) testimony regarding data—time that does not even count against Plaintiffs' 21-hour 30(b)(6) cap. There is no merit to Plaintiffs' demand for yet more free deposition time. Apple's first corporate witness answered Plaintiffs' detailed questions about ▆ data sources for 11 hours across a two-day deposition.[15] He spent approximately 30 hours preparing for the deposition, and he gave responsive testimony about the content, structure, and use of each system—▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ Apple has produced three data samples from ▆▆▆▆—including two directly in response to Plaintiffs' April 1, 2026 letter—and has now described that database on calls, in a detailed interrogatory response, in hundreds of questions answered in 30(b)(6) testimony, and in a testimonial aid chart that Apple produced to Plaintiffs during the deposition. Apple has also agreed to produce ▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ Plaintiffs' experts will have many months to analyze that data. If Plaintiffs want more granular information about how Apple uses that data to run its business, those questions can be directed to the appropriate 30(b)(1) or 30(b)(6) witnesses during ordinary merits discovery. But Apple has more than met its obligations with respect to this early 30(b)(6) deposition regarding data.

***First***, on May 12, 2026, Apple provided written responses to the fifteen questions (out of nearly 300 questions posed about ▆▆▆▆) that Plaintiffs claim the witness was unprepared to answer. Any dispute is therefore moot.[16] There is no need for further testimony—even if Plaintiffs' questions were within the scope of this early 30(b)(6) deposition (which, as explained below, they plainly are not).

***Second,*** the Court made clear the limited purpose of these early 30(b)(6) depositions: to "discover what data exists in order to pinpoint productions more precisely." Tr. of Mar. 18, 2026 Conf. in DOJ Action at 28:17–25. The Court likewise told MDL Plaintiffs that the depositions "would not count towards the substantive 30(b)(6) hours ***if it's just to ascertain what data exists and to streamline discovery***." Tr. of Mar. 18, 2026 Conf. in MDL Action at 26:11–17 (emphasis added). The Government Plaintiffs similarly represented to the Court the limitations of the noticed 30(b)(6), namely that Plaintiffs "serve[d] a 30(b)(6) notice to try to make sure that [Plaintiffs] understood exactly what data Apple has." Tr. of Mar. 18, 2026 Conf. in DOJ Action at 29:8–10. There is no dispute that Apple identified this data source, produced a witness to explain it, and agreed to produce the responsive data it contains. Apple was not further required to provide

---

[15] Apple's second corporate witness will address the remaining sources in a second two-day deposition on May 14-15.

[16] Plaintiffs' suggestion that by providing written responses Apple somehow conceded their questions regarding ▆▆▆▆ were responsive to their Notice is wholly inappropriate. In a letter sent on May 5 and then again when it provided its written responses on May 12, Apple clearly explained how Plaintiffs' additional questions were unreasonable in light of their noticed topics. Apple's willingness to separately provide written answers to these questions—to facilitate the parties' discussions about full productions—does not waive these objections. Instead, it shows Apple's focus on moving this case productively forward.

18

granular fact testimony about *how* such data might be used to generate highly-particularized analyses referenced in individual documents (for which Plaintiffs could not even lay adequate foundation). Those are business questions for financial analysts, not data-discovery questions for this 30(b)(6) witness.

**Third**, Plaintiffs' noticed topics included a request for testimony regarding the "***primary*** purposes for which [███] is used by the Company," and the witness was unquestionably prepared to address questions regarding the "primary purposes" ███████. In his approximately 30 hours of preparation, the witness met with three ███ experts. 4/29/26 Dep Tr. at 22:5–23:11; 27:17–19; 4/30/26 Dep. Tr. at 180:19–23. In response to questioning about "the primary purposes of ███ ███," the witness answered that ████████████████████████ ████████████████████████████████ 4/29/26 Dep. Tr. at 262:22–263:6. The witness also worked with ██ ███ experts to prepare a chart of detailed information responsive to Plaintiffs' topics. 4/30/26 Dep. Tr. at 181:3–8. The chart was included in a binder that Apple's counsel identified to Plaintiffs before the deposition began. The witness referenced the binder within the first thirty minutes of his deposition, and Plaintiffs later entered the binder as an exhibit. 4/29/26 Dep. Tr. at 25:9–13. In that chart, the witness identified the following "primary purposes of use" ████████:



Ex. 16 at 12. Plaintiffs chose not to ask the witness questions about these primary purposes during the deposition, and Plaintiffs have not explained why this information fails to answer their topic. *See Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 189-191 (D.N.J. 2008) (finding that "defendant satisfied its obligation to prepare and produce a responsive 30(b)(6) witness" by making "a conscientious good faith effort to designate and prepare its 30(b)(6) witness" and that "[s]imply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness.").[17]

**Fourth**, Plaintiffs' highly particularized questions about specific uses of ████ go beyond the reasonable scope for which Rule 30(b)(6) required the witness to prepare. As a threshold

---

[17] Plaintiffs' position mischaracterizes the *Costa* court's legal analysis. The *Costa* court first found that the 30(b)(6) witness was adequately prepared, despite the witness's inability to answer every question, but then separately held that Defendant had also not obstructed discovery, including because defendant offered to allow additional 30(b)(6) testimony. *Id.* at 189-90. The Court never ordered additional deposition testimony—nor even suggested that such testimony was necessary given the witness's inability to answer every question. Given the 14 hours of 30(b)(6) testimony regarding data sources Plaintiffs already have (in addition to the additional hours of deposition time allotted to MDL Plaintiffs), Plaintiffs have not demonstrated any need for the additional testimony they seek.

19

matter, the primary purposes for which ██████ is used was one of nearly 250 distinct topics for which the witness was required to prepare.[18]  In advance of the witness's deposition, Apple repeatedly warned Plaintiffs that given the breadth of the noticed topics, it was impractical to prepare any witness to testify about the in-the-weeds details related to each topic.  In addition, anticipating that Plaintiffs would ask extremely granular or niche questions, Apple requested Plaintiffs submit their more specific questions in writing so that the witness would have adequate time to prepare.  But Plaintiffs never sent a list of more detailed questions related to ██████  The most they did was identify a set of documents, including presentations with hundreds of pages of analyses, at 5:24 pm Pacific Time a day and a half before the deposition.  Plaintiffs had all of those documents for at least a month before the deposition—indeed, some of the documents were produced *years* before the deposition.  Plaintiffs' expectation that the witness could educate himself on hundreds of pages of analyses in a single day (while also preparing to address two hundred other topics) was not reasonable.  *See Michilin Prosperity Co. v. Fellowes Mfg. Co.*, 2006 WL 1441575, at *2 (D.D.C. May 23, 2006) (30(b)(6) notice failed to adequately describe the matters on which examination was requested where subject matter was approximately 2,000 pages of documents defendant produced, which deponent would have to review); *Fed. Trade Comm'n v. Am. Future Sys.*, 2022 WL 1437562, at *2 (E.D. Pa. Apr. 8, 2022) (*report and recommendation adopted as modified by Fed. Trade Comm'n v. Am. Future Sys.*, 2022 WL 1423661 (E.D. Pa. May 5, 2022)) ("Courts also take a dim view of topics that would require a corporate representative to devote unreasonable time to preparation" or that would require them "to master detailed data-based subject matter.").

***Finally***, Plaintiffs' demand for 90 more minutes of testimony is an improper attempt to exceed the agreed time limit for this deposition.  The Government Plaintiffs received their full seven hours of testimony for these data sources (in addition to a full seven hours with Apple's second 30(b)(6) witness regarding other data).  Plaintiffs suggest that the witness was unprepared to answer a mere 15 questions during those seven hours.  Plaintiffs' request for 90 additional minutes exposes Plaintiffs' apparent strategy—to use these questions not only to expand the scope of their noticed topics (from "primary purpose" of ██████ to "any and all use" of ██████), but also to exceed their allotted time and seek additional company testimony that does not count against their overall limit for 30(b)(6) testimony.  Such tactics are improper and unproductive.

---

[18] The Government Plaintiffs' Topics noticed nearly *250* individual questions on a myriad of complex data systems.  Government Plaintiffs noticed three Topics relevant to the deposition, two of which had 19 subtopics for each of the following data sources: ██████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ██████.

Respectfully submitted,

/s/  Aaron M. Sheanin
Aaron M. Sheanin
Civil Assistant Chief, San Francisco Office
United States Department of Justice
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102
Telephone: (202) 709-1490
Email: aaron.sheanin@usdoj.gov

JENNIFER DAVENPORT
Attorney General of New Jersey

/s/ David H. Reichenberg
David H. Reichenberg
Section Chief, Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-5271
Email: David.reichenberg@law.njoag.gov

*Attorney for Plaintiff State of New Jersey, Arizona, California, Washington D.C., Connecticut, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin*

/s/  Liza M. Walsh
Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Email: lwalsh@walsh.law
Email: darpert@walsh.law

/s/  Craig S. Primis
Craig S. Primis, P.C.
K. Winn Allen, P.C.
Tracie Bryant, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
Email: winn.allen@kirkland.com
Email: tracie.bryant@kirkland.com

/s/  Devora W. Allon
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Email: devora.allon@kirkland.com
Email: alexia.brancato@kirkland.com

*Attorneys for Defendant Apple Inc.*

21

Aaron M. Sheanin
Civil Assistant Chief, San Francisco Office
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102

*Attorney for Plaintiff United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA et al.,<br><br>     *Plaintiff*,<br><br>  v.<br><br>APPLE INC.<br><br>     *Defendants*. | Case No. 2:24-cv-04055-JXN-LDW |

## CERTIFICATE OF SERVICE

I hereby certify that the above letter and this Certificate of Service were served upon defendant's counsel, Liza M. Walsh, Esq., Craig S. Primis, Esq., Devora W. Allon, Esq., and K. Winn Allen, Esq., 1301 Pennsylvania Avenue, NW, Washington, D.C., 20004, by CM/ECF on May 13, 2026.

*/s/ Aaron M. Sheanin*
Aaron M. Sheanin
United States Department of Justice
Antitrust Division
*Attorney for Plaintiff United States*