**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | Civil Action No.: 24-4055 (JXN-LDW)<br><br><br><br>**OPINION AND ORDER OF THE**<br>**SPECIAL DISCOVERY MASTER RE:**<br>**FEDERAL AGENCY DISCOVERY** |

**LINARES, J.**

This matter having come before the Special Master by way of the parties' Joint Dispute Letter concerning Defendant Apple Inc.'s Rule 45 subpoenas to 14 separate Federal Agencies (ECF No. 422 (the "Federal Agency Dispute")). Oral argument on the dispute was held on July 10, 2026. The Special Master has the authority to hear the Federal Agency Dispute pursuant to the Court's general Special Master referral Order (ECF No. 455) and specific dispute referral Order (ECF No. 462). For the reasons set forth below, the Special Master overrules Plaintiff United States of America's objections to Defendant's subpoenas.

**I.  BACKGROUND**

The Special Master presumes the parties' familiarity with the factual background and procedural posture of this matter. Accordingly, the Special Master will only recite facts relevant to the dispute.

Defendant seeks documents and information from the following 14 separate government agencies: 1) CIA; 2) Department of Commerce; 3) Department of Homeland Security; 4) Department of Defense; 5) Federal Bureau of Investigation; 6) Federal Trade Commission; 7) General Services Administration; 8) Department of Labor; 9) National Aeronautics and Space Administration; 10) National Security Agency;   11) Office of the Director of National Intelligence; 12) Office of Management and Budget; 13) Office of Personnel Management; and 14) Department of State (collectively "the Federal Agencies").  (*See generally* ECF No. 422). Specifically, Defendant "seeks documents related to how federal agencies find, evaluate, and purchase smartphones and wearables, as well as agency evaluations related to the selection and use of smartphones and the specific products and services at issue."  (ECF No. 422 at 3).

a.  <u>*Defendant's Arguments*</u>

According to Defendant, it originally sought to obtain this information from Plaintiff via traditional discovery methods.  (ECF No. 422 at 2).  However, Defendant claims it was met with resistance and told it needed to issue subpoenas to each agency from which it sought documents and information .  (Id.).  Despite its protestations concerning the appropriateness of subpoenaing Plaintiff's agencies, Defendant issued the subject subpoenas.  (Id.).  Thereafter, "the *same* DOJ attorneys [that are representing Plaintiff herein] appeared as counsel for the subpoenaed federal agencies and again refused production."  (Id. (emphasis in original)).

Next, the Federal Agencies asserted that Defendant needed to follow the *Touhy* process to obtain the information.  (Id.).  Once again, Defendant disagreed but nonetheless went through the *Touhy* process.  (Id.).  In response, the Federal Agencies asserted a variety of objections including that the "subpoenas were overbroad and sought irrelevant, classified, or privileged information."  (Id.).  At the end of the parties' negotiations, Plaintiff made a compromising offer

that it would "consider whether it can provide information from 7 of the 14 agencies if [Defendant] 'eliminates' its subpoenas to the remaining agencies." (Id. (cleaned up)).

Defendant rejected the Plaintiff's purported compromise, and, instead, raised the dispute with the Court. According to Defendant, the information sought from the 14 agencies is relevant to its defense.  According to Defendant, its subpoenas seek "documents related to how federal agencies find, evaluate, and purchase smartphones and wearables, as well as agency evaluations and guidance related to the selection and use of smartphones and the specific products and services." (Id. at 3).

Additionally, Defendant avers that it has already narrowed its requests to minimize the burden on Plaintiff.  First, Defendant explains it is only seeking documents from a limited number of agencies instead of the entire United States government. (Id. at 5).  Defendant further explains it has narrowed its requests over the last year from 39 Requests for Production down to 6-9 per agency. (Id.).  And Defendant claims it carefully selected the 14 agencies "because each has specific, relevant expertise." (Id.).  According to Defendant, the agencies it selected are involved in setting government-wide policies, assessing smartphone security and privacy risks, and maintaining the Consumer Price index and data related to smartphone pricing, as well as regulatory and consumer protection agencies. (Id.).  Thus, Defendant believes that its efforts in narrowing the requests and carefully selecting the subpoena targets nullifies any burden arguments. (Id).

Finally, Defendant asserts that all of Plaintiff's claims of privilege must be rejected.  First, Defendant argues that the Deliberative Process Privilege is inapplicable here because the information is factual in nature and because the privilege does not protect documents that relate

to the final decision and the basis for same.  (Id. at 7 (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,* 592 U.S. 261, 268 (2021)).

Defendant further claims that the Law Enforcement Privilege is irrelevant since that privilege only applies when the disclosure would "compromise law enforcement technique, sources, or ongoing investigations."  (Id. (citing *Castellani v. City of Atlantic City*, 102 F. Supp. 3d 657, 670 (D.N.J. 2015)).  Similarly, Defendant says the State Secret Privilege has no place in the analysis because Defendant has specifically told Plaintiff it is not seeking classified information.  (Id. at 7-8).  As such, the State Secrets Privilege is inapplicable.

Finally, Defendant dismisses the various statutes cited by Plaintiff in support of nondisclosure, arguing that none of them apply to the information demanded by Defendant.  (Id. at 8).  Hence, Defendant concludes that Plaintiff must comply with the subpoenas.

  b.  *Plaintiff's Arguments*

Plaintiff has taken the position that Defendant is not entitled to any of the demanded information.  (Id. at 13).  Indeed, as expressed during oral argument, Plaintiff is of the position that the government as "plaintiff/prosecutor" in a civil enforcement action is not required to participate in standard civil litigation discovery as provided for by the Federal Rules of Civil Procedure.  (Id.).

To support its position, Plaintiff says the analysis must begin with the allegations in the Amended Complaint.  (Id.).  Specifically, Plaintiff alleges that Defendant "reduces competition in the markets for performance smartphones and smartphones generally … by delaying, degrading, or outright blocking technologies that would increase competition in the smartphone markets by decreasing barriers to switching to another smartphone."  (Id. (quoting ECF No. 51 ¶ 8)).  Further, Plaintiff notes that its Amended Complaint is focused on five discrete ways it

claims Defendant has achieved these anticompetitive goals: "(i) suppressing 'super apps'; (ii) blocking cloud-streamed gaming apps; (iii) denying important functionality such as SMS and RCS APIs to competing messaging apps; (iv) denying iPhone users the ability to use third-party smartwatches with the same capabilities as the Apple watch; and (v) blocking consumer access to digital wallets that offer advanced and innovative features." (Id. (citing ECF No. 51 ¶ 10)).

Defendant submits the Amended Complaint's allegations all relate to consumer apps, accessories, and devices. (Id.). According to Plaintiff, however, neither it nor its agencies are consumers. (Id. at 13-14). Thus, as discussed above, Plaintiff avers that discovery from the agencies would be irrelevant, burdensome and not proportionate to the needs of this case. (Id. at 14). Plaintiff also raises several privilege-based objections – specifically, the Deliberative Process and Law Enforcement Privileges as well as certain statutory provisions. (Id. at 22-23). For these reasons, Plaintiff seeks an order denying Defendant's discovery demands and quashing the subpoenas to the Federal Agencies. (Id. at 23).

## II. DISCUSSION

Preliminarily, Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Plaintiff's argument that it should be subjected to a different standard of discovery because it is serving as "plaintiff/prosecutor" in this civil enforcement action is not persuasive. (ECF No. 422 at 16 (quoting *United States v. UBS Securities, LLC*, 2020 WL 7062789, *6 (E.D.N.Y. Nov. 30, 2020); *USA v. Xlear, Inc.*, 2022 WL 5246717 (D. Utah Oct. 6, 2022)). Plaintiff makes this assertion with no citation to any controlling authority. Instead, Plaintiff points to two out-of-District cases with scarce analysis to support this proposition.

While it is true that the Court in *UBS* did state "[f]or purposes of party discovery, the 'United States' includes agencies that engage in joint investigations", the very next sentence in the case goes on to note that "the definition of 'United States' *also includes agencies that inform the policies, rules, and regulations that the executive branch sets.*"  *UBS*, 2020 WL 7062789 at *6 (emphasis added).  Thus, *UBS* appears to confirm Defendant's position that it is entitled to obtain discovery from the Federal Agencies because the targeted agencies analyze and create policies, protocols, and regulations for the purchasing of smartphones based on security and privacy risks and set government-wide policies based on these analysis.  (*See* ECF No. 422 at 3).

*Xlear* also does not support Plaintiff's argument.  Indeed, that case simply recites the holding of *UBS* without any detailed analysis as to when the Federal Agencies can and cannot be subjected to party discovery.  *See generally Xlear*, 2022 WL 5246717.  Accordingly, the Special Master rejects Plaintiff's argument that the Federal Agencies, vis-à-vis their relationship to Plaintiff, are shielded from party discovery simply because it is the United States government.

With that resolved, the analysis then shifts back to a traditional discovery framework. And that framework provides that "[a] party moving to compel bears the initial burden of showing the relevance of the requested information. The burden then shifts to the party resisting discovery to justify withholding it." *Lloyd-Jones v. Connolly*, 2022 WL 3572837, *5 (D.N.J. Aug. 19, 2022) (Wettre, J.), (quoting *Morrison v. Philadelphia Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (quotations and citations omitted)).

The first question in this analysis is whether the sought-after discovery is relevant.  As noted, this civil enforcement action revolves around the allegations that Defendant "reduce[d] competition in the markets for performance smartphones and smartphones generally … by delaying, degrading, or outright blocking technologies that would increase competition in the

smartphone markets by decreasing barriers to switching to another smartphone." (ECF No. 422 (quoting ECF No. 51 ¶ 8)). Said simply, Plaintiff has alleged that Defendant has created various barriers and hurdles throughout its ecosystem that are designed to hinder competition in the smartphone market.

The Special Master finds that all of Defendant's Requests for Production ("RFPs") are relevant to these core allegations. RFPs 1-4 and 6 target the Federal Agencies' procurement of smartphones, including the decisions that went into that procurement. (ECF No. 422 at 3). RFPs 8 and 11-13 similarly seek agency guidance and evaluations of certain products that Defendant sells. (Id.). All of these are relevant to the core allegations because they seek to uncover what Plaintiff and the Federal Agencies have internally reviewed and determined. Thus, to the extent the Federal Agencies have analyzed the security and privacy concerns Defendant claims are the reasons for why its systems are the way they are, such an analysis would be relevant to support its position that its procompetitive reasons are not pretextual.

RFPs 9-10 are the other side of the coin in that they seek the Federal Agencies' security and privacy analysis regarding non-Apple operating systems and marketplaces. In other words, Defendant wants to understand what Plaintiff and the Federal Agencies have found in terms of security and privacy concerns that may have potentially steered the government towards Apple products or away from non-Apple products. These RFPs are relevant for the same reasons – i.e., they may lead to the discovery of information that could be used to support Defendant's position that its procompetitive reasons are not pretextual.

RFPs 5 and 7 are aimed at obtaining smartphone pricing and market share data – information that is not publicly available. (ECF No. 422 at 4). This includes information concerning the Consumer Price Index and associated "quality adjustments." (Id.). The

Amended Complaint includes allegations of consumer harm.  But Defendant believes that "quality-adjusted price[s] of smartphones has fallen over time."  (Id.).  Thus, this data, which is strictly maintained by the Bureau of Labor Statistics, is relevant to rebut that assertion.

Lastly, RFP 14 relates to several of the Federal Agencies' "own involvement in [Defendant's] developer program."  (Id.).  Plaintiff has alleged that Defendant's restriction on developers' innovation has harmed consumers.  (Id.).  Defendant argues, and the Special Master agrees, that "[d]ocuments showing [Defendant] provided tools, technologies, and services to enable developers to create useful apps would undermine Plaintiff's theory that [Defendant] stifles innovation."  Hence, RFP 14 is also relevant.

Having concluded that Defendant's RFPs are all relevant, "[t]he burden then shifts to the party resisting discovery to justify withholding it." *Lloyd-Jones*, 2022 WL 3572837 *5.  For the reasons set forth below, the Special Master does not find Plaintiff's justifications for withholding the demanded discovery persuasive.

As to burden and proportionality, Plaintiff does nothing more than recite the standard for the balancing analysis.  (ECF No. 422 at 17-18, 20-22).  Plaintiff, however, does not articulate how *these* subpoenas would be overly burdensome or disproportionate to the needs of this case.  "[U]nsubstantiated claims of burden and expense are insufficient to withhold otherwise relevant discovery."  *Johnson & Johnson Healthcare Servs. v. SaveOnSp, LLC*, 2024 WL 2803284, *3 (D.N.J. May 31, 2024).  Plaintiff has not clearly articulated nor explained what burden it and the Federal Agencies would have to bear in order to comply with the subpoenas.  Instead, as noted, Plaintiff has made generalized assertions regarding the purported burden it would suffer, such as "expansive searches" and the fact that Plaintiff and the Federal Agencies are "large, complex governmental entities that cover more than have of the civilian workforce."  (ECF No. 422 at 20).

But these broad statements lack the specificity required to "show[] *specifically* how the request is burdensome." *Id.* (emphasis added) (quoting *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2010 WL 4922701 at *3, 2010 U.S. Dist. LEXIS 125252 at *10 (W.D. Pa. Nov. 29, 2010) (citation omitted)). As Defendant noted during oral argument, Plaintiff's submission and presentation is devoid of any statistics regarding how many documents will have to be reviewed, how many man hours responding to the subpoenas will require, or the cost it will incur, for example – all hallmark burden and proportionality factors. Therefore, the Special Master is not convinced that Plaintiff's burden and proportionality arguments are appropriate herein.

As to privilege, both parties rely heavily on *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021) in support of their divergent positions on the applicability of the Deliberative Process Privilege. Therein, the Supreme Court explained that while it is true that the Deliberative Process Privilege "shields from disclosure documents reflecting *advisory opinions, recommendations and **deliberations*** comprising part of a *process by which governmental decisions and policies are formulated*" the Court also explained that the privilege does not protect "documents *reflecting a final agency decision and the reasons supporting it*." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 268 (emphasis added). *U.S. Fish and Wildlife* confirms the long-standing Third Circuit interpretation of the privilege that it does not protect "factual information." *See Redland Soccer Club, Inc. v. Dep't of Army*, 55 F.3d 827, 854 (3d Cir. 1995).

Facts and final decisions (along with the reasoning) are precisely what Defendant seeks via its subpoenas. RFPs 1-4 and 6, for example, seek documents regarding the Federal Agencies' procurement of smartphones, including the decisions that went into that procurement. In other words, these RFPs seek documents that explain how and why the Federal Agencies purchased smartphones – which, as noted, does not fall within the purview of the Deliberative

Process Privilege.  As noted, RFPs 8 and 11-13 seek agency guidance and evaluations of certain products that Defendant sells – fact-based documents that contain no deliberative element.  And RFPs 9-10 are merely the flip-side of the aforementioned requests – seeking fact-based analysis concerning Defendant's competitors.  Similarly, RFPs 5 and 7 are also factual and free from the deliberation in that they seek CPI statistics – which, inherently, are factual.  Finally, RFP 14 is also factual in that it seeks information as to whether, and how, the Federal Agencies participated in developing apps through Defendant's developer programs.  Hence, pursuant to *U.S. Fish and Wildlife*, the Deliberative Process Privilege does not shield Plaintiff and the Federal Agencies from responding to these fact-based requests.

Plaintiff's Law Enforcement Privilege argument is also not persuasive.  First, as Plaintiff acknowledges, this privilege is a qualified and not an absolute privilege.  (ECF No. 422 at 22 (citing *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998)).  It is "designed to prevent the disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement. Its application requires a court to weigh the government's interest in ensuring the secrecy of the documents in question against the need of the adverse party to obtain the discovery." *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1209 (D.N.J. 1996).  "In each case that the privilege is claimed, the court is required to balance the public interest in having the information remain secret against the litigants' need to obtain discovery." *Castellani v. City of Atlantic City*, 102 F. Supp. 3d 657, 670 (D.N.J. 2015) (quoting *Chladek v. Com. of Pa.*, 1998 WL 126915, at *2 (E.D. Pa. Mar. 10, 1998)).

It is unclear how, if at all, Defendant's requests would somehow interfere with the Plaintiff's ability to maintain effective law enforcement.  Although Plaintiff makes generalized assertions that the production of materials in response to the subpoenas would compromise law

enforcement, it does not provide a detailed explanation of why that is the case. As explained, the assertion of this privilege requires more than that. Hence, when balancing the generalized concerns of Plaintiff with Defendant's need to obtain discovery, the Special Master concludes that the privilege has not been properly invoked here.

This makes sense from a policy perspective as well because, otherwise, the government could always assert the Law Enforcement Privilege with generalizations and little support. If that were true, it would effectively convert this qualified privilege into an absolute privilege. That is contrary to the case law on this issue.

The State Secret Privilege also does not provide Plaintiff relief. First, Defendant acknowledges that it is not entitled to obtain classified information. (ECF No. 422 at 7). Despite this concession, Plaintiff avers that the privilege would also prohibit the disclosure of unclassified information if "that would harm national security." (Id. at 22 (citing *FBI v. Fazaga*, 595 U.S. 344, 355, 358-59 (2022)). But Plaintiff's analysis is flawed. According to Plaintiff, national security is implicated merely because of which agencies Defendant subpoenaed; e.g., FBI, CIA, DoD, etc. (Id.). Again, if Plaintiff were correct then there would have been no need for the Supreme Court to include the qualifying language "will expose information that 'should not be divulged' in 'the interest of national security.'" *Fazaga*, 595 U.S. at 358-59. It could have simply said that the State Secret Privilege applies to any law enforcement agency. It did not. Instead, the Supreme Court confirmed that the privilege only shields information that, in fact, implicates national security.

Plaintiff has not identified any specific national security concerns that would be implicated by providing Defendant with the demanded documents. Hence, the State Secret Privilege does not support Plaintiff's arguments under these circumstances.

Finally, Plaintiff points to three separate statutes to support its position that the subpoenas must be quashed: 1) Confidential Information Protection and Statistical Efficiency Act ("CIPSEA"); 2) Foreign Investment and National Security Act of 2007 ("FINSA"); and 3) Foreign Investment Risk Review Modernization Act of 2018 ("FIRRMA"). Again, the issue with the invocation of these statutes is not that they substantively are inapplicable. Instead, Plaintiff has failed to show that any of these statutory provisions prohibit the disclosure of the relatively narrow subset of documents Defendant has sought via the RFPs and subpoenas.

It is important to note that the Special Master is not broadly concluding that the privileges Plaintiff raised are entirely inapplicable. Rather, the Special Master's finding is that, at this time, Plaintiff simply has not carried the requisite burdens to assert these privileges. Thus, to the extent Plaintiff comes across documents it believes one or more of the privileges protect, it should proceed in the usual course. In other words, it should log it on a privilege log consistent with the Federal Rules of Civil Procedure and the District of New Jersey's Local Civil Rules. And should there be a dispute thereafter, the parties may submit same to the Special Master for *in camera* review and disposition.

### III.  ORDER

**IT IS** on this 14th day of July, 2026,

**ORDERED** that Plaintiff's Motion to Quash the Federal Agency Subpoenas is hereby **DENIED**; and it is further

**ORDERED** that Plaintiff, via the Federal Agencies, shall respond to each of Defendant's RFPs.

**SO ORDERED**.

　　　　　　　　　　　 __/s/ *Jose L. Linares*_____
　　　　　　　　　　　 Hon. Jose L. Linares, U.S.D.J. (ret.)