

**U.S. Department of Justice**

Antitrust Division

*RFK Main Justice Building*

*950 Pennsylvania Avenue, N.W.*
*Washington, DC 20530-0001*

July 28, 2026

**VIA ECF**
Hon. Jose L. Linares, U.S.D.J. (ret.)
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102

**Re:**  **United States of America, et al. v. Apple Inc., No. 2:24-cv-04055 (JXN-LDW)**
**Motion for Reconsideration**

Dear Judge Linares:

Under Special Master Appointment Order, Dkt. 455 ¶ 16, and Local Civil Rules 7.1(i), 37.1(b)(3), and 72.1(c)(1)(A), Plaintiff United States respectfully submits this motion for reconsideration of the Opinion and Order of the Special Discovery Master Re: Federal Agency Discovery (the "Order"), Dkt. 471. This motion is supported by the accompanying declarations of:

(1)  Mary C. Williams (Central Intelligence Agency, "CIA");
(2)  Joy Garrett (National Security Agency, "NSA");
(3)  Rebecca M. Flowers (Office of the Director of National Intelligence, "ODNI");
(4)  Deena Jih (Department of Labor, "LABOR");
(5)  Sarah Pollock (National Aeronautics and Space Administration, "NASA");
(6)  Rusty Rich (Department of War, White House Communications Agency, "WHCA");
(7)  Faith Anne Perry (Department of War, Defense Information Systems Agency, "DISA");
(8)  William L. Harris (Federal Bureau of Investigation, "FBI");
(9)  Douglas S. McKain (Office of Personnel Management, "OPM");
(10)  Ryan Bellack (Department of Homeland Security, "DHS");
(11)  Justin Hawkins (General Services Administration, "GSA");
(12)  Jeanne Miller (Department of State, "STATE"); and
(13)  Dr. Kevin Rhodes (Office of Management and Budget, "OMB").

Respectfully submitted,

*s/ Matthew C. Mandelberg*
Matthew C. Mandelberg
Antitrust Division, D.C. Office
United States Department of Justice
950 Pennsylvania Ave. NW Suite 3222
Washington, D.C. 20530
Telephone: (202) 476-0483
Email: matthew.mandelberg@usdoj.gov


Aaron M. Sheanin
Civil Assistant Chief, San Francisco Office
United States Department of Justice
450 Golden Gate Ave., Suite 10-0101
San Francisco, CA 94102
Telephone: (202) 709-1490
Email: aaron.sheanin@usdoj.gov

*Attorneys for Plaintiff United States of America*

**Motion for Reconsideration**

Motions for reconsideration "prevail," *inter alia*, if there is "need to correct a clear error of law or fact" or if there is "new evidence that was not available when the court [made its initial decision]." *Rich v. State*, 294 F. Supp. 3d 266, 272–73 (D.N.J. 2018) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Clear error is shown if "the record cannot support the findings that led to the ruling." *Id.* at 272. Reconsideration is appropriate here to correct clear errors and account for new evidence.[1] First, the Order clearly erred when it imposed the obligations of party discovery on 14 federal departments and agencies (the "agencies") without fact-specific determinations that each agency is sufficiently connected to the case. Second, new evidence demonstrates the undue burden that Apple's discovery requests impose on the declarant agencies. Third, the Order committed clear error by treating relevance as binary and by failing to consider whether the requested discovery is minimally relevant. The Special Master should reconsider proportionality and deny Apple's requests for production from 14 federal agencies, which cover dozens of subagencies, half the federal workforce, and the national security apparatus of the United States.[2]

1.      **The Order Failed to Apply the Correct Legal Standard for Party Discovery of a Federal Agency.** The Order committed clear error when it failed to apply the applicable legal standard for determining whether these federal agencies should be afforded the protections of Rule 45 and concluded that they all were subject to party discovery. The Federal Rules have different standards for discovery served on parties and non-parties. "[A] non-party to litigation is afforded greater protection from discovery than a party." *Cognizant Tech. Sols. Corp. v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 2091281, at *5 (D.N.J. May 8, 2024); *see* FRCP 45(d)(1) (A party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); ECF No. 422 at 17-18. Federal agencies are not automatically subject to "party" discovery any time the United States files a case; rather, courts must perform a fact-specific assessment of the relationship of a federal agency to each case.[3] The Order did not perform the correct fact-specific assessments in concluding that none of the 14 federal agencies are entitled to the greater protection afforded to non-parties under Rule 45. That was clear error.

The *UBS* decision sets forth the applicable legal standard here, as Apple conceded at oral argument. H'g Tr. at 96:16-19. The *UBS* court explained, "[f]or purposes of party discovery, the 'United States' includes agencies that engage in joint investigations." *United States v. UBS Sec. LLC*, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020). The Order does not rely on this basis. The Order goes on to note UBS's statement that, in some instances, party discovery extends to "agencies that inform the policies, rules, and regulations that the executive branch sets" (regulatory policies). *UBS*, 2020 WL 7062789, at *6.[4] Assuming arguendo that regulatory

---

[1] The United States maintains that the deferential "arbitrary and capricious" standard applies when reviewing agencies' *Touhy* determinations. *See, e.g.*, *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999). While discovery can be denied here without reaching *Touhy*, Your Honor should reach this issue explicitly if ordering discovery. *See, e.g.*, *Harris v. McDonald*, 2022 WL 3599394, at *2 (M.D. Pa. Aug. 23, 2022).

[2] Several responding agencies outside the intelligence community are working to prioritize a minimally burdensome non-privileged set of documents that can be produced in response to certain RFPs.

[3] *See, e.g.*, *United States v. Xlear Inc.*, 2022 WL 5246717, *2, 2 n.3 (D. Utah Oct. 6, 2022) (extending party discovery to the FTC that "substantively participated" in the investigation but not NIH, CDC, or FDA that had at most "limited communications"); *United States v. UBS Sec. LLC*, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020) (relying on the "active participa[tion]" of two agencies in investigating "the financial fraud at issue" when subjecting those two agencies to party discovery); *United States v. Atrium Vill. Assocs.*, 1988 WL 2778, at *1 (N.D. Ill. Jan. 12, 1988) (extending party discovery to "only two departments [that also] appear to be in dispute").

[4] Party discovery may also reach federal agencies in other circumstances not applicable here, such as if they are

policies subject a federal agency to party discovery, party discovery will only reach "those components of [federal agencies] that have or had responsibility for the administration or oversight of the [regulatory policies] that [are] the subject of the United States' complaint." *Id.* at *4 (quoting *Deane v. Dynasplint Sys., Inc.*, 2015 WL 1638022, at *5 (E.D. La. Apr. 13, 2015)). But absent such a showing about an agency's regulatory policies, the agency is entitled to the heightened protection afforded to non-parties (including the benefits of *Touhy* afforded to federal agencies subject to non-party subpoenas). There is no authority for treating an agency as a "party" in these circumstances based on the agency's "special knowledge and expertise," as Apple claimed incorrectly in its brief and at argument. ECF No. 422 at 10; H'g Tr. at 96:16-19.[5]

Here, the Order clearly errs when it relies on internal agency "policies" to impose party discovery. *See* Order at 6. In its entirety, the Order's analysis states, "the targeted agencies analyze and create policies, protocols, and regulations for the purchasing of smartphones based on security and privacy risks and set government-wide policies based on these analys[e]s." Order at 6. But that analysis is not the test, and no record evidence supports it. No specific policy, rule, or regulation of any agency is mentioned in the Order, let alone one that administers, oversees, or regulates the conduct or markets at issue in this case. To the United States' knowledge, Apple also has not cited a regulatory policy in its answer or in other filings or proceedings in this case.[6] Nor should the Court expect one, as there is "no extensive regulatory framework" at issue here. Dkt. 51, Am. Compl. ¶ 50. Procurement rules are not regulatory policies that govern the marketplace or Apple's conduct, even if they are termed "policies" by an agency. Even for the "peculiar facts" of *United States v. Am. Tel. & Tel. Co.*, party discovery reached many federal agencies because AT&T argued in its defense, *inter alia*, that its conduct was "the result of the Government's own policies." 461 F. Supp. 1314, 1334 (D.D.C. 1978). Apple nowhere alleges that its anticompetitive conduct was the result of federal regulations, let alone agency procurement decisions. And in any event, the United States is not aware of a case holding that an agency is subject to party discovery if it has an internal procurement "policy" that lacks a causal nexus to the case. On this record, it was clear error to subject the agencies to party discovery.

2.     **New Facts Demonstrate the Undue Burden Faced by These Agencies.**
Reconsideration is warranted based on new evidence demonstrating undue burden. Attached are declarations from 12 agencies attesting to the scale and burden of Apple's requested productions. These declarations were collected immediately to address the Special Master's ruling.[7] These declarations substantiate the extent of undue burden posed by Apple's requests and show that requiring the agencies to gather this evidence would be disproportionate to the needs of the case. The declarants explain, *inter alia*, that their agencies:

- Are not responsible for enforcing antitrust laws, did not participate in the decision to bring this case, and did not consult with the Antitrust Division about the case either before or after

---

alleged to have engaged in tortious conduct. *E.g.*, *North Dakota v. United States*, 2021 WL 6278456, at *2-3 (D.N.D. Mar. 24, 2021) (imposing party discovery on those agencies that the "administrative claim and complaint identified" as "extend[ing]" the tortious conduct at issue).

[5] Apple purports to quote *UBS* for this "special knowledge and expertise" standard, Dkt. 422 at 10, but that phrase appears nowhere in the decision and has no relationship to the holdings in *UBS*. Apple "targeted" the 14 federal agencies based on this invented standard. *See* Order at 3; H'g Tr. at 96:16-19.

[6] Apple cites some public, smartphone-related guidance documents to address relevance and state secrets but not party discovery. These agency documents do not regulate the markets or market conduct. *See* Dkt. 422 at 4, 7 n.4.

[7] To the extent leave is required for the Special Master to consider the declarations, the United States respectfully requests that the Special Master grant leave for the reasons set forth herein, in the interest of efficiency and completeness, and because Judge Neals could consider the declarations if the issue is appealed further. *See* L. Civ. R. 72.1(c)(1) (the Court "may [] receive further evidence," applicable here under Appointment Order ¶ 16).

filing of the lawsuit, *see* LABOR ¶ 4, NASA ¶ 4, DISA ¶ 7, OMB ¶ 4, DHS ¶ 4, GSA ¶ 4; *cf.* CIA ¶ 17 (not a law enforcement agency), NSA ¶ 6 (same), ODNI ¶ 22 (same), WHCA ¶ 6, STATE ¶ 4 (does not enforce the antitrust laws);

- Do not purchase smartphones through consumer channels, restrict employee smartphone use to meet their agencies' missions, do not regulate the consumer purchase or use of smartphones, and are not responsible for regulating competition for smartphones, app stores, super apps, or texting apps, smartwatches, or cloud-based gaming, *see* LABOR ¶ 5, NASA ¶¶ 5-9, WHCA ¶¶ 7-8, DISA ¶ 8-9, OPM ¶ 4, OMB ¶ 5, DHS ¶ 5, GSA ¶ 6;

- Would need to spend thousands of hours reviewing and logging documents, *see* NASA ¶¶ 8, 11 (illustrative searches for two Requests resulted in 194,000 emails, which would take more than 4,850 hours to review), STATE ¶¶ 6-10 (estimating 2,175 hours to review files on 8,700 transactions, 6,250 hours to review 125,000 pages from preliminary searches for Request No. 1, and more than 37,000 hours for review of potentially responsive material to all requests), OMB ¶¶ 13-15 (estimating more than 24 million potentially responsive digital records and over 100,000 pages of paper records, requiring over 12,000 months—or 1.9 million man hours—to review), GSA (estimating 9,600 hours to review 100,000 documents); *cf.* WHCA ¶ 9 ("likely to result in the collection of hundreds of thousands of documents needing to be processed and reviewed"), DISA ¶¶ 10, 12 (same), NSA ¶ 33 ("enormous man hours"), DHS ¶ 11, ODNI ¶ 32 ("significant man hours"), OPM ¶ 9 (describing "700 manhours with significant unknowns" as a "best-case scenario");

- Would face severe challenges due to legacy systems and/or the decentralized nature of procurements and procurement records, *see* DHS ¶ 6, STATE ¶ 10, CIA ¶ 28, NSA ¶¶ 31, 34, ODNI ¶ 27, STATE ¶ 10, NASA ¶¶ 8, 11-12, WHCA ¶ 9, OMB ¶ 14, GSA ¶ 7, FBI ¶ 7, OPM ¶¶ 6-7;

- Would need to undertake time-intensive processes to locate responsive non-classified documents on classified systems, and review and redact classified material from partially classified documents, *see* DHS ¶ 7, NASA ¶ 13, CIA ¶¶ 30-35, NSA ¶¶ 29-31, 33, ODNI ¶¶ 27-30, FBI ¶¶ 13-14;

- Would be burdened by identifying and logging many documents seeking internal, pre-decisional deliberations that are likely privileged and would add minimal information beyond agency-wide procurement policies, *see* NASA ¶ 12, DHS ¶¶ 8-9, WHCA ¶ 11, DISA ¶ 12, STATE ¶¶ 11-14, LABOR ¶ 13, STATE ¶ 12, CIA ¶ 36, OMB ¶¶ 17-18, GSA ¶¶ 9-11; and

- Are unable to produce documents due to federal statutes that prevent them from sharing confidential information of other non-parties, *see* DOL ¶¶ 11-12 (CIPSEA), CIA ¶ 36 (National Security Act, Central Intelligence Agency Act, and Privacy Act), NSA ¶¶ 5, 9, 24-27 (National Security Act, Intelligence Reform and Terrorism Prevention Act); ODNI ¶¶ 25, 31 (National Security Act, Central Intelligence Agency Act).

The intelligence community ("IC") agencies explain that they are further burdened by this discovery. First, while Apple has stated that it is not seeking classified information, Apple's requests implicate national security and classified information, such that confirmation of the existence or non-existence of certain responsive records by one of the IC agencies may itself violate Executive Order 13526 and the National Security Act. *See* CIA ¶¶ 15, 18-26, 31, NSA ¶¶ 5, 9, 16-21, 23-27, ODNI ¶¶ 4, 17-25. Second, since most IC agency systems are decentralized and documents are primarily maintained in classified settings, any search for responsive documents would be remarkably burdensome and time consuming. *See* CIA ¶¶ 28, 30, 36-37, ODNI ¶ 27, NSA ¶¶ 28-34; *see also* DHS ¶ 7. Third, should any responsive documents be identified, they are by their very nature, likely to be classified or otherwise protected from disclosure by statute. *See* CIA ¶¶ 35-36, NSA ¶¶ 21, 29-30, ODNI ¶ 31; *see also* DHS ¶¶ 8, 10 (also implicating the law enforcement privilege), DOL ¶ 13, STATE ¶ 11. Finally,

the work to respond to Apple's requests would divert limited resources from the missions of each of these agencies. *See* CIA ¶¶ 27, 29, 35, 38, NSA ¶¶ 22, 23-25 (classified disclosures), ¶¶ 28-29, 31-34 (undue burden and disruption), ODNI ¶¶ 26-32 (undue burden); *see also* DHS ¶ 6 (unquantifiable burden), STATE ¶¶ 9-10, WHCA ¶ 10, DISA ¶ 11 ("directly diverting core personnel away from critical combat missions . . . such as the ongoing war with Iran").

Reconsideration is warranted here, as the agency declarations demonstrate that Apple's requests pose undue burdens that are disproportionate to the needs of the case.

**3.     The Order Clearly Erred In Assessing Relevance and Proportionality.** The Order found that the discovery sought was "relevant" but did not assess the degree of relevance. *See* Order at 6-8. Here, the burdens of compliance have been further substantiated. To determine "whether the burden or expense of the proposed discovery outweighs its likely benefit," FRCP 26(b)(1), the Special Master should engage with arguments that the discovery is, at best, minimally relevant. Dkt. 422 at 18-20; *see, e.g.*, *LAE Techs. Hong Kong Ltd. v. Demuren*, 2024 WL 863464, at *5 n.1 (D.N.J. Feb. 29, 2024) ("Given the minimal relevance of the requests, the Court also finds that it would be unduly burdensome to require Mr. Demuren to search for the requested information."); *Harrington v. Bergen Cnty.*, 2017 WL 4387373, at *2 (D.N.J. Oct. 3, 2017) (denying discovery of information that, if relevant, had only a "marginal nexus" to the case, that did not outweigh the burden).

Here, if the information sought is relevant, the degree of relevance is "minimal." *See* Dkt. 422 at 18. The parties agree: the agencies do not purchase smartphones as ordinary consumers do in the relevant market. *See* Dkt. 422 at 3, 13. Even if data and information from these agencies' procurement of smartphones have relevance, the agencies have procurement, security, and mission requirements that differ from ordinary consumers, with at most a remote connection to the factual issues in this case. Apple has not argued that it needs this information to fill gaps about consumers in the relevant market. As to documents concerning privacy and security, antitrust law is clear that a "procompetitive benefit must justify '[]the specific [conduct] here in question.'" *United States v. Google LLC*, 747 F. Supp. 3d 1, 171 (D.D.C. 2024) (addressing Sherman Act § 2) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 71 (D.C. Cir. 2001)); *see also Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 98 (2021) (Sherman Act § 1 requires "procompetitive rationale for its restraints"). There is at best minimal relevance to privacy and security assessments that relate to smartphones generally but are unrelated to the challenged conduct—especially when the federal agencies do not typically make use of the smartphone technologies at issue. *See supra* p. 3 (smartphone use restrictions on agency employees); Dkt. 422 at 14. Instead, courts reject discovery of an agency's market conduct when the degree of relevance has not been adequately shown. *E.g.*, *UBS*, 2020 WL 7062789 at *7-10 (denying discovery of Treasury's policy analyses and HUD's market conduct where defendant "fail[ed] to shed any light on any purported similarities" with defendant's own allegedly fraudulent conduct); *United States v. Novartis Pharms. Corp.*, 2014 WL 6655703, *4-8 (S.D.N.Y. Nov. 24, 2014) (finding discovery of an agency's market conduct not relevant to whether defendant's own adherence program violated the False Claims Act).

*     *     *

The United States respectfully asks the Special Master to reassess "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1). Properly assessed, these agencies are non-parties for discovery and are owed greater protection under Rule 45. In light of the minimal relevance and undue burden, Apple's discovery is disproportionate to the needs of the case.

4