WALSH PIZZI O'REILLY FALANGA

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

August 13, 2026

**VIA EMAIL**
Honorable Jose L. Linares, U.S.D.J. (ret.)
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102

**Re:** ***United States of America, et al. v. Apple Inc.*, No.: 2:24-cv-04055 (JXN-LDW)**
**Apple's Opposition to the United States' Motion for Reconsideration**

Dear Judge Linares:

Pursuant to the Order of the Special Discovery Master Re: Briefing Schedule for Motion for Reconsideration (Dkt. 492), Defendant Apple Inc. respectfully submits its opposition to Plaintiff United States' Motion for Reconsideration (Dkt. 482) (the "Motion") of the Opinion and Order of the Special Discovery Master Re: Federal Agency Discovery (Dkt. 471) (the "Order").

Respectfully submitted,

*/s/ Liza M. Walsh*
Liza M. Walsh
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry St., 15th Floor
Newark, NJ 07102
(973) 757-1100
Email: lwalsh@walshlaw.com

Attorney for Defendant Apple Inc.

The Special Master's Order is correct and should stand. Reconsideration is "an extraordinary remedy" that "should be granted very sparingly." *Schering Corp. v. Mylan Pharms., Inc.*, 2011 WL 3328940, at *1 (D.N.J. Aug. 1, 2011) (Linares, J.). It is not a vehicle for a do-over and "may not be used to re-litigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Rich v. State*, 294 F. Supp. 3d 266, 272 (D.N.J. 2018). Granting reconsideration requires "(1) intervening change in law; (2) availability of new evidence not previously available; or (3) need to correct a clear error of law or manifest injustice." *McNair v. Synapse Grp., Inc.*, 2011 WL 666036, at *2 (D.N.J. Feb. 14, 2011) (Linares, J.).

The United States satisfies none of these requirements. It does not contend that there has been any intervening change in law; it instead claims clear error and purportedly new evidence. ***First***, the United States fails to show the Order clearly erred in concluding the targeted agencies are subject to party discovery. It merely re-argues positions the Special Master previously (and correctly) rejected. ***Second***, the United States improperly attempts to expand the record with 13 agency declarations it could have presented at any point in the last 13 months since Apple's requests were served but chose not to. Those declarations should be disregarded, and in any event, they do not establish undue burden. Critically, the United States has not made any meaningful effort to reduce its purported burden, either on its own or in consultation with Apple. ***Third***, the United States fails to show clear error in the Order's relevance and proportionality analysis.

## I. THE SPECIAL MASTER CORRECTLY APPLIED THE LEGAL STANDARD FOR PARTY DISCOVERY FROM FEDERAL AGENCIES.

The Special Master correctly held that the federal agencies are subject to party discovery—and the United States identifies no authority to the contrary. The United States argues that the Special Master committed clear error by failing to apply an out-of-district case, *United States v. UBS Securities, LLC*, 2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020), and to perform what the United States believes should be "the correct fact-specific assessments" under *UBS*. Mot. at 1–2. Establishing clear error requires a showing that an order veered from binding precedent or the weight of sister-circuit authority. *See In re Abbott Lab'ys*, 96 F.4th 371, 380 (3d Cir. 2024); *In re Hum. Tissue Prods. Liab. Litig.*, 2009 WL 1560161, at *3 (D.N.J. June 1, 2009). Far from doing any of that, the Special Master correctly applied governing law in concluding that the United States must respond to targeted discovery. Under Rule 26(b)(1), a party must produce non-privileged materials "relevant to any party's claim or defense and proportional to the needs of the case." As arms of the United States, the agencies fall squarely within this rule. *See* Dkt. 422 at 9–12. The United States' claim that it is exempt as a "plaintiff/prosecutor," *see id.* at 16, was made "with no citation to any controlling authority," and the Order correctly "reject[ed] Plaintiff's argument that the [agencies] . . . are shielded from party discovery simply because it is the United States government," Order at 5–6. The United States identifies no binding precedent or persuasive circuit authority in support of its position—because there is none. It just re-argues the same out-of-district cases, amounting to "[m]ere disagreement with the Court's decision," which "does not suffice" for reconsideration. *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010).

The Special Master's Order also accords with the cases on which the United States itself relies. The United States claims that *UBS* "sets forth the applicable legal standard." Mot. at 1. But *UBS* confirms Apple's position: in addition to "agencies that engage in joint investigations," the court there held that party discovery "also" extends to "agencies that inform the policies, rules, and

regulations that the executive branch sets."[1] 2020 WL 7062789, at *6. The Order correctly applied that holding to its factual determination that "the targeted agencies analyze and create policies, protocols, and regulations for the purchasing of smartphones based on security and privacy risks and set government-wide policies based on these analys[e]s," and held that Apple is thus entitled to obtain discovery from those agencies. Order at 6.[2]

The United States now argues, for the first time, that *UBS* limits discovery to agencies with "responsibility for the administration or oversight of the [regulatory policies] that [are] the subject of the United States' complaint." Mot. at 2. That is not what *UBS* held—it is the *UBS* court's description of *Deane v. Dynasplint Sys., Inc.*, 2015 WL 1638022 (E.D. La. Apr. 13, 2015), a False Claims Act case that addressed a narrower factual context involving Medicare reimbursement claims. *See* 2020 WL 7062789, at *4–6. And even in *Deane*, the court held that party discovery extended beyond the agencies that engaged in a joint investigation and ordered discovery from all of the additional agencies from which the defendant sought discovery. 2015 WL 1638022, at *5; *see* Dynasplint's Mot. to Compel at 11–12, No. 2:10-cv-02085 (E.D. La.) (filed Mar. 17, 2015), Dkt. 134-1. Nothing in *UBS* limits the inquiry to external regulatory policies, *see id.* at *5, and the "causal nexus" requirement the United States now invents appears nowhere in the cited cases. *See also* Dkt. 422 at 4, 7 n.4 (identifying example external-facing policies at issue).[3]

## II. THE UNITED STATES' "NEW EVIDENCE" IS IMPROPER AND, EVEN IF CONSIDERED, DOES NOT ESTABLISH UNDUE BURDEN.

The 13 declarations the United States belatedly submitted cannot properly be considered on reconsideration and, even if considered, fail to establish undue burden. And the United States did not submit any declarations from Commerce or FTC—effectively conceding it cannot even argue undue burden for those agencies.

### A. The Newly Submitted Declarations Cannot Be Considered.

The declarations are not "new evidence" that was previously unavailable—and therefore cannot be considered. The United States had every opportunity to present this information at any point in the last 13 months (including with its original brief) but chose not to. Having made that strategic decision, it cannot now use a reconsideration motion to "present evidence that could have been raised prior to the entry of judgment." *Rich*, 294 F. Supp. 3d at 272; *see Corwin v. Brandywine Valley Friends of Old Time Music, Inc.*, 2008 WL 972656, at *1 (D.N.J. Apr. 8, 2008) (movant "bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing"). The Order expressly faulted the United States for this failure, noting that

[1] As the Order noted, the United States omitted this second part of *UBS*' holding in its original brief. *See* Order at 6.

[2] The United States claims Apple purported to quote *UBS* for the phrase "special knowledge and expertise." Mot. at 2 n.5. That language originated in the United States' own draft portion of the joint brief, which Apple quoted in its reply edits. The United States then removed it from its portion on the day of filing. Apple did not intend to attribute the phrase to *UBS* but to the United States' own interpretation of *UBS*. In any event, the Order does not rely on it.

[3] Apple's discovery is independently proper under Rule 45. The Order denied the United States' request to quash after considering each statute invoked. *See* Order at 12. *Touhy* does not alter the analysis because it does not apply when the United States is a party. *See Res. Invs., Inc. v. United States*, 93 Fed. Cl. 373, 380 (2010); Dkt. 422 at 11–12. Even if it did, Apple already complied with the *Touhy* processes, and blanket refusals would not survive review. *See Franchitti v. Cognizant Tech. Sols. Corp.*, 2023 WL 2759075, at *5–7 (D.N.J. Apr. 3, 2023); Dkt. 422 at 2, 12.

its "submission and presentation is devoid of any statistics regarding how many documents will have to be reviewed, how many man hours responding to the subpoenas will require, or the cost it will incur." Order at 9. The belated attempt to supplement the record is precisely the type of gamesmanship the reconsideration standard is designed to prevent.[4] *See Chemi v. Champion Mortg.*, 2006 WL 8458227, at *4 (D.N.J. Aug. 14, 2006) (refusing to consider affidavits on reconsideration because they "could have been compiled and submitted in the first place").

### B. Even If Considered, The Declarations Do Not Establish Undue Burden.

The declarations are substantively deficient, and none establishes undue burden. Some do not even attempt to quantify burden. *See, e.g.*, NSA ¶ 33 ("enormous man hours"); ODNI ¶ 32 ("significant man hours"); DHS ¶ 6 (agency "cannot currently estimate" the work required). Others provide numbers without explaining what was searched, where, or for which RFPs. *See, e.g.*, State ¶¶ 6–10 (estimating over 37,000 hours without explaining search parameters); NASA ¶ 11 (claiming 194,000 email hits from "illustrativ[e]" searches without disclosing search terms or custodians); OMB ¶ 13 (asserting "more than 24 million hits" from unspecified "preliminary search terms"). Without knowing the search scope or methodology, neither Apple nor the Court can assess the claimed burden. "[U]nsubstantiated claims of burden and expense are insufficient to withhold otherwise relevant discovery." *Johnson & Johnson Healthcare Servs. v. SaveOnSp, LLC*, 2024 WL 2803284, at *3 (D.N.J. May 31, 2024); *see also Reid v. Cumberland Cty.*, 34 F. Supp. 3d 396, 414–15 (D.N.J. 2013) (affidavit insufficient where it merely "asserts projected times" without addressing volume, cost, or extraction difficulty).

The United States also cannot credibly claim undue burden without having made any good-faith efforts to reduce it. The United States has not even attempted to use standard discovery tools to address its purported burden concerns. It has never proposed search terms, custodians, or targeted collections, or made any proposal to Apple in an effort to comply with the Order. The declarations instead manufacture worst-case scenarios—running overbroad searches without appropriate filtering, *see, e.g.*, OMB ¶ 13, or citing legacy systems and decentralized procurement, *see* DHS ¶ 6; State ¶ 10; OPM ¶¶ 6–7—to un-do the Special Master's Order. These are precisely the challenges a reasonable search protocol would address, not barriers to discovery altogether. The declarations themselves confirm the agencies are more than capable of complying: several maintain dedicated discovery teams that routinely produce documents in various proceedings. *See, e.g.*, FBI ¶¶ 8–16; CIA ¶¶ 1–3, 27.[5]

---

[4] The United States misquotes Local Rule 72.1(c)(1). The quoted language—that the Court "may [] receive further evidence," Mot. at 2 n.7—does not appear anywhere in subsection (c)(1) (Non-Dispositive Orders). It does appear in subsection (c)(2) (Proposed Findings and Recommendations), but that governs a different procedural posture inapplicable here. Under the applicable standard, a district judge "must not consider evidence not presented before the magistrate judge." *Sabinsa Corp. v. HerbaKraft, Inc.*, 2022 WL 17446485, at *2 (D.N.J. Dec. 6, 2022).

[5] The Order also correctly held that national security is not implicated "merely because of which agencies Defendant subpoenaed." Order at 11. Apple is not seeking classified information, and the state secrets privilege requires a showing that specific information should not be divulged in the interest of national security. *Id.* at 7, 11. Moreover, E.O. 13526's Glomar provisions do not apply to party discovery or Rule 45 subpoenas, and the National Security Act creates no categorical discovery exemption. *See* E.O. 13526, § 3.6; 50 U.S.C. § 3024. The United States can log any valid privilege claims, *see* Order at 12, and designate confidential materials under the protective order, *see* Dkt. 235.

## III. THE RELEVANCE AND PROPORTIONALITY FINDINGS ARE CORRECT.

The Special Master's relevance and proportionality findings are well-supported and consistent with Rule 26(b)(1). Under that framework, "[a] party moving to compel bears the initial burden of showing the relevance of the requested information," upon which "[t]he burden . . . shifts to the party resisting discovery to justify withholding it." *Lloyd-Jones v. Connolly*, 2022 WL 3572837, at *5 (D.N.J. Aug. 19, 2022). Based on a detailed, RFP-by-RFP analysis, the Special Master concluded that "all of Defendant's [RFPs] are relevant to [the United States'] ***core allegations***," which revolve around whether Apple "reduce[d] competition in the markets . . . by delaying, degrading, or outright blocking technologies that would increase competition in the smartphone markets by decreasing barriers to switching to another smartphone." Order at 6–7 (emphasis added). For example, the Special Master held that agency procurement documents and evaluations of Apple products may support Apple's "position that its procompetitive reasons are not pretextual," and that agency assessments of competing platforms are relevant for the same reasons. *See id.* at 7. He then found the United States had not presented any "hallmark burden and proportionality factors," and rejected its blanket invocation of various privileges. *Id.* at 9–12.

The United States' only response—that relevance is "minimal" because agencies are not "ordinary consumers"—mischaracterizes the Order's reasoning. *See* Mot. at 4. As the Order correctly held, "to the extent the Federal Agencies have analyzed the security and privacy concerns Defendant claims are the reasons for why its systems are the way they are, such an analysis would be relevant to support its position that its procompetitive reasons are not pretextual." Order at 7. Whether the agencies are "ordinary consumers" is beside the point; what matters is how they view and evaluate iPhone as compared to its competitors and whether their assessments support Plaintiffs' or Apple's position about certain design choices. Discovery into the validity of Apple's procompetitive justifications is crucial to its defenses. *See, e.g., Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd.*, 838 F.3d 421, 438–39 (3d Cir. 2016). Indeed, the agencies' own declarations support Apple's position: for example, both OMB and NASA admit that they possess documents about smartphone procurement and security policies.[6]

The proportionality balance likewise favors discovery. Plaintiffs have brought a sweeping case with wide-ranging allegations; the pre-litigation investigation alone lasted four years and produced millions of documents; and Apple has produced millions more in discovery to date. Against that backdrop, the United States cannot credibly argue that producing ***any*** documents from its own agencies that plainly possess relevant materials would be disproportionate—particularly where Apple seeks only a narrow set of relevant materials from a limited number of agencies and has no alternative means to obtain them. The United States has failed to substantiate any countervailing burden, and it has no basis to withhold these materials. *See* Order at 7, 9.

* * *

The Motion fails at every level. Its legal arguments are impermissible re-litigation; its "new evidence" was always available and cannot properly be considered; and even on the merits, the declarations do not establish undue burden. Apple respectfully requests that the Motion be denied.

---

[6] OMB admits it "has a role in setting certain government-wide procurement policies" and "issuing guidance to federal agencies on government-wide policies," including policies related to telecommunications equipment. OMB ¶¶ 8–9. NASA admits it can produce smartphone procurement information and procurement or security policies. NASA ¶ 10.