**U.S. Department of Justice**

Antitrust Division

*San Francisco Office*
*450 Golden Gate Avenue, Suite 10-0101*
*San Francisco, CA 94102*

September 2, 2026

**VIA ECF**
Honorable Leda Dunn Wettre, U.S.M.J.
U.S. District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**Re:** ***United States of America, et al. v. Apple Inc.,*** **No. 2:24-cv-04055 (JXN-LDW)**
**Joint Status Letter**

Dear Judge Wettre:

The United States and the Plaintiff States (collectively, "Plaintiffs") and Defendant Apple Inc. ("Apple" and collectively, "Parties") respectfully submit this Joint Status Letter in advance of the upcoming case management conference to be held on September 16, 2026, as directed by the Court's Order Scheduling Case Management Conferences, ECF No. 470.

## I. STATUS UPDATE SINCE JUNE 23 CASE MANAGEMENT CONFERENCE

Since the last Case Management Conference on June 23, 2026, the Parties have continued to work towards the discovery deadlines set in the Court's Order and Amended Scheduling Order dated January 30, 2026, ECF No. 368, and Amended Scheduling Order dated April 6, 2026, ECF No. 408. As discussed in Section II below, Plaintiffs continue to have concerns about Apple's delays in the deposition schedule and prefer resolving deposition scheduling to pushing back the already-extended discovery schedule. Apple has concerns about Plaintiffs' delays in completing their document productions and depositions and about whether the Parties can satisfy the current discovery schedule, and thus proposes extending the deadlines in the current schedule to the same extent they are extended in the coordinated MDL.

**Plaintiffs' Document Production:** The Antitrust Division made an investigative file production on January 23, 2026, and produced an accompanying privilege log on March 9, 2026. The Antitrust Division made two supplemental investigative file productions on June 1 and 30, 2026. Plaintiff States made their investigative file production on June 13, 2025, made supplemental investigative file productions through January 6, 2026, and produced an accompanying privilege

log on November 3, 2025 (with their latest amendment served on April 15, 2026). Plaintiffs have produced approximately 116,000 documents.

On July 29, 2026, the Antitrust Division agreed to produce documents in response to Request Nos. 11, 26–32 and 34 of Apple's First Set of Requests for Production served on June 20, 2025. Although the Parties are continuing to discuss the scope of the Antitrust Division's search for responsive documents, the Antitrust Division will make its initial production on September 4, 2026, and will continue to make rolling productions until complete. The Antitrust Division is currently waiting for Apple's response to the search terms it sent on August 21, 2026 for a subset of Apple's RFPs. Assuming Apple accepts these search terms, the Antitrust Division anticipates completing their production by October 15, 2026. Apple believes that it is unlikely the Antitrust Division will complete its productions for all outstanding requests by October 15, 2026, given the state of the parties' negotiations.

Plaintiff States have produced certain documents from the Antitrust Divisions of their respective State Attorney General Offices in response to Apple's First Set of Requests for Production served on June 30, 2025. The Parties are continuing to negotiate a search protocol proposal for the Plaintiff States' document productions. After Plaintiff States made their productions and many months of negotiations and exchanged letters, for the first time, Apple sent a search protocol proposal to the Plaintiff States on July 10, 2026. On August 14, 2026, 10 of the 20 Plaintiff States sent their preliminary hit reports for Apple's proposal. The Plaintiff States sent Apple a search counterproposal on August 27. Apple responded that it cannot meaningfully engage with the counterproposal until the Plaintiff States provided the basic information required under the ESI Protocol such as the complete hit report information, including de-duplicated hit counts, custodians, and file sources, from all 20 States. If the Parties are not able to resolve these negotiations promptly, Apple intends to file a notice of impasse with the Court to seek its guidance. The States remain committed to continuing to negotiate in good faith and completing productions of any remaining documents as soon as possible, and therefore, any notice of impasse would be premature.

**Apple's Document Production:** Apple has produced more than 2 million documents in the litigation to date, consisting of over 18.6 million pages. Apple also produced millions of documents during the investigation. The Parties continue negotiations over certain document production issues. Should those discussions ripen into disputes for the Court's resolution, the Parties will present them through the Special Master process. The Parties briefly summarize the two issues, though Apple disagrees that it is appropriate to include these pre-impasse, potential disputes in the joint status letter.

*First*, on May 21, 2026, Plaintiffs served RFP No. 75, a request for "[a]ll documents relating to Apple's evaluation, development, implementation, and announcement of end-to-end encryption of the Rich Communication Services (RCS) messaging protocol from January 1, 2014 through May 21, 2026, with a refresh production to capture documents created between this date and the end of fact discovery." Apple proposed to conduct a refresh collection from a relevant custodian, and to search and produce that custodian's files for documents responsive to RFP No. 75 from the existing discovery cutoff date of June 20, 2025 through the date of that refresh collection in July 2026. Apple completed its production of responsive documents identified as a

result of that search on August 28, 2026. Plaintiffs nonetheless believe that (1) documents from other custodians contain relevant information and should be produced in response to the request, and (2) Apple's proposed time limitation is unreasonably restrictive because responsive documents are likely to be created after July 2026.

*Second*, Plaintiffs' RFPs include requests for all "Technical Documentation" related to each Identified Product or Service. Plaintiffs define "Technical Documentation" in their RFPs to mean "all documents (whether public or private) relating to the design, use, function, implementation, or operation of any API, Library, application, SDK, Framework, operating system, or any other software artifact." Apple and Plaintiffs have previously met and conferred over Apple's objections to this request and the scope of what Apple would agree to produce. In response to Plaintiffs' recent inquiries about the production of Technical Documentation, Apple has directed Plaintiffs to specific categories of documents and exemplar documents within its productions of custodial files and targeted collections, as well as publicly available documentation relating to the requested topics. However, Plaintiffs maintain that they are unable to locate the requested Technical Documentation in Apple's productions. The Parties continue to engage in discussions over Apple's production of Technical Documentation and if they are unable to reach a resolution will submit this issue for resolution through the Special Master process.

**Apple's Data Productions:** On June 20, 2025, Plaintiffs served their First Set of Requests for Production which included several requests for Apple's databases, data sets, and supporting documentation. On March 3, 2026, the Parties informed the Court of their agreement that Apple would substantially complete its full data productions, on a rolling basis, six weeks after the Parties agree on the parameters for production of a database or data set. ECF 383. On April 6, 2026, the Court set June 10, 2026, as the date for substantial completion of Apple's data productions. ECF No. 408. On April 29 and May 14, 2026, Plaintiffs took Apple's Rule 30(b)(6) depositions, which Plaintiffs maintain enabled the Parties to engage in more effective negotiations over Apple's data productions. On May 13, 2026, the Parties advised the Court that "[w]hile the Parties had anticipated reaching agreement by now, the Parties are discussing and negotiating parameters for full productions from each identified data source based on the data samples, the supplemental response, and the deposition completed to date" and requested permission to update that deadline to be six weeks after the Parties agreed on production parameters for each database or data set. The Parties informed the Court that they anticipated reaching agreement on parameters for full productions by June 5, 2026, to facilitate substantial completion of all data productions by July 17, 2026. ECF No. 434 at 4. Since the June 23, 2026 case management conference, the Parties have submitted joint status updates to the Court regarding data discovery on July 10 (ECF No. 466); July 31 (ECF No. 489); and August 21 (ECF No. 497). Pursuant to the Court's Order, the Parties will provide another status update on September 11, 2026. ECF No. 499.

The Parties continue to negotiate over Apple's production of data. While the Parties anticipate further making progress on outstanding data issues, Plaintiffs may seek the Court's assistance if the Parties reach an impasse or delay threatens to impinge upon the discovery and expert report schedule.

**Agency Discovery:** On June 20, 2025, Apple propounded its First Set of Requests for Production of Documents Directed to Plaintiffs. In November and December 2025—at Plaintiffs'

request—Apple served subpoenas on 14 federal agencies and 91 state agencies. On April 16, 2026, the United States and Apple submitted to the Court a joint dispute concerning discovery from the federal agencies. ECF No. 422. On June 26, 2026, the Court referred the discovery dispute to Special Master Linares. ECF No. 462. On July 14, 2026, Special Master Linares issued the Opinion and Order of the Special Discovery Master Re: Federal Agency Discovery ("Agency Discovery Order") ordering the United States to respond to Apple's federal agency document requests. ECF No. 471. On July 28, 2026, the United States moved for reconsideration of the Agency Discovery Order, supported by thirteen declarations from the subpoenaed agencies including several from the intelligence community. ECF No. 482. Apple submitted its opposition on August 13, 2026. ECF No. 493. Special Master Linares denied the United States' motion for reconsideration on August 26, 2026. ECF No. 501. The United States plans to appeal the Special Master's ruling by September 9, 2026. Meanwhile, several agencies are undertaking a reasonable burden to identify and review potentially responsive and targeted documents.

Several State agencies have produced documents in response to Apple's subpoenas. Apple continues to meet and confer with the subpoenaed State agencies. Productions are ongoing.

**Depositions of Apple Witnesses:** On April 7, 2026, Plaintiffs requested Rule 30(b)(1) depositions of eight Apple witnesses. Plaintiffs deposed six of those Apple witnesses between June 16 and July 22; two more are scheduled to take place in October.

On May 27, 2026, Plaintiffs requested Rule 30(b)(1) depositions of fourteen more Apple witnesses. Five of those depositions are scheduled to take place between September 15 and October 13. Depositions of two witnesses remain to be scheduled. Apple has offered dates for depositions of seven additional witnesses to Plaintiffs between November 5 and January 19 but conditioned those depositions on the MDL Plaintiffs committing to taking those witnesses' depositions on a second consecutive day. As described below, Apple maintains that its proposal is consistent with the Court's guidance on deposition coordination between these actions; Plaintiffs disagree.

On August 7, 2026, Plaintiffs requested Rule 30(b)(1) depositions of nine more Apple witnesses. Apple has offered deposition dates for two witnesses, on December 10 and January 26 (three days before the current fact discovery cutoff), but not yet provided availability for the remaining seven. Apple is coordinating with the witnesses and will provide dates as soon as practicable. Disputes concerning the scheduling of Apple witness depositions are discussed below.

**Third Party Discovery:** Plaintiffs and Apple have collectively served subpoenas on 75 non-government third parties, one of which they have mutually withdrawn. Plaintiffs and Apple have received document productions from 50 third parties and expect to receive document productions from the remaining parties in the coming months. Plaintiffs expect to serve a limited number of additional third-party subpoenas. Apple expects that it will serve additional third-party subpoenas, primarily as MDL Plaintiffs serve additional third-party subpoenas. Apple has discussed depositions with several third parties and expects to begin issuing deposition notices in the near term.

On August 21, 2026, Apple and Match Group, Inc. submitted a joint letter concerning a dispute over Match's compliance with Apple's subpoena, and on August 28, 2026, Apple filed its letter-brief in connection with that dispute. *See* ECF No. 495; ECF No. 505. Also on August 28, 2026, Apple filed in the Northern District of California a motion to compel compliance with a subpoena served on Meta Platforms, Inc., and to transfer the motion to this Court pursuant to Federal Rule of Civil Procedure 45(f).[1] *See In re Apple Inc.'s Application for Order Compelling Compliance with Non-Party Subpoena*, 3:26-mc-80274 (N.D. Cal.). The Parties anticipate seeking the Court's assistance in resolving disputes with one or more other third parties, though in many instances negotiations are still ongoing.

**Deposition Protocol:** Following the June 23, 2026 case management conference in the MDL, the Court entered an order in both the Government Action and the MDL, ordering the parties to submit a "comprehensive, jointly proposed deposition protocol covering the actions." ECF No. 463; MDL ECF No. 215. On August 26, 2026, Apple sent to Plaintiffs in both actions a "Proposed Deposition Protocol," noting that the proposal contained provisions that "affect the Government Action."

The parties have only begun to confer on Apple's proposal. Plaintiffs believe that, upon their initial review, Apple's protocol appears to abrogate and/or substantially modify terms in the existing protocol already agreed by the Parties and adopted by the Case Management Order in this case in June 2025. *See* ECF No. 270 at 3 (adopting agreed-upon protocols including ECF No. 254-2 at 13). Plaintiffs have already taken Rule 30(b)(1) depositions of six Apple witnesses and Rule 30(b)(6) depositions of two Apple data witnesses under the existing protocol. Plaintiffs are prepared to meet-and-confer with Apple concerning deposition procedures but do not see good cause to modify terms to which the Parties previously agreed and that the Court adopted. Apple believes the parties should continue conferring to reach agreement on as many provisions as possible and then, if necessary, ask the Court to resolve any outstanding disagreements, especially regarding provisions that apply to depositions in both actions.

## II. NEW CASE MANAGEMENT ISSUES

The Parties seek the Court's guidance on the following issues.

### A. *Deposition Scheduling*

<u>Plaintiffs' Position:</u>

Apple's approach to deposition scheduling continues to create delays and undermine the Court's discovery schedule. After Plaintiffs raised this issue at the status conference on June 23, 2026, the Court indicated it would hear Plaintiffs' concerns if those issues persisted. Plaintiffs thus seek the Court's assistance in requiring Apple to (1) provide a range of their witnesses' availability within 10 days of receiving a notice of intent to depose a party witness, and (2) barring exceptional circumstances, propose deposition dates within a reasonable window, approximately 30 days from

---

[1] Because Meta did not consent to proceeding in this Court in the first instance, the motion was filed in the Northern District of California pursuant to Federal Rule of Civil Procedure 45(d).

receiving Plaintiffs' notice of intent to depose. Plaintiffs' request is consistent with the "reasonable notice" requirement of Rule 30(b)(1) of the Federal Rules of Civil Procedure. *See, e.g., Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 9481235, at *2 (D.N.J. Nov. 1, 2017) (14 days' notice reasonable); *Washington v. Thurgood Marshall Academy,* 230 F.R.D. 18 (D.D.C. 2005) (29 days was reasonable time to comply with subpoena); *Paige v. Consumer Programs, Inc.*, 248 F.R.D. 272, 275 (C.D. Cal. 2008) (same); *Hallum v. Four Corners OB-GYN*, 2021 WL 2894244, at *2 (D. Colo. July 9, 2021) (same); *Kendall v. Doe*, 2023 WL 2482680, at *1 (D. Mass. Mar. 13, 2023) (10 days' notice reasonable).

The process for scheduling depositions has been subject to a pattern. As required by the Case Management Order,[2] on April 7, May 27, and August 7, Plaintiffs sent written requests to Apple identifying witnesses and asking for their availability within a reasonable timeframe. After several weeks passed, Apple provided dates for some but not all witnesses. Most of Apple's proposed dates have been outside the requested window. For three witnesses, Apple proposed dates more than five months after Plaintiffs sent their written request. Another three are more than six months from Plaintiffs' request, and one now approaches seven months. This process is untenable.

Apple's belated document productions have compounded the problem, delaying scheduled depositions. Most recently, Apple produced more than 10,000 documents, consisting of over 163,700 pages of materials and over 2,000 large excel files, on the night of August 4, one week before the August 12 deposition of a priority custodian whose documents should have been produced on April 3 pursuant to the Parties' agreement and Apple's written confirmation of substantial completion on April 7.[3] Based on Apple's substantial, last-minute production, Plaintiffs requested that Apple provide a new deposition date as early as August 19; however, Apple would not make that witness available again until October 7—eight weeks after his scheduled deposition. In another example, on July 7, Apple notified Plaintiffs that it would produce custodial documents for a witness whose deposition was scheduled on July 9 in response to RFP No. 75 concerning end-to-end encryption for RCS messaging, even though Plaintiffs served that document request more than six weeks earlier. Apple spills considerable ink to claim that Plaintiffs should have expected an additional document production for this witness, but at no point until two days before his scheduled deposition did Apple inform Plaintiffs that Apple intended to produce his files in response to RFP 75. Apple just agreed to make this witness available on October 2—nearly three months after his originally scheduled deposition.

Apple's contention that the deposition scheduling process is working well lacks credibility. Apple concedes that it has regularly failed to provide deposition dates for two to three months after receiving Plaintiffs' written requests. Even when Apple has identified deposition dates, those dates have come with strings attached and subject to Apple's future unilateral delays. Apple has

---

[2] ECF No. 270 at 3 (adopting agreed-upon protocols including ECF No. 254-2 at 13).

[3] Apple has produced thousands of documents since the substantial completion deadline passed on June 15, 2026. Apple cited a "technical issue" for the delayed production of this custodian's documents but has not explained what steps, if any, it has taken to address the problem. Plaintiffs are concerned that custodial productions of documents requested in this case could continue to be made after depositions have already been taken.

repeatedly proposed depositions dates in this action only if the MDL Plaintiffs agree to depose the witness on a second consecutive day. Apple has moved depositions of six witnesses for this purpose—delaying multiple depositions by as many as 105 days—but then continued to insist on the same conditions for the new dates. In the spirit of compromise, Plaintiffs have agreed to delay certain depositions of Apple's most senior executives, and Apple has agreed to allow seven other depositions to go forward uncoupled from the MDL. But each deposition date should not be subject to repeated negotiation. Nor should Plaintiffs be hamstrung in litigating their case in the event Apple fails to make timely custodial productions to the MDL Plaintiffs such that they cannot accept Apple's second, consecutive days. Rather, Plaintiffs should be able to rely upon any date Apple identifies for a deposition as indicating that Apple will keep its commitment to that date and timely satisfy all other prerequisites to proceeding on that date.

Apple's assertion that Plaintiffs have somehow disrupted the deposition scheduling process is a red herring. Apple has not requested a single deposition of any Plaintiff and so has no basis to complain about deposition scheduling whatsoever.

This afternoon—after five months of refusing to respond promptly to Plaintiffs' requests for deposition dates—Apple informed Plaintiffs that it would agree to provide its witnesses' deposition availability within 10 business days of receiving a request, but Apple still refuses to make its witnesses available within a reasonable window. Apple's proposal would still hinder the prompt completion of discovery and leave Apple free to delay depositions of critical witnesses for months on end.

Because this action seeks injunctive relief only, continued delay is an acute concern for Plaintiffs and U.S. consumers as a whole, as Congress has directed that antitrust enforcement actions to stop ongoing harm be treated with special urgency by both the parties and courts. *See United States v. Dentsply*, 190 F.R.D. 140, 145 (D. Del. 1999) (noting "congressional recognition of the primacy of antitrust enforcement actions brought by the United States, and that such actions are of special urgency and serve a different purpose than private damages suits because they seek to enjoin ongoing anticompetitive conduct"); *United States v. Agri Stats, Inc.*, 2024 WL 3061570, at *5 (D. Minn. May 17, 2024) ("The United States, unlike private plaintiffs who seek damages, has the responsibility of protecting the public from anticompetitive behavior by seeking speedy injunctive relief when it finds a violation of antitrust law."). Nearly 30 months have elapsed since Plaintiffs filed their case, and fact discovery is not near closing. Although Plaintiffs recognize the value of discovery coordination as described in the Pretrial Scheduling Order, their case cannot be further delayed by the MDL action. *See* ECF No. 270 at 6 (providing for discovery coordination so the parties could "endeavor to avoid duplicative discovery between this case and the [MDL] to the extent feasible without delaying the progress of this case").

For future depositions, Plaintiffs again respectfully request that the Court order Apple to adhere to a deposition scheduling process whereby Apple provides, within 10 days of receiving a notice of intent to depose, a range of dates when each witness is available to testify within a reasonable window of approximately 30 days from receiving Plaintiffs' notice, absent exceptional circumstances.

<u>Apple's Position:</u>

The deposition scheduling process continues to work well. The Parties have completed six Rule 30(b)(1) depositions; thirteen more are scheduled. Apple is actively working to provide availability for twelve more witnesses, including some of Apple's most senior executives. The Parties' deposition scheduling efforts have been cooperative.

In a good-faith effort to reach a compromise on Plaintiffs' scheduling issue, Apple has informed Plaintiffs that going forward, it will provide its witnesses' deposition availability within 10 business days of receiving a request for availability (unless the requested witness is out of the office at the time or is a former employee, in which case Apple will provide availability at the soonest practicable time), subject to the Court resolving the open request to extend the case schedule. Apple disagrees, however, that witnesses must sit for their depositions within 30 days of Plaintiffs seeking their availability. Just as there was no need in June 2026 for the Court to set so rigid an interim deadline on the scheduling of depositions, there is no need for the Court to do so now.

A close examination of the record disproves any need for Plaintiffs' requested relief:

- On April 8, 2026, Plaintiffs requested the first eight depositions of Apple witnesses, and asked that the depositions be scheduled between May 11, 2026 and June 12, 2026 (more than 30 days away). Apple provided availability for seven of those eight witnesses the same month, offering deposition dates in May, June, and July. Apple provided the eighth witness's availability on May 7; he was deposed in July.

- On May 27, 2026, Plaintiffs requested the next round of fourteen depositions of Apple witnesses, this time asking that the depositions be scheduled in August or September. In July, Apple provided availability for eleven of those fourteen witnesses, offering dates that ranged from August through November. In August, Apple provided availability for two of the three remaining witnesses. Apple continues to work on availability for the final witness in this group, who is a former employee and who has been the subject of recent discussions between the Parties regarding the necessity of his deposition.

- On August 7, 2026, Plaintiffs requested the third round of nine depositions of Apple witnesses. Plaintiffs asked that the depositions be scheduled between September 21, 2026 and November 20, 2026. Apple is continuing to work on availability for these witnesses, which has been complicated by the Parties' discussions in recent weeks over the timing of MDL document productions (given the Special Master orders concerning the scope of discovery and the TAR validation process) and a potential extension of the case schedule.

Plaintiffs are seeking to depose senior Apple executives. Apple is making those witnesses available for their depositions within the fact discovery period. The touchstone for deposition scheduling should continue to be the convenience of the witnesses. To the extent that Plaintiffs' complaints really amount to concerns about the coordination of depositions between the two actions, as suggested by their complaints about Apple's deposition dates in November and December coming "with strings attached," Apple addresses those complaints in the next section.

Plaintiffs' complaints about Apple's document productions are baseless, and on top of that, are not relevant to the scheduling relief Plaintiffs request. Plaintiffs cite two instances in which

document productions have affected deposition dates—and in both cases, it was Plaintiffs who chose to reschedule the depositions, not Apple.

- The first instance involves Plaintiffs' RFP No. 75, which Plaintiffs served on May 21, 2026. That Request sought documents and communications that Plaintiffs knew, or at least should have known, would likely come from the files of a particular document custodian. Plaintiffs nonetheless sought to depose that witness on July 9, 2026, despite knowing that more documents likely would need to be produced from that witness to satisfy the May 21 document request and that the parties would have to have significant discussions over the scope of that request. Apple served its Responses and Objections to Plaintiffs' RFP No. 75 on June 22, 2026, and the Parties began meeting and conferring on the documents to be collected, searched, and reviewed pursuant to that Request. On July 7, 2026, less than 48 hours before the start of the deposition, and despite knowing for weeks that additional documents relevant to the witness's deposition would be produced, Plaintiffs postponed the deposition. Plaintiffs' complaint that Apple offered October 2, 2026 for the rescheduled deposition is meritless, considering the Parties continue to meet-and-confer over the scope of the document productions in response to RFP No. 75, and Apple has thus scheduled the deposition to allow time for the completion of the productions that led to its postponement in the first place.

- The second instance involves a technical issue that led to the production of a subset of about 10,000 documents of one witness's overall production of 250,000 documents on August 4, 2026, eight days prior to his scheduled deposition. Apple swiftly remediated that technical issue once it was discovered—and has no reason to believe that technical issue will affect any other depositions moving forward—and produced the witness's documents in time for his deposition to proceed. Plaintiffs chose to reschedule the deposition anyway. Apple promptly offered a new date: October 7, 2026, which was the witness's earliest available date.

Neither of these two isolated instances in which Plaintiffs—not Apple—rescheduled depositions provides any support for Plaintiffs' requested 30-day deposition scheduling deadline.

Plaintiffs' cited cases—all but one of which are from other jurisdictions—have no bearing here. None involved circumstances comparable to those the Parties face here, with coordinated Government and MDL actions and depositions of senior executives on consecutive dates, the scheduling of which has been significantly impaired by the recent expansion of the scope of Apple's MDL document productions and a protracted schedule for the validation of Apple's TAR process. The sole case Plaintiffs cite from the District of New Jersey, *Engage Healthcare Communications, LLC v. Intellisphere, LLC*, 2017 WL 9481235, at *2 (D.N.J. Nov. 1, 2017), simply cited "legal commentators" who have "opined that 'prevailing practice dictates that counsel should notice depositions at least 14 days—not counting mail time—in advance.'" *Engage* does not suggest that depositions *must* or even *should* be taken two weeks after they are noticed, just that according to some commentators, 14 days is the minimum. All of Plaintiffs' cases concern the minimum notice period, but none involves a court imposing rigid interim deadlines on the scheduling of senior executive depositions like Plaintiffs request.

Plaintiffs' requested relief also fails to account for Plaintiffs' own delays, which are much more severe and disruptive to the case schedule than any purported delays by Apple. Despite having received Apple's document requests more than 14 months ago, and despite being ordered by a Special Master to produce the requested federal agency documents more than six weeks ago, the United States still has not produced a single document outside the investigative file—not one document from any federal agency or even the Antitrust Division itself. Plaintiffs' delay in producing responsive discovery is hindering Apple's ability to schedule and take depositions of Plaintiffs within the current fact-discovery period. Apple needs these documents promptly to begin scheduling Plaintiffs' depositions, including those of certain agency employees.

Apple respectfully requests that the Court continue to permit the Parties to work cooperatively and in good faith to schedule fact depositions on a rolling basis, subject to the Court's fact discovery deadline, and decline to impose Plaintiffs' 30-day deadline for those back-to-back depositions to be taken.

**B. *Deposition Coordination and Case Schedule***

Plaintiffs' Position:

Plaintiffs respectfully ask the Court to deny Apple's latest request to delay this case. After already obtaining extensions to the fact discovery schedule beyond what the Parties ever proposed, Apple now requests yet another four-month extension of the case schedule because despite its extraordinary resources, Apple claims to be unable to get its work for the MDL timely completed. Apple contends that an "*unanticipated, massive expansion of Apple's document productions in the MDL has significantly impaired the parties' efforts to coordinate fact depositions in the Government Action and the MDL because Apple has been impeded from substantially completing any deponent's MDL document production.*" But Apple should not be able to delay this case so it can complete production of its own documents in the MDL and force depositions to take place on consecutive days. That would reward Apple for drawing out the discovery process in the private actions and requiring this enforcement action to be tethered to that schedule. Such an outcome would contravene the congressional prohibition on consolidation of enforcement actions brought by the Department of Justice and the States with private litigation. That the MDL discovery has become a "*massive expansion*"—well beyond the scope of discovery in the Government case—suggests that the two matters lack sufficient overlap to justify keeping the cases on the same track. Plaintiffs should not be prejudiced because of Apple's failure to substantially complete productions in the MDL or the MDL Plaintiffs' decision not to depose Apple witnesses until Apple completes those productions.

With respect to extending the schedule again in this case, some history is worth reviewing.

- On April 1, 2025, Apple proposed an 18-month fact discovery schedule as a "realistic assessment of the time necessary to complete fact discovery in this case as Apple currently understands it[.]" ECF No. 254 at 7; *see also* ECF No. 254-2 at 4. Apple has never suggested that its understanding of Plaintiffs' allegations have changed.

- On June 5, 2025, the Court rejected Apple's proposal and instead adopted a 14-month fact discovery schedule, determining that "All fact discovery shall be completed no later than July 31, 2026," and "Expert discovery, including the depositions of any expert witnesses, shall be completed on or before January 8, 2027." ECF No. 270 at 4.

- On December 12, 2025, Apple asked the Court to extend the deadline for substantial completion of production of documents to June 15, 2026. ECF No. 351 at 1. As Plaintiffs pointed out then, Apple's request for that extension came after "Apple spent months blocking meaningful negotiation by standing on responses that did not comply with Rule 34, only to reverse course in late November [2025] when facing the substantial completion deadline." *Id.* at 6 (footnote omitted).

- On January 30, 2026, the Court granted Apple's request and directed the Parties to submit their respective proposals on the overall discovery schedule, ECF No. 368, which they did on March 3, 2026, ECF No. 384 at 2. Apple then asked the Court to expand the fact discovery schedule to 19 months or until January 29, 2027, and the expert discovery schedule until July 9, 2027. As Plaintiffs explained at the time, Apple's proposed schedule would set this case on a path to the longest time to trial of any antitrust enforcement action in recent years and would force congressionally prohibited consolidation of the government enforcement action and private actions. *Id.* at 5-7.

- On April 6, 2026, the Court entered an Amended Scheduling Order, adopting Apple's proposed schedule. ECF No. 408 at 1.

Apple now wants even more time. The 23-month fact discovery schedule that Apple requests far exceeds any time frame the Parties ever contemplated for this case and would move the fact discovery deadline to the end of May 2027 and the expert discovery deadline to mid-November 2027.

At some point, Apple's delays must end.

Contrary to Apple's suggestion, coordination with the MDL has hindered progress in this case. Specifically, only six Rule 30(b)(1) depositions of Apple witnesses have been taken to date—far short of the 18 witnesses Plaintiffs planned to depose by the end of summer. *See* MDL ECF No. 432, Tr. of Hearing dated April 27, 2026 at 12:22-23, 14:8-10 ("Mr. Sheanin: "So we're looking to late May, sometime in June for these eight depositions….Our intention is to move forward with the first eight. And we will then move forward with the next ten at some point thereafter[.]"). Indeed, had the Parties not agreed to some bifurcation, no Rule 30(b)(1) depositions would have been completed at all. As Plaintiffs explained above, so far Apple has moved depositions of six witnesses—delaying depositions by as many as 105 days—to accommodate consecutive day windows for Plaintiffs and the MDL. If Apple's coordination approach were in fact "in line" with Plaintiffs' prioritized discovery, there would be no reason to extend the schedule in this case. While discovery in this case has been delayed by Apple, Plaintiffs do not require anything close to four additional months.

Apple cites "significant benefits" to coordination without providing any specific examples but conveniently ignores that this Court's coordination order simply required the Parties "to endeavor to avoid duplicative discovery between this case" and the MDL "to the extent feasible ***without delaying the progress of this case.***" ECF No. 270 at 6 (emphasis added). Indeed, Apple's request for four more months of delay demonstrates that Apple's approach to coordination is more of an impediment than benefit. To extend the schedule in this case now because of the "massive expansion" of discovery in the MDL is especially questionable given Apple's representations to the Court last spring to justify aligning schedules and depositions scheduled on consecutive days. In March, Apple told the Court: "90 percent of the discovery that's taken from Apple goes to the merits, whether it's MDL or DOJ.... The default should be one deposition. That's why these cases were coordinated, and that just can't be done if you have different deadlines." Tr. of Hearing dated March 18, 2026 at 27:17-28:6. In April, Apple further noted that "the MDL plaintiffs' document requests overlap to a very significant extent with the Government plaintiff's document requests. So incremental document productions for these witnesses, in our view, will likely be small in any case." MDL ECF No. 432, Tr. of Hearing dated April 27, 2026 17:18-24. Apple has changed its tune. Apple now says that the "incremental" MDL discovery has become so massive as to upend the discovery schedule not only in the MDL but also here. Either Apple has not reliably evaluated and prioritized discovery in the MDL or the overlap in discovery between the actions is less than initially represented by Apple. Either way, Apple's justification to extend the schedule again in this case is a problem of its own making.

Relatedly, the Court should deny Apple's request to require depositions to be scheduled on consecutive days. Although the Court took a pragmatic position when it came to scheduling depositions, that process has proven problematic in practice primarily because of Apple's own discovery delays in the MDL. If Apple wanted depositions of its witnesses to take place on consecutive days, Apple could have prioritized prompt production of documents to the MDL, for example, by implementing TAR for its document production at the beginning of this year, a suggestion Plaintiff made last December. *See* ECF No. 351 at 8 ("*First*, Apple's review would shrink by millions if Apple used TAR to remove irrelevant material, as is common in complex antitrust cases."). Regardless, Plaintiffs have worked to coordinate with the MDL where practicable but must be able to prosecute their own case. The actions do not need to be on the same schedule.

The Sherman Act directs district courts to expeditious resolution of antitrust cases brought by the United States to enforce the Act. *See United States v. Agri Stats, Inc.,* 2026 WL 512503, at *4. (D. Minn. Feb. 24, 2026) (recognizing that Section 4 of the Sherman Act dictates that "the court shall proceed, **as soon as may be**, to the hearing and determination of the case," which counseled in favor of expeditious resolution of a government antitrust enforcement action) (emphasis in original). The MDL statute expressly exempts claims brought by the United States pursuant to the Sherman Act: "Nothing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws." 28 U.S.C. § 1407(g). The exemption allows the United States, acting on behalf of the American people, to avoid the "substantial[] delay[]" that inevitably would arise if the government were forced to coordinate with private litigants in MDL proceedings. *See* H.R. Rep. No. 90-1130 (1968) (statement of Ramsey Clark, Deputy Att'y Gen. of the United States). More recently, Congress amended the MDL statute in 2022 to ensure that other sovereign plaintiffs enforcing federal antitrust laws (like the State Plaintiffs here) are also exempt from involuntary consolidation in MDLs. Consolidated

Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459, 5970 (2023) (amending 28 U.S.C. § 1407(g)-(h)). In doing so, Congress subordinated efficiencies of MDL consolidation in favor of providing the United States and State attorneys general the ability to vindicate antitrust matters expeditiously. Apple's proposed schedule undermines this congressional priority by effectuating consolidation of these actions in all but name. It should be rejected.

Aligning the expert discovery schedules is not a basis for delaying this case. The schedules here and in the MDL diverge after the close of fact discovery, with merits expert discovery proceeding promptly in this action, while the MDL will turn to class certification issues. Plaintiffs always anticipated this divergence, having originally advocated for a 10-month fact discovery schedule, which would have been complete just as discovery in the MDL was getting underway. Plaintiffs do not anticipate the need for additional supplementation of merits expert reports here based on further discovery in the MDL, but the Parties are always able to discuss supplementation should that need later arise.

Nor does third-party discovery require parallel schedules between the MDL and this case. First, discovery has been open in this case since June 2025, but Apple has not taken a single third-party deposition in the last fourteen months. That Apple has been dilatory in pursuing third-party depositions is not a basis for extending the fact discovery schedule. Second, Apple's claim that "each" third party may sit twice for deposition is erroneous. Each party is capped at 75 depositions per side, and the Parties have different priorities and strategy with respect to which third parties to depose. Most of Plaintiffs' subpoenas are follow-ons, and Plaintiffs anticipate deposing only a modest number of total entities subpoenaed. Apple's arguments do not reflect Plaintiffs' anticipated plan for third party discovery. Third, Apple does not explain why the Court should "undoubtedly" expect "countless objections" under Rule 45(d). Plaintiffs are aware of only two discovery disputes between Apple and third parties that have required judicial intervention.[4] Apple does not represent the interests of the third parties and should not dictate when third parties are deposed by way of an aligned schedule between the MDL and this action. Instead, Apple should prioritize depositions of third parties who are going to be deposed here within the case deadlines. To the extent Apple and the MDL want to depose third parties who have only been subpoenaed in the MDL, those depositions can be held at a later date in accordance with the MDL discovery schedule.

Apple's request to extend the schedule to accommodate Plaintiffs' productions is unnecessary. The Department of Justice does not require anything close to four additional months to complete its document production. As stated above, assuming the Parties agree on search terms, the Department of Justice anticipates completing its production by October 15, 2026. The United States will appeal Special Master Linares' orders concerning Apple's discovery of fourteen federal agencies, but in the interim several agencies are identifying and reviewing potentially responsive and targeted documents. If the agencies are unable to timely complete their productions, as ordered by Judge Neals upon review of the Special Master's orders, the United States will advise Apple

[4] Apple brought disputes against Match Group in this Court and Meta in the Northern District of California, both on August 28, 2026.

and the Court at that time. There is no need to extend the schedule to address Plaintiffs' productions now.

Apple has provided no reasonable basis for its proposed four-month extension of the discovery schedule. Nonetheless, in the spirit of compromise, Plaintiffs proposed a reasonable six-week extension of the fact discovery cutoff to March 12, 2027, and the expert discovery schedule to close on August 20, 2027. Apple rejected Plaintiffs' offer out of hand. Should the Court be inclined to extend the discovery schedule, it should also require Apple to refresh its document productions 30 days before the close of fact discovery. During their original negotiations, Plaintiffs agreed to allow Apple to produce documents created through June 20, 2025, for most requests. However, that agreement was based on the Court's original case management schedule. This case seeks injunctive relief to stop Apple from continuing to maintain its smartphone monopoly through wrongful means. Plaintiffs should not be prejudiced in obtaining and presenting evidence of Apple's ongoing anticompetitive conduct by Apple's continued requests to delay the schedule. Rather, Apple must bear the burden associated with its repeated extension requests.

<u>Apple's Position:</u>

Apple respectfully requests that the Court continue to coordinate the Government Action and the MDL for fact discovery purposes—and thus extend the fact discovery deadline in the Government Action by the same length as any extension in the MDL, particularly given the Government Plaintiffs' outstanding document productions—and permit Apple to schedule the depositions of its senior executives on two consecutive days, at least fourteen days after Apple's substantial completion of each deponent's MDL document production.

The Government Action and the MDL have been coordinated for discovery purposes since the start of discovery in June 2025. *See, e.g.*, MDL ECF No. 142 at 19 (coordinating discovery and directing the parties to "endeavor to avoid unnecessarily duplicative discovery to the extent possible"). Since that time, Apple has produced millions of documents in the Government Action, meeting the Court's substantial completion deadline as well as several interim deadlines for priority custodians to which the parties agreed. Apple has completed multiple depositions of its fact witnesses this summer—again in line with the prioritization the Government requested. And Apple has confirmed deposition dates for September and October and offered additional deposition dates for November and December.

There are significant benefits to this case coordination. In creating the MDL, the Judicial Panel on Multidistrict Litigation explained that "[c]entralization of the private litigation in the District of New Jersey before Judge Neals will provide opportunities for coordination with the government action, avoid duplicative discovery, and minimize the risk of inconsistent rulings on overlapping issues." *In re: Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361, 1364 (J.P.M.L. 2024). And this Court has broad authority under Rule 42(a)(3) of the Federal Rules of Civil Procedure to coordinate related cases for discovery purposes. *See, e.g.*, *In re Central European Distribution Corp. Sec. Litig.*, 2012 WL 5465799, at *12 (D.N.J. Nov. 8, 2012) (coordinating some cases and consolidating others).

In the spirit of discovery coordination, the Court has ordered that "[a]bsent agreement of the Parties or order of the Court, fact witnesses will only sit for deposition once between the MDL

and the Government Action collectively." MDL ECF No. 142 at 19. This makes sense, both for the witnesses' convenience and also because of the complexity of preparing witnesses for deposition days that could otherwise be separated by several months. The Court also directed Apple to substantially complete its MDL document production for a given witness at least 14 days prior to that MDL deposition. *See* Apr. 23, 2026 Tr. at 16:15–22. But the unanticipated, massive expansion of Apple's document productions in the MDL has significantly impaired the parties' efforts to coordinate fact depositions in the Government Action and the MDL because Apple has been impeded from substantially completing any deponent's MDL document production. And the MDL Plaintiffs have thus not agreed to depose any Apple witness to date and have indicated that they do not expect to take any depositions before November 2026 at the earliest.

In an effort to keep the Government Action moving forward, Apple agreed several months ago to bifurcate the depositions of the first eight witnesses so that their Government Action depositions could proceed even while the MDL document productions were ongoing. *See* Gov't Action ECF No. 434 at 4, 14–15. Six of those eight depositions have been completed, a seventh is scheduled, and Apple has offered availability for the eighth. More recently, Apple agreed to bifurcate five more depositions, for a total of thirteen bifurcated depositions, and confirmed those deposition dates with the Government, so that they can proceed in September and October, regardless of the status of Apple's MDL document productions. And Apple expects that starting in November, it will be able to move forward with consecutive depositions of its witnesses in both the Government Action and the MDL, has offered consecutive dates for depositions throughout November and December, and is in the process of collecting and providing availability for the additional depositions the Government has requested.

Apple has compromised significantly from its strong preference, and from this Court's expectation, that its witnesses be deposed on consecutive days. But for Apple's most senior executives, Apple should be permitted to schedule those depositions at a time when they can proceed on consecutive dates. This is not a problem of any great magnitude: Apple has postponed just six depositions and has already provided new availability to both the Government and MDL Plaintiffs for five of those depositions for consecutive days in November and December. The depositions will be delayed by at most a few months and some just a matter of weeks, and the Government has plenty of other discovery work—including the seven Apple witnesses whose depositions Apple agreed to bifurcate, and its own discovery obligations—to keep the case moving forward productively in September and October. Permitting Apple to have its most critical personnel sit for their depositions on consecutive days will not materially delay or impair the Government's case in any way. Though Apple has been forced to bifurcate some depositions given the trailing MDL document productions, it should not be required to bifurcate any more.

Apple also asks that if the Court extends the fact discovery deadline in the MDL, the Court extend the fact discovery deadline in the Government Action to the same date. This corresponding extension is critical to maintaining coordination between the Government and MDL. Otherwise, expert discovery would begin in the Government Action while the factual record is still being developed in the MDL. All three rounds of expert reports for the Government Action contemplated in the current schedule would be exchanged before the new proposed fact discovery deadline in the MDL. And the Government Plaintiffs would surely take the position that they are entitled to use any MDL deposition for their case, even if it took place after the fact discovery deadline in the Government Action. That means the parties in the Government Action would face multiple rounds

of supplemental expert reports and/or amendments to expert reports, which is inefficient, would create a needlessly convoluted expert record, and would almost certainly require an extension to the expert discovery deadline.[5]

Keeping the Government Action and the MDL on the same schedule for fact discovery is also the only way to efficiently move forward with the 241 subpoenas on 81 entities that have collectively been served on third parties by Apple, the Government, and the MDL Plaintiffs. Otherwise, not only will any discovery disputes likely be presented to the Court piecemeal and seriatim, but also each third party may have to sit twice for deposition, once in the Government Action and then a second time in the MDL. This Court will undoubtedly see countless objections under Rule 45(d) to that kind of approach in cases that are supposed to be coordinated.

Finally, the Government's document productions remain outstanding for the vast majority of Apple's document requests, which were served fourteen months ago in June 2025. The United States still has not produced a single document outside the Investigative File—not from any federal agency, despite Judge Linares's July 14, 2026 decision ordering them to do so and his August 26, 2026 denial of the United States' motion for reconsideration, or even from the Antitrust Division itself. And the States have produced only a handful of go-get documents to date, with productions still outstanding for a significant number of Apple's requests. More than two months after the substantial completion deadline set by this Court, no Government Plaintiff has committed to any timeline for when it will complete its document production. The requested extension would afford time for the Government Plaintiffs to comply with their discovery obligations, complete their own document productions, and allow Apple time to depose the Government Plaintiffs once their responsive documents have been produced.

Respectfully submitted,

*<u>/s/ Aaron M. Sheanin</u>*
Aaron M. Sheanin
Civil Assistant Chief, San Francisco Office
United States Department of Justice
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102
Telephone: (202) 709-1490
Email: aaron.sheanin@usdoj.gov

*<u>/s/ Liza M. Walsh</u>*
Liza M. Walsh
Douglas E. Arpert
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
Tel.: (973) 757-1100
Email: lwalsh@walsh.law
Email: darpert@walsh.law

[5] Apple disagrees that Plaintiffs' proposed six-week extension of the fact discovery deadline, conditioned on Apple conducting broad, disproportionate, and unduly burdensome refresh productions on top of the millions of documents that Apple has already produced, and in spite of the parties' agreement on a June 20, 2025 discovery cut-off, represents a reasonable compromise.

JENNIFER DAVENPORT
Attorney General of New Jersey

*/s/ David H. Reichenberg*
David H. Reichenberg
Section Chief, Antitrust
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Tel: (609) 696-5271
Email: David.reichenberg@law.njoag.gov

*Attorney for Plaintiff State of New Jersey, Arizona, California, Washington D.C., Connecticut, Indiana, Maine, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New York, North Dakota, Oklahoma, Oregon, Tennessee, Vermont, Washington, and Wisconsin*

Craig S. Primis, P.C.
K. Winn Allen, P.C.
Tracie Bryant, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel.: (202) 389-5000
Email: craig.primis@kirkland.com
Email: winn.allen@kirkland.com
Email: tracie.bryant@kirkland.com

Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Email: devora.allon@kirkland.com
Email: alexia.brancato@kirkland.com

*Attorneys for Defendant Apple Inc.*