WALSH PIZZI O'REILLY FALANGA

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1100
lwalsh@walsh.law

September 4, 2026

**VIA ECF AND EMAIL**
Honorable Jose L. Linares, U.S.D.J. (ret.)
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102

**Re:** ***United States of America, et al. v. Apple Inc.*****, No.: 2:24-cv-04055 (JXN-LDW)**
**Apple's Opposition to the United States' Motion for Stay Pending Appeal**

Dear Judge Linares:

Defendant Apple Inc. respectfully submits its opposition to Plaintiff United States' Motion for Stay Pending Appeal (Dkt. 504) of the July 14, 2026 Opinion and Order of the Special Discovery Master Re: Federal Agency Discovery (Dkt. 471) and the August 26, 2026 Opinion and Order of the Special Discovery Master Re: United States of America's Motion for Reconsideration (Dkt. 501).

Respectfully submitted,

*/s/ Liza M. Walsh*
Liza M. Walsh

The United States' motion for a stay should be denied. For over 14 months, the United States has refused to produce a single document from any of the 14 federal agencies subject to Apple's discovery requests. The Special Master has now twice rejected the United States' objections and ordered production. Yet instead of complying, the United States seeks a stay. The United States' position is especially untenable in light of its simultaneous refusal of Apple's request for a modest four-month extension of the current case schedule.

The United States cannot satisfy any of the requirements for a stay. ***First***, the United States cannot make the required "strong showing" that it is likely to prevail on the merits because the Special Master has already considered and rejected all of its arguments—twice—and did not find this to be a close call. *Nken v. Holder*, 556 U.S. 418, 434 (2009). ***Second***, the United States cannot show irreparable harm: the burdens it claims either are speculative or merely amount to the ordinary work of producing documents in litigation. ***Third***, a stay would harm Apple, which has waited 14 months without receiving a single document and faces a case schedule that grows tighter by the day. ***Fourth***, the public interest favors compliance with lawful court orders, not serial delay by the party that brought this case. Because the United States fails on every factor—including the two "most critical" prerequisites, *id.*, likelihood of success and irreparable harm, *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018)—its motion should be denied.[1]

***The United States Is Not Likely to Succeed on the Merits.*** The Special Master's rulings are correct on the law and facts, and the United States cannot demonstrate a "reasonable chance, or probability, of winning" even under *de novo* review. Dkt. 504 at 2. The Special Master did not, as the United States contends, hold that federal agencies are subject to party discovery "simply because the Department of Justice brings an enforcement action." *Id.* Rather, he made detailed findings that the targeted agencies "analyze and create policies, protocols, and regulations for the purchasing of smartphones based on security and privacy risks and set government-wide policies based on these analys[e]s"—and that those policies are directly relevant to the claims and defenses in this case. Dkt. 471 at 5–8; Dkt. 501 at 6–8. The Special Master then considered each of Apple's RFPs, found each relevant to Plaintiffs' core allegations, and rejected every justification the United States offered for withholding discovery. *See* Dkt. 471 at 6–12. On reconsideration, the Special Master addressed each argument again and reaffirmed his conclusions. Dkt. 501 at 6–11.

The United States does not engage with that analysis. Instead, it asserts that the orders "raise a significant question" and that the absence of "controlling authority in the Third Circuit" gives the District Court "substantial leeway" to disagree. Dkt. 504 at 2. That falls far short of what the stay standard requires. The movant must show a "probability[] of winning"—not merely that the chance of success is "better than negligible." *In re Revel AC, Inc.*, 802 F.3d 558, 568–69 (3d Cir. 2015); *see also Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 2008 WL 4951239, at *5 (D.N.J. Nov. 18, 2008) (Linares, J.) (same). The United States cannot make that showing for three reasons. ***First***, neither the Federal Rules of Civil Procedure nor any controlling precedent contains any exception from party-discovery obligations for "plaintiff/prosecutors." Dkt. 471 at 5–6; Dkt. 501

[1] The United States' reliance on *Howard Johnson Int'l v. Univ. Hosp. LLC*, 2018 WL 2095595 (D.N.J. May 7, 2018), is misplaced. Although that case recognized that a movant may offset "a lesser showing of success on the merits" with "a stronger showing of the other stay factors," *id.* at *2, the sliding-scale approach presupposes that a threshold showing on at least some factors has been made, *In re Revel AC*, 802 F.3d at 571. Here, the United States has not done so on any.

at 6–8. ***Second***, the absence of Third Circuit precedent is not a basis for a stay. *Gusdonovich v. Bus. Info. Co.*, 119 F.R.D. 15, 17 (W.D. Pa. 1987) ("The court does not believe that the mere fact that the matter has not been specifically addressed by the Court of Appeals is sufficient to show a probability of success on the merits.").[2] ***Third***, the Special Master already considered and applied *United States v. UBS Sec. LLC*, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020)—the very case the United States claims sets the standard—and correctly found that it supports Apple's position because party discovery extends to "agencies that inform the policies, rules, and regulations that the executive branch sets." Dkt. 471 at 5–6.

The United States' belated agency declarations do not improve its probability of success. The Special Master found that the declarations contained "nothing" that could be "considered new, as in just learned," and that the United States "had more than ample time to gather these facts" but "simply chose not to do so." Dkt. 501 at 9–10. Because these declarations were not before the Special Master when he issued his initial order, they should not be considered on appeal. *See Sabinsa Corp. v. HerbaKraft, Inc.*, 2022 WL 17446485, at *2 (D.N.J. Dec. 6, 2022). And even if they could be considered, they do not establish undue burden because they reveal only "generalized information concerning man hours and cost." Dkt. 501 at 9; *see* Dkt. 493 at 3–4.

***The United States Will Not Suffer Irreparable Harm.*** No actual or imminent irreparable injury exists here. A movant "must show that irreparable injury is *likely*" in the absence of a stay, "not merely possible." *Wong v. Lubetkin*, 2018 WL 10149986, at *2 (D.N.J. May 1, 2018) (Linares, J.); *In re Revel AC*, 802 F.3d at 569. The United States falls well short of establishing such harm.

Every burden the United States claims—collecting documents, searching classified systems "if applicable," redacting classified information "if applicable," and logging privileged documents, Dkt. 504 at 3—is an ordinary step in the document-production process. The routine work of document collection and review does not come close to constituting irreparable injury. Indeed, these steps are designed to ***prevent*** disclosure of protected information, and the agencies' own declarations confirm they have established personnel and protocols for this work. *See, e.g.*, FBI Decl. ¶¶ 1, 6–16; CIA Decl. ¶¶ 27–38. In addition, the asserted national-security concerns are speculative: the United States "neither confirms nor denies" that responsive documents implicate classified systems, and its claimed harms depend on uncertain, "if applicable" scenarios. Dkt. 504 at 3 n.3. Even crediting the United States' national-security concerns about eventual production of certain materials, there is no justification for refusing to do the preliminary work of identifying, collecting, and reviewing responsive documents now—preparatory steps that involve no disclosure and cause no cognizable harm. Nevertheless, although the Special Master ordered production under the RFPs as written, Apple offered to work with the United States to address these claimed concerns. Before the United States filed this stay request, Apple offered to consider limiting searches on an agency-by-agency basis if the United States identified where responsive documents are stored and any concrete retrieval burden for a particular time period. Apple also repeatedly requested a search term and custodian proposal. Only after filing its stay motion did the United States belatedly propose a partial and conditional search protocol that includes search

[2] *Thomson Reuters* is inapposite: there, the trial court certified two "hard" legal questions for interlocutory appeal under § 1292(b) and stayed the case to avoid trial on a potentially erroneous legal premise. None of those circumstances is present here. *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 2025 WL 1488015, at *2–3 (D. Del. May 23, 2025).

terms for one RFP that it believes "may" be reasonable for "some" unidentified agencies and still no specific custodian or file source for any agency.[3] Had the United States engaged in good-faith negotiations over a reasonable protocol when Apple initially requested, these claimed burdens could have been mitigated long ago. That it chose not to do so is a problem of its own making.[4]

Crucially, neither of the Special Master's orders requires production of classified or privileged information. Apple has repeatedly confirmed it is not seeking—and does not want—any classified or privileged documents, *see* Dkt. 422 at 7–9, and the orders expressly preserve the United States' right to log privileged documents, *see* Dkt. 471 at 9–12; Dkt. 501 at 4–5. And the Court's protective order provides additional safeguards. *See* Dkt. 235. The United States' reliance on *Berardino* and *X Corp.* is misplaced. In *X Corp.*, the Fifth Circuit stayed a discovery order compelling a nonprofit to disclose its donors' identities because "once the donor information is disclosed, the First Amendment injury could not be undone." *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 196 (5th Cir. 2024) (per curiam). In *Berardino*, the court stayed production of a single confidential settlement agreement because "no relief available on appeal could effectively return [the party] to its pre-disclosure position." *Berardino v. Prestige Mgmt. Servs., Inc.*, 2018 WL 3159862, at *1 (D.N.J. Jan. 17, 2018). Both involved categorical disclosure of constitutionally protected or inherently confidential information. Here, by contrast, Apple seeks ordinary unclassified, non-privileged agency documents. In addition, the privilege-log process and the Court's protective order ensure no privileged information need be disclosed—and if any such information is inadvertently produced, clawback mechanisms provide an appropriate remedy.

Stripped of its speculation, the United States' only remaining claimed injury is the typical time and expense of compliance—*i.e.*, costs associated with document collection and review. But ordinary compliance costs are not irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[M]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). This factor weighs strongly against a stay.

***A Stay Will Injure Apple.*** A stay would deepen the prejudice Apple has already suffered from the United States' 14-month refusal to produce these documents. Apple has diligently pursued this discovery for over a year, only to be met with obstruction at every turn. Apple first served its RFPs in June 2025 and, at the United States' own insistence, served subpoenas on the 14 agencies in November 2025. The United States still refused production—first citing *Touhy* regulations, then rejecting Apple's compromise proposals, and ultimately declining to produce a single document. Throughout, Apple worked in good faith to narrow the scope of its requests—reducing its original 39 RFPs to just 5–9 per agency; expressing willingness to consider further limitations on the United States' search for responsive documents even though the Special Master has already approved Apple's RFPs as written; and repeatedly asking the United States to propose search terms

---

[3] If the Special Master would like to see the parties' correspondence, Apple is happy to provide it.

[4] The United States mischaracterizes Apple's position regarding searching local offices. Dkt. 504 at 3–4. The United States itself proposed that each agency limit searches to headquarters. Apple responded that it was willing to consider that limitation if the United States could confirm that an agency's responsive documents reside at headquarters. Apple pointed out that the agencies' ***own*** declarations indicated some responsive materials are maintained at local offices, *see, e.g.*, DHS Decl. ¶ 6; State Decl. ¶ 10, but that the "documents sufficient to show" limitation in the vast majority of Apple's RFPs addresses any burden concern. The United States now twists Apple's willingness to consider a compromise offer despite the Special Master's orders into an "extraordinary position." Dkt. 504 at 3–4.

and custodians for discussion. The United States rejected or ignored every effort. The substantial-completion deadline passed nearly three months ago. The Special Master ordered production more than seven weeks ago. Yet Apple has not received a single document from any federal agency.

The United States' contrary arguments are meritless. The Special Master has twice rejected the contention that this discovery is only "tangentiall[y] relevan[t]." Dkt. 504 at 3; Dkt. 471 at 7; Dkt. 501 at 10. And for good reason: discovery into Apple's procompetitive justifications is crucial to its defenses, *see Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd.*, 838 F.3d 421, 438–39 (3d Cir. 2016), and the agencies' own declarations confirm they possess responsive documents, *see, e.g.*, OMB Decl. ¶¶ 8–9; NASA Decl. ¶ 10. Nor does the United States' vague assurance that certain agencies "are already working to prioritize a minimally burdensome, non-privileged set of documents," Dkt. 504 at 3–4, remedy Apple's injury. The United States made that same representation over a month ago, *see* Dkt. 482 at 1 n.2, yet has produced nothing and has only now—after filing this stay motion—proposed a partial and conditional search protocol for a subset of agencies. If, as the United States now represents, at least some agencies are prepared to begin producing documents on a rolling basis, there is no reason to halt that work, and no stay is needed.

The case schedule makes the prejudice to Apple acute. The United States' appeal will not be fully briefed until at least the end of September, Dkt. 504 at 3, leaving barely four months for the District Court to rule, the United States to produce documents from 14 agencies, and Apple to review those documents and take depositions of certain agency employees and Plaintiffs' representatives. A stay would make it virtually impossible for Apple to complete this discovery within the current fact-discovery period—and the United States has refused Apple's request for a modest extension of the case schedule.

***The Public Interest Favors Denying a Stay.*** Compliance with lawful court orders serves the public interest. "The importance of transparency is heightened in cases in which the government seeks to block or sanction private behavior. … Because the stakes are so high and the consequences so profound when the government is the plaintiff, the rules that require a transparent exchange of information take on particular importance in promoting and ensuring a fair process." *FTC v. Sysco Corp.*, 308 F.R.D. 19, 22 (D.D.C. 2015). The United States' invocation of national security and "half the federal civilian workforce" is misleading: Apple targeted only 14 agencies likely to have highly relevant documents, and all but two RFPs seek only "documents sufficient to show." To date, discovery has been one-sided: Apple has made extensive productions, while the United States has withheld discovery that may refute its allegations. Having commenced this sweeping action, the United States must participate in the discovery process and cannot shield its relevant agency documents from production. This factor weighs against a stay.

* * *

The United States twice failed, despite full briefing opportunities, to evade the discovery obligations the Federal Rules impose on all parties. It has not shown a likelihood of success on its forthcoming appeal, will suffer no irreparable harm absent a stay, and has no basis for further delay. Meanwhile, Apple has waited 14 months for the United States' production, has received nothing, and faces a fact-discovery deadline in just a few months that the United States has refused to extend by a mere four months. A stay under these circumstances would compound the ongoing prejudice Apple suffers from the United States' noncompliance. The motion should be denied.