**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>*Plaintiffs,*<br>v.<br>APPLE, INC.<br>*Defendant.* | **Civil Action No. 2:24-cv-04055 (JXN-LDW)**<br><br>**PLAINTIFF THE UNITED STATES OF AMERICA'S NOTICE OF APPEAL FROM SPECIAL DISCOVERY MASTER'S ORDERS WITHIN THE DISTRICT COURT**<br><br>**Oral Argument Requested** |

**PLEASE TAKE NOTICE** that, on September 9, 2026, Plaintiff the United States of America, on behalf of fourteen "Responding Agencies," appeals by Motion, pursuant to Federal Rule of Civil Procedure 53(f), Local Civil Rule 72.1(c)(1), and ECF No. 455 ¶¶ 15-17, to the Honorable Julian X. Neals, U.S.D.J. at the United States District Court for the District of New Jersey, MLK Jr. Federal Building, 50 Walnut Street, Newark, New Jersey, from the July 14, 2026 Order (ECF 471) and the August 26, 2026 Order denying reconsideration of the July 14 Order (ECF 501) of Special Master Jose L. Linares, U.S.D.J. (Ret.).

This Notice of Appeal is supported by the attached letter memorandum, the Declaration of Aaron M. Sheanin in Support of Plaintiff United States of America's Appeal of Opinion and Order of the Special Discovery Master re: Federal Agency Discovery and all supporting exhibits thereto including the Joint Discovery Dispute Letter re Discovery from Federal Agencies with exhibits dated April 16, 2026 (ECF 422, 422-1, 422-2), the Transcript of the Special Master Hearing dated July 10, 2026, the Opinion and Order of the Special Master re: Federal Agency Discovery dated July 14, 2026 (ECF 471), the United States' Motion for Reconsideration dated July 28, 2026 (ECF 482), Apple's Opposition to the United States' Motion for Reconsideration dated August 13, 2026 (ECF 493), the Opinion and Order of the Special Master re: United States of America's Motion for Reconsideration dated August 26, 2026 (ECF 501), the [Proposed] Order Overruling the Decisions of the Special Discovery Master and Quashing Apple's Subpoenas, and all other pleadings and papers on file in this action.

The Responding Agencies respectfully requests oral argument on this appeal.

Respectfully submitted,

Dated: September 9, 2026

*/s/ Aaron M. Sheanin*
Aaron M. Sheanin
Civil Assistant Chief, San Francisco Office
Michael Lepage
United States Department of Justice
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102
Telephone: (202) 709-1490
aaron.sheanin@usdoj.gov
michael.lepage@usdoj.gov

Jack Lerner
Matthew C. Mandelberg
Curtis Strong
United States Department of Justice
450 Fifth Street, NW
Washington, DC 20530
jack.lerner@usdoj.gov
matthew.mandelberg@usdoj.gov
curtis.strong@usdoj.gov

*Attorneys for the United States and Responding Agencies*

This Court should reverse the Special Master's order allowing Apple to enforce sweeping document subpoenas on 14 federal agencies—including elements of the Intelligence Community. These subpoenas impose undue burdens and trigger a host of unnecessary privilege issues because those agencies played no role in investigating this case and have no particular relationship to the *consumer* smartphone features at issue in this case. The Special Master justified this deep intrusion on the federal government based on the unfounded assertion that *government* procurement processes are "policies" underlying this case. But the Special Master did not identify any such specific policy, and there is no limiting principle to that reasoning. The Court should hold that the agencies reasonably declined to produce documents pursuant to their *Touhy* regulations and quash the unduly burdensome and disproportionate subpoenas.

## BACKGROUND

On March 21, 2024, the United States and several States sued Apple for unlawfully maintaining a monopoly in the smartphone market. ECF 1. Apple's anticompetitive course of conduct is alleged with five examples: super apps, cloud-streamed gaming, messaging, wearables, and digital wallets. In these examples, Apple restricts technologies and features in *consumer*-oriented apps and accessories that degrade the user experience, reduce smartphone switching, and increase consumer dependence on Apple's hardware. ECF 51 ¶ 8-10.

On November 19, 2025, Apple served Rule 45 subpoenas on 14 federal agencies ("Responding Agencies")[1] that comprise more than half the federal workforce and include those responsible for national security. The subpoenas seek broad categories of documents, including the Responding Agencies': (1) smartphone and wearable purchases and the reasons for those purchases; (2) guidance on smartphone features and related products and services; (3) alternative operating systems and app marketplaces; (4) smartphone pricing and market share; and (5) involvement in Apple's developer program for creating internal-use apps. *See* Ex. A (ECF 422) at 3-4. Apple continues to demand "all" or "any" documents of various types in 10 of 14 requests, as described in Apple's Final Compromise Proposal for Federal Agency Discovery. *See* Ex. A (ECF 422-1) at 26-27 (Reqs. 2-4, 6, 8, 9, 11-14).

Each Responding Agency timely objected to the subpoenas pursuant to the FRCP and its *Touhy* regulations under 5 U.S.C. § 301[2] because the requests were overbroad and not relevant to any party's claims or defenses, production would unduly burden the agency, and the documents sought were protected from disclosure by privilege, statute, regulation, and/or executive order. Ex. B (Agency Resps. and Objs. Summary Table); Ex. C(1-14) (Agency Resps. and Objs. Letters). The Responding Agencies objected that they are not parties and their only connection to this case is as a component of the federal government. *Id.* The Responding Agencies offered to consider narrowed subpoenas. *Id*.

---

[1] The Central Intelligence Agency (CIA), Department of Commerce (DOC), Department of Homeland Security (DHS), Department of Labor (DOL), Department of State (STATE), Department of War (DOW), Federal Bureau of Investigation (FBI), Federal Trade Commission (FTC), General Services Administration (GSA), National Aeronautics and Space Administration (NASA), National Security Agency (NSA), Office of the Director of National Intelligence (ODNI), Office of Management and Budget (OMB), and Office of Personnel Management (OPM).

[2] *See U. S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951) (recognizing "the possibilities of harm from unrestricted disclosure in court" of the information found "in the files of any government department").

After meeting and conferring multiple times, Apple filed the present motion via a joint dispute letter. Ex. A (ECF 422). On July 14, 2026, Special Master Linares overruled the Responding Agencies' objections, Ex. E (ECF 471), holding: (a) the Responding Agencies are subject to party discovery; (b) the discovery is relevant to uncover what the agencies "internally reviewed and determined" for smartphone procurements, including "to the extent" they analyzed security and privacy; (c) the Responding Agencies' burdens "lack[ed] the specificity required;" and (d) any privileges must be asserted through a log. *Id.* at 6, 7, 9, 12.

On July 28, 2026, the Responding Agencies timely sought reconsideration and attached 13 detailed declarations attesting to the burdens of the requested productions.[3] Ex. F (ECF 482, 482-1–482-13). Intelligence Community agencies[4] attested to national security risks and the heightened burdens of searching classified systems and/or systems containing other sensitive information (also known as Controlled Unclassified Information (CUI)). *See, e.g.*, *Id*. CIA ¶¶ 28, 30 (attesting to "decentralized and comparted" classified systems that each may have only select employees with access to search them and conduct layered reviews); WHCA ¶ 11 (sensitive), DISA ¶¶ 12 (sensitive). On August 26, 2026, Special Master Linares denied the motion for reconsideration. Ex. H (ECF 501). The Responding Agencies now appeal both rulings. *See* ECF 455 ¶ 17 (procedure for appealing a Special Master's ruling).

## LEGAL STANDARDS

This Court has *de novo* review of the Special Master's findings of fact and conclusions of law. Fed. R. Civ. P. 53(f)(3-4); ECF 455 (Special Master Appointment Order) ¶ 15. When exercising de novo review, this Court "may receive evidence," Fed. R. Civ. P. 53(f)(1), and "is not limited to the evidence" before the Special Master. *See Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1184 (3d Cir. 1991).

The standards for evaluating an agency's response to a subpoena are "unsettled." *Harris v. McDonald*, 2022 WL 3599394, at *2 (M.D. Pa. Aug. 23, 2022). While the Third Circuit has not yet considered the question, other circuits review an agency's response, issued pursuant to regulations under 5 U.S.C. § 301, "under the Administrative Procedure Act ('APA'), which provides that the court may overturn an agency action only if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'in excess of statutory jurisdiction or authority.'" *Id.* (quoting 5 U.S.C. §§ 706(2)(A), (C)); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). "This is a deferential standard that presumes the validity of agency action." *SBS Inc. v. FCC*, 414 F.3d 486, 496 (3d Cir. 2005) (cleaned up). The party challenging an agency action under the APA bears the burden of showing that the action was arbitrary and capricious. *Cognizant Tech. Solutions Corp. v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 2091281, at *5 (D.N.J. May 8, 2024) (citation omitted). Under this standard, a federal agency "cannot be compelled to obey a subpoena, 'even a federal subpoena,' that acts against valid agency regulations." *U.S. ex rel. Lamers v. City of Green Bay*, 924 F. Supp. 96, 97 (E.D. Wisc.

[3] Twelve Responding Agencies provided declarations, which can be found in Exhibit F. The DOW submitted declarations from two components: Defense Information Systems Agency (DISA) and White House Communications Agency (WHCA). Throughout the brief, the declarations are cited by agency abbreviations.

[4] "Intelligence Community" includes the CIA, ODNI, and NSA in their entirety, and portions of DHS, DOW, FBI, and STATE. 50 U.S.C. § 3003(4). This brief refers to those seven agencies as "the Intelligence Community."

1996) (quoting *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 317 (7th Cir. 1994)) (affirming district court's decision to quash state court subpoena because requestor must comply with *Touhy* regulations); *Touhy*, 340 U.S. at 468 (upholding FBI's refusal to produce documents); *Aiken v. Eady*, 2016 WL 452135, at *5 (D.N.J. Feb. 4, 2016) ("most courts require a party seeking information from the Government, as a non-party, to make a [*Touhy*] request" pursuant to applicable administrative regulations and the agency "has discretion in responding"). The Third Circuit applied this standard to review a federal agency's refusal to authorize testimony in response to a state court-issued subpoena. *Davis Enter. v. U.S. Envt'l, Prot. Agency*, 877 F.2d 1181, 1186-88 (3d Cir. 1989).

The Ninth and D.C. Circuits instead look to the Federal Rules of Civil Procedure for guidance. *See Linder v. Calero-Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001); *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779-80 (9th Cir. 1994). Under Rule 26(b)(1), discovery must be (1) relevant, (2) proportional to the needs of the case, and (3) nonprivileged. Relevance is "not boundless." *Takacs v. Union Cnty.*, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009). If the party seeking discovery shows that the request is relevant, the responding party must show a sufficient reason why discovery should not be allowed. *Franchitti ex rel. U.S. v. Cognizant Tech. Sols. Corp.*, 2023 WL 2759075, at *3 (D.N.J. Apr. 3, 2023). A court can deny a discovery request when "there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Takacs*, 2009 WL 3048471, at *1. To assess proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Lawson v. Praxair, Inc.*, 2023 WL 7170273, at *3 (D.N.J. Apr. 28, 2023) (quoting Fed. R. Civ. P. 26(b)(1)). Proportionality is case-specific, and "no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Emp'rs Ins. Co. of Wausau v. Daybreak Express, Inc.*, 2017 WL 2443064, at *2 (D.N.J. June 5, 2017) (quoting *Bell v. Reading Hosp.*, 2016 WL 162991, at *2 (E.D. Pa. Jan. 14, 2016)).

Rules 26(b) and 34(a) govern document discovery of parties. Rule 45 affords to non-parties "greater protection from discovery than a party." *Cognizant*, 2024 WL 2091281, at *5 (quotation omitted). A party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). When applying Rule 45 to an agency subpoena, courts seek to "ensure that the unique interests of the government are adequately considered." *Exxon*, 34 F.3d at 780.

Courts within the Third Circuit have either shown that both standards lead to the same result or denied discovery under the Federal Rules, obviating the need to consider the more deferential APA standard. *Cognizant*, 2024 WL 2091281, at *5-8; *Harris v. McDonald*, 2022 WL 3599394, at *2-5 (M.D. Pa. Aug. 22, 2022); *Mickendrow v. Watner*, 2021 WL 2821176, at *4-5 (D.N.J. July 7, 2021); *Johnson v. Folino*, 528 F. Supp. 2d 548, 551-52 (E.D. Pa. 2007).

## ARGUMENT

The Court should quash Apple's subpoenas. The Responding Agencies reasonably applied their *Touhy* regulations. Apple must, but cannot, show that the Responding Agencies'

responses were arbitrary or capricious. Even under the FRCP, the subpoenas still must be quashed because Apple's discovery unduly burdens the Responding Agencies, is minimally relevant, and is disproportionate to the needs of this case. Because the Responding Agencies prevail under either the APA or the FRCP, the Court need not decide which standard applies.

## I. The Responding Agencies' Objections Should Be Upheld Under the APA

### A. The APA Provides the Proper Analytical Framework

The Court should apply the APA. This dispute arises from the Responding Agencies' application of their *Touhy* regulations. By their terms, these regulations apply to Apple's subpoenas, even if the United States is a party. *See* Ex. B; *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) ("The defendant claims at the outset that *Touhy* regulations do not apply to cases in which the United States is a party, but neither the authorizing statute, 5 U.S.C. § 301, nor the DHS regulations, 6 C.F.R. § 5.41, impose any such limitation.").

In addition, the APA provides a waiver of sovereign immunity for suits against federal agencies for their regulatory actions. 5 U.S.C § 702. Subpoena proceedings against the federal government "fall within the protection of sovereign immunity." *COMSAT*, 190 F.3d at 277. The APA waives sovereign immunity to permit "a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *Id.* Thus, "in the context of an agency's response to a third-party subpoena, the proper method for judicial review of the agency's final decision pursuant to its regulations is through the Administrative Procedure Act." *Id.* (internal quotation marks omitted).[5]

### B. The Responding Agencies' Responses to the Subpoenas Were Not Arbitrary and Capricious

The Responding Agencies' response and objection (R&O) letters show each followed its duly issued *Touhy* regulations and reasonably found that Apple's overbroad discovery requests were inconsistent with the Federal Rules, statutes, privileges, and other grounds. Ex. B (listing relevant *Touhy* regulations); *see*, *e.g.*, DOW *Touhy* regulation, 32 C.F.R. § 97.8 (factors include: whether request is overbroad, unduly burdensome, or otherwise inappropriate, whether the information sought is irrelevant, cumulative, or disproportional, whether information sought is privileged, or whether disclosure would violate a statute, executive order, regulation, or policy). Apple failed to show that any Responding Agency's action was arbitrary and capricious.

**The Subpoenas Are Overbroad and Unduly Burdensome.** The Responding Agencies reasonably rejected Apple's subpoenas as facially overbroad. *See*, *e.g.*, Ex. C-6 (DOW R&O) at 5; *Mickendrow*, 2021 WL 2821176, at *4 (agency reasonably rejected broadly worded deposition request that could have elicited testimony "on an expansive array of subject matter"). They explained that Apple's subpoenas imposed significant burdens, especially on the Intelligence Community, disproportionate to the needs of the case. *See*, *e.g.*, Ex. C-2 (NSA R&O) at 5-7; *Cognizant*, 2024 WL 2091281, at *7 (DHS reasonably rejected document request that "would require numerous individual employees to conduct manual searches of their devices and hard

[5] Non-parties are also not subject to interrogatories and requests for admissions. *See* Fed. R. Civ. P. 33, 36.

files to be followed by extensive review for Privacy Act compliance and privileged redactions or withholdings."). The Responding Agencies would require countless hours searching, collecting, reviewing, and processing documents. Ex. F, NASA ¶¶ 8, 11, STATE ¶¶ 6-10, OMB ¶¶ 13-15, GSA ¶ 7, WHCA ¶ 9, DISA ¶¶ 10, 12, NSA ¶ 33, DHS ¶ 11, ODNI ¶ 32, OPM ¶ 9. The search, collection, and review process would face severe challenges due to legacy systems and/or the decentralized nature of records on agency systems. *Id.*, DHS ¶ 6, STATE ¶ 10, CIA ¶ 28, NSA ¶¶ 31, 34, ODNI ¶ 27, STATE ¶ 10, NASA ¶¶ 8, 11-12, WHCA ¶ 9, DISA ¶ 10, OMB ¶ 14, GSA ¶ 7, FBI ¶ 7, OPM ¶¶ 6-7. While non-Intelligence Community Responding Agencies proposed search terms and other parameters to reduce the burden, Apple maintains extremely burdensome positions. For example, Apple rejected a proposal to limit searches to headquarters offices (and any offices that handle procurement for agency headquarters), and instead explicitly insisted that the Department of State search "more than 250 embassies and consulates across the globe."

The Intelligence Community has a heightened burden. Apple has not agreed to limit searches to non-classified systems. CIA, NSA, and ODNI documents are primarily maintained in classified settings, which are remarkably burdensome to search. Ex. F, CIA ¶¶ 28, 30, 36-37, ODNI ¶ 27, NSA ¶¶ 28-34. Although the CIA, NSA, and ODNI neither confirm nor deny that any responsive documents exist, *Id.*, CIA ¶¶ 18-19; NSA ¶ 29; ODNI ¶¶ 18-20, these agencies and others would need to undertake time-intensive processes to locate potentially responsive documents on classified systems, redact any classified or otherwise protected material from such documents (should any exist), and assess the impact on national security of a release of the remainder. *Id.*, DHS ¶ 7, NASA ¶ 13, CIA ¶¶ 30-35, NSA ¶¶ 29-31, 33, ODNI ¶¶ 27-30, FBI ¶¶ 13-14.

**The Discovery Is Minimally Relevant at Most.** The Responding Agencies also reasonably objected to the relevance of the requests. *See*, *e.g.*, Ex. C-1 (CIA R&O) at 3-4; Ex. C-9 (DHS R&O) at 8; Ex, C-6 (DOW R&O) at 6-7. None of the Responding Agencies substantively participated in the investigation or litigation. The Responding Agencies purchase smartphones for use by their employees but not in ways directly relevant to this case. *See*, *e.g.*, Ex. F, OMB ¶ 5, GSA ¶ 6, NASA ¶ 7. Federal agencies procure smartphones through large contracts upon scrutinizing technical specifications needed for the agencies' missions and negotiating volume rates for the hardware and the carrier service together. *See*, *e.g.*, *Id.*, DOL ¶ 5, NASA ¶ 7. Consumers use their smartphone with accessories (e.g., smartwatches) and apps available through Apple's App Store. Agencies prioritize their enterprise use cases and availability of work applications, typically restricting Apple's App Store and the consumer-facing applications—super apps, cloud-streamed gaming apps, and digital wallets—at issue in this case. *See*, *e.g.*, *Id.*, NASA ¶ 9; OPM ¶ 4. The Responding Agencies are unlikely to have insight into network effects in consumer message apps or how apps lead consumers to be "locked in" to a particular smartphone. Nor will the Responding Agencies' procurement practices bear on how Apple's anticompetitive conduct affects competitive dynamics that affect regular consumers.

Antitrust law is clear that "procompetitive benefit[s] must justify the specific [conduct] here in question." *United States v. Google LLC*, 747 F. Supp. 3d 1, 171 (D.D.C. 2024) (addressing Sherman Act § 2) (cleaned up) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 71 (D.C. Cir. 2001)); *Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 101 (2021) (evaluating, under Sherman Act § 1, "any procompetitive benefits associated with their restraints"); *United States v. Google LLC*, 778 F. Supp. 3d 797, 869 (E.D. Va. 2025) (rejecting

procompetitive justification not related to anticompetitive allegations in complaint). Here, the Responding Agencies do not typically use the consumers apps and technologies at issue. High-level analyses of smartphones in the government context are not probative of whether consumer benefits justify the specific conduct in question, and Apple has not shown otherwise.

Apple's discovery requests are of minimal relevance and were properly rejected by the Responding Agencies. *Harris*, 2022 WL 3599394, at *3 (agency reasonably rejected document requests related to investigation that focused on conduct different than what was at issue); *SEPTA v. Orrstown Fin. Servs.*, 367 F. Supp. 3d 267, 280 (M.D. Pa. 2019) (denying motion to compel because request did not meet specificity and relevance requirements of *Touhy* regulations).

**The Discovery Is Cumulative and Duplicative.** The Responding Agencies reasonably rejected Apple's subpoenas as cumulative or duplicative. *See*, *e.g.*, Ex. C-6 (DOW R&O) at 5; Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring courts to limit unreasonably cumulative or duplicative discovery); *Mickendrow*, 2021 WL 2821176, at *4-5 (agency reasonably rejected testimony request when information was available through documents already produced). The Antitrust Division—the only federal agency litigating this case—has produced about 116,000 documents, totaling nearly 650,000 pages. Four non-Intelligence Community agencies produced documents, and the remaining three non-Intelligence Community are working to produce responsive documents. Outside the federal government, Apple has sent subpoenas to Plaintiff States, over 90 state agencies, and dozens of third parties. More agency documents would likely be duplicative.

**The Discovery Is Otherwise Protected.** The Responding Agencies reasonably rejected Apple's requests that seek information protected by privilege, statute, or regulation. The Intelligence Community in particular is shielded by a thicket of overlapping confidentiality restrictions. *See* Ex. C-1 (CIA R&O) at 3-4; Ex. C-9 (DHS R&O) at 9-10; Ex. C-11 (STATE R&O) at 6; Ex. C-6 (DOW R&O) at 7-8; Ex. C-7 (FBI R&O) at 3-4; Ex. C-2 (NSA R&O) at 7-9; Ex. C-3 (ODNI R&O) at 3-4; *Schuchardt v. President of the U.S.*, 839 F.3d 336, 353–54 (3d Cir. 2016) (circumscribing the scope of discovery when a private party seeks to probe internal workings of the national security apparatus). The Responding Agencies are also limited by statute and executive order in sharing classified or confidential information. Ex. F, DOL ¶¶ 11-12 (citing the Confidential Information Protection and Statistical Efficiency Act), CIA ¶ 36 (citing the National Security Act, Central Intelligence Agency Act, and Privacy Act), NSA ¶¶ 5, 9, 24-27 (citing the National Security Act, and Intelligence Reform and Terrorism Prevention Act); ODNI ¶¶ 25, 31 (citing the National Security Act, and Central Intelligence Agency Act); CIA ¶¶ 15, 18-26 (citing Executive Order 13526), NSA ¶¶ 5, 8, 16-21, 23-27 (same), ODNI ¶¶ 4, 17-25 (same), FBI ¶ 14 (same). These protections serve vital national interests, yet anything relevant from the Intelligence Community is likely to be duplicative of Apple's discovery from the Antitrust Division, private enterprise customers, and others.

Apple's subpoenas infringe upon national security interests and may implicate the state secrets privilege. This further burdens the Responding Agencies and reduces the chance that significant effort will yield non-privileged information. The Special Master was wrong to reject these arguments. The state secrets privilege protects classified and unclassified information that would harm national security. Courts traditionally show the Executive "utmost deference" in assessing national security risks. *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *CIA v. Sims*, 471 U.S. 159, 180 (1985) (deferring to the Executive "to weigh the variety of complex and subtle

factors in determining whether disclosure of information may lead to an unacceptable risk of compromising" the nation's safety) (quotation omitted).[6] The problems raised by Apple's requests are particularly acute for CIA, NSA, and ODNI. *See, e.g.*, Ex. F, CIA ¶¶ 20–25, ODNI ¶¶ 23, 24, NSA ¶¶ 24-27, 29-30. Any responsive documents in the files of the CIA, NSA, and ODNI (if they exist) are likely to be on systems with highly restricted access and may be protected from disclosure by statute. *Id.*, CIA ¶¶ 28, 35-36, NSA ¶¶ 21, 31, ODNI ¶ 27, 31; *see also id*., DHS ¶¶ 8, 10, DOL ¶ 13, STATE ¶ 1. Identifying responsive material would require burdensome reviews by the agencies to determine whether any portions are releasable without inadvertently disclosing classified or otherwise protected information. *See id*. At times, these agencies cannot even reveal whether they possess records on a certain subject when doing so would reveal classified or statutorily protected facts. *Id.*, CIA ¶¶ 18-19, NSA ¶ 29, ODNI ¶¶ 18-20. Any other response to requests implicating intelligence activities, sources, or methods could at times divulge the existence of—or gaps in—a particular intelligence activity or reveal secret information about sources, methods, capabilities, authorities, interests, strengths and weaknesses, personnel, resources and/or relationships with domestic or foreign entities. *Id.*, CIA ¶¶ 18-25. The Intelligence Community must invoke this "*Glomar*" response consistently, even where the nonexistence of records appears to be of little consequence, to preserve its viability for the most sensitive information. *Id.*, NSA ¶ 29, ODNI ¶¶ 18-20; *see ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) (explaining why agencies may refuse to confirm or deny if records exist).

**Subpoena Compliance Would Divert Resources.** Responding to Apple's subpoenas would divert resources from the critical missions of the Responding Agencies, particularly the Intelligence Community. Ex. F, CIA ¶¶ 27, 29, 35, 38; NSA ¶¶ 22, 23-25 (classified disclosures), ¶¶ 28-29, 31-34 (undue burden and disruption); FBI ¶ 17 (significant burden); ODNI ¶¶ 26-32 (heavy burden); DHS ¶ 6 (unquantifiable burden), STATE ¶¶ 9-10; WHCA ¶ 10; DISA ¶ 11. In *Davis*, the Third Circuit found that the EPA reasonably applied its *Touhy* regulations to deny a request for testimony because "the potential cumulative impact of granting such requests would constitute a drain on [EPA]'s resources." 877 F.2d at 1187. The same reasoning applies here.

## II. Apple's Agency Discovery Requests Are Not Justified Under Rule 26(b)(1)

### A. The Discovery Is Minimally Relevant, Disproportionately Burdensome, and Barred by Privilege, Statute, or Regulation

Apple is not entitled to the discovery requested from the Responding Agencies under Rule 26(b)(1). "[T]he party resisting discovery can establish a lack of relevance by showing that the material requested . . . is of such little relevance that the potential harm occasioned by discovery outweighs the ordinary presumption favoring its disclosure." *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 25 (E.D. Pa. 2016); *LAE Techs. Hong Kong Ltd. v.*

---

[6] The Special Master also erred in rejecting the Responding Agencies' claims under: (1) deliberative process, an executive privilege that "shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," *U. S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (internal quotation marks omitted), which extends to procurement strategy, *Hamrick v. Dep't of Navy*, 1992 WL 739887, at *2 (D.D.C. Aug. 28, 1992); *Prof. Rev. Org. of Fla., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 607 F. Supp. 423, 427 (D.D.C. 1985); and (2) the qualified law enforcement privilege "to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998).

*Demuren*, 2024 WL 863464, at *5 n.1 (D.N.J. Feb. 29, 2024) ("Given the minimal relevance of the requests, the Court also finds that it would be unduly burdensome to require [defendant] to search for the requested information."); *Harrington v. Bergen Cnty.*, 2017 WL 4387373, at *2 (D.N.J. Oct. 3, 2017) (denying discovery of information with only a "marginal nexus" to the case that did not outweigh the burden). Apple seeks documents that are, at most, minimally relevant to the claims and defenses here. Even if relevant, agency procurement records are cumulative or duplicative of documents held by Apple or other enterprise customers. *See United States v. Ling-Temco-Vought, Inc.*, 49 F.R.D. 150, 152 (W.D. Pa. 1970) (denying extra-agency discovery in civil antitrust case brought by the United States); *United States v. Novartis Pharms. Corp.*, 2014 WL 6655703, *4-8 (S.D.N.Y. Nov. 24, 2014) (finding discovery of an agency's market conduct not relevant in a False Claims Act case); *United States v. Duke Energy Corp.*, 214 F.R.D. 392, 393 (M.D.N.C. 2003) (denying discovery into a federal agency that was not the agency plaintiff).

Rule 26(b)(1) proportionality does not favor Apple. As the Third Circuit has explained, proportionality demands "careful and realistic assessment of actual need" for the discovery demanded. *U.S. ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 258 (3d Cir. 2016) (quotations omitted). Most proportionality considerations weigh in the Responding Agencies' favor. First, Apple has far greater access to relevant (and far more probative) information about its products, business strategies, and its purported justifications. Second, subpoena compliance will significantly tax the resources of the Responding Agencies, particularly the Intelligence Community. Third, the discovery is at most minimally relevant because it is tangential to the issues, such as Apple's anticompetitive conduct in its App Store and restrictions on consumer-focused apps, and any cognizable defenses. Finally, the burden of the discovery significantly outweighs its benefit. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 2889679, at *2, 2 n.3 (N.D. Ala. July 6, 2017) (finding that the undue burden "to gather, review, and separate" documents of "tangential value" is not reduced just because "a relative few would be produced"); *Duke Energy*, 214 F.R.D. at 393 (refusing to require, in EPA enforcement case, even one cabinet-level agency to search its files given the "enormous" cost).

Finally, as described above, privileges, statutory restrictions, and other considerations also favor the Intelligence Community and other Responding Agencies. As a result, the Rule 26 factors weigh heavily in favor of the Responding Agencies. The Court should reject Apple's burdensome, minimally relevant, and disproportionate requests.

### B. Though Not Necessary to Resolve This Dispute, the Responding Agencies Should Not Be Subject to Party Discovery

So long as Apple's discovery fails under both Rule 34 for party discovery and Rule 45 for non-party subpoenas, the Court need not decide which Rule applies. Nevertheless, the Court should reverse the Special Master's finding and conclude that the Responding Agencies are not subject to party discovery. The heightened protections of Rule 45 apply because the Responding Agencies do not have regulatory policies that underly the Department of Justice's (DOJ) enforcement action, and they did not participate in this case.

When enforcing federal law, the United States comes to court to "take Care" that the laws are faithfully executed, not as an ordinary civil litigant. U.S. Const. Art. 2 § 3. Although there is no Third Circuit or district precedent, courts that have addressed the issue hold that federal

agencies are subject to party discovery when certain conditions—not present here—are satisfied. The relevant rule is stated in *United States v. UBS Securities LLC*, 2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020), as Apple and the Special Master recognize.[7] There, the court considered whether a civil defendant in a DOJ action could compel document productions from other agencies. *Id.* at *1. *UBS* found that party discovery reaches federal agencies when they (1) engage in regulatory policymaking that "inform the policies, rules, and regulations that the executive branch sets," or (2) "engage in joint investigations." *Id.* at *6.[8] These limited criteria do not apply here.

As to regulatory policymaking, *UBS* draws on *Deane v. Dynasplint Sys., Inc.*, 2015 WL 1638022, at *5 (E.D. La. Apr. 13, 2015), and *Trane Co. v. Klutznick*, 87 F.R.D. 473, 476-77 (W.D. Wis. 1980), where party discovery reached federal agency components involved in regulatory policies underlying the enforcement action, but not unrelated agencies. *UBS*, 2020 WL 7062789 at *4. In *Deane*, the United States challenged improper Medicare claims, and party discovery was limited to components of HHS and CMS that administered or oversaw "the Medicare program that is the subject of the United States' complaint." 2015 WL 1638022, at *5. In *Trane*, party discovery reached the State and Treasury Departments because those agencies gathered the information necessary to implement and enforce the challenged federal statute. *Trane*, 87 F.R.D. at 476-77. By contrast, in *UBS*, where the United States challenged fraudulent conduct related to mortgage-backed securities, HUD's housing policies were found not relevant to issues in the case such as loss causation, 2020 WL 7062789 at *9, and regulatory policies were not the basis for party discovery of HUD or Treasury, *id.* at *6 (relying on joint investigatory work). Here, regulatory policies offer no basis for party discovery because the Responding Agencies do not regulate competition for smartphones, app stores, super apps, messaging apps, wearables, cloud-based gaming or other technologies at issue. Ex. F, DOL ¶ 5, NASA ¶¶ 5-9, WHCA ¶¶ 7-8, DISA ¶¶ 8-9, OPM ¶ 4, OMB ¶ 5, DHS ¶ 5, GSA ¶ 6; *see also* ECF 51 ¶ 50.

Apple's contrary arguments are unavailing. First, Apple says it targeted the agencies for their "special knowledge and expertise," but this idea finds no support in the case law and is derived from a quote that is found nowhere in *UBS*. *See* Ex. A (ECF 422) at 10 (purporting to quote *UBS*); Ex. D (Hr'ng Tr.) at 96:16-19 (asserting, incorrectly, that the *UBS* test asks "does the agency have relevant expertise"). Second, *United States v. American Tel. & Tel. Co.*, 461 F. Supp. 1314 (D.D.C. 1978), does not support Apple. There, the court justified wide-ranging agency discovery where the Bell System's structure and practices were "the result of the Government's own policies." *Id.* at 1334. Here, Apple does not contend that any agency policy caused or regulates Apple's challenged conduct. Instead, Apple objects to a rule that predicates party discovery on regulatory policies with a "causal nexus" or an "external" effect on the case. Ex. G (ECF 493) at 3. In other words, Apple still seeks party discovery based solely on agency expertise.

The Special Master also erred in finding that, under *UBS*, Apple "is entitled to obtain

---

[7] *See* Ex. H (ECF 501) at 7 (quoting only *UBS*); ECF 471 at 6 (relying on *UBS*); Ex. D (Hearing Transcript) at 96:16-19 (Apple arguing that "the relevant test is the test that's set out in the *UBS* case"). The Special Master and Apple note that *UBS* is not controlling authority, Ex. H (ECF 501) at 7, Ex. G (ECF 493) at 2, but they nevertheless rely upon it.

[8] Party discovery may reach federal agencies in other circumstances not applicable here. *See, e.g.*, *North Dakota v. United States*, 2021 WL 6278456, at *2-3 (D.N.D. Mar. 24, 2021) (imposing party discovery on those agencies that the "administrative claim and complaint identified" as "contribut[ing] to" the tortious conduct at issue).

discovery from the [Responding] Agencies because the targeted agencies analyze and create policies, protocols, and regulations for the purchasing of smartphones based on security and privacy risks and set government-wide policies based on these analys[e]s." Ex. E (ECF 471) at 6. The Special Master's holdings lack *any* specific findings or analysis of the Responding Agencies' regulatory involvement with the case. Unlike *UBS* and *AT&T*, agency procurement rules do not regulate the marketplace, Apple's conduct, or DOJ's enforcement. Moreover, the Responding Agencies' use of smartphones meaningfully differs from the consumer uses at issue.

A holding that agency procurement suffices for party discovery disregards the limits of FRCP 26 and the *UBS* rule. This would improperly burden civil enforcement of federal law, a core executive function. At minimum, a federal agency should be entitled to Rule 45 protections when its connection to a DOJ enforcement action is a mere "policy" that guides its own purchases of a product at issue.

As to joint investigations, the other potential basis for party discovery, the *UBS* court concluded that HUD and Treasury "should be considered part of the United States for discovery purposes" because those agencies participated in a joint task force and had "a close working relationship" with DOJ "in addressing the financial fraud at issue in th[e] case." *Id.* at *6. In *United States v. Xlear Inc.*, party discovery extended to the FTC which "substantively participated" in the investigation, but *not* to the NIH, CDC, or FDA, which had "limited communications." 2022 WL 5246717, *2, 2 n.3 (D. Utah Oct. 6, 2022); *see also United States v. Atrium Vill. Assocs.*, 1988 WL 2778, at *1 (N.D. Ill. Jan. 12, 1988) (party discovery reached "only two departments [that also] appear to be in dispute"). Every court to have considered this issue focuses party discovery on those federal agencies whose conduct—enforcement or regulatory—underlie the case. Unlike *UBS*, none of the Responding Agencies here jointly investigated this case with DOJ. *See Xlear*, 2022 WL 5246717, at *2 & n.3. Twelve Responding Agencies had zero communication with the DOJ about, and no role in, DOJ's investigation.[9] *See* Ex. F, DOL ¶ 4, NASA ¶ 4, DISA ¶ 7, OMB ¶ 4, DHS ¶ 4, GSA ¶ 4; CIA ¶ 17, NSA ¶ 6, ODNI ¶ 22, WHCA ¶ 6, DOS ¶ 4. The Responding Agencies should not be subject to party discovery on this basis and should be entitled to Rule 45's heightened protections.

## CONCLUSION

For these reasons, the Responding Agencies respectfully submit that the Court should quash Apple's subpoenas and deny its requests for discovery.

[9] Apple previously flagged ten FBI emails and one FTC email on the United States' privilege log. ECF 422 at 10 n.5. These *de minimis* communications on discrete, narrow topics are akin to *Xlear* because the FBI and the FTC here did not "substantively participat[e] in the investigation or the subsequent lawsuit." 2022 WL 5246717, at *2.

Respectfully submitted,

Dated: September 9, 2026

*/s/ Aaron M. Sheanin*
Aaron M. Sheanin
Civil Assistant Chief, San Francisco Office
Michael Lepage
United States Department of Justice
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102
Telephone: (202) 709-1490
aaron.sheanin@usdoj.gov
michael.lepage@usdoj.gov

Jack Lerner
Matthew C. Mandelberg
Curtis Strong
United States Department of Justice
450 Fifth Street, NW
Washington, DC 20530
jack.lerner@usdoj.gov
matthew.mandelberg@usdoj.gov
curtis.strong@usdoj.gov

*Attorneys for the United States and Responding Agencies*

Aaron M. Sheanin
Civil Assistant Chief, San Francisco Office
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102

*Attorney for Plaintiff United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>APPLE INC.<br><br>*Defendant*. | Case No. 2:24-cv-04055-JXN-LDW |

**CERTIFICATE OF SERVICE**

I hereby certify that Plaintiff the above document, United States of America's Notice of Appeal from Special Discovery Master's Orders Within the District Court, the accompanying [Proposed] Order Overruling the Decisions of the Special Discovery Master and Quashing Apple's Subpoenas, and this Certificate of Service were served upon defendant's counsel, Liza M. Walsh, Esq., Craig S. Primis, Esq., Devora W. Allon, Esq., and K. Winn Allen, Esq., 1301 Pennsylvania Avenue, NW, Washington, D.C., 20004, by CM/ECF on September 9, 2026.

*/s/ Aaron M. Sheanin*
Aaron M. Sheanin
United States Department of Justice
Antitrust Division

*Attorney for the United States and Responding Agencies*