# EXHIBIT 2

REDACTED

Josh A. Cohen (Cal. Bar No. 217853)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, CA 94108
(415) 738-5700
jacohen@debevoise.com

David O'Neil (*pro hac vice* application forthcoming)
Anna A. Moody (*pro hac vice* application forthcoming)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com
amoody@debevoise.com

Michael Schaper (*pro hac vice* application forthcoming)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, N.Y. 10001
(212) 909-6000
mschaper@debevoise.com

*Counsel for Movant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE APPLE INC.'S APPLICATION FOR ORDER COMPELLING COMPLIANCE WITH NON-PARTY SUBPOENA SERVED ON META PLATFORMS, INC. IN THE PENDING CASE UNITED STATES ET AL. V. APPLE INC., NO. 2:24-CV-04055 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** | Case No.: _______________<br><br>**DEFENDANT APPLE INC.'S MOTION (1) TO COMPEL DISCOVERY FROM NON-PARTY META PLATFORMS, INC.; AND (2) TO TRANSFER MOTION TO THE DISTRICT OF NEW JERSEY PURSUANT TO FED. R. CIV. P. 45(f)**<br><br>Date:<br>Time:<br>Courtroom:<br>Judge: |

## TABLE OF CONTENTS

Page(s)


NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT ........ 1

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 3

- I. Meta's Central Role in DOJ's Investigation of Apple. ........ 3
- II. United States et al. v. Apple. ........ 5
- III. Apple's Subpoena to Meta. ........ 7

STATEMENT OF THE ISSUES ........ 9

STANDARD OF REVIEW ........ 10

ARGUMENT ........ 11

- I. Meta's Unsubstantiated Burden Claims Do Not Excuse Its Refusal to Produce Documents. ........ 11
- II. The Court Should Compel Meta to Produce Documents Responsive to Apple's Search Protocol and "Sufficient-to-Show" RFPs. ........ 13
  - A. The Court Should Compel Meta to Comply with Apple's Search Protocol. ........ 13
    - 1. Apple's Proposed Custodians Are Highly Likely to Possess Responsive Documents. ........ 13
    - 2. The RFPs Challenged by Meta Seek Information Directly Relevant to the Claims and Defenses. ........ 18
    - 3. Meta's First Amendment Objections Are Baseless. ........ 20
  - B. The Court Should Compel Meta to Produce Documents Responsive to Apple's Sufficient-to-Show RFPs. ........ 21
  - C. The Court Should Compel Meta to Immediately Refresh the CID Production. ........ 23

MOTION TO TRANSFER ........ 24

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 07-cv-929, 2013 WL 6044333 (D. Conn. Nov. 14, 2013) .......... 20

*Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 14-cv-4046, 2014 WL 4272732 (D.N.J. Aug. 28, 2014) .......... 13

*Bright House Networks, LLC v. MarkMonitor, Inc.*, No. 20-mc-80083, 2020 WL 4464882 (N.D. Cal. 2020) .......... 24, 25

*Cornell v. Columbus McKinnon Corp.*, No. 13-cv-2188, 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015) .......... 11

*Culliver v. Ctr. for Toxicology & Envtl. Health LLC*, Nos. 22-mc-00006, 21-cv-4942, 2022 WL 475185 (N.D. Fla. Feb. 16, 2022) .......... 11

*Hickman v. Taylor*, 329 U.S. 495 (1947) .......... 10

*Humphreys v. Regents of Univ. of Cal.*, No. 04-cv-03808, 2006 WL 870963 (N.D. Cal. Apr. 3, 2006) .......... 10

*In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) .......... 21

*In re Mercedes-Benz Emissions Litig.*, No. 16-cv-881, 2020 WL 747195 (D.N.J. Feb. 13, 2020) .......... 13

*In re Meta Platforms, Inc.*, No. 25-mc-80393, 2026 WL 184203 (N.D. Cal. Jan. 23, 2026) .......... 10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967, 2012 WL 12920644 (N.D. Cal. Aug. 6, 2012) .......... 20

*In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*, 337 F.R.D. 639 (N.D. Cal. 2020) .......... 10

*In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047, 2025 WL 4076605 (N.D. Cal. Dec. 9, 2025) .......... 20–21

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580 (N.D. Cal. 2009) .......... 10

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, Nos. 15-cv-7658, 16-cv-3087, 2019 WL 1578677 (D.N.J. Apr. 12, 2019) ........ 11–12

*Mallinckrodt LLC v. Actavis Labs. FL, Inc.*, No. 15-cv-3800, 2017 WL 5476801 (D.N.J. Feb. 10, 2017) ........ 11

*Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426 (N.D. Cal. 2014) ........ 24

*Mut. Indus., Inc. v. Am. Int'l Indus.*, No. 11-cv-5007, 2013 WL 3716516 (E.D. Pa. July 15, 2013) ........ 10

*Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238, 2020 WL 7398791 (N.D. Cal. Dec. 17, 2020) ........ 10

*Rubke, et al. v. ServiceNow, Inc.*, *et al.*, No. 24-cv-01050, 2024 WL 4540756 (N.D. Cal. Oct. 21, 2024) ........ 10

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 2:16-cv-00158, 2018 WL 2981827 (E.D. Cal. June 14, 2018) ........ 12

*United States v. Am. Optical Co.*, 39 F.R.D. 580 (N.D. Cal. 1966) ........ 10

*United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 186 (S.D.N.Y. 1974) ........ 10

*Valcor Eng'g Corp. v. Parker Hannifin Corp.*, No. 8:16-cv-00909, 2018 WL 3956732 (C.D. Cal. July 12, 2018) ........ 12

**Statutes**

15 U.S.C. § 2 ........ 5

**Other Authorities**

Fed. R. Civ. P. 26 ........ 1, 10

Fed. R. Civ. P. 45(d) ........ 10

Fed. R. Civ. P. 45(f) ........ 1, 9, 24, 25

**NOTICE OF MOTION AND**

**STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE that on a date and time to be set by the Court, Defendant Apple Inc. ("Apple") in the above-captioned case hereby moves for an order:

1. Compelling non-party Meta Platforms, Inc. ("Meta") to produce, using Apple's proposed custodians where applicable, documents responsive to 34 of Apple's Requests for Production of Documents in its Subpoena to Meta, dated June 16, 2025 served by Apple pursuant to Federal Rules of Civil Procedure 26 and 45 in *United States et al. v. Apple Inc.*, No. 2:24-cv-04055 (D.N.J.); and

2. Transferring this motion to the United States District Court for the District of New Jersey pursuant to Fed. R. Civ. P. 45(f).

This Motion will be heard at a date and time to be determined after this matter is assigned. This Motion is based upon this Notice of Motion, the below Memorandum of Points and Authorities, the concurrently-filed Declaration of Anna A. Moody (the "Moody Decl.") and the exhibits attached thereto, the entire record of this matter, and other such evidence and argument as may be presented at any hearing of this Motion, on a date and time to be determined by the Court.

**INTRODUCTION**

This is a third-party discovery dispute arising from a civil antitrust action brought by the Department of Justice ("DOJ") against Apple, *U.S. v. Apple*, No. 2:24-cv-04055 (D.N.J.) (the "Antitrust Action"). The case is pending in the District of New Jersey, where the District Court has appointed three special discovery masters. Meta has refused to agree to resolve this dispute through that channel, however, so Apple must bring this motion to compel in this Court. More than a year after Apple served a subpoena on Meta seeking discovery necessary for Apple to defend itself against DOJ's claims, Meta has produced just 21 documents. Despite twelve meet and confers, and notwithstanding Apple's repeated effort to propose accommodations and narrow its requests, Meta refuses to commit to reasonable searches or produce plainly relevant discovery.

[redacted]

[redacted] Yet when Apple seeks additional discovery into those same subjects, Meta invokes vague claims of burden, relevance, and even First Amendment concerns—without substantiating those objections, making good faith counterproposals, or meaningfully responding to requests that have been outstanding for months. [redacted]

Apple has made repeated efforts to accommodate, and Meta has responded with consistent efforts to avoid its discovery obligations. For months, Meta insisted that it would make no productions unless Apple identified with specificity what relevant materials were missing from Meta's productions to DOJ, but Meta refused to disclose how Meta had gathered those materials, and Apple obviously therefore could not specify any such "gaps." When Apple nevertheless identified inadequacies in Meta's productions, Meta insisted that Apple substantially narrow its subpoena before it would even discuss proceeding. Apple then proposed a protocol to allow the parties to evaluate Meta's claimed burden; Meta again refused to run any searches even to provide hit counts, let alone actually produce any documents, until Apple further narrowed its subpoena. Once more, Apple proposed an accommodation, agreeing to hold 19 requests in abeyance, narrow others, and further limit its proposed search protocol. Meta then rejected seven of Apple's proposed custodians, proposed to run search terms only on unreasonably narrow custodian sets, rejected other requests entirely based on patently baseless objections, and backtracked on its commitment to update, or "refresh," the production it made to DOJ, now claiming that even that production is contingent on Meta's overall burden calculus.

Meta's burden claims are unsubstantiated and untenable. Meta is not a small, disinterested third party; it is a sophisticated, interested competitor that inserted itself in DOJ's investigation leading to this case. Meta understands the importance of third-party discovery when defending against antitrust claims. When the shoe was on the other foot and the FTC was suing Meta for antitrust violations, Meta insisted on broad discovery from third parties—obtaining hundreds of thousands of documents from large market players like Google and TikTok—calling it the "norm in antitrust cases." Meta Platforms,

Inc.'s Mot. to Compel the N.Y. Times Co. to Produce Documents at 2, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590, Dkt. No. 246 (D.D.C. Mar. 3, 2023). Apple has now exhausted reasonable efforts to resolve these disputes over the past year, and with the fact discovery cut-off set for January 29, 2027, Apple requests an order compelling Meta to promptly produce documents responsive to Apple's subpoena, as detailed below.

Transfer to the District of New Jersey, where the Antitrust Action is pending, is the most efficient path forward. The D.N.J. Court has managed the Antitrust Action and related multidistrict litigation for over two years, has established special master procedures for discovery disputes, and is best positioned to supervise discovery in the underlying litigation. Apple therefore also requests that the Court transfer the litigation to the District of New Jersey.

Ultimately, discovery from Meta (and other third parties) will allow Apple to demonstrate in the Antitrust Action that the success of iPhone has come not through anticompetitive conduct but through the creation of a superior product that provides consumers with a safe, secure, and seamless smartphone experience.

## STATEMENT OF FACTS

### I. *Meta's Central Role in DOJ's Investigation of Apple.*

[redacted] For years, Meta has lobbied regulators and coordinated with developers with similar purported grievances against Apple.[1] [redacted] Ex. D, META-DOJAPP-00046896 at -897–

[1] *See, e.g.*, Amber Neely, *Facebook Accuses Apple of Anticompetitive Behavior in EU Antitrust Filing*, APPLEINSIDER (Sept. 10, 2020), https://appleinsider.com/articles/20/09/10/facebook-accuses-apple-of-anticompetitive-behavior-in-eu-antitrust-filing; Allison McDaniel, *Meta Just Can't Get Over Apple in 19-Page Comment to US over App Ecosystems*, 9TO5MAC (May 26, 2022), https://9to5mac.com/2022/05/26/meta-apple-app-ecosystems/; Emily Birnbaum, *Meta, App Makers Launch Washington Lobby to Fight Apple and Google*, BLOOMBERG (Apr. 30, 2025), https://www.bloomberg.com/news/articles/2025-04-30/meta-app-makers-launch-washington-lobby-to-fight-apple-google.

898.[2] [redacted] *Id*. at -898.[3] [redacted] Moody Decl. ¶ 5. [redacted] Ex. D, META-DOJAPP-00046896 at -900.

In late 2021, DOJ issued a Civil Investigative Demand ("CID") to Meta in connection with its investigation of Apple. *See* Ex. A, USDOJ-01-005270. Meta promptly complied, produced more than 17,000 documents (together, the "CID Production" or "CID Documents"),[5] [redacted] Moody Decl. ¶¶ 6–7. [redacted]

---

[2] Exhibits cited herein refer to the exhibits attached to the Moody Decl.

[3] [redacted] *See* Ivan Mehta, *All Things Privacy Announced by Apple at WWDC*, THE NEXT WEB (June 23, 2020), https://thenextweb.com/news/all-things-privacy-announced-by-apple-at-wwdc; Ex. D, META-DOJAPP-00046896 at -896 [redacted].

[4] *See* Matt Rosoff, *Congress Grills Tech CEOs Amid Backdrop of Coronavirus and Economic Struggles*, CNBC (Jul. 29, 2020), https://www.cnbc.com/2020/07/29/tech-ceos-testify-before-house-antitrust-subcommittee-recap.html.

[5] DOJ reproduced Meta's CID production to Apple.

[6] An API is a software interface that enables different applications or other technology to communicate and exchange data with one another.

[redacted] Moody Decl. ¶ 7. [redacted] Ex. F, USDOJ-01-004720 at -720, -722.

Not surprisingly, given Meta's active engagement in DOJ's investigation, DOJ's initial disclosures identified Meta and its employees as likely to have discoverable information on the following topics: "[r]elevant product and geographic markets, including the smartphone and performance smartphone markets; competition, market shares, market power, and barriers to entry in the relevant markets; Apple's exclusionary conduct and the resulting anticompetitive effects." Ex. H, Plaintiffs' Rule 26(A)(1) Initial Disclosures at A-17.

## II. *United States et al. v. Apple.*

Meta's self-interested advocacy had the desired and intended effect. DOJ and attorneys general of sixteen states and the District of Columbia sued Apple in March 2024 in the United States District Court for the District of New Jersey, alleging monopolization and attempted monopolization of the smartphone market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *See U.S. v. Apple*, No. 2:24-cv-04055 (D.N.J.), and filed an amended complaint a few months later (the "FAC"). *See* Ex. G, FAC. [redacted] the FAC alleges that Apple suppresses innovation "through a web of contractual restrictions that it selectively enforces through its control of app distribution" and by "denying access to key points of connection between apps and the iPhone's operating system," with the goal of thwarting apps, products, and services that would otherwise make users less reliant on the iPhone. *See* Ex. G, FAC at ¶¶ 1–18; Moody Decl. ¶¶ 7, 10. The FAC focuses its allegations on five categories or "pillars" of Apple's alleged conduct. Specifically, the allegations in the FAC focus on:

- *Super Apps.* According to the FAC, super apps "provide a user with broad functionality in a single app" and "can serve as a platform for smaller 'mini' programs." Ex. G, FAC at ¶¶ 10, 61. The FAC alleges that Apple hinders the development of super apps, including by limiting the display and monetization of mini-programs therein. *Id.* at ¶¶ 60, 68–70.

- *Cloud Streaming*. According to the FAC, cloud streaming apps "leverage[] the computing power of a remote server" and "provide users with a way to play computing intensive games in the cloud" rather than "having to process or store the program on the smartphone itself." Ex. G, FAC at ¶¶ 10, 72. The FAC alleges that Apple blocked cloud gaming apps, including by requiring those apps to be submitted as stand-alone apps for Apple approval and mandating use of Apple's payment system. *Id.* at ¶¶ 71, 76–78.
- *Messaging*. The FAC alleges that messaging apps "allow smartphone users to communicate with friends, family, and other contacts and are often the primary way users interact with their smartphones." Ex. G, FAC at ¶ 81. The FAC contends that Apple's policies degrade the user experience and functionality of third-party messaging apps as compared to Apple's iMessage, including as to the "stigma" of having a "green bubble" while texting. *Id.* at ¶¶ 85, 90.
- *Smartwatches*.[7] As alleged in the FAC, smartwatches "are wrist-worn devices" that "must generally be paired with a smartphone to operate," and which "perform a variety of functions, including monitoring health data, responding to messages and notifications, performing mobile payments, and, of course, telling time." Ex. G, FAC at ¶ 95. The FAC alleges that Apple degrades the functionality of non-Apple smartwatches, including by limiting their ability to respond to notifications and their connectivity with iPhone. *Id.* at ¶¶ 100–03.
- *Digital Wallets*. As alleged in the FAC, digital wallets "are apps that allow a user to store and use passes and credentials, including credit cards, personal identification, movie tickets, and car keys, in a single app." Ex. G, FAC at ¶ 105. The FAC alleges that Apple prioritizes its own digital wallet, Apple Wallet, over third party wallets, including by limiting their ability to offer tap-to-pay payments. *Id.* at ¶ 104.

[redacted] The record thus makes clear that Meta is not a typical third party [redacted]

[7] Smartwatches are a type of "wearable" device. *See* Ex. I, Subpoena ¶ 34.

[redacted]; its refusal to produce discovery to Apple necessary to test the strengths and weaknesses of Meta's and DOJ's complaints severely prejudices Apple in its defenses.

### III. *Apple's Subpoena to Meta.*

On June 16, 2025, Apple served Meta a subpoena containing 53 RFPs that tracked the FAC allegations and Apple's potential defenses. *See* Ex. I, Subpoena. Meta served responses and objections on August 15, 2025. *See* Ex. J, Responses and Objections. Since then, Apple has worked to address Meta's concerns regarding, among other subjects, burden and relevance. Yet Meta to date has produced just 21 documents responsive to Apple's subpoena, consisting solely of litigation materials from *FTC v. Meta* that are facially insufficient to respond to even a single RFP. Moody Decl. ¶ 15.

Apple has made repeated accommodations in pursuit of compromise, only to be stonewalled at each stage. On January 15, 2026, Apple sent Meta a proposed set of search parameters and custodians. *See* Ex. N, Search Protocol. Apple proposed 25 custodians, including: thirteen CID custodians, [redacted], and seven additional senior Meta personnel who are highly likely to possess relevant documents. *See* Ex. N, Search Protocol at 10–11. Meta refused to engage with the search protocol, declining even to provide hit counts absent further narrowing or to provide a counterproposal based on unsubstantiated assertions of undue burden.

On May 15, 2026, Apple shared a substantially narrowed search protocol that held 19 RFPs in abeyance, proposed clarifying revisions to 20 other RFPs, and otherwise narrowed its search terms to further minimize any burden on Meta. *See* Ex. O, Narrowed Search Protocol. As part of its narrowing, Apple revised eight RFPs to require only documents "sufficient to show" the requested information—permitting Meta to respond through targeted "go-get" productions rather than custodial searches. Apple thereafter also agreed to drop its request for three of the seven senior Meta custodians, while still requesting: Chief Executive Officer Mark Zuckerberg, former Chief Business Officer Marne Levine, former Director of Strategic Alliances Jim Gerber, and former Chief Revenue Officer John Hegeman (the "Senior Custodians"). Moody Decl. ¶ 21.

Throughout its negotiations with Apple, Meta has resisted making productions on the grounds that Apple has access to the CID Documents Meta produced to DOJ when advocating against Apple. Moody Decl. ¶ 28. This is not a legitimate basis for refusing to search for and produce materials

responsive to Apple's requests for production, which seek documents that are relevant to DOJ's claims and defenses beyond the self-selected and self-serving documents Meta produced to DOJ. In any event, Meta refuses to begin rolling productions or to agree even to "refresh" the CID production—*i.e.*, to bring it current based on whatever parameters Meta originally used.[8] Meta will decide whether to do so, it has said, only if the total burden is not too great. Moody Decl. ¶¶ 16, 27; Ex. M, June 30, 2026 2:59 PM Email from Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg") to Debevoise & Plimpton LLP ("Debevoise").

Despite Apple's unilateral compromises, subsequent meet and confers have only underscored Meta's intransigence. Relying on vague assertions of burden, Meta has pushed for additional cuts to Apple's already narrowed search terms, has refused to run search terms (let alone produce documents) for several of Apple's RFPs, and has proposed plainly inadequate custodians—[redacted] *See* Moody Decl. ¶¶ 16–18, 24, 26; Ex. M, July 2, 2026 2:03 PM ET Email from Debevoise to Kellogg.

To date, Meta has produced no custodial documents and refused to even take a position on the majority of Apple's "go-get" RFPs. Indeed, Meta only agreed to run certain search terms in recent weeks—on a severely limited set of its chosen custodians—after Apple indicated a need for motion practice to resolve multiple issues.[9] It is untenable and unreasonable for Meta to insist, as explained above, that it will not begin rolling productions or consider a CID refresh until Meta and Apple reach a global resolution on each and every issue. Meta has demonstrated its ability to make rolling productions to DOJ, and Meta received rolling productions from non-parties like Google, Nextdoor, and Quora in response to subpoenas Meta issued when Meta was the target of an FTC enforcement

---

[8] The CID Production Meta made to DOJ covered January 1, 2015 to January 31, 2022. Apple requested that it be brought current to June 15, 2025. Moody Decl. ¶ 16; Ex. L, October 10, 2025 5:27 PM ET email from Kellogg to Debevoise.

[9] Meta indicated in July 2026 that search term "syntax errors" subsequently precluded Meta from providing hit counts immediately, even though Meta had possessed the search terms for nearly two months by that time. Ex. M, July 10, 2026 7:33 PM ET Email from Kellogg to Debevoise. Apple provided suggested solutions one week after being made aware of those issues. Ex. M, July 17, 2026 11:06 AM ET Email from Debevoise to Kellogg.

action. *See* Non-Party Witnesses' Joint Motion to Quash Trial Subpoenas at 8–11, 13–14, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590, Dkt. No. 486 (D.D.C. Mar. 26, 2025).

Following more than a year of Apple's repeated good-faith efforts, Apple and Meta have reached an impasse on four fronts. *First*, regarding key aspects of Apple's narrowed search protocol: (1) Meta has refused to produce any documents from the four Senior Custodians proposed by Apple; and (2) Meta insists on running each search string on an unjustifiably narrow subset of custodians. *Second*, Meta has refused to produce documents responsive to several other RFPs entirely, based on unfounded relevance and First Amendment objections. *Third*, Meta has provided a woefully inadequate response to Apple's go-get requests. Meta has stated no position at all on most of Apple's 18 go-get requests, despite those requests being outstanding for months and, for some, more than a year. For the subset to which Meta has recently responded, it has offered only to make threadbare productions that would not be "sufficient to show" the information requested. *Fourth*, Meta refuses to produce a CID refresh or even to commit to doing so in the future, even though Meta has already acknowledged the relevance of those documents by affirmatively producing them to DOJ.

## STATEMENT OF THE ISSUES

1. Whether Meta should be compelled to produce documents responsive to Apple's Requests for Production of Documents, including by: (1) producing documents resulting from searches across the custodians that Apple has requested, including 13 CID custodians, five [redacted], and four Senior Custodians; (2) producing documents in response to certain RFPs because they seek information relevant to the claims and defenses in the underlying litigation; (3) producing documents sufficient to satisfy Apple's "sufficient-to-show" RFPs; and (4) "refreshing" its CID production through June 15, 2025.[10]

2. Whether this matter should be transferred to United States District Court for the District of New Jersey pursuant to Fed. R. Civ. P. 45(f) for resolution of this motion.

---

[10] Having held 19 RFPs in abeyance, Apple moves as to 34 RFPs. Its "all documents and communications" RFPs include: 6, 9, 11, 18, 19, 20, 21, 25, 27, 28, 31, 32, 40, 42, 44, and 53. Its "sufficient-to-show" RFPs include: 7, 8, 10, 12, 13, 17, 22, 23, 24, 26, 30, 34, 36, 37, 39, 43, 46, and 48. As to the custodians for whom Apple seeks to compel production, *see infra* Section II.A.1.

## STANDARD OF REVIEW[11]

Discovery under the federal rules is "accorded a broad and liberal treatment." *Humphreys v. Regents of Univ. of Cal.*, No. 04-cv-03808, 2006 WL 870963, at *1 (N.D. Cal. Apr. 3, 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)), including under Rule 45, *In re Rule 45 Subpoenas Issued to Google LLC & LinkedIn Corp.*, 337 F.R.D. 639, 645 (N.D. Cal. 2020). That includes discovery requested by the defendant in antitrust cases. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 257 F.R.D. 580, 586 (N.D. Cal. 2009). In cases brought by the government, a principal source of discovery will often by necessity be third-party competitors. *See, e.g.*, *United States v. Am. Optical Co.*, 39 F.R.D. 580, 585 (N.D. Cal. 1966) (in antitrust cases "a competitor's business records . . . are precisely the source of the most relevant evidence" (citation and quotation marks omitted)); *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974) (compelling third-party discovery and explaining "discovery in antitrust litigation is most broadly permitted").

Under FRCP 45, a "serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). The movant "must first demonstrate that the information requested is within the scope of permissible discovery," *In re Meta Platforms, Inc.*, No. 25-mc-80393, 2026 WL 184203, at *1 (N.D. Cal. Jan. 23, 2026), which includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1). After the movant establishes the permissibility of the information it seeks, "the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238, 2020 WL 7398791, at *3 (N.D. Cal. Dec. 17, 2020). The respondent must "specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments." *Rubke, et al. v. ServiceNow, Inc.*, *et al.*, No. 24-cv-01050, 2024 WL 4540756, at *3 (N.D. Cal. Oct. 21, 2024); *see also Mut. Indus., Inc. v. Am. Int'l Indus.*, No. 11-cv-5007, 2013 WL 3716516, at *2 (E.D. Pa. July 15, 2013) (claim of "undue burden" requires "evidence") (citation and quotation marks omitted).

---

[11] This brief relies primarily on case law from the Ninth Circuit but, in light of the request to transfer the motion to the District of New Jersey, includes Third Circuit case law as well.

**ARGUMENT**

**I. *Meta's Unsubstantiated Burden Claims Do Not Excuse Its Refusal to Produce Documents.***

With limited exceptions discussed below, Meta does not dispute the relevance of Apple's RFPs—nor could it, given the breadth of Meta's complaints to DOJ that were incorporated in the FAC and in turn informed Apple's RFPs. Instead, Meta raises vague, unsubstantiated burden objections, none of which excuses its failures of production.

When seeking discovery from a non-party in its own antitrust litigation, Meta has argued forcefully that third-party discovery "from avowed competitors is the norm in antitrust cases," and for that reason "is most broadly permitted." Meta Platforms, Inc.'s Mot. to Compel the N.Y. Times Co. to Produce Documents at 2, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590, Dkt. No. 246 (D.D.C. Mar. 3, 2023) (citation and quotation marks omitted). That principle applies with full force in this broad-ranging case, which spans the entire smartphone market and five distinct application categories, and in which Meta played a central role in developing the government's allegations.

Courts are less sympathetic to burden objections where, as here, a non-party has injected itself into the underlying controversy or otherwise stands to benefit from the litigation's outcome. Rule 45 "is aimed at protecting persons who are disinterested, and thus have little to gain from their outlays in compliance cost"; it "was not intended as a mechanism for entities which stand to benefit from certain litigation outcomes to evade discovery costs arising from their involvement in the underlying acts that gave rise to the lawsuit." *Culliver v. Ctr. for Toxicology & Envtl. Health LLC*, Nos. 22-mc-00006, 21-cv-4942, 2022 WL 475185, at *4 (N.D. Fla. Feb. 16, 2022) (quoting *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-2188, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015)) (quotation marks omitted). Courts in the District of New Jersey, to which Apple seeks transfer of this motion, have likewise compelled production where a non-party has "a financial stake in th[e] litigation" and is "uniquely positioned to provide relevant discovery." *Mallinckrodt LLC v. Actavis Labs. FL, Inc.*, No. 15-cv-3800, 2017 WL 5476801, at *4, 5 (D.N.J. Feb. 10, 2017); *see also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, Nos. 15-cv-7658, 16-cv-3087, 2019 WL 1578677, at *7–8 (D.N.J. Apr. 12, 2019) (rejecting

undue-burden objection where the non-party's documents formed "an essential part" of the movant's discovery).[12]

That is precisely the position Meta occupies here. Meta is not a disinterested bystander invoking Rule 45 to avoid the costs of producing discovery in someone else's dispute. [redacted], all in an effort to enrich itself by persuading DOJ to bring a case against Apple. [redacted] Moody Decl. ¶ 7.[13] Having actively encouraged and facilitated the Antitrust Action and now poised to benefit from its outcome, Meta should not be permitted to invoke the protections designed for strangers to the case.

Its conduct in *FTC v. Meta,* where Meta demanded the very custodial discovery it resists here, makes its current posture particularly untenable. Meta argued that "[n]on-parties in antitrust cases routinely conduct custodial searches" and pointed to non-parties in parallel antitrust actions, including Microsoft's 45 custodians and 44 search strings and Apple's 19 custodians and 54 search strings, as routine and appropriate. Meta Platforms, Inc.'s Mot. to Compel Snap, Inc. to Produce Documents at 3, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590, Dkt. No. 205 (D.D.C. Oct. 27, 2022). Meta cannot credibly disclaim comparable obligations now that the burden falls on Meta itself. Nor has Meta

---

[12] District courts applying the related cost-shifting provisions of Rule 45 have similarly declined to shift costs of an "interested" non-party. *See Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2018 WL 2981827, at *5 (E.D. Cal. June 14, 2018) (declining to shift costs because the non-party "had a business relationship with the parties that render[ed] it 'interested'"); *Valcor Eng'g Corp. v. Parker Hannifin Corp.*, 2018 WL 3956732, at *6 (C.D. Cal. July 12, 2018) (same, where "the aggressive and inefficient manner in which [the non-party] chose to respond to the subpoena demonstrate[d] its interest in the outcome of this case").

[13] *See also A Conversation with Mark Zuckerberg*, STRIPE (2025) https://stripe.com/sessions/2025/a-conversation-with-mark-zuckerberg (Mr. Zuckerberg claiming that but for polices from Apple and Google, Meta "might be twice as profitable as a company or something as we are now"); *Apple, Meta and the $10 Billion Impact of Privacy Changes*, FORBES (Feb. 10, 2022) https://www.forbes.com/sites/danielnewman/2022/02/10/apple-meta-and-the-ten-billion-dollar-impact-of-privacy-changes ("[Meta CFO] said that the company anticipates losing more than $10 billion in sales revenue, as the company continues to feel the lasting impact of Apple's changes to the App Tracking Transparency feature[.]").

substantiated that burden in any concrete way: after a year with the subpoena, it has not provided hit counts, CID search parameters, or other metrics that would allow the parties to evaluate the burden it claims, and its generalized assertions fall short of the showing Rule 45 requires.[14] *See In re Mercedes-Benz Emissions Litig.*, No. 16-cv-881, 2020 WL 747195, at *5 (D.N.J. Feb. 13, 2020) (non-party must show "specifically how the request is burdensome") (citation and quotation marks omitted); *Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 14-cv-4046, 2014 WL 4272732, at *4 (D.N.J. Aug. 28, 2014) (non-party's burden objections consisted only of conclusory claims that did not "adequately demonstrate any undue burden it w[ould] incur" in producing the requested materials).

## II. *The Court Should Compel Meta to Produce Documents Responsive to Apple's Search Protocol and "Sufficient-to-Show" RFPs.*

Despite Apple's narrowing of its subpoena and more than a year of negotiations with Meta, and in contrast to the thousands of documents Meta produced to DOJ from 13 custodians, Meta has produced only 21 documents. Apple therefore seeks the Court's assistance in compelling Meta to: (1) produce documents from Apple's proposed custodians; (2) produce documents in response to certain RFPs that are plainly relevant; (3) produce documents to satisfy Apple's "sufficient-to-show" RFPs (i.e., "go-get" RFPs); and (4) refresh its CID production.

### A. The Court Should Compel Meta to Comply with Apple's Search Protocol.

The Court should compel Meta to produce documents responsive to Apple's search protocol by ordering Meta to run searches over Apple's proposed custodians for the relevant RFPs. In doing so, it should reject Meta's baseless relevance and First Amendment objections.

#### 1. *Apple's Proposed Custodians Are Highly Likely to Possess Responsive Documents.*

Apple's search protocol proposes that search terms be applied to 22 custodians. Moody Decl. ¶¶ 17, 21. That number includes 13 CID custodians Meta provided to DOJ and five Meta employees

[14] It was only on the eve of filing when Apple, as a courtesy, notified Meta of its imminent motion to compel that Meta without further explanation claimed that Apple's search terms resulted in more than 3 million hits. Meta's refusal to share its search term hits with Apple until now—14 months after receiving Apple's subpoena—exemplifies Meta's gamesmanship throughout this process and reinforces that judicial intervention is necessary.

[redacted]. Moody Decl. ¶ 17. Meta nominally agreed to the 13 CID and five [redacted] custodians; however, Meta insists that each respective search term should be applied to only a limited subset of those 18 custodians—for example, agreeing to run one of an RFP's search terms only on a *single* custodian. Moody Decl. ¶¶ 20, 24. Meta has entirely rejected Apple's proposal to expand the custodian list for each search term—[redacted] Moody Decl. ¶¶ 24, 26.

Apple also proposes four Senior Custodians likely to have relevant information. Meta rejects out of hand these four custodians, each of whom is highly likely to have discoverable information.

a. *Meta Should Be Required to Add the Four Senior Custodians*

This Court should compel Meta to include the four Senior Custodians that Apple proposed for all search terms. To start, Mr. Zuckerberg leads Meta's operations, directs business strategy, [redacted] *See* Ex. D, META-DOJAPP-00046896 at -897–898 [redacted] and discussed publicly the matters at the heart of DOJ's complaint. *See, e.g.*, META-DOJAPP-00047546 at -546–547 (March 2021 internal email describing an interview in which Mr. Zuckerberg participated in a "full court press on Apple," criticizing Apple's alleged API restrictions across messaging and other areas affecting interoperability); THE JOE ROGAN EXPERIENCE: *#2255 – Mark Zuckerberg* (Spotify Podcasts, Jan. 10, 2025), *transcript available at* https://podcasts.happyscribe.com/the-joe-rogan-experience/2255-mark-zuckerberg (Mr. Zuckerburg asserting that Apple has "used [its] platform to put in place a lot of rules that I think . . . feel arbitrary" and that Apple makes more money by "squeezing people" such as through a "30% tax on developers").

Meta should be required to include the three other Senior Custodians in all searches for the same reasons. As Chief Business Officer, Ms. Levine was tasked with overseeing "all of Facebook's

advertising businesses and global partnerships."[15] [redacted] *See, e.g.*, Ex. C, META-DOJAPP-00017454 at -455 [redacted]; Alexandra Sternlicht, *Meta Chief Says Metaverse Will be 'Gamechanger for Women'*, FORTUNE (Oct. 12, 2022), https://fortune.com/2022/10/12/meta-chief-marne-levine-says-metaverse-will-be-game-changer-for-women/ (Ms. Levine noting "Apple made a bunch of changes on their platform, and it changed the way businesses big and small are able to find new customers").

As Director of Strategic Alliances, Jim Gerber [redacted] *See, e.g.*, Ex. B, META-DOJAPP-00067163 at -166–168 [redacted].

As Chief Revenue Officer, Mr. Hegeman oversaw Meta's finances and thus surely has documents regarding the financial performance of Meta's apps, including the impact, if any, of Apple policies on Meta's revenue. [redacted] *See, e.g.*, Ex. D, META-DOJAPP-00046896 at -901–902 [redacted]; *Robinhood Markets Welcomes John Hegeman to its Board of Directors*, ROBINHOOD (Mar. 25, 2025), https://robinhood.com/us/en/newsroom/robinhood-markets-welcomes-john-hegeman-to-its-board-of- directors/ (explaining that as Meta's CRO, Mr. Hegeman "oversees the company's global monetization strategy" and "[s]ince joining Meta in 2007, he has played a key role in shaping its advertising business, leading teams across ads, Feed, Stories, notifications, and integrity").

---

[15] *See* Sara Fischer, *Facebook Names Longtime Exec Marne Levine as Chief Business Officer*, AXIOS (June 3, 2021), https://www.axios.com/2021/06/03/facebook-chief-business-officer.

b. *Meta Should Be Required to Include Relevant CID and* [redacted] *Custodians Consistent with Apple's Proposal*

This Court should further compel Meta to run each search term over the relevant CID and [redacted] custodians as outlined in Apple's July 2, 2026 counterproposal to Meta.[16] Meta purports to agree to run search terms on these 18 custodians, but it unreasonably seeks to restrict the searches to be run on each individual, such that for each RFP, Meta actually offers many fewer than 18 custodians, excluding relevant custodians in the process. *See* Moody Decl. ¶ 24. Having failed to propose any custodians of its own—as would be typical for a subpoena recipient—Meta now proposes to reduce Apple's proposed custodians to an overly narrow subset based on Meta's own judgments about which custodian is "responsible" for a particular "pillar" of DOJ's case.

Apple has compromised by agreeing that not all search terms need to be run on all custodians, but Meta's position takes that to the extreme, in some cases proposing that certain searches be run over only a few, or even just one, custodians' documents. Apple provided a comprehensive counterproposal on custodians—[redacted]. *See* Moody Decl. ¶ 24; Ex. M, July 2, 2026 2:03 PM ET Email from Debevoise to Kellogg. Meta rejected that counterproposal in its entirety. As a result, its position on custodians is inadequate to comply with its discovery obligations and at odds with what it represented to DOJ about the range of Meta personnel with relevant information. Specifically, along with running all searches for the four Senior Custodians, Apple proposed to expand the custodian set for search term purposes as follows, *see* Moody Decl. ¶ 24; Ex. M, July 2, 2026 2:03 PM ET Email from Debevoise to Kellogg:

- For **RFPs 6** and **9**, which seek information about apps and app review submissions across all pillars, Meta should be compelled to include [redacted]

---

[16] For this comprehensive proposal on an RFP-by-RFP and custodian-by-custodian basis, which Apple seeks to compel, *see* Moody Decl. ¶ 24; Ex. M, July 2, 2026 2:03 PM ET Email from Debevoise to Kellogg. For Meta's latest offer prior to its complete rejection of Apple's counterproposal, *see* Ex. M, June 30, 2026 2:59 PM ET Email from Kellogg to Debevoise.

- For **RFP 18**, which seeks documents regarding decisions to use different capabilities and functionalities on Meta messaging apps, Meta should be compelled to include [redacted]
- For **RFP 19**, which seeks documents regarding Meta's decision whether to offer in-app purchases across each of the five pillars, Meta should be compelled to run searches across Apple's 18 proposed custodians.
- For **RFPs 20** and **21**, which seek information about comparisons between iMessage and Meta's messaging apps, the App Store and Meta's app marketplaces, Facebook Mobile's performance on the iPhone compared to other smartphones, and Meta's apps (across all pillars) when used on iOS vs. non-iOS platforms, Meta should be compelled to include [redacted] Meta also should be compelled to include [redacted]
- For **RFP 25**, which seeks information about the availability of certain messaging capabilities and features on Meta's messaging apps, Meta should be compelled to include [redacted]
- For **RFP 27**, which seeks information about efforts to integrate messages on Apple's messaging apps into Meta's messaging apps, Meta should be compelled to include [redacted]
- For **RFP 28**, which seeks information about the benefits and drawbacks of native cloud streaming apps compared with web-based cloud streaming apps and apps without primary streaming content, Meta should be compelled to include [redacted]

- For **RFP 40**, which seeks information about the benefits and drawbacks of mini programs (a component of super apps) compared to native apps, Meta should be compelled to include [redacted]
- For **RFP 42**, which seeks information about the effects of mini program and super app displays, Meta should be compelled to include [redacted]
- For **RFP 44**, which seeks information about Meta's plans to offer a wearable product or digital payment service for iOS or Android, including Meta's efforts to make any such product compatible with iPhones and other smartphones, Meta offered only a *single* custodian, [redacted] Meta should be compelled to include [redacted]

2. *The RFPs Challenged by Meta Seek Information Directly Relevant to the Claims and Defenses.*

Meta has categorically refused to produce documents responsive to RFPs 9(e), 9(f), 11, 31, and 32 despite their clear relevance to the claims and defenses in the Antitrust Action. Meta's apparent position is that if an issue is not addressed within the four corners of DOJ's complaint, then it is not relevant to the litigation. That is, of course, not the law; Apple is entitled to discovery in support of its defenses and its own arguments to rebut the Government's theories.

*First*, several of the challenged RFPs seek documents concerning privacy and security issues relating to Meta's apps and app marketplaces. RFP 9(e) seeks documents relating to privacy and security analyses for apps submitted by Meta to app marketplaces; RFP 31 seeks documents concerning consumer views and complaints regarding privacy, system security, or fraud in Meta's app marketplaces; and RFP 32 seeks documents concerning Meta's assessment of user privacy and system

security for its apps and its compliance with smartphone makers' privacy and security policies. Ex. I, Subpoena at 19–20; Ex. O, Narrowed Search Protocol at 12–13. These RFPs are directly relevant to rebut DOJ's repeated allegations in the FAC that Apple uses "privacy, security, and consumer preferences" as a pretextual basis to "justify its anticompetitive conduct." Ex. G, FAC at ¶¶ 16, 141–47; *see also id.* ¶ 147 (alleging "the pretextual nature of any claim that Apple's conduct is justified by protecting user privacy or security"). The Special Master in the Antitrust Action recently reached the same conclusion, holding that "to the extent the Federal Agencies have analyzed the security and privacy concerns [Apple] claims are the reasons for why its systems are the way they are, such an analysis would be relevant to support its position that its procompetitive reasons are not pretextual." Antitrust Action, Dkt. No. 471, at 7. The Special Master further explained that, on "the other side of the coin . . . security and privacy analysis regarding non-Apple operating systems and marketplaces" could likewise lead to the discovery of information that could be used "to support [Apple's] position that its procompetitive reasons are not pretextual." *Id.*

*Second*, RFP 9(f) seeks documents concerning profit projections for apps submitted by Meta to any app marketplace. Ex. O, Narrowed Search Protocol at 12–13. The FAC alleges that Apple's policies harm third-party developers and the profitability of their apps. Financial information from third-party developers, such as Meta, regarding app profits is therefore directly relevant to the harm alleged, which Apple is entitled to test as part of its defense to DOJ's claims.

*Third*, RFP 11 seeks documents concerning Meta's communications with government agencies and private plaintiffs regarding the coordinated Apple smartphone antitrust litigation. Ex. O, Narrowed Search Protocol at 13. This RFP seeks relevant evidence because Meta's coordination with non-parties including state attorneys general, and private plaintiffs concerning the antitrust litigation may shed further light on the development of DOJ's allegations, the information Meta provided, and the scope of its coordination with third parties—all of which bear directly on Apple's defenses to the claims in the Antitrust Action.

Meta's relevance objections are thus unfounded. The Court should compel Meta to collect, review, and produce documents responsive to each of these requests.

3. *Meta's First Amendment Objections Are Baseless.*

Meta has also raised First Amendment objections to RFPs 46 and 53 and has produced no documents in response to either request. These objections are baseless.

RFP 46 seeks documents sufficient to show Meta's efforts to influence government or public opinion regarding the competitive effect of smartphone manufacturers' or operating system providers' app-related policies. Ex. O, Narrowed Search Protocol at 14. RFP 53 seeks documents concerning the bases for specific public statements made by the Coalition for a Competitive Mobile Experience ("CCME")—of which Meta is a founding member—regarding alleged anticompetitive issues related to smartphones, including that "smartphone platform owners . . . are locking users into proprietary systems, limiting choice, and increasing costs for all consumers." Ex. I, Subpoena at 27–28. These requests do not seek to probe Meta's political or associational activities but rather seek to understand the bases for claims made regarding Apple's allegedly anticompetitive conduct.

As the party asserting First Amendment privilege, Meta must make a "prima facie showing of arguable [F]irst [A]mendment infringement" by showing that the discovery request will result in "harassment, membership withdrawal, or discouragement of new members" or "other consequences which objectively suggest an impact on, or chilling of, the members' associational rights." *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047, 2025 WL 4076605, at *2 (N.D. Cal. Dec. 9, 2025) (citation and quotation marks omitted). Meta cannot make such a showing. Meta has not identified any specific harm it would suffer from disclosure. Meta's "conclusory statements" regarding its privilege and "nebulous allegations of a potential chilling effect" are insufficient to show how disclosing the requested information would actually infringe on Meta's associational rights. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967, 2012 WL 12920644, at *3 (N.D. Cal. Aug. 6, 2012); *see also A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 07-cv-929, 2013 WL 6044333, at *7 (D. Conn. Nov. 14, 2013) ("The *prima facie* burden of demonstrating harm would be rendered meaningless if mere aversion to disclosure constituted sufficient encroachment on a group's liberties.").

Even if Meta could make a prima facie showing, it would still be required to produce "otherwise unavailable" materials that are "highly relevant" and "carefully tailored." *In re Soc. Media Adolescent*

*Addiction*, 2025 WL 4076605, at *2 (citation and quotation marks omitted). RFPs 46 and 53 plainly qualify; they focus on the bases for specific statements made by the CCME and documents sufficient to show Meta's advocacy regarding the "competitive effects" of Apple's policies. Ex. O, Narrowed Search Protocol at 14; Ex. I, Subpoena at 27–28. These materials are relevant because they will reveal whether Meta's public claims of competitive harm were supported by genuine analysis—or were instead commercially motivated efforts to undermine Apple's privacy policies that allegedly impacted Meta's advertising business. Meta's First Amendment claim is further weakened by the "commercial nature" of the speech, which relates to Meta's business disputes with Apple, not any political association. *Cf. In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011).

**B. The Court Should Compel Meta to Produce Documents Responsive to Apple's Sufficient-to-Show RFPs.**

The Court should likewise compel Meta to collect and produce documents to satisfy Apple's 18 "sufficient-to-show" (i.e., "go-get") RFPs. Despite Apple's narrowing of its requests, including converting certain RPFs to "go-gets", Meta has still failed to state a position on many of these requests and has proposed facially inadequate responses to others. Meta has not produced a single document responsive to any of Apple's 18 sufficient-to-show RFPs.

These requests are plainly relevant to the claims and defenses in the Antitrust Action. DOJ alleges that Apple uses its control over the Apple App Store to stifle innovation and harm competition, to the detriment of developers of third-party apps and other products. Ex. G, FAC at ¶¶ 8–10. Apple is therefore seeking discovery from Meta and other third parties to understand their experience with Apple's guidelines and app review process. For instance, Apple seeks documents from Meta on a go-get basis regarding Meta's apps, including on which platforms they are offered and user complaints concerning app functionality and features (e.g., RFP 8); how Meta's apps function differently on Apple's iPhone and iOS as compared to competitors' products (e.g., RFP 22); how Apple's policies and app review guidelines purportedly impact competition (e.g., RFP 23); Meta's policies when operating its own app marketplaces (e.g., RFP 36); Meta's lobbying efforts related to the competitive effects of Apple's or other smartphone manufacturers' policies (e.g., RFP 46); and certain comments made by Mr. Zuckerberg about Apple that are similar to DOJ's allegations (e.g., RFP 48). Ex. I,

Subpoena at 17, 22–23; Ex. O, Narrowed Search Protocol at 12–15.

Many of Apple's go-get requests seek information regarding privacy and security and are therefore relevant for the reasons outlined above and in the aforementioned recent Special Master order. *See* Antitrust Action, Dkt. No. 471, at 7. For instance, Apple seeks discovery regarding the benefits conferred by Apple's products and policies, including as to privacy, security, and usability (e.g., RFP 12); the relative benefits or drawbacks of Apple products and services compared to others, including relating to privacy, security, and user experience (e.g., RFP 13); privacy or security analyses regarding Meta's Facebook Gaming App (e.g., RFP 30); and privacy, security, or fraud concerns related to any efforts by Meta to develop an app marketplace for iPhone (e.g., RFP 34). Ex. I, Subpoena at 19; Ex. O, Narrowed Search Protocol at 13–14.

Other requests are designed to test whether, as DOJ alleges, Apple's policies had an anticompetitive effect by harming third-party app developers such as Meta. *See* Antitrust Action, Dkt. No. 471, at 7–8. Apple is seeking on a sufficient-to-show basis discovery regarding the download and use rates of Meta's apps (e.g., RFP 7); [redacted] (e.g., RFP 10); the financial performance of Meta's apps (e.g., RFP 17); the purported impact of Apple's policies on competition (e.g., RFP 23); and the reasons why Meta discontinued its standalone Facebook Gaming App (e.g., RFP 30). Ex. I, Subpoena at 15–16, 19; Ex. O, Narrowed Search Protocol at 13–14. This information will allow Apple and its experts to test DOJ's allegations that Apple's policies had an anticompetitive impact on market participants.

Apple's sufficient-to-show RFPs also seek information relating to other elements of DOJ's "five pillars" allegations against Apple. In particular, Apple seeks discovery to challenge DOJ's allegations regarding super apps, including how Meta's app marketplaces approach mini-programs and the app review process (e.g., RFPs 37, 43); data regarding Meta's mini-programs, including usage data, privacy and security features, and consumer complaints (e.g., RFP 39); and information, including consumer surveys, on the impact of super app and mini program displays (e.g., RFP 42). Ex. I, Subpoena at 23; Ex. O, Narrowed Search Protocol at 14. Other requests relate to DOJ's allegations regarding messaging, including consumer research and advertising strategy related to messaging apps and functionality (e.g., RFP 24); and the circumstances in which Meta provides unencrypted messages

or content to third parties (e.g., RFP 26). Ex. O, Narrowed Search Protocol at 14. Apple is entitled to test DOJ's unsubstantiated allegations by reference to the actual practices and experiences of third-party app developers, like Meta. Despite the relevance of these RFPs, Meta has refused to commit to complete responses—either by failing to take a position or offering (but never making) facially insufficient productions. To highlight a few:

- **RFP 7** seeks documents sufficient to show download and use rates for Meta's apps, including monthly active users ("MAU"). Ex. O, Narrowed Search Protocol at 12. Despite stating in October 2025 that Meta maintained use rates and would provide additional information about how that data was stored, Meta has not provided an update or produced any such information. Instead, Meta recently offered only certain demonstratives from the *FTC v. Meta* trial that included some MAU data, rather than the actual download and use rates. Moody Decl. ¶ 28.
- **RFP 8** seeks documents showing each marketplace where Meta's apps are available and user complaints concerning app functionality across platforms. Ex. O, Narrowed Search Protocol at 12. Meta offered to produce documents showing the former but not the latter. Moody Decl. ¶ 28.
- **RFP 39** seeks information regarding Meta's mini programs, including MAU data, developer name, privacy and security features, consumer complaints, and launch and discontinuation dates. Ex. I, Subpoena at 23. Meta offered to produce only MAU and developer data—and only for an undefined set of its "most used" mini programs—while failing to explain why the same information could not be produced for all mini programs or to take a position on the remaining categories of requested information. Moody Decl. ¶ 28.

Whatever the explanation, the pattern is the same: despite the fact that these requests have been outstanding for months, and even though Apple has substantially narrowed its requests, Meta has not produced a single document responsive to any of these go-get RFPs. The Court should order Meta to conduct the targeted collection and produce documents sufficient to satisfy each of these requests.

### C. The Court Should Compel Meta to Immediately Refresh the CID Production.

The CID refresh is the clearest illustration of Meta's strategy. Throughout the meet-and-confer process, Meta repeatedly invoked the CID production to push back on Apple's requests, despite refusing to provide Apple with the search parameters that generated that production. Moody Decl.

¶ 16. Yet Meta has neither produced the CID refresh nor explicitly refused to do so, and now conditions any movement on global resolution of the disputes. Moody Decl. ¶¶ 23, 27; Ex. M, June 30, 2026 2:59 PM Email from Kellogg to Debevoise. A refresh of an existing production is not a novel nor open-ended request. The custodians are known, and the subject matter is defined and agreed to by Meta and DOJ. The Court should order Meta to immediately refresh its CID production.

**MOTION TO TRANSFER**

This Court should transfer this motion pursuant to Fed. R. Civ. P. 45(f) to the District of New Jersey, which is overseeing both *U.S. v. Apple*, No. 24-cv-04055 (D.N.J.)—a technically complex antitrust matter—and the related multi-district litigation, *In re Apple Inc. Smartphone Antitrust Litigation*, No. 24-MD-3113 (D.N.J.). Transfer is warranted in light of the D.N.J. Court's significant familiarity with this complex, discovery-laden suit. For this motion to compel, transfer will avoid duplicative review and promote judicial efficiency, while posing no undue burden to Meta.

Transfer is appropriate under Rule 45(f) where it will "avoid disrupting the issuing court's management of the underlying litigation," including where that court has "already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D. 426, 428 (N.D. Cal. 2014) (quoting Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment). Transfer will avoid "duplicate review" on issues for which the court presiding over the underlying litigation "is in a better position to rule . . . due to its familiarity with the issues involved." *Bright House Networks, LLC v. MarkMonitor, Inc.*, No. 20-mc-80083, 2020 WL 4464882, at *2 (N.D. Cal. 2020) (citation and quotation marks omitted); *see also Moon Mountain*, 301 F.R.D. at 429–30 (transfer warranted given issuing court's "familiarity" with the case, including context for "which documents have already been produced, which documents are under in camera review, and which documents are subject to the production order"). The advantages of transfer under Fed. R. Civ. P. 45(f) must be weighed against potential burden on the local non-party. *Moon Mountain*, 301 F.R.D. at 430–31.

Transfer is warranted here to avoid duplicative review, promote judicial efficiency, and ensure consistency in the complex and discovery-intensive Antitrust Action. The D.N.J. Court has already invested substantial effort in managing these coordinated actions, including holding technology

tutorials presented by the parties, *U.S. v. Apple*, No. 24-cv-04055 (D.N.J.), ECF Nos. 187, 196, 200; overseeing a variety of discovery disputes, *see, e.g.*, ECF Nos. 88, 270, 303, 320, 321, 324, 354, 378, 387, 422, 471; and appointing three Special Masters to assist with the "increasing number of discovery and other anticipated disputes," ECF No. 431 at 2–3. Transfer will "avoid disrupting" the D.N.J. Court's active "management" of these cases, Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment, in particular given that discovery disputes will implicate a complicated procedural background and overlapping antitrust issues, *see Bright House*, 2020 WL 4464882, at *3 (determining transfer was appropriate where the issuing court "is assuredly more familiar with the relevant issues and technical background of the dispute"). The Special Masters appointed in the Antitrust Action are already resolving discovery disputes, including on issues relevant to this motion such as the relevance of Apple's privacy and security-focused RFPs. *See* Antitrust Action, Dkt. No. 471, at 7.

Meta would not be burdened by transfer, nor did it identify any burden when it declined to consent to having this motion heard in D.N.J. Meta is no "stranger to the underlying dispute," *Bright House*, 2020 WL 4464882, at *2; its years-long advocacy campaign was central to bringing this case, and it has actively monitored and participated in the Antitrust Action, including filing letters with the D.N.J. Court, Antitrust Action, Dkt. No. 157, and citing to recent disputes before the D.N.J. Special Masters, Ex. M, June 30, 2026 2:59 PM ET Email from Kellogg to Debevoise. Moreover, Meta is not the type of local non-party whose burden Rule 45 is principally designed to minimize; Meta is a global corporation with at least one major regional office on the East Coast and is represented by counsel all over the country. *See Bright House*, 2020 WL 4464882, at *3 (no burden where "there is no practical difference between appearing before this Court or appearing before the [issuing court]").

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court grant its motion to transfer and its motion to compel and order Meta to produce the responsive documents by a date certain set by the Court.

Dated: August 28, 2026

Respectfully submitted,

By: /s/ Josh A. Cohen

Josh A. Cohen (Cal. Bar No. 217853)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, CA 94108
(415) 738-5700
jacohen@debevoise.com

David A. O'Neil (*pro hac vice* application forthcoming)
Anna A. Moody (*pro hac vice* application forthcoming)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com
amoody@debevoise.com

Michael Schaper (*pro hac vice* application forthcoming)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, N.Y. 10001
(212) 909-6000
mschaper@debevoise.com

*Counsel for Movant Apple Inc.*