# EXHIBIT 8

REDACTED

Josh A. Cohen (Cal. Bar No. 217853)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, CA 94108
(415) 738-5700
jacohen@debevoise.com

David A. O'Neil (*pro hac vice* application granted)
Anna A. Moody (*pro hac vice* application granted)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com
amoody@debevoise.com

Michael Schaper (*pro hac vice* application granted)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, N.Y. 10001
(212) 909-6000
mschaper@debevoise.com

*Counsel for Movant Apple Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE APPLE INC.'S APPLICATION FOR ORDER COMPELLING COMPLIANCE WITH NON-PARTY SUBPOENA SERVED ON META PLATFORMS, INC. IN THE PENDING CASE UNITED STATES ET AL. V. APPLE INC., NO. 2:24-CV-04055 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** | Case No.: 3:26-MC-80274-JCS<br><br>**DEFENDANT APPLE INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION (1) TO COMPEL DISCOVERY FROM NON-PARTY META PLATFORMS, INC.; AND (2) TO TRANSFER MOTION TO THE DISTRICT OF NEW JERSEY PURSUANT TO FED. R. CIV. P. 45(f); AND IN OPPOSITION TO META PLATFORMS INC.'S MOTION TO QUASH**<br><br>Date:<br>Time:<br>Courtroom: D – 15th Floor<br>Judge: Joseph C. Spero |

## TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **3**

**I. Meta Has Not Carried Its Burden of Showing That Apple's Narrowed Discovery Requests are Unduly Burdensome or Irrelevant** .......... **3**

A. *Meta's Role as a Key Witness and Interested Party Informs the Assessment of Its Burden Arguments* .......... 3

B. *Apple's Custodian Proposal is Reasonable and Tailored to This Case.* .......... 5

C. *Meta's Categorical Overbreadth, Relevance, and First Amendment Objections Fail* .......... 7

**II. Neither Meta's CID Production Nor Its Counterproposal Satisfy Apple's Subpoena** .......... **11**

A. *Meta's Sole Reliance on the CID Production is Misplaced.* .......... 11

B. *Meta's Counterproposal is Facially Deficient* .......... 12

**III. Meta Has Provided No Basis to Quash** .......... **13**

**IV. Meta's Request for a Prospective Cost Award Should Be Denied.** .......... **13**

**V. Transfer to the District of New Jersey is Warranted** .......... **14**

**CONCLUSION** .......... **15**

# TABLE OF AUTHORITIES

## Cases

*Andersen v. Stability AI Ltd.*, No. 23-cv-00201, 2025 WL 3564202 (N.D. Cal. Dec. 12, 2025)…………………………………………………………………… ................ 7

*Andersen v. Stability AI Ltd.*, No. 23-cv-00201, 2026 WL 1257935 (N.D. Cal. May 7, 2026) ............................................................................................................ 5

*Apple Inc. v. Match Grp., Inc.*, No. 21-mc-80184, 2021 WL 3727067 (N.D. Cal. Aug. 19, 2021) ............................................................................................................ 9

*Audio MPEG, Inc. v. HP Inc.*, No. 16-mc-80271, 2017 WL 950847 (N.D. Cal. Mar. 10, 2017) ............................................................................................................ 9

*Cisco Systems, Inc. v. Abacus Controls Group, Inc.*, No. 26-mc-80250-JCS, Dkt. No. 18 (N.D. Cal. Aug. 18, 2026) (Spero, J.) .......................................................... 4, 14

*Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188, 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015) ............................................................................................ 3

*Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016) ............................................ 11

*In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714, 2020 WL 5993223 (N.D. Cal. Oct. 9, 2020)........................................................................................................ 8, 10

*In re eBay Seller Antitrust Litig.*, No. C09-0735, 2009 WL 10677051 (W.D. Wash. Aug. 17, 2009) ................................................................................................... 9

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785, 2018 WL 1440923 (D. Kan. Mar. 15, 2018)............................................ 6

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-md-02843, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021)................................................................... 6

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967, 2012 WL 12920644 (N.D. Cal. Aug. 6, 2012)........................................................ 9

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.,* No. 21-cv-305, 2023 WL 4181198 (N.D. Ill. June 26, 2023) ............................................................................... 7

*In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047, 2025 WL 4076605 (N.D. Cal. Dec. 9, 2025).............................................. 9

*Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570, Dkt. 415 (N.D. Cal. Jan. 16, 2023) ................ 9

*Leader Techs., Inc. v. Facebook, Inc.*, No. C10-80028, 2010 WL 761296 (N.D. Cal. Mar. 2, 2010)........................................................................................................ 10

*Mallinckrodt LLC v. Actavis Labs. FL, Inc.*, No. 15-cv-3800, 2017 WL 5476801 (D.N.J. Feb. 10, 2017) ........ 4

*Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979 (N.D. Cal. 2015) ........ 15

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638 (2d Cir. 2015) ........ 9

*Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, No. 16-mc-80122, 2016 WL 8542561 (N.D. Cal. Aug. 3, 2016) ........ 15

*Ramirez v. United States Immigration & Customs Enf't*, 331 F.R.D. 194 (D.D.C. 2019) ........ 5

*Riganian v. LiveRamp Holdings, Inc.*, No. 25-cv-00824, 2026 WL 948598 (N.D. Cal. Apr. 8, 2026) ........ 6

*Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, No. 16-cv-00158, 2018 WL 2981827 (E.D. Cal. June 14, 2018) ........ 14

*Shenwick v. Twitter, Inc.*, No. 16-cv-05314, 2018 WL 833085 (N.D. Cal. Feb. 7, 2018) ........ 5

*United States v. Google LLC*, No. 1:20-cv-03010, Dkt. 169 (D.D.C. July 29, 2021) ........ 3, 5

*United States v. Josleyn*, 206 F.3d 144 (1st Cir. 2000) ........ 4

*Uriel Pharmacy Health & Welfare Plan v. Advocate Aurora Health, Inc.*, 348 F.R.D. 329 (E.D. Wis. 2025) ........ 12

*Valcor Engineering Corp. v. Parker Hannifin Corp.*, No. 16-cv-00909, 2018 WL 3956732 (C.D. Cal. July 12, 2018) ........ 13

*Visual Supply Co. v. Cloudflare, Inc.*, No. 24-mc-80159, 2025 WL 2684389 (N.D. Cal. June 25, 2025) ........ 13

**Other Authorities**

Federal Rule of Civil Procedure 26 ........ 3

Federal Rule of Civil Procedure 45 ........ 1–4, 13

## INTRODUCTION

Meta's Opposition ("Opposition" or "Opp.") does not credibly dispute [redacted] or its significant commercial interest in the outcome of the Antitrust Action.[1] Nor does Meta dispute the relevance of Apple's RFPs; indeed, Meta notes that Apple's requests cover much of the same subject matter as DOJ's CID to Meta. But while the CID and subpoena cover many related topics, they serve opposite purposes—the CID was designed to support potential claims *against* Apple, while Apple's subpoena is designed to obtain evidence relevant to Apple's *defense*. [redacted], Meta now resists providing Apple the discovery it needs to challenge DOJ's case. Meta's "compromise proposal"—updating *some* of its CID production and providing documents sought by the *plaintiffs* in the related multi-district litigation against Apple (the "MDL")—would leave material gaps in discovery relevant to Apple's defenses. That result would be fundamentally unfair.

The Opposition confirms why Apple's motion to compel and judicial intervention are necessary. After over a year of negotiation in which it produced a mere 21 documents in response to Apple's subpoena, Meta now asks the Court to throw the subpoena out entirely, even though Meta concedes that it can provide search-term hits to facilitate custodial productions and acknowledges that "topics in Apple's subpoena to Meta" "overlap" with "[t]he topics requested by DOJ in the CID." *See* Opp. at 10; Declaration of Ana N. Paul ("Paul Decl.") at 2. Meta's principal response is to claim burden, but Meta has only now—for the first time after more than a year with the subpoena, repeated requests from Apple, and a dozen meet and confers—provided hit counts. That is gamesmanship, not a genuine, good-faith effort to engage in the discovery process. If certain search strings could be refined, Meta has had ample opportunity to provide such feedback. But the answer cannot be that Apple is entitled to no further discovery at all. Endorsing Meta's strategy would set a roadmap for future third-party subpoena recipients: withhold the metrics needed for good-faith negotiation and then, only in response to a motion to compel, provide self-serving hit counts and invoke the resulting volume as a basis to defeat discovery altogether. That is not how Rule 45 discovery works.

[1] Capitalized terms have the same meaning as in Apple's Motion to Compel and Transfer, Dkt. No. 1.

Meta now reports that the custodial searches it ran across its proposed custodians generated approximately 6.8 million unique hits. But Meta's exhibits show why the numbers do not warrant quashing the subpoena. A handful of outlier queries drive enormous portions of the total. Those few search strings, which could be refined, do not establish that the RFPs seek irrelevant discovery or that Apple's proposed custodians are excessive. To the contrary, they show why this motion to compel was necessary. Meta chose not to participate in the ordinary meet-and-confer process or provide timely and transparent hit count reporting, as Apple has requested all along. Meta has no intention of genuinely engaging in the discovery process unless a court orders it to do so.

Meta attempts to turn its status as a non-party into near-immunity from meaningful discovery. Rule 45 provides no such shield. Non-party status may be relevant to proportionality and burden, but Meta is not an ordinary third party or a stranger to this dispute. [redacted] But that production satisfied DOJ's CID, not Apple's RFPs. And when Meta was an antitrust defendant in *FTC v. Meta Platforms, Inc.*, No. 20-cv-3590, Meta argued that third-party discovery "is the norm in antitrust cases," Meta's Mot. to Compel the New York Times at 2, Dkt. No. 246, and pursued broad third-party discovery, *see, e.g.*, Non-Party Witnesses' Joint Motion to Quash Trial Subpoenas, Dkt. No. 486, at 5 (Meta serving Apple with 71 RFPs); Motion to Quash Subpoenas, Dkt. No. 488, at 1 (Meta serving Snap with "138 requests for production").

The Opposition narrows the dispute. Apple does not contend that Meta should review millions of hits generated by a few search strings that can be revised. Apple contends that Meta must provide relevant, proportional discovery concerning allegations [redacted] and that the Court should not let Meta substitute a self-selected package of documents assembled for DOJ and MDL plaintiffs for the full measure of discovery necessary to satisfy Apple's requests. Fact discovery in the Antitrust Action closes January 2027, and Apple is not required to perpetually postpone adjudication of disputes that Meta has refused to resolve. The Court should deny Meta's motion to quash and compel targeted compliance with Apple's narrowed subpoena, or transfer the motion to the District of New Jersey.

## ARGUMENT

### I. Meta Has Not Carried Its Burden of Showing That Apple's Narrowed Discovery Requests are Unduly Burdensome or Irrelevant

Rules 26 and 45 permit relevant discovery from non-parties, subject to appropriate protections against undue burden. But Meta treats non-party status as if it presumptively limits Apple to whatever materials Meta already produced to DOJ, plus whatever additional package Meta chooses to offer. That is not the law.[2] And as Meta well knows from *FTC v. Meta*, No. 20-cv-3590, non-parties are routinely required to make substantial productions in antitrust cases. *See, e.g.*, Meta's Mot. to Compel Snap, Inc. at 2, Dkt. No. 205 (D.D.C. Oct. 27, 2022) (Meta citing third-party custodial searches in *United States v. Google LLC*, including Microsoft searching 45 custodians and 44 search strings and Apple searching 19 custodians and 54 search strings); Non-Party Witnesses' Joint Motion to Quash at 8, Dkt. No. 486 (non-party Google detailing the hundreds of thousands of documents it produced across numerous rolling productions, using thirty custodians).

#### A. *Meta's Role as a Key Witness and Interested Party Informs the Assessment of Its Burden Arguments*

Meta asserts that it does not lose the protection Rule 45 affords a non-party merely because it complied with DOJ's CID. *See* Opp. at 8–10. Apple does not argue otherwise. But not all third parties are created equal—[redacted] and has unique evidence because the requested subjects involve Meta's own products, decisions, communications, asserted injuries, and analyses. *See, e.g.*, Ex. D, META-DOJAPP-00046896 at -898 [redacted] emphasis added). [redacted] *See* Paul Ex. 1, at 2 n.3. Meta therefore cannot claim the protections Rule 45 affords to "persons who are disinterested" with "little to gain." *Cornell v. Columbus McKinnon Corp.*, No. 13-cv-02188, 2015 WL 4747260, at *5 (N.D. Cal. Aug. 11, 2015).

---

[2] Meta argues that because Apple seeks "commercially sensitive" materials, Opp. at 7, the Court must quash Apple's Subpoena. But the Protective Order entered in the Antitrust Action—under which Meta is actively receiving protection before this Court, *see* Admin. Mot. to Seal, Dkt. Nos. 2, 31—can address its confidentiality concerns.

[redacted] that makes its documents highly relevant. [redacted] Meta cannot credibly claim it simply was "required by law to comply with the CID," Opp. at 8, [redacted].[3] Meta's internal analyses of its own products, its own claimed injury, and its own decision-making are indisputably relevant, unique, and critical here. Meta is "uniquely positioned to provide relevant discovery" and claims to have a "financial stake" in the outcome of DOJ's efforts, *Mallinckrodt LLC v. Actavis Labs. FL, Inc.*, No. 15-cv-3800, 2017 WL 5476801, at *4 (D.N.J. Feb. 10, 2017); *see, e.g.*, *Cisco Systems, Inc. v. Abacus Controls Group, Inc.*, No. 26-mc-80250-JCS, Dkt. No. 18 (N.D. Cal. Aug. 18, 2026) (Spero, J.) (examining the relation of the non-party to the underlying action).

Particularly viewed in that light, Meta's burden argument fails. Meta asserts that Apple's May 2026 search strings generate millions of hits. But Meta's own exhibits reveal that the hits are highly concentrated to a few RFPs and could be mitigated with targeted modifications. For example, one query for RFPs 6 and 9(a-d) accounts for more than 3.5 million hits, while the query for RFPs 20 and 21 accounts for more than 4 million hits. *See* Paul Ex. 8, at 2, 18–19. These results make clear that if Meta produced hit counts during the extended meet and confer process, Apple and Meta could have conferred about modifications to dramatically reduce the burden. The results do not excuse Meta from producing any documents at all concerning issues that Meta itself concedes are relevant. *See* *Mallinckrodt LLC*, 2017 WL 5476801, at *5.

Meta's arithmetic is also misleading. Meta repeatedly describes Apple's May protocol as "110 requests." In fact, Apple served 53 RFPs, then held 19 in abeyance, narrowed or clarified another 20, and converted eight others to sufficient-to-show requests. Meta counts 110 requests by counting every subpart and component of each request separately, while simultaneously counting each sufficient-to-show component as if it required an independent custodial review, which it does not.[4] The very purpose

[3] Meta's reliance on *United States v. Josleyn*, 206 F.3d 144 (1st Cir. 2000) is misplaced. Apple's point is that Meta had a vested interest in encouraging DOJ to bring suit under Rule 45's considerations, not that Apple has a constitutional claim to documents in Meta's possession.

[4] Meta ran search terms over eight of Apple's RFPs that were designated as sufficient-to-show (i.e., "go-gets"), even though Apple confirmed they do not require custodial searches. *See* Paul Ex. 9.

of the sufficient-to-show formulation is to permit Meta to identify a set of documents that establishes specified facts without producing every conceivably responsive document. In any event, even the inflated number Meta provides is consistent with subpoenas in other antitrust cases brought by the Department of Justice.[5]

**B.** *Apple's Custodian Proposal is Reasonable and Tailored to This Case.*

The Court should require Meta to search and produce documents for Mark Zuckerberg, Marne Levine, Jim Gerber, and John Hegeman (the four "Senior Custodians"). Apple identified specific evidence—not merely titles—showing [redacted] Meta's Opposition does not meaningfully dispute those underlying facts, instead arguing generally that other custodians may possess similar information. That is insufficient.

Courts routinely reject arguments of cumulativeness when made in the abstract without specific facts—as here, where Meta simply notes that Meta has agreed to produce documents from other Meta personnel. *Shenwick v. Twitter, Inc.*, No. 16-cv-05314, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018); *see also Ramirez v. United States Immigration & Customs Enf't*, 331 F.R.D. 194, 197–98 (D.D.C. 2019) (rejecting defendants' argument that adding 16 additional custodians would be "unnecessarily cumulative" without "specific facts"). Moreover, contrary to Meta's argument that some of Apple's requested custodians—unsurprisingly—show up in the CID documents, Opp. at 13, the fact that documents showing a requested custodian's "involvement include other document custodians is not a sufficient basis to deny Plaintiffs' request," *Andersen v. Stability AI Ltd.*, No. 23-cv-00201, 2026 WL 1257935, at *3 (N.D. Cal. May 7, 2026); *see also id.* ("[T]he documents Plaintiffs cite to were obtained from other custodians' files. It is thus unremarkable—and not meaningfully probative of unreasonable cumulativeness—that they include other custodians in addition to [the requested custodian].").

[5] *See, e.g.*, Non-Party Microsoft Corp.'s Status Report Regarding Third Party Discovery at 1–3, *United States v. Google LLC*, No. 1:20-cv-03010-APM, Dkt. No. 169 (D.D.C. July 29, 2021) (Google serving non-party Microsoft with 120-request subpoena spanning over a decade).

Apple has made concrete arguments, supported by specific CID documents, demonstrating the Senior Custodians' personal involvement in strategic decision-making and negotiations regarding issues relevant to the FAC, not merely "general claims that they made strategic decisions related to competition." Opp. at 13. [redacted] *See* Ex. D, META-DOJAPP-00046896 at -898. [redacted] *see* Ex. C, META-DOJAPP-00017454 at -455; [redacted] *see* Ex. B, META-DOJAPP-00067163 at -166–168; [redacted] *see* Ex. D, META-DOJAPP-00046896 at -901–902; *see also In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 18-md-02843, 2021 WL 10282213, at *1–3 (N.D. Cal. Nov. 14, 2021) (ordering collection from Mr. Zuckerberg and Sheryl Sandberg as "key decision makers related to the issues of this case").

*Riganian v. LiveRamp Holdings, Inc.*, No. 25-cv-824-JST, 2026 WL 948598 (N.D. Cal. Apr. 8, 2026) is inapposite. Apple does not rely on executive status or generalized public statements; [redacted] *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *1 (D. Kan. Mar. 15, 2018) (granting parties' requests for adding former CEOs as custodians). Meta has already agreed to search the 18 custodians, all of whom were either CID custodians [redacted] making their relevance indisputable. Apple adds only four custodians, whose specific relevance Apple has repeatedly explained.[6]

As to Apple's RFP-specific custodian proposal, the dispute is not whether every search should be run over every custodian. Apple already agreed that searches can be limited to relevant custodians. The dispute is whether Meta's proposed custodian limitations exclude custodians likely to possess

[6] Meta's citation to *Alta Devices, Inc. v. LG Elecs., Inc.*, undercuts its position because the court there agreed with Apple's argument that a custodian's senior executive status does not exempt him from potential collection. 2019 WL 8757255 (N.D. Cal. Feb. 20, 2019).

responsive documents. They clearly do. During the meet and confer process, Meta repeatedly excluded from its custodian proposals certain custodians Apple requested, notwithstanding that custodian's demonstrated knowledge of a subject. For example, for RFP 6 (approval or review of Meta's apps in the areas of super apps, cloud streaming, messaging, and wearables) and RFP 9 (marketplace submissions of Meta's apps in the areas of super apps, cloud streaming, messaging, and wearables), Meta excluded from its proposal *all* of the [redacted] Similar inconsistencies appear throughout Meta's RFP-by-RFP proposal. **Moody Exhibit A** replicates Paul Exhibit 5 and adds an additional column identifying gaps in Meta's custodian proposal.

Meta cannot establish cumulativeness merely by pointing to other custodians who worked on the same products or in the same departments. *See In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21-CV-305, 2023 WL 4181198, at *10–11 (N.D. Ill. June 26, 2023) (rejecting cumulative objection absent concrete custodian-specific evidence and explaining that multiple custodians from the same department are not necessarily cumulative); *Andersen v. Stability AI Ltd.*, 2025 WL 3564202, at *2 (N.D. Cal. Dec. 12, 2025) (same, and noting custodians "on different rungs of the corporate ladder" may possess distinct documents). The Court should reject Meta's proposed limitations and require searches of Apple's proposed custodians.

### C. *Meta's Categorical Overbreadth, Relevance, and First Amendment Objections Fail*

There is no merit to Meta's overbreadth, relevance, and First Amendment objections, including objections to RFPs concerning privacy and security issues, Meta's interactions with regulators, and Meta's efforts to strategize with others against Apple. *See generally* Opp. at 14–18.

#### 1. Apple's RFPs Are Appropriately Tailored to the FAC

Meta's overbreadth argument ignores both the allegations to which the disputed RFPs are directed and the substantial narrowing Apple has already accepted. Opp. at 15. The disputed requests concern subjects DOJ placed at issue in this case, and Apple has further limited how those requests will be answered through sufficient-to-show formulations and RFP-specific custodian sets. A review of DOJ's allegations easily disproves Meta's claims that Apple's RFPs seek information "far afield"

from the FAC.[7] Meta's opposition and exhibits also undercut the suggestion that Apple's requests are untethered to DOJ's investigation. *See* Opp. at 18–22. Meta's Exhibit 3 maps many of Apple's RFPs directly to CID specifications covering app distribution, user metrics, financial performance, messaging restrictions, competitive analysis, multihoming, payments, and other subjects. Meta cannot plausibly characterize the same topics as categorically unrelated when Apple seeks evidence to defend against the resulting case.

Meta also takes issue with Apple's "Go-Get searches," Opp. at 15, as to which Apple has already agreed that Meta has discretion to select and produce a reasonable set of documents, provided they are sufficient to show the requested information. Taking Meta's own examples, it claims that Apple's request for user complaints, download rates, consumer responses, and financial performance have no bearing on the underlying action. Opp. at 15–16. But these topics are designed to test DOJ's (and Meta's) claims that Apple's policies had an anticompetitive effect by harming third-party app developers such as Meta. *See* Antitrust Action, Dkt. No. 471, at 7–8 (Special Master explaining that "[t]he Amended Complaint includes allegations of consumer harm," and the challenged RFPs are "relevant to rebut that assertion."). These topics are at the heart of the issues in the case.[8]

2. <u>Privacy and Security Evidence Bears on DOJ's Pretext Theory</u>

Similarly, whether Apple's policies are based on legitimate, procompetitive concerns about privacy and security is a central issue in the Antitrust Action. Meta's privacy and security practices are thus directly relevant to whether Apple's justifications are genuine: if other sophisticated platform operators and app developers have independently identified and addressed the same or similar risks, that is evidence that the risks are real and industry-recognized. The relevant RFPs 9(e), 12, 13, 19, 20, 21, 31, 32, and 44 do not seek Meta's documents to show what motivated Apple, as Meta claims, Opp.

---

[7] *Compare, e.g.*, RFP 9 (app submissions to any App Marketplace) *with* e.g., FAC ¶¶ 41, 53–54 (allegations regarding use of app marketplaces to control app distribution and creation); RFP 31 (privacy/security complaints on Meta's non-Apple-Store marketplaces) *with* FAC ¶¶ 16, 141–47 (Apple's privacy/security justifications are pretextual).

[8] Likewise, Meta argues that Apple seeks documents in Apple's possession such as communications with Meta, download rates, and Apple's policies. Opp. at 15 & n.5 (citing *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *6 (N.D. Cal. Oct. 9, 2020)). But Apple clarified to Meta from the first meet and confer that it was interested in Meta's internal communications about Apple and other information Apple does not possess.

at 19; rather, they seek evidence of how a similarly situated industry participant assessed the same privacy, security, and fraud risks that Apple has faced and that justify its challenged conduct. A Special Master in the Antitrust Action recently held that analyses of security and privacy concerns—including analyses of "non-Apple operating systems and marketplaces"—are relevant to whether Apple's procompetitive justifications are valid. Antitrust Action, Dkt. No. 471, at 7. Meta offers no meaningful response to that order.[9]

3. <u>RFPs 46 and 53 Can Be Enforced Without Compelling Protected Associational Information</u>

Meta has failed to show that RFPs 46 and 53 are barred by the First Amendment. Meta has not met its *prima facie* burden of showing that these requests will result in "harassment, membership withdrawal, or discouragement of new members" or "other consequences which objectively suggest an impact on, or chilling of, the members' associational rights." *In re Soc. Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047, 2025 WL 4076605, at *2 (N.D. Cal. Dec. 9, 2025). Meta's "conclusory arguments" and "nebulous allegations of a potential chilling effect" do not suffice. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW (NC), 2012 WL 12920644, at *3 (N.D. Cal. Aug. 6, 2012).

Apple seeks the factual and economic bases for Meta's advocacy on the "competitive effects" of Apple's and its competitors' policies and the Coalition for a Competitive Mobile Experience's *public* statements—not membership lists or generalized internal political strategy. *See* Motion Exs. I, O. Meta contends that the Coalition's opinions are "irrelevant," Opp. at 21, but Apple is entitled to test whether the Coalition's public assertions of competitive harm were supported by factual or economic analysis. As Meta's own caselaw recognizes, "[t]he Ninth Circuit has made clear that the First Amendment privilege is weaker when the speech at issue is of a commercial nature, as opposed

---

[9] *Audio MPEG, Inc. v. HP Inc.*, 2017 WL 950847, at *4 (N.D. Cal. Mar. 10, 2017), held only that a non-party's subjective motivations for its own communications with a co-conspirator are irrelevant. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 658 (2d Cir. 2015), merely describes how that plaintiff happened to rebut a procompetitive justification using the defendant's own documents. And Meta's citation to its own briefing in *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570, Dkt. 415 at 3 (N.D. Cal. Jan. 16, 2023), is irrelevant: Apple does not seek Meta's views or speculation about Apple's motives, but Meta's own objective conduct.

to political, religious or literary speech." *Apple Inc. v. Match Grp., Inc.*, 2021 WL 3727067, at *7 (N.D. Cal. Aug. 19, 2021).[10]

4. Meta's Additional Objections to Specific RFPs Likewise Lack Merit

Meta mischaracterizes RFP 32 as a grab-bag of "random" unrelated controversies. Meta Opp. at 20–21. RFP 32 seeks Meta's internal assessment of user privacy, system security, and its compliance with smartphone makers' privacy and security policies—squarely relevant for the reasons described above. *See* Ex. I, Subpoena at 19–20; Ex. O, Narrowed Search Protocol at 12–13.[11]

Meta's argument that Apple can obtain from public sources the information sought in RFPs 8, 17, 18, 22, 25, 26, 36, and 43 does not withstand scrutiny. For example, Meta does not explain how Apple could publicly access Meta's internal documents regarding Meta user complaints on app functionality or features (RFP 8) or Meta's understanding on differences in app functionality between iPhone and other smartphones (RFP 22). Nor does *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223 (N.D. Cal. Oct. 9, 2020) support its argument; that decision excused production only where Apple could obtain the information through its own resources or in the public domain—not, as here, where Meta's own limited public disclosures do not cover what the RFPs seek.

Meta's objection to RFP 11 (documents concerning Meta's communications with DOJ, state attorneys general, and private plaintiffs about the related MDL) fares no better. Meta Opp. at 22. Meta argues these documents are "readily available" from the government and other plaintiffs directly. Opp. at 22. But Apple does not have, and cannot obtain from DOJ or the private plaintiffs, Meta's internal characterizations of those communications, or communications that were never shared with Meta's

[10] Meta's reliance on *Match*, Opp. at 21–22, proves unhelpful: there, the court addressed three RFPs concerning the Coalition that bear little resemblance to RFPs 46 and 53, including all "documents . . . concerning the Coalition" and other categories of information not present here (e.g., the Coalition's formation documents, sponsors, and any communication about Apple). *Id.* at *3–6. Apple's RFP 53 is limited to six specific statements made by the Coalition regarding allegations in DOJ's complaint; and unlike in *Match*, Apple's RFP 46 targets Meta's lobbying efforts, not the Coalition's. Meta's reliance on *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051 (W.D. Wash. Aug. 17, 2009), Opp. at 16, 21, fares no better. *eBay* compelled objective market information notwithstanding the non-party's competitive-sensitivity objection.

[11] *Leader Techs., Inc. v. Facebook, Inc.*, 2010 WL 761296, at *2 (N.D. Cal. Mar. 2, 2010)—a patent case where the court weighed former employees' lack of relevant knowledge, having left the company before the patent issued, and undue burden—lacks any parallel to Apple's subpoena.

counterparts. Meta was, on its own telling, an active participant in DOJ's investigation for years before the Complaint was filed, *see* Meta Opp. at 8–9; Apple therefore seeks Meta's communications about the challenged conduct and the contemporaneous bases for information Meta supplied—not privileged litigation strategy or discovery merely to show that communications occurred.

## II. Neither Meta's CID Production Nor Its Counterproposal Satisfy Apple's Subpoena

Meta cannot rely solely on its CID Production to DOJ: neither that existing production nor Meta's offer of a partial refresh satisfies its discovery obligations to Apple.

### A. *Meta's Sole Reliance on the CID Production is Misplaced.*

Meta devotes substantial space in its opposition to the 17,000 documents it produced to DOJ and argues that Apple has never identified what is "lacking" from that production. Opp. at 10. Meta is missing the point. The CID collection was designed to respond to DOJ's specifications while DOJ—[redacted]—was attempting to build an antitrust case against Apple. It was not designed to identify documents that would *exculpate* Apple or support its defenses. The CID collection, moreover, captured nothing after January 2022. *See* Paul Decl. ¶ 47. Apple cannot be expected to identify every document missing from an opaque historical collection that it neither designed nor conducted. Apple nevertheless repeatedly identified during meet and confers apparently relevant materials referenced in, but absent from, the CID Production.[12]

The Paul Declaration—and Paul Exhibit 3, which purports to "map[] Apple's RFPs to substantially similar CID Specs"—confirm only that the CID production contains relevant documents. But it does not show that Meta has complied with Apple's discovery requests. **Moody Exhibit B** replicates Paul Exhibit 3 and includes an additional column explaining the critical information requested by Apple that is not covered by the CID specifications. To give just a few examples: the CID Specifications do not capture RFP 44's requests concerning development costs, actual or potential customer usage, privacy and security, discontinuation, and device compatibility; nor do they cover at all RFP 8's request for user complaints concerning app functionality, interoperability, and switching.

[12] Meta's reliance on *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1298 (Fed. Cir. 2016), for the proposition that Apple has failed to identify deficiencies in Meta's 17,000-document CID production, Opp. at 15, is misplaced. Unlike the requesting party in *Drone Techs.*, Apple has repeatedly and specifically identified deficiencies.

The CID production is not coextensive with the subpoena and does not satisfy it because the CID production covered different requests, served different purposes, used an undisclosed methodology, and has an outdated cutoff.

Contrary to Meta's conclusory assertions, Meta has not satisfied Apple's "sufficient to show" (i.e., "go-get") RFPs. *Contra* Opp. at 10, 11; Paul Exhibit 4. Apple does not assert, and has never contended, that these RFPs require Meta to produce every conceivable document on the requested subject. Meta may not, however, proceed as it has by identifying a document it claims will satisfy a go-get RFP, demanding that Apple accept the document sight unseen as satisfying the request, and then refusing to produce even that document when Apple declines to so commit. While Meta has discretion to select a reasonable set of documents, those documents must in fact be sufficient to show the requested information and must *actually be produced* to Apple.[13]

Meta's citation in Paul Exhibit 4 to a host of public and CID documents—identified to Apple for the first time in its opposition—only underscores that Meta has not complied with the sufficient-to-show RFPs. **Moody Exhibit C** replicates Paul Exhibit 4 with an additional column explaining why these newly raised documents do not satisfy its requests. For example, in response to RFP 26's request for information regarding in what circumstances Meta provides unencrypted messages to third parties, Meta cites only to a source regarding encryption generally, not the circumstances under which Meta may share unencrypted user content with third parties. *See* Moody Exhibit C.

**B.** *Meta's Counterproposal is Facially Deficient*

Meta's counterproposal—a truncated CID refresh and reproduction of documents that Meta is willing to share with another plaintiff in the MDL—falls woefully short.[14] As set out in detail above

[13] Meta's reliance on *Uriel Pharmacy Health & Welfare Plan v. Advocate Aurora Health, Inc.*, 348 F.R.D. 329 (E.D. Wis. 2025), Opp. at 11–12, does not help it: that decision confirms that a producing party's chosen method of compliance is presumed reasonable only where the requesting party has failed to show the method was deficient—not that a non-party may unilaterally declare a request satisfied while refusing outright to produce documents at all. *Id.* at 339–40.

[14] Meta only provided Apple with the hit counts during this motion practice. Meta additionally proposes "modif[ying]" its proposed CID refresh to remove topics such as the App Tracking Transparency (ATT). Opp. at 23 & n.11. And even if the Court agreed that ATT was irrelevant—which it should not, given the context of this subpoena and Meta's involvement in the investigation—Meta also does not disclose in its exhibit the full language of the terms it proposes to omit or modify, preventing Apple and the Court from evaluating the practical effect of those changes.

and in Apple's motion, providing Apple only plaintiff-sought documents would fundamentally prejudice its ability to defend itself.

The second portion of Meta's counteroffer, which involves Meta producing to Apple "documents Meta has produced or will produce to the" Watch Purchaser Plaintiffs in the MDL, *see* Paul Decl. ¶¶ 48–49, adds nothing Apple would not otherwise receive.[15] Under the coordination orders governing the Antitrust and MDL Actions, the parties reciprocally share documents produced to them by third parties. *See* Pretrial Scheduling Order, Antitrust Action, Dkt. No. 270.

## III. Meta Has Provided No Basis to Quash

For the reasons above, Apple's subpoena seeks highly relevant information and is not unduly burdensome. Accordingly, Meta's motion to quash should be denied. Moreover, Meta's motion, brought over a year after Apple served its subpoena, is untimely. *Visual Supply Co. v. Cloudflare, Inc.*, No. 24-MC-80159-SK, 2025 WL 2684389, at *3 (N.D. Cal. June 25, 2025) (finding "a delay of over seven months is not a reasonable amount of time to move to quash") (report and recommendation adopted).

## IV. Meta's Request for a Prospective Cost Award Should Be Denied.

Meta's request for a prospective cost award is improper and, in any event, premature. Federal Rule of Civil Procedure 45(d)(2)(B)(ii) requires a court that "orders compliance with a subpoena over an objection" to protect a non-party from significant expense, but the scope of any ordered compliance—and the reasonable costs attributable to that compliance—have not yet been determined.[16] Even if cost sharing were under consideration, Meta's relationship to the underlying dispute is relevant to the equitable allocation of reasonable compliance costs. *See* Opp. at 23. Courts repeatedly refuse to shift costs from interested nonparties, including when the non-party has a substantial relationship to

---

[15] Meta is willing to provide Apple the documents it will provide the Direct Watch Purchaser MDL Plaintiffs. Along with being counsel for Meta here, Kellogg Hansen is counsel for Direct Watch Purchaser Plaintiffs in the MDL, and the two Sullivan & Cromwell attorneys who have appeared in this matter are counsel to Meta in that matter.

[16] Meta itself refused prospective cost shifting requests from a pre-revenue startup with fewer than 100 employees when Meta was the subpoenaing party, citing legal authority stating that nearly $230,000 in compliance costs were not significant. *See* Meta Platforms, Inc.'s Statement Concerning Its Motion to Compel Alpha Exploration Co.'s (D/B/A Clubhouse) Production of Documents at 3, *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590, Dkt. No. 199 (D.D.C. Oct. 12, 2022).

the dispute, has a financial stake in the case's outcome (Meta itself has said Apple's policies have cost it billions of dollars), and engaged in an "aggressive and inefficient manner" of responding to a party's subpoena. *Valcor Engineering Corp. v. Parker Hannifin Corp.*, 2018 WL 3956732 (C.D. Cal. July 12, 2018); *Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2018 WL 2981827 (E.D. Cal. June 14, 2018).

## V. Transfer to the District of New Jersey is Warranted

Meta has not overcome Apple's showing that the most efficient and orderly path forward is to transfer this complex discovery dispute to the District of New Jersey, where the Court has for years overseen both the Antitrust Action and the related MDL. *See Cisco Systems, Inc. v. Abacus Controls Group, Inc.*, No. 26-mc-80250-JCS, Dkt. No. 18 (N.D. Cal. Aug. 18, 2026) (Spero, J.) (raising the potential for transfer given the underlying "complex patent litigation" and the need to determine "the relevance of the requested discovery – an issue the [issuing] court will be in a better position to evaluate").

Meta's arguments to the contrary are unavailing. Meta claims there is no overlap between the issues presented here and those in the Antitrust Action, Opp. at 24, but its only attempt to distinguish the Special Master's opinion explaining the relevance of security and privacy focused RFPs is that the precise RFP at issue there is not at issue here, Opp. at 20 n.10. *See* Antitrust Action, Dkt. No. 471, at 7 (explaining the relevance of security and privacy focused RFPs). Likewise, Meta's First Amendment objections to RFPs 46 and 53 are now under consideration in the Antitrust Action. *See* Antitrust Action, Dkt. No. 496, at 2 (notice of impasse outlining Match Group Inc.'s position that Apple's requests cannot "invade non-party Match's First Amendment privilege as to Coalition documents"). The D.N.J. Court can ensure consistent rulings on issues at the heart of the present dispute, including the scope of custodial discovery and document production appropriately required of an interested non-party such as Meta.

While Meta emphasizes that the principal concern in evaluating transfer is the "burden on local nonparties," Opp. at 25, it makes no attempt to identify any burden it would actually suffer from transfer. Finally, Meta's argument that the appointment of Special Masters cautions against transfer, Opp. at 25, gets it backwards: the D.N.J. Court appointed Special Masters precisely to manage the

complex discovery disputes that favor transfer here, *see* Antitrust Action, Dkt. No. 431, at 2 (Special Masters needed "[g]iven the complexity of these actions, the number of parties involved, and the volume and nature of discovery being sought and produced").[17]

**CONCLUSION**

For the foregoing reasons, Apple respectfully requests that the Court deny Meta's motion to quash and grant Apple's motion to transfer to the District of New Jersey. If the Court resolves the motion to compel, Apple respectfully requests that the Court order Meta to: (1) refresh its CID production through June 15, 2025 using the original CID protocol; (2) produce responsive documents for the 14 search strings returning fewer than 20,000 total hits as set out in Paul Ex. 8; (3) produce documents sufficient to satisfy Apple's sufficient-to-show RFPs; (4) adopt Apple's proposed custodians (including Senior Custodians) as set out in Exhibit A to the Second Moody Declaration; (5) using Apple's May 2026 search protocol, including Apple's proposed custodians (including Senior Custodians), provide transparent custodian-by-custodian hit counts and corresponding hit-count analysis to identify which individual terms or phrases are driving search term hit results; and (6) promptly meet and confer regarding the searches for the custodial RFPs, and present any unresolved disputes to the Court within 14 days.

Dated: September 22, 2026

Respectfully submitted,

By: /s/ Josh A. Cohen

Josh A. Cohen (Cal. Bar No. 217853)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, CA 94108
(415) 738-5700

---

[17] Meta's cited cases do not support a different outcome. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Top Victory Elecs. (Taiwan) Co.*, No. 16-MC-80122-SK, 2016 WL 8542561, at *2 (N.D. Cal. Aug. 3, 2016) (movant identified no overlapping discovery issues); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 984 (N.D. Cal. 2015) (denying motion without explanation).

jacohen@debevoise.com

David A. O'Neil (*pro hac vice* application granted)
Anna A. Moody (*pro hac vice* application granted)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W., Suite 500
Washington, D.C. 20004
(202) 383-8000
daoneil@debevoise.com
amoody@debevoise.com

Michael Schaper (*pro hac vice* application granted)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, N.Y. 10001
(212) 909-6000
mschaper@debevoise.com

*Counsel for Movant Apple Inc.*