**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>*Plaintiffs,*<br><br>v.<br><br>APPLE, INC.<br>*Defendant.* | **Civil Action No. 2:24-cv-04055 (JXN-LDW)**<br><br>**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION TO SEAL**<br><br>*Filed Electronically* |

Pursuant to Local Civil Rule 5.3(c), the National Aeronautics and Space Administration ("NASA") submits these Proposed Findings of Fact and Conclusions of Law in support of sealing limited portions of Apple's Letter Memorandum in Response to the United States' Appeal from the Special Discovery Master's Orders Re: Federal Agency Discovery (Dkt. 525) ("Apple's Response Brief"), and Exhibits 3–5 to the September 23, 2026 Declaration of Liza M. Walsh. (collectively, "NASA Confidential Information").

Under Local Civil Rule 5.3(c), a motion to seal or otherwise restrict public access may be granted upon a showing of:

(a) the nature of the materials or proceedings at issue;

(b) the legitimate private or public interest which warrants the relief sought;

(c) the clearly defined and serious injury that would result if the relief sought is not granted; and

(d) why a less restrictive alternative to the relief sought is not available.

Local Civ. R. 5.3(c)(3).

Set forth below are the findings of fact and conclusions of law addressing each of the elements of Local Civil Rule 5.3(c). These findings of fact and conclusions of law support granting NASA's Motion to Seal its Confidential Information.

## I. The Nature of the Materials or Proceedings at Issue

### A. Findings of Fact

1. The National Aeronautics and Space Administration ("NASA") is an agency of the U.S. federal government responsible both for the United States' civil space program and for conducting research on, among other things, advanced aeronautics, space technology, and nuclear power and propulsion.

2. As NASA's mission involves cutting-edge research, safety-critical missions, and international cooperation, NASA takes extensive measures to protect the confidentiality and security of its technical systems. *See* NASA Decl. ¶¶ 8, 9.

3. This matter is before the Court in connection with a discovery motion in which Apple is seeking discovery from multiple federal agencies. The United States has appealed Apple's discovery requests, in part due to the sensitive nature of the federal agency documents at issue. *See* Dkt. Nos. 422, 513, 525.

4. Publicly revealing NASA Confidential Information will create a security risk for NASA's mobile systems, and thus risk NASA's ability to safeguard its employees, research, and the United States' national security interests. *See* NASA Decl. ¶¶ 8, 9.

5. The NASA Confidential Information reflects NASA's non-public, sensitive technical information regarding NASA mobile device management security measures and NASA hardware security configuration specifications. Maintaining the confidentiality of this information is critical to maintaining the safety and integrity of NASA's cybersecurity infrastructure. *See* NASA Decl. ¶¶ 3, 6, 8.

6. Specifically, Exhibit 3 is a document that describes the mobile device management security measures that NASA relies on to protect its systems from cybersecurity attacks, and this document describes internal processes for requesting secure devices. *See* NASA Decl. ¶ 3. Additionally, Exhibit 3 contains non-public intranet web addresses. *Id.* Exhibits 4 and 5 are documents that detail the hardware security configuration specifications set by NASA. *See* NASA Decl. ¶¶ 4-6. These documents describe security features and practices, including the

names of the cybersecurity software NASA uses as well as specific hardware models that meet NASA's cybersecurity requirements. *See id.* NASA also seeks to seal the portions of Apple's Response Brief that quote from and characterize Exhibits 3-5. *See* NASA Decl. ¶ 7.

7. The NASA Confidential Information reflects information that NASA has designated as "Highly Confidential" pursuant to the Discovery Confidentiality Order ("DCO"), entered by this Court on February 19, 2025. *See* Dkt. No. 235.

8. Public release of NASA's cybersecurity and network security practices would create security vulnerabilities and would weaken NASA's ability to defend against malicious actors. *See* NASA Decl. ¶ 8.

9. Cybersecurity vulnerabilities at NASA pose a significant security, safety, and privacy risk to both NASA employees and to the United States. For example, NASA works on sensitive, export-controlled technologies related to aeronautics and rockets, often in conjunction with military departments. Protecting the confidentiality of these projects, and thus the confidentiality of NASA's cybersecurity systems, is paramount. *See* NASA Decl. ¶ 8. The lives of astronauts and others depend on NASA computer systems functioning properly. *Id.* NASA information systems also contain sensitive personal information and third parties' trade secrets. *Id.*

**B. Conclusions of Law**

1. Although there is a presumptive right of access to judicial records, the Third Circuit has recognized the "longstanding limitation on the public's access to discovery materials and so limited the common law right of access, even when discovery motions and their supporting documents are filed with the court" and "discovery materials that are part of judicial filings are generally not 'judicial records' and do not fall within the common law right of access." *See N. Jersey Media Grp. Inc v. United States*, 836 F.3d 421, 435 (3d Cir. 2016); *see also City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*, No. 12-cv-05275, 2016 WL 234838, at *1 (D.N.J. Jan. 19, 2016) (Wettre, J.) ("…discovery materials filed as part of a discovery motion generally are not subject to the common law right of access."). NASA's Confidential

Information is highly confidential discovery that Apple filed in connection with its pretrial discovery motion, in which Apple is seeking additional discovery from federal agencies. Thus, there is no presumption of common law right of access for these documents, and the "longstanding limitation" on the public's access to these materials continues to apply.

2. Courts also seal materials when "'good cause' exists to overcome the presumption in favor of public access." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, No. CV 15-6210, 2017 WL 3718108, at *2 (D.N.J. Aug. 29, 2017) (citing *Securimetrics, Inc. v. Iridian Techs., Inc.*, Civ. No. 03-4394 (RBK), 2006 WL 827889 (D.N.J. Mar. 30, 2006)), and when "the material is the kind of information that courts will protect." *Miller v. Ind. Hosp.,* 16 F.3d 549, 551 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)).

3. Good cause to seal "exists when a party makes a particularized showing that disclosure will cause a 'clearly defined and serious injury to the party seeking closure.'" *JJD Electric LLC v. SunPower Corp., Sys.*, 738 F. Supp. 3d 569, 576 (quoting *Securimetrics*, 2006 WL 827889, at *2). As discussed above, releasing NASA's Confidential Information would risk cybersecurity vulnerabilities and thus pose a significant security, safety, and privacy risk to both NASA employees and to the United States.

## II. The Legitimate Private or Public Interest Which Warrants the Relief Sought

### A. Findings of Fact

1. NASA's Confidential Information is non-public material that NASA treats as highly confidential. *See* NASA Decl. ¶¶ 5-6. NASA has submitted a declaration from its Senior Agency Information Security Officer ("SAISO") and Chief Information Security Officer ("CISO") of Cybersecurity and Privacy outlining NASA's interest in the confidentiality of this information and describing how this information must remain confidential in order to maintain the security of NASA's technical systems.

2. Releasing NASA's Confidential Information to the public would pose a substantial risk of security vulnerabilities, and it would weaken NASA's ability to defend against malicious actors. *See* NASA Decl. ¶ 8.

3. Cybersecurity vulnerabilities at NASA pose a risk to the United States' national security, safety, and privacy interests. *See* NASA Decl. ¶ 9.

4. Furthermore, the Public does not have a significant interest in NASA's technical, internal cybersecurity information. This material is not necessary to understand the substance of either the underlying discovery briefing or the broader *US v. Apple* case, and thus the public will not be harmed if it does not have access to this information.

5. Conversely, the United States Public does have an interest in NASA maintaining the confidentiality of its technical documentation and thus protecting itself and the nation from external cybersecurity threats. *See* NASA Decl. ¶ 9.

6. Therefore, NASA seeks to seal limited portions of Apple's Response Brief which contain NASA's Confidential Information as well as Exhibits 3-5 in their entirety.

**B. Conclusions of Law**

1. Courts have long recognized that the presumption of public access to court records is not absolute. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 924 F.3d 662, 672 (3d Cir. 2019) (citing *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *United States v. Janssen Therapeutics*, 795 F. App'x 142, 145-46 (3d Cir. 2019) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).

2. Courts in this District have held that the protection of sensitive cybersecurity information warrants the sealing of such information. *See e.g., E. Orange Bd. of Educ. v. Great Am. Ins. Co.*, No. 21-cv-15132, 2023 WL 11868298, at *2 (D.N.J. Nov. 20, 2023) ("This Court has the power to seal where sensitive cybersecurity information may be disclosed to the public."); *see also HomeSource, Corp. v. Retailer Web Servs., LLC*, No. CV 18-11970, 2020 WL 12188145, at *2 (D.N.J. May 7, 2020) (Holding that disclosure of the confidential materials at issue "will create security vulnerabilities weakening HomeSource's ability to defend against hackers and others seeking to improperly access HomeSource's data.").

3. The protection of national security interests also warrants sealing. *See e.g., Contour Data Sols., LLC v. Gridforce Energy Mgmt. LLC,* No. Civ. A. 20-3241, 2024 WL 3994375, at *4 (E.D. Pa. Aug. 29, 2024) ("Courts have frequently held that information must remain under seal to prevent risks to national security."); *see also United States v. Thomas*, 905 F.3d 276, 279 (3d. Cir. 2018) ("[T]he District Court properly concluded that the compelling government interests of national security and safety would be substantially impaired by permitting full access to the plea document here."); *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014) ("The interests that courts have found sufficiently compelling to justify closure under the First Amendment include...risks to national security...."); *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) ("We recognize, however, that transparency must at times yield to more compelling interests. 'It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation.'") (citing *Haig v. Agee*, 453 U.S. 280, 307 (1981)).

4. Finally, Courts have sealed documents where "[t]he public does not have a significant interest in this information and the public will not be harmed if it does not have this information." *See Microsoft Corp. v. Softicle.com*, No. 16-CV-2762, 2019 WL 13174864, at *1 (D.N.J. Apr. 29, 2019).

5. As the protection of NASA's Confidential Information serves both an immense public and private interest, and there is not significant public interest in viewing these technical documents, NASA's Confidential Information should be sealed.

## III. The Clearly Defined and Serious Injury that Would Result If the Relief Sought Is Not Granted

### A. Findings of Fact

1. The disclosure of NASA's Confidential Information would result in a substantial cybersecurity risk to NASA. *See* NASA Decl. ¶¶ 8-10. The Confidential Information includes technical cybersecurity and network security practices, and its exposure would reduce NASA's ability to defend against bad actors. *Id.* ¶ 8.

2. Cybersecurity risks at NASA could have serious consequences. NASA works on sensitive technologies that are often related to military departments. *See* NASA Decl. ¶ 9. The security of NASA's systems is also essential in protecting the lives of astronauts and others involved in NASA missions. *Id.* NASA information systems also contain sensitive personal information and third parties' trade secrets. *Id.*

3. These risks are not theoretical. Hacking efforts have targeted NASA in the past and are a serious risk to both the agency and its mission. The emerging ability of malicious actors to employ artificial intelligence only increases these risks. *See* NASA Decl. ¶¶ 11-12.

**B. Conclusions of Law**

1. This Court has discretion to balance the factors for and against access to court documents. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994).

2. In this case, NASA would suffer serious injuries to their cybersecurity protections if their Confidential Information was released. Courts have regularly sealed documents on similar grounds. *See e.g., E. Orange Bd. of Educ.*, 2023 WL 11868298, at *2 (sealing information that if released would harm movant's cybersecurity protections); *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-5659 WHA, 2019 WL 11868520, at *1 (N.D. Cal. May 22, 2019) (sealing information which, if disclosed, could "present a security risk" to clients); *Thomas*, 905 F.3d at 279 (3d. Cir. 2018) (sealing materials that if released would create national security risks).

**IV. Why a Less Restrictive Alternative to the Relief Sought Is Not Available**

**A. Findings of Fact**

1. NASA has made a good faith effort to identify only the necessary and limited portions of Apple's Response Brief that should be sealed, by sealing only the few lines that characterize NASA's Confidential Information. *See* NASA Decl. ¶ 10.

2. NASA seeks to seal Exhibits 3, 4, and 5 in their entirety, as narrower redactions would not sufficiently protect NASA's cybersecurity interests. Although discrete information contained in these documents—such as document names, cited standards, or internal lines of

agency authority—may appear innocuous by itself, it could still be significant to a malicious hacker or a party attempting to carry out a social engineering attack against NASA when combined with other information available to it. *See* NASA Decl. ¶ 11.

3. As Exhibits 3-5 are entirely technical and cybersecurity related, redacting NASA's Confidential Information would render the documents largely meaningless. *See* NASA Decl. ¶ 11.

**B. Conclusions of Law**

1. Under Local Civil Rule 5.3(3), a party seeking to seal documents must show that no less restrictive alternative to the relief sought is available.

2. When entire documents contain confidential information, the Third Circuit has found sealing the entire document to be necessary, as there is no less restrictive alternative available. *See City of Sterling Heights Gen. Emps.' Ret. Sys*, 2016 WL 234838, at *2 ("Because the entirety of these documents appear to contain confidential information, there is no less restrictive alternative to the relief sought.").

3. Likewise, when the redaction of a document would render the document meaningless, Courts have also allowed entire documents to be sealed. *See e.g., McGillvary v. U.S. Dep't of Homeland Sec.*, No. CV 25-1497, 2025 WL 4898065, at *2 (D.N.J. May 15, 2025) ("There is no less restrictive alternative to the relief sought available because complete redaction of the confidential and personal information would render meaningless the Subject Materials publicly filed on the Court's docket."); *see also UMG Recordings, Inc. v. RCN Telecom Servs., LLC,* No. 19-cv-17272, 2024 WL 4957158, at *2 (D.N.J. Nov. 13, 2024) (holding that no less restrictive alternative to sealing the entire document was available, as redacting the exhibits at issue would render the documents meaningless); *Reeves v. Trescal, Inc.*, No. 19-CV-00421, 2020 WL 13695375, at *3 (D.N.J. Mar. 18, 2020) (sealing documents because they "contain predominantly confidential, proprietary, trade secret information" and thus "sealing the entire document is essentially the same as redacting nearly every word.").

4. Courts have also recognized that, although certain pieces of withheld information alone may not appear sensitive, when taken together with other "bits and pieces of seemingly innocuous information," a "mosaic" of information can form, which can reveal information that, if disclosed, could pose a threat to national security. *Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978); *see also Ctr. for Nat'l Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918 (D.C. Cir. 2003) (applying the mosaic theory in a FOIA case).

5. Accordingly, the only way to protect NASA's interests is to seal the Confidential Information, Exhibits 3-5, in their entirety and to redact the references to NASA's Confidential Information in Apple's Response Brief.

Dated: October 14, 2026

Respectfully submitted,

*/s/ Miriam M. Arghavani*
Miriam M. Arghavani
United States Department of Justice
450 Golden Gate Avenue, Suite 10-0101
San Francisco, CA 94102
Telephone: 202-374-6582
Miriam.Arghavani@usdoj.gov

*Attorney for the United States and Responding Agencies*